Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
Kimberly A. Sullivan, Esq. (317857)
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Telephone: (858) 380-4683
Facsimile: (858) 492-0486
E-mail: lroistacher@deangazzo.com
         ksullivan@deangazzo.com

Attorneys for Defendant
Jeffrey McKee

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; LINDEN STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; KEANDRE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; COUNTY OF RIVERSIDE; DANE NOREM; JEFFREY MCKEE; MATT BORDEN; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: 5:21-cv-00526-JAK-KK <br><br> **DEFENDANT JEFFREY MCKEE RESPONSE TO PLAINTIFFS' GENUINE DISPUTES OF MATERIAL FACTS SUBMITTED IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date:        December 18, 2023 <br> Time:        8:30 a.m. <br> Courtroom: 10B <br> Judge:        John A. Kronstadt <br> Mag. Judge: Kenly Kiya Kato <br><br> Complaint Filed: March 24, 2021 <br> Trial Date: None set |

///

///

///

///

///

///

1

| DEFENDANT'S ALLEGED UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| 1.  Officer Norem responded to the Adams Avenue on-ramp to State Route 91 in response to reports of a man in traffic (Leroy).<br><br>Roistacher Declaration, ¶ 6 and Exh. 4, pp. 11:17-12:25 [Norem Deposition]. | Undisputed. |
| 2.  Leroy was trying to stop traffic on State Route 91 and he jumped on one car and pounded his fist on another.<br><br>Roistacher Declaration, ¶ 12 and Exh. 10, pp. 29:14-30:14, 32:12-25, 35:20-40:5 [Casteel Deposition]. | Undisputed. |
| 3.  Officer Norem first observed Leroy in the traffic lanes of the Adams Avenue off-ramp for westbound SR 91 toward traffic.<br><br>Exh. 4, pp. 19:4-14, 21:14-18 [Norem Deposition]. | Undisputed. |
| 4.  Officer Norem used his PA system and hand gestures to direct Leroy to the shoulder of the on-ramp, away from the highway.<br><br>Exh. 4, pp. 18:15-19:7 [Norem Deposition]. | Undisputed. |
| 5.  Leroy initially complied but then began a "fast walk" or "slow run" toward the highway.<br><br>Exh. 4, pp. 19:8-20:12 [Norem Deposition]. | Undisputed. |
| 6.  Officer Norem exited his patrol vehicle and deployed his Taser twice.<br><br>Exh. 4, pp. 20:13-22:14 [Norem Deposition]. | Undisputed. |
| 7.  The first Taser shot was ineffective.<br><br>Exh. 4, pp. 22:24-23:3 [Norem Deposition]. | Undisputed. |

2

| | |
|---|---|
| 8.  The second Taser did not cause Leroy to "lock out" but Leroy did fall to the ground.<br><br>Exh. 4, pp. 22:24-23:3 [Norem Deposition]. | Disputed.<br><br>The Taser was effective, causing "lock up."<br><br>Mayne Declaration, ¶ 2 and Exh. A at 8:14-24, 9:10-15 [Transcript of Interview with Dennis Stout]. |

**8.  Moving Party's Response:**

The Stout statement is an unsworn out of court statement and is thus inadmissible hearsay.  It is questionable whether he could testify at trial as the parties were unable to find and depose him.

Further, whatever dispute might exist is not a *material factual dispute* relevant to Officer McKee's liability as what occurred took place before McKee arrived on scene. Fed. R. Civ. P. 56(a); *see Arroyo Escondido, LLC v. Balmoral Farm, Inc.*, 2021 U.S. Dist. LEXIS 157111, at *1 (C.D. Cal. Aug. 19, 2021) ("A disputed fact is material where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

| | |
|---|---|
| 9.  Leroy fell to the ground on the shoulder or the "gore point" of westbound State Route 91 at the Adams Avenue off ramp between the off-ramp lane and the slow lane of traffic with Leroy's head facing oncoming traffic.<br><br>Exh. 4, pp. 25:13-26:2 [Norem Deposition]. | Disputed.<br><br>Leroy did not fall to the ground; he was tackled to the ground by Officer Norem.<br><br>Exh. A at at 8:14-24, 9:10-15 [Stout Interview]. |

**9.  Moving Party's Response**:

The Stout statement is an unsworn out of court statement and is thus inadmissible hearsay.  It is questionable whether he could testify at trial as the parties were unable to find and depose him.

Further, whatever dispute might exist is not a *material factual dispute* relevant to Officer McKee's liability as what occurred took place before McKee arrived on scene. Fed. R. Civ. P. 56(a); *see Arroyo Escondido, LLC,* 2021 U.S. Dist. LEXIS 157111, at *1.

| | |
|---|---|
| 10.  Officer Norem "sprawled out" on Leroy's back to prevent him from going further out into traffic and to handcuff him.<br><br>Exh. 4, pp. 28:24-30:1 [Norem Deposition]. | Undisputed. |

3

Case No.:  5:21-cv-00526-JAK-KK

| | |
|---|---|
| 11.  Officer Norem had trouble handcuffing Leroy.<br><br>Exh. 4, pp. 31:18-24, 35:24-36:11 [Norem Deposition]. | Undisputed. |
| 12.  A plain cloths law enforcement officer and at least one civilian helped Officer Norem secure Leroy with handcuffs.<br><br>Exh. 4, pp. 31:25-32:13, 37:17-25, 42:2-9 [Norem Deposition]; Roistacher Declaration, ¶ 7 and Exh. 5, pp. 23:8-25:18, 27:10-29:10, 51:10-53:10 [Borden Deposition]; Roistacher Declaration, ¶ 8 and Exh. 6, pp. 100:5-102:13 [Leighton Deposition]. | Undisputed. |
| 13.  Leroy continued to struggle and yell after being handcuffed.<br><br>Exh. 4, pp. 41:13-22, 63:2-64:2 [Norem Deposition]; Exh. 5, pp. 31:9-32:3 [Borden Deposition]; Exh. 6 pp. 68:22-71:2, 79:1-18, 81:3-82:12 [Leighton Deposition]. | Disputed.<br><br>Leroy stopped struggling after being handcuffed.<br><br>Mayne Declaration, ¶ 3 and Exh. B at 31: 3-12, 32:21-25 [Deposition of Matt Borden]; Exh. A at 14:3-9 [Stout Interview]. |

**13.  Moving Party's Response**:

The Stout statement is an unsworn out of court statement and is thus inadmissible hearsay.  It is questionable whether he could testify at trial as the parties were unable to find and depose him.  Also, right after the cited testimony Stout says Leroy was "moaning real hard" "[a]nd still -- and still fighting, still trying to fight."  Mayne Declaration, ¶ 3, Exh. A at p. 14:13-17; *see also id.*, p. 14:18-24 (affirmatively responding to question "what were you thinking as this guy was fighting").

Borden's testimony does not create a dispute.  The Borden testimony cited is the same testimony McKee used to support his fact.  That Leroy was "secured" after being handcuffed and was not "actively" (i.e., vigorously, or aggressively) resisting does not mean he was not continuing to struggle while handcuffed.

Further, whatever dispute might exist is not a *material factual dispute* relevant to Officer McKee's liability as what occurred took place before McKee arrived on scene.  Fed. R. Civ. P. 56(a); *see Arroyo Escondido, LLC,* 2021 U.S. Dist. LEXIS 157111, at *1.

4

| | |
|---|---|
| 14.  While at the shooting range, McKee heard and responded to a radio transmission about a pedestrian (Leroy) on the freeway.<br><br>Roistacher Declaration, ¶ 9 and Exh. 7, pp. 14:16-15-20 [McKee Deposition]. | Undisputed. |
| 15.  While in route, Officer McKee heard Officer Norem report deploying his Taser.<br><br>Exh. 7, p. 15:8-14 [McKee Deposition]; Exh. 4, pp. 42:22-43:3 [Norem Deposition]. | Undisputed |
| 16.  Based on the report of Taser deployment and other radio traffic, Officer McKee believed there was a struggle between Officer Norem and Leroy.<br><br>Exh. 7, pp. 17:24-18:22 [McKee Deposition]. | Disputed.<br><br>Based on the report of Taser deployment and the report that Leroy had been detained, Officer McKee believed Leroy had been Tased and secured in handcuffs.<br><br>Mayne Declaration, ¶ 4 and Exh. C at 8:55 [Mobile Video Audio Recording System ("MVARS") Recording of Jeffrey McKee]; Mayne Declaration, ¶ 5 and Exh. D at 48:24-49:5, 60:1-19 [Dane Norem Deposition]; Mayne Declaration, ¶ 6 and Exh. E at 2:13-20 [Eric Leighton Interview]. |

**16.  Moving Party's Response:**

This fact is not disputed.  None of the evidence cited disputes McKee's deposition testimony regarding *his belief* that a struggle occurred given a Taser deployment.

Further, whatever dispute might exist is not a *material factual dispute* relevant to Officer McKee's liability. Fed. R. Civ. P. 56(a); *see Arroyo Escondido, LLC*, 2021 U.S. Dist. LEXIS 157111, at *1.

| | |
|---|---|
| 17.  When Officer McKee arrived, Leroy was in prone on the shoulder adjacent to State Route 91.<br><br>Roistacher Declaration, ¶ 10 and Exh. 8, 11:00-11:36 [MVARS]; Exh. 7, pp. 20:24-21:8[ McKee Deposition]. | Undisputed. |

Case No.:  5:21-cv-00526-JAK-KK

| | |
|---|---|
| 18.  Officer Norem and three civilians were holding Leroy down.<br><br>Exh. 8, 11:00-11:36 [MVARS]; Exh. 7, pp. 22:20-23:24 [McKee Deposition]. | Disputed.<br><br>Officer Norem and *four* civilians were holding Leroy down. Officer Norem is pressing Leroy's upper body down with his knee; Deputy Borden presses Leroy's upper body down with his knee on his upper back near his neck; Mr. Stout and Mr. Leighton press all their weight into Leroy's lower body; and an unknown young man presses his foot into Leroys upper back.<br><br>Exh. C at 11:25-11:35 [McKee MVARS]. |

**18.  Moving Party's Response**:

Most of what plaintiffs offer to dispute this fact is not fact but opinion about what plaintiffs think the video shows.  The video certainty does not show that "Mr. Stout and Mr. Leighton press all their weight into Leroy's lower body."  In fact, it appears one of these men was not even holding Leroy's legs down as it can be seen when he stands up that his knees were both on the ground.

Regardless, whether Leroy was being held down by Officer Normen and three or four other civilians when McKee arrived is not a *material factual dispute* relevant to Officer McKee's liability. Fed. R. Civ. P. 56(a); *see Arroyo Escondido, LLC.*, 2021 U.S. Dist. LEXIS 157111, at *1.

| | |
|---|---|
| 19.  One of the civilians was holding Leroy's lower legs.<br><br>Exh. 8, 11:00-11:36 [MVARS]; Exh. 7, p. 23:15-24 [McKee Deposition]. | Disputed.<br><br>Two of the civilians (Mr. Leighton and Mr. Stout) were holding Leroy's legs down. Mr. Stout had all his weight on Leroy's legs and Mr. Leighton had all his weight on his hands as he pushed Leroy's legs down.<br><br>Exh. E at 1:40 - 1:59 [Leighton Interview]; Exh. B at 48:3-10 [Borden Depo.]; Exh. C at 11:25-11:35 [McKee MVARS]. |

**19.  Moving Party's Response**:

Neither the Borden deposition nor the Leigthon interview establish what was occurring when McKee arrived.

Regardless, whether Leroy's legs were being held by one or two civilians when McKee arrived is not a *material factual dispute* relevant to Officer McKee's liability. Fed. R. Civ. P. 56(a); *see Arroyo Escondido, LLC.*, 2021 U.S. Dist. LEXIS 157111, at *1.

Case No.:  5:21-cv-00526-JAK-KK

| 20.  Officer McKee believed there had been a struggle significant enough for Officer Norem to need assistance from three other people.<br><br>Exh. 7, p. 33:1-16 [McKee Deposition]. | Disputed.<br><br>Officer McKee believed that the situation was completely under control, and he knew that Leroy was silent, non-resistive, and not even moving.<br><br>McKee hears Officer Norem broadcast "Code 4" as he drives to the scene, 45 seconds before he arrived at the scene. Exh. C at 10:45, 11:30 [McKee MVARS].<br><br>"CODE 4" means "Situation Stable, Emergency Situation No Longer Exists." Mayne Declaration, ¶ 7 and Exh. F [Excerpt from California Highway Patrol Critical Incident Reconstruction Report].<br><br>Officer McKee never saw Leroy move of his own volition. Mayne Declaration, ¶ 8 and Exh. G at 28:11-25, 30:20-23 [Jeffrey McKee Deposition]; Exh. C at 11:30-12:00 [McKee MVARS].<br><br>Officer Norem did not tell McKee whether Leroy had been offering resistance. Exh. G at 25:8-10 [McKee Deposition].<br><br>When he took Leroy's legs, he could not tell if he was alive or dead. Exh. G at 24:9-12[McKee Deposition]. |

**20.  Moving Party's Response:**

This fact is not disputed.  None of the evidence cited disputes McKee's deposition testimony regarding *his belief* upon arrival at the scene that a struggle significant enough for Officer Norem to need assistance had occurred.

Whatever factual dispute might exist is not a *material factual dispute* relevant to Officer McKee's liability. Fed. R. Civ. P. 56(a); *see Arroyo Escondido, LLC.,* 2021 U.S. Dist. LEXIS 157111, at *1.

| 21.  Officer McKee exited his vehicle and immediately took control of Leroy's legs from the civilian.<br><br>Exh. 8, 11:34-11:45 [MVARS]; Exh. 7, pp. 23:25-24:8 [McKee Deposition]. | Undisputed. |

| | |
|---|---|
| 22.  Officer McKee and Officer Norem discussed getting a nylon strap to secure Leroy's legs.<br><br>Exh. 7, p. 31:14-22 [McKee Deposition]; Exh. 4, pp. 77:21-78:3, 79:22-80:1 [Norem Deposition]. | Undisputed. |
| 23.  About 18 seconds after taking control of Leroy's legs, Officer McKee left to get the strap.<br><br>Exh. 8, 11:40-11:58 [MVARS]; Exh. 7, pp. 37:24-38:1 [McKee Deposition]; Exh. 4, p. 59:3-21 [Norem Deposition]. | Undisputed. |
| 24.  When Officer McKee left to get the strap, he still believed the situation presented a potential for danger from the situation.<br><br>Exh. 7, p. 60:4-16 [McKee Deposition]. | Disputed.<br><br>Officer McKee knew that the situation was completely under control, and he believed that Leroy was silent, non-resistive, and not even moving.<br><br>Officer McKee never saw Leroy move of his own volition. Exh. G at 28:11-25, 30:20-23 [Jeffrey McKee Deposition]; Exh. C at 11:30-12:00 [McKee MVARS].<br><br>McKee hears Officer Norem broadcast "Code 4" as he drives to the scene, 45 seconds before he arrived at the scene. Exh. C at 10:45, 11:30 [McKee MVARS].<br><br>"CODE 4" means "Situation Stable, Emergency Situation No Longer Exists." Exh. F [Excerpt from California Highway Patrol Critical Incident Reconstruction Report].<br><br>There were no moving vehicles in the lane adjacent to the gore point, and the cars in the second lane over were moving very slowly; this made the situation much safer because there was less risk of a traffic accident. Exh. C at 11:20-11:40 [McKee MVARS]; Exh. D at 86:13-18 [Norem Deposition]. |

Case No.:  5:21-cv-00526-JAK-KK

**24. Moving Party's Response**:

This fact is not disputed.  None of the evidence cited disputes McKee's deposition testimony regarding *his belief* that the situation on the side of the highway still presented a *potential for danger*.

Whatever factual dispute might exist is not a *material factual dispute* relevant to Officer McKee's liability. Fed. R. Civ. P. 56(a); *see Arroyo Escondido, LLC.,* 2021 U.S. Dist. LEXIS 157111, at *1.

| | |
|---|---|
| 25.  Officer McKee had a civilian take his place on Leroy's legs to prevent failing and kicking.<br><br>Exh. 8, 11:58-12:05 [MVARS]; Exh. 7, pp.  35:20-24, 36:25-37:2 [McKee Deposition]. | Disputed.<br><br>Officer McKee ordered Eric Leighton to "sit on" Leroy's legs. But he knew Leroy was not going to flail or kick because Officer McKee never saw Leroy move of his own volition. Exh. G at 28:11-25, 30:20-23 [McKee Deposition]; Exh. C at 11:30-12:00 [McKee MVARS].<br><br>Additionally, when he took Leroy's legs, he could not tell if he was alive or dead. Exh. G at 24:9-12 [McKee Deposition]<br><br>A reasonable juror could find just based on the video that McKee knew Leroy was completely limp and was not going to flail or kick. Exh. C at 11:55-12:00 [McKee MVARS]. |

**25.  Moving Party's Response:**

This fact is not disputed.  None of the evidence disputes that McKee had a civilian take his place on Leroy's legs, whether McKee asked or ordered. Semantics does not create a dispute.

The evidence does not establish any subjective knowledge by McKee that Leroy was not going to fail or kick his legs.  And Leroy's legs were not moving because they were being held down.  And the video does not establish Leroy being completely limp when McKee left.

Whatever dispute might exist is not a *material factual dispute* relevant to Officer McKee's liability. Fed. R. Civ. P. 56(a); *see Arroyo Escondido, LLC.,* 2021 U.S. Dist. LEXIS 157111, at *1.

9

| | |
|---|---|
| 26.  While Officer McKee was getting the strap and before he returned, Leroy apparently stopped breathing.<br><br>Exh. 8, 12:15-12:40 [MVARS]; Exh. 7, pp. 38:2-40:25 [McKee Deposition]; Exh. 4, pp. 51:13-16, 73:25-74:6, 80:2-19, 103:12-104:3 [Norem Deposition]; Exh. 6, p. 80:8-15 [Leighton Deposition]. | Undisputed. |
| 27.  Officer McKee and Officer Norem provided CPR until paramedics arrived and took over.<br><br>Exh. 8, 13:01-22:30 [MVARS]; Exh. 7, pp. 47:21-51:20 [McKee Deposition]; Exh. 4, pp. 48:2-10, 53:13-19 [Norem Deposition]; Exh. 5, p. 33:19-24 [Borden Deposition]. | Undisputed. |
| 28.  Leroy was transported to the hospital but did not survive.<br><br>Exh. 4, p. 52:7-14 [Norem Deposition]. | Undisputed. |
| 29.  The medical examiner determined Leroy's cause of death to be "acute methamphetamine intoxication."<br><br>Roistacher Declaration, ¶ 11 and Exh. 9. | Undisputed. |
| 30.  Officer McKee did not know Leroy.<br><br>Exh. 7, p. 13:21-23 [McKee Deposition]. | Undisputed. |

Dated: November 21, 2023                    Dean Gazzo Roistacher LLP

By:  _/s/ Lee H. Roistacher_

Lee H. Roistacher
Kimberly A. Sullivan
Attorneys for Defendant
Jeffrey McKee
Email:  lroistacher@deangazzo.com
          ksullivan@deangazzo.com

10

Case No.:  5:21-cv-00526-JAK-KK