1
2
3
4

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, SBN 144074
Cooper Alison-Mayne, SBN 343169
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333
Email: dalekgalipo@yahoo.com
         cmayne@galipolaw.com

5
6
7
8

**STEVEN A. LERMAN & ASSOCIATES, INC.**
Steven A. Lerman, Esq., SBN 55839
Nicholas M. Lerman, Esq., SBN 292656
6033 West Century Boulevard, Suite 740
Los Angeles, California 90045
Telephone: (310) 659-8166
Email: nlerman@lermanslaw.com

9
10
11
12

**LAW OFFICE OF GREGORY PEACOCK**
Gregory Peacock, Esq., SBN 277669
4425 Jamboree Road, Suite 130
Newport Beach, CA 92660
Telephone: (949) 292-7478
Email: gregorypeacockesq@gmail.com

13

*Attorneys for All Plaintiffs*

14

15

16

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

17
18
19
20
21
22

DEVONTE STEPHENSON,
individually and as successor in
interest to Decedent LEROY
STEPHENSON; LINDEN
STEPHENSON, individually and as
successor in interest to Decedent
LEROY STEPHENSON; KEANDRE
STEPHENSON, individually and as
successor in interest to Decedent
LEROY STEPHENSON,

23

                Plaintiffs,

24

        v.

25
26

STATE OF CALIFORNIA; DANE
NOREM; and JEFFREY MCKEE,

26

                Defendants.

Case No.:  5:21-cv-0526-JAK-KK

**PLAINTIFFS' RESPONSE TO
DEFENDANT MCKEE'S
SUPPLEMENTAL BRIEFING
REGARDING HIS MOTION FOR
SUMMARY JUDGMENT**

Judge: John A. Kronstadt
Mag. Judge Kenly Kiya Kato

Complaint Filed:  March 24, 2021
Trial Date: None set

27

28

1
2
## TABLE OF CONTENTS

3  I.   INTRODUCTION ........................................................................ 4
4  II.  FAILURE TO INTERVENE ...................................................... 5
5       A.   McKee Failed to Intervene ........................................5
6       B.   McKee Violated Clearly Established Law .............8
7  III. INTEGRAL PARTICIPATION .............................................. 10
8       A.   McKee was an Integral Participant .......................10
9       B.   McKee Violated Clearly Established Law ...........12
10  IV.  CONCLUSION ........................................................................ 13

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' RESPONSE TO DEFENDANT MCKEE'S SUPPLEMENTAL BRIEFING

## **TABLE OF AUTHORITIES**

**Cases**

*Abston v. City of Merced*,
   506 F. App'x 650 (9th Cir. 2013)................................................................6, 8

*Anderson v. Creighton*,
   483 U.S. 635 (1987)...........................................................................................8

*Andrich v. Kostas*,
   470 F. Supp. 3d 1048 (D. Ariz. 2020) ...........................................................7

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011)...........................................................................................8

*Atencio v. Arpaio*,
   674 F. App'x 623 (9th Cir. 2016) ..................................................................12

*Beltran v. Cnty. of San Bernardino*,
   2021 WL 3185474 (C.D. Cal. Jan. 28, 2021)...............................................6, 8

*Blankenhorn v. City of Orange*,
   485 F.3d 463 (9th Cir. 2007) ...........................................................10, 11, 12

*Boyd v. Benton County*,
   374 F.3d 773 (9th Cir. 2004) .........................................................................10

*Brosseau v. Haugen*,
   543 U.S. 194 (2004)...........................................................................................8

*Casillas v. City of Los Angeles*,
   2020 WL 5413023 (C.D. Cal. 2020) ..............................................................6

*Chuman v. Wright*,
   76 F.3d 292 (9th Cir. 1996) ...........................................................................12

*Cunningham v. Gates*,
   229 F.3d 1271 (9th Cir. 2000) ................................................................5, 8, 10

*Drummond v. City of Anaheim*,
   343 F.3d 1052 (9th Cir. 2003) ....................................................................8, 13

*Knapps v. City of Oakland*,
   647 F. Supp. 2d 1129 (N.D. Cal. 2009)...........................................................7

*LaLonde v. Cnty. of Riverside*,
   204 F.3d 947 (9th Cir. 2000) ...........................................................................9

*Lolli v. Cnty. of Orange*,
   351 F.3d 410 (9th Cir. 2003) ...........................................................................9

*Martinez v. City of Pittsburg*,
   2019 WL 1102375 (N.D. Cal.), *aff'd*, 809 F. App'x 439 (9th Cir. 2020).....13

*Peck v. Montoya*,
   51 F.4th 877 (9th Cir. 2022) .........................................................................11

*Penaloza v. City of Rialto*,
   836 F. App'x 547 (9th Cir. 2020) ....................................................................9

PLAINTIFFS' RESPONSE TO DEFENDANT MCKEE'S SUPPLEMENTAL BRIEFING

*Roberson v. City of Hawthorne*,
    2023 WL 2596834 (9th Cir. Mar. 22, 2023) ............................................11, 12
*Roberson v. City of Hawthorne*,
    516 F. Supp. 3d 1033 (C.D. Cal. 2021)........................................................12
*Robins v. Meecham*,
    60 F.3d 1436 (9th Cir. 1995) ..........................................................................9
*Tobias v. Arteaga*,
    996 F.3d 571 (9th Cir. 2021) ....................................................................8, 10
*Wright v. City of San Bernardino*,
    2023 U.S. Dist. LEXIS 192897 (C.D. Cal. Oct. 25, 2023) ............................7
*Zelaya v. Las Vegas Metro. Police Dep't*,
    682 F. App'x 565 (9th Cir. 2017)..............................................................6, 8

PLAINTIFFS' RESPONSE TO DEFENDANT MCKEE'S SUPPLEMENTAL BRIEFING

I.      INTRODUCTION

        Plaintiffs file this brief in response to Defendant Jeffrey McKee's Supplemental Briefing For Motion For Summary Judgment, Dkt. 79 ("McKee Brief"). At the request of the Court, this brief is limited to two issues: (1) McKee's failure to intervene in Officer Norem's use of excessive force and (2) McKee's integral participation in the excessive force used by Officer Norem.

        McKee's liability is dependent on the totality of the circumstances known to him at the time of the incident. When McKee arrived at the scene he knew: (1) Stephenson had been secured in handcuffs for at least 2 minutes and 35 seconds (PAMF 21–22); (2) the situation was stable for least 45 seconds (PAMF 23–24); (3) Stephenson was not moving or making any noises (PAMF 27); and (4) Stephenson was pinned to the ground by five individuals, including Officer Norem, who had his knee pressed into Stephenson's back. (PAMF 26.) McKee admits in his deposition that when he approached Stephenson and took control of his legs he could not determine whether or not Mr. Stephenson was alive or not. (PAMF 30; Dkt. 69-4 at 2.) He also admits that he never saw Stephenson move at all of his own volition. (PAMF 27; Dkt. 69-4 at 4.)

        Faced with these facts, any reasonable officer in McKee's position would have known that Officer Norem was using excessive force by continuing to use body compression to restrain a prone and bound suspect, who was in no position to offer any meaningful resistance. This is basic policing. Indeed, it is undisputed that CHP policy instructs officers to keep individuals in a prone position for as little time as possible and that once a situation is stabilized, the first thing you should do is roll the person to a recovery position or sit them up. (PAMF 42, 44.) And it is undisputed that CHP Officers were trained to avoid prolonged pressure on the back because excessive pressure could fatally restrict a subject's ability to breathe. (PAMF 43, 45–48.)

McKee had a duty to intervene to prevent the further use of excessive force against Stephenson. Instead, he took control of Stephenson's legs and used his body weight to apply additional weight to Stephenson's non-responsive body for 18 seconds. (PAMF 30.) During that time, it is undisputed that he had a conversation with Officer Norem which concluded with *McKee telling Officer Norem that they needed a strap so that they could hobble Stephenson*. (PAMF 30.) When McKee went to retrieve the hobble strap,  he ordered a civilian to maintain pressure on Stephenson's lower body, and Officer Norem continued to restrain Stephenson in line with their plan to hobble Stephenson. (PAMF 30, 36.) When McKee returned, about 30 seconds after he had left, Stephenson appeared to stop breathing. (PAMF 37.)

Viewing the evidence in a light most favorable to Plaintiffs, a reasonable jury could find that McKee failed to intervene in Officer Norem's use of excessive force against Stephenson because he saw Norem use body compression to restrain Stephenson's prone non-responsive body and did nothing to stop it. A jury could also find that McKee was an integral participant in the unconstitutional force used against Stephenson because he played a vital role in the restraint for 18 seconds and it was McKee himself who formulated the plan to hobble Stephenson, which necessitated further prone restraint and resulted in Stephenson's death.

II.   **FAILURE TO INTERVENE**

A.   **McKee Failed to Intervene**

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). However, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* at 1289. Officer McKee had the duty and the opportunity to intervene on Stephenson's behalf but chose to use additional force instead.

When he arrived at the scene, McKee knew that Stephenson had been handcuffed for 2 minutes and 35 seconds, the situation had been stable for at least 45 seconds, Stephenson was motionless and silent, and he was pinned down by five individuals including Officer Norem with a knee on his back. Faced with these facts, any reasonable officer in McKee's position would have known that Officer Norem was using excessive force by continuing to use "body compression to restrain a prone and bound suspect, who was in no position to offer any meaningful resistance." *Abston v. City of Merced*, 506 F. App'x 650, 653 (9th Cir. 2013); *Zelaya v. Las Vegas Metro. Police Dep't*, 682 F. App'x 565, 567 (9th Cir. 2017) (officers used excessive force when they pinned a man to the ground with their body weight after he was motionless and no longer resisting).

McKee had a reasonable opportunity to intervene because the situation was stable and he had time to evaluate the circumstances and attempt to stop the further use of excessive force. McKee obviously had time to evaluate the situation because he had a conversation with Officer Norem while they continued to use body compression to pin Stephenson to the ground. But after evaluating the situation, McKee chose not to intervene on Stephenson's behalf. Instead, he proposed to Officer Norem that they needed a strap so that they could hobble Stephenson. A jury could readily find that Officer McKee had the duty and the opportunity to intervene on Stephenson's behalf but failed to do so. *See Casillas v. City of Los Angeles*, 2020 WL 5413023 (C.D. Cal. 2020) (declining to award summary judgment to officers who failed to intervene in their fellow officer's use of force in pinning a suspect to ground, noting that if the suspect was not resisting, the officers had a duty to intervene to prevent their coworkers from continuing to pin the suspect to the ground); *Beltran v. Cnty. of San Bernardino*, 2021 WL 3185474, at *6 (C.D. Cal. Jan. 28, 2021) (finding genuine dispute of fact where observing officer was "fifteen to twenty feet" away from where another officer was allegedly

beating and tasering the plaintiff; even though observing officer was dealing with another suspect).

McKee cites *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1062 (D. Ariz. 2020) for the proposition that failure-to-intervene claims require that the excessive force extends over a "relatively longer period of time." However, tellingly, this quotation comes from a published bench trial ruling that supports Plaintiffs' position: *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129 (N.D. Cal. 2009). In *Knapps*, the court found two officers liable for failure-to-intervene where officers watched another officer use an excessive wrist lock as he walked a suspect a short distance to his patrol car. *Id*. at 1160. The court characterized that as a "relatively longer period of time" and ruled that the officers were "liable under 42 U.S.C. § 1983 for their failure to intervene." *Id*. McKee had a similar amount of time to intercede, if not more, and he was faced with a much more serious use of force, indicating that his failure to intervene under these circumstances should similarly be deemed unlawful.[1]

McKee also argues that a reasonable jury could not find that he failed to intervene because this is not "a case where an officer sees other officers draped over the back of a suspect that is complaining about not being able to breathe." (*McKee Brief* at 8.) But this case is far worse than the case imagined by McKee: while the victim in McKee's example is responsive and able to speak, the victim here is completely non-responsive. McKee's argument troublingly suggests that in asphyxiation cases, an officer's use of force becomes more reasonable as the victim loses consciousness. This interpretation dangerously undermines the responsibility of officers to assess and respond to the escalating severity of a suspect's condition.

---

[1] Defendants also cite *Wright v. City of San Bernardino*, 2023 U.S. Dist. LEXIS 192897 (C.D. Cal. Oct. 25, 2023), but this is only a *tentative* order and is distinguishable as McKee had reason to know the force here was excessive.

PLAINTIFFS' RESPONSE TO DEFENDANT MCKEE'S SUPPLEMENTAL BRIEFING

1    For all the reasons above, the question of whether McKee had a duty and

2    opportunity to intercede in Officer Norem's use of force should be left to a jury.

3    *Beltran*, 2021 WL 3185474, at *6 (stating that whether "an officer . . . was capable

4    of preventing the harm being caused by another officer is an issue of fact for the

5    jury unless, considering all the evidence, a reasonable jury could not possible

6    conclude otherwise").

7    **B.    McKee Violated Clearly Established Law**

8    A right is clearly established where its "contours . . . [are] sufficiently clear

9    [such] that a reasonable official would understand that what he is doing violates that

10   right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  This requires "cases

11   relevant to the situation [the officer] confronted," *Brosseau v. Haugen*, 543 U.S.

12   194, 200 (2004), however, it does "not require a case directly on point," *Ashcroft v.*

13   *al-Kidd*, 563 U.S. 731, 741 (2011).

14   It has been clearly established for decades that an officer who knows

15   excessive force is being used and has an opportunity to intercede must do so.

16   *Cunningham*, 229 F.3d at 1289. Importantly, the Ninth Circuit explains that "[i]f an

17   officer fails to intercede, 'the constitutional right violated by the passive defendant

18   is analytically the same as the right violated by the person who' performed the

19   offending action." *Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021).

20   Here, at the time of the incident, "[i]t was clearly established that defendants'

21   use of body compression to restrain a prone and bound suspect, who was in no

22   position to offer any meaningful resistance, would violate the rule established by

23   *Drummond* nearly [16] years earlier, in 2003." *Abston*, 506 F. App'x at 653;

24   *Drummond v. City of Anaheim,* 343 F.3d 1052, 1059 (9th Cir. 2003) ("any

25   reasonable person[] should have known that squeezing the breath from a compliant,

26   prone, and handcuffed individual . . . involves a degree of force that is greater than

27   reasonable" ); *Zelaya*, 682 F. App'x at 567 (officers used excessive force when they

28   pinned a man to the ground with their body weight after he was motionless and no

longer resisting); *see also LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) (holding that where "an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of [a] weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force").

Further, a jury could find that McKee had a reasonable opportunity to intervene and chose not to in violation of clearly established law. In *Lolli v. Cnty. of Orange*, 351 F.3d 410 (9th Cir. 2003), the Ninth Circuit denied qualified immunity to a sergeant who observed and did not intercede as officers used excessive non-lethal force against an individual. 351 F.3d at 418. If the duty to intervene in cases of excessive *non-lethal force* is clearly established, the duty to intercede in instances of excessive use of *deadly force* is even more unequivocally established.

In *Robins v. Meecham*, 60 F.3d 1436 (9th Cir. 1995), the Ninth Circuit denied qualified immunity on failure-to-intervene claims in the Eighth Amendment context. There, in response to an inmate refusing a direct order to lock up, a correctional officer fired a round of bird shot at the inmate, but a few pellets travelled under another cell door and lodged in another inmate's foot. *Id*. at 1442. Two other officers were in the "control bubble" with the shooting officer. *Id*. Those two officers argued they were entitled to summary judgment because they had not taken any action against either inmate. *Id*. The Ninth Circuit rejected this argument, noting that "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." *Id.* McKee had far more time to intervene here than did the officers in *Robins* so his duty to intervene was clearly established.

McKee relies on the Ninth Circuit's unpublished opinion *Penaloza v. City of Rialto*, 836 F. App'x 547 (9th Cir. 2020), to argue that qualified immunity should apply to any claim of failure to intervene because "precedent does not clearly establish what [] a 'realistic opportunity' means." (*McKee Brief* at 9.) But one line of dicta in a single unpublished Ninth Circuit opinion cannot extinguish decades of Ninth Circuit precedent. In published and unpublished decisions over the last

9

twenty years, the Ninth Circuit has held that it is clearly established law that an officer may be liable for failing to intervene when fellow officers violate the constitutional rights of citizens. As explained by the Ninth Circuit in a *published* decision issued subsequent to *Penaloza*, "[b]y 2013, we had clearly established that 'police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" *Tobias*, 996 F.3d at 583 (citing *Cunningham*, 229 F.3d at 1289). The Ninth Circuit's recent decision in *Tobias* comports with decades of decisions that look to the facts of the alleged failure to intervene to see whether the plaintiff demonstrated that there are disputed facts that the officers had a realistic opportunity to intervene.

This is not a case of a split-second use of force that does not provide time for an officer to intervene. Here, McKee had time to process the totality of the circumstances and even have a conversation with Officer Norem. He clearly had time to intervene but simply chose not to.

For all the reasons above, the Court should deny McKee's request for qualified immunity and allow Plaintiffs' claims to go to a jury.

## III. INTEGRAL PARTICIPATION

### A. McKee was an Integral Participant

Officer McKee is responsible for the excessive use of force against Stephenson because he was an integral participant in the prone restrain applied by Officer Norem. "[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). It only requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 n.12 (9th Cir. 2007).

McKee participated in Officer Norem's restraint of Stephenson by pressing his weight into Stephenson's lower body for 18 seconds. During that time, he had a discussion with Officer Norem and *told him that they needed a strap so that they*

*could hobble Stephenson*. In pursuit of this objective, McKee left to retrieve the strap and delegated his restraining role to a civilian, thereby ensuring the continuity of their concerted plan to maintain Stephenson in a prone position. When he returned with the strap, Stephenson had stopped breathing.

As an initial matter, it appears that McKee himself thought his involvement was essential because when he left to get the hobble strap, he ordered a citizen to take his place on Stephenson's legs. Such an action suggests McKee viewed his role in restraining Stephenson as critical, supporting the argument that he had "some fundamental involvement" in Officer Norem's unlawful prone restraint of Stephenson. *Blankenhorn*, 485 F.3d at 482 n.12.

Furthermore, an officer is liable under an integral participation theory when he "knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation." *Peck v. Montoya*, 51 F.4th 877, 888–89 (9th Cir. 2022). Here, there is ample evidence from which a jury could conclude that McKee knew about Officer Norem's constitutionally defective conduct (*see* Section II.A, above) and acted as part of a common plan with Officer Norem. Crucially, it is undisputed that McKee told Officer Norem that they needed a strap so that they could hobble Stephenson and then ordered a citizen to sit on Stephenson's legs.  Based on this fact, a reasonable jury could conclude that McKee formulated a plan with Officer Norem to keep Stephenson restrained in a prone position with weight on his body until the hobble could be applied. This restraint continued until Stephenson stopped breathing. McKee's involvement in devising and implementing this plan presents compelling evidence of his integral participation in the unconstitutional prone restraint that led to Stephenson's death.

McKee relies on *Roberson v. City of Hawthorne*, 2023 WL 2596834 (9th Cir. Mar. 22, 2023), but *Roberson* is not relevant here because in that case  "[t]he entire altercation . . . lasted about two to three seconds." *Roberson v. City of Hawthorne*,

516 F. Supp. 3d 1033, 1038 (C.D. Cal. 2021); *Roberson*, 2023 WL 2596834, at *2. During this brief encounter, Officer Michalczak used excessive force by "throwing an individual against a wall, taking him to the ground using a headlock, and holding him on the ground by applying weight to his neck." *Id.* at *1. The Ninth Circuit dismissed Plaintiffs' claim of integral participation against Officer Lazorek, whose involvement was limited to briefly straddling the individual to control the situation and apply handcuffs, and only after Officer Michalczak had thrown him against the wall and taken him down with a headlock. *Id.*; *Roberson*, 516 F. Supp. 3d at 1038. The extremely brief and limited involvement of Officer Lazorek in the excessive force at issue in *Roberson* starkly contrasts with McKee's actions at issue here.[2]

For all the reasons discussed above, a jury could find that McKee is liable under a theory of integral participation.

**B.     McKee Violated Clearly Established Law**

McKee states that "[q]ualified immunity should insulate McKee from liability" and states that "[n]one of the Ninth Circuit decisions cited in plaintiffs' summary judgment opposition dealt with the integral participant doctrine." *McKee Brief* at 14. But, in their Opposition to McKee's Motion for Summary Judgment, Plaintiffs cited and discussed two published Ninth Circuit opinions: *Blankenhorn*, 485 F.3d 463, and *Chuman v. Wright*, 76 F.3d 292 (9th Cir. 1996). Dkt. 65 at 14. Please refer to Plaintiffs Opposition for the full argument, but briefly, Plaintiffs argued that in *Blankenhorn*, several officers tackled an individual, after which Officer Kayano arrived and provided minor assistance by holding the individual's arm for handcuffing. But the Ninth Circuit held that Officer Kayano could be liable for his integral participation. Officer McKee took a far greater role in the excessive force at issue here because (1) even he recognized his role in the restraint as important and (2) he formulated the plan to hobble Stephenson, which required

---

[2] *Atencio v. Arpaio*, 674 F. App'x 623 (9th Cir. 2016), also does not help McKee because there the officer had no involvement in the force used.

1  further restraint. <u>McKee offers no argument whatsoever in response.</u> (*See McKee's*

2  *Reply to Plaintiffs Opposition*, Dkt. 72; *McKee Brief*, Dkt. 79 at 14.)

3       In addition to the similarities with *Blankenhorn* and *Chuman*, the Ninth

4  Circuit's decision in *Drummond* is also instructive even though it does not address

5  integral participation directly. In *Drummond*, officers responded to a call from one

6  of Drummond's neighbors who sought help for Drummond who was hallucinating

7  and "darting into traffic." 343 F.3d at 1054–55. Two responding officers brought

8  Drummond to the ground, cuffed Drummond's arms behind his back as he lay on

9  his stomach, and placed their weight on his torso. *Id*. *Twenty minutes later*, another

10 officer arrived and helped apply hobble restraints. Drummond stopped breathing

11 one minute later. In that case, the Court found that a jury could hold the officer who

12 arrived late directly liable for his role in the incident.

13      Here, McKee also arrived at the tail end of a prone restraint incident and

14 planned to help hobble Stephenson. But McKee faced an even more dire situation

15 because while Drummond was still responsive when the officer arrived at the scene,

16 Stephenson was already non-responsive and likely unconscious when McKee

17 arrived. If it was clearly established that an officer can be held directly liable for the

18 actions at issue in *Drummond*, surely it is clearly established that McKee's actions

19 meet the lower standard of "fundamental involvement" in the force used here.

20      For these reasons, McKee's request for qualified immunity should be denied.

21 *Martinez v. City of Pittsburg*, 2019 WL 1102375, at *2 (N.D. Cal. Mar. 8, 2019),

22 *aff'd*, 809 F. App'x 439 (9th Cir. 2020) (denying qualified immunity to officer

23 because he was an integral participant even though he arrived at the tail end of

24 incident and only attempted to string multiple handcuffs together in order to

25 handcuff suspect's free hands and did not strike the suspect).

26 **IV.   CONCLUSION**

27      For all the reasons above, Plaintiffs request that McKee's Motion for

28 Summary Judgment (Dkt. 64) be denied.

Dated: January 5, 2024               LAW OFFICES OF DALE K. GALIPO

STEVEN A. LERMAN & ASSOCIATES

LAW OFFICE OF GREGORY PEACOCK

/s/ *Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
Steven A. Lerman
Nicholas M. Lerman
Gregory Peacock
*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE TO DEFENDANT MCKEE'S SUPPLEMENTAL BRIEFING