UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
| Title | Devonte Stephenson et al. v. State of California et al. | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Daniel Torrez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) ORDER RE MOTION FOR SUMMARY JUDGMENT BY DEFENDANT JEFFREY MCKEE (DKT. 64)**

## I.    Introduction

On December 18, 2019, Plaintiffs Devonte Stephenson ("Devonte"), Keandre Stephenson ("Keandre"), Linden Stephenson ("Linden") (collectively, "Plaintiffs"), surviving sons of Leroy Stephenson ("Stephenson"), filed the present action against the State of California and Does 1–20 in the Riverside Superior Court of California. Dkt. 1 at 28–38 (the "Complaint").[1]  The Complaint alleged that California Highway Patrol Officers used unlawful force against Stephenson that caused his death. Dkt. 1 at 31–32 ¶¶ 10–16.

On February 8, 2021, Plaintiffs filed a First Amended Complaint ("FAC"). Dkt. 1 at 8–21. The FAC included additional allegations regarding the incident. It advanced six causes of action against the State of California ("State"), the County of Riverside ("County"), Dane Norem ("Norem"), Jeffrey McKee ("McKee"), Matthew Borden ("Borden"), and Does 1–20 (collectively, "Defendants"). Dkt. 1 at 13–21 ¶¶ 15–30, 31–69. The six causes of action are:

1.    Wrongful Death (Cal. Common Law and Cal. Code Civ. Proc § 377.60, against Norem, McKee, and Does
2.    Negligence (Cal. Civ. Code § 1714), against Norem, McKee, and Does
3.    Fourth Amendment – Excessive Force (42 U.S.C. § 1983), against Norem, McKee, Borden, and Does
4.    Fourth and Fourteenth Amendment – Loss of Parent-Child Relationship Without Due Process (42 U.S.C. § 1983), against Norem, McKee, Borden, and Does
5.    Fourteenth Amendment – Deprivation of Life Without Due Process (42 U.S.C. § 1983), against Norem, McKee, Borden, and Does
6.    Municipal Liability – Failure to Train (42 U.S.C. § 1983), against the County

*Id.* at 15–21 ¶¶ 31–69.

---

[1]  The use of first names to identify those with common surnames is to facilitate the discussion in this Order. No disrespect is intended by the use of this common convention.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

On March 24, 2021, Norem and McKee, with the consent of the State, removed the action, based on federal question jurisdiction. Dkt. 1 at 2; Dkt. 1 at 6 ¶ 24. On April 6, 2021, the State, Norem and McKee answered the FAC. Dkt. 9. On May 11, 2021, the County and Borden answered the FAC. Dkt. 10.

On February 3, 2023, all claims against the County and Borden were dismissed with prejudice pursuant to the parties' stipulation. Dkt. 42. On September 14, 2023, the Fifth Cause of Action as asserted against McKee, and Plaintiffs' claim for punitive damages against him, were dismissed with prejudice pursuant to the parties' stipulation. Dkt. 62. The remaining causes of action as against McKee are as follows:

1.    Wrongful Death (Cal. Common Law and Cal. Code Civ. Proc § 377.60)
2.    Negligence (Cal. Civ. Code § 1714)
3.    Fourth Amendment – Excessive Force (42 U.S.C. § 1983)
4.    Fourth and Fourteenth Amendment – Loss of Parent-Child Relationship Without Due Process (42 U.S.C. § 1983)

On September 25, 2023, McKee filed a Motion for Summary Judgment as to all remaining claims against him. Dkt. 64 ("Motion"). On October 9, 2023, Plaintiffs filed an Opposition. Dkt. 65 ("Opposition"). On October 16, 2023, McKee filed a Reply. Dkt. 72 ("Reply").

A hearing on the Motion took place on December 18, 2023, and supplemental briefing was ordered as to issues of liability arising from the § 1983 cause of action for alleged use of excessive force. Dkt. 78. After this supplemental briefing was filed, the matter was taken under submission. *Id.*; *see* Dkts. 79, 80.

On August 2, 2024, while the Motion remained under submission, a notice of supplemental authority was filed by Plaintiffs. Dkt. 91 ("Plaintiffs' Notice"). On August 6, 2024, McKee filed a response to Plaintiffs' Notice. Dkt. 92. On September 18, 2024, a notice of supplemental authority was filed by McKee. Dkt. 93 ("McKee's Notice"). On October 4, 2024, Plaintiffs filed a response to McKee's Notice. Dkt. 94.

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART and DENIED-IN-PART**. The Motion is **DENIED** as to the First Cause of Action for Wrongful Death and the Second Cause of Action for Negligence. The Motion is **DENIED** as to the Third Cause of Action for Excessive Force. The Motion is **GRANTED** as to the Fourth Cause of Action for Loss of Parent-Child Relationship.

**II.    Factual Background**

A.    Parties

It is alleged that Keandre, Linden and Devonte are the surviving sons and "heirs at law" of Stephenson. Dkt. 1 at 10–11 ¶¶ 1–3. It is alleged that, at the time of the incident, Norem and McKee were California Highway Patrol Officers. *Id.* at 10 ¶¶ 6–7. It is alleged that Borden was a peace officer and investigator employed by the District Attorney's Office of the County. *Id.* ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

      B.    Material Factual Matters

           1.   <u>Events Prior to McKee's Arrival at the Scene of the Incident</u>

On January 24, 2019, Norem arrived at the Adams Avenue on-ramp to State Route 91 ("SR 91") in response to reports of a man in traffic. Dkt. 75 ¶ 1; Dkt. 76 ¶ 1. The man was later identified as Stephenson. Dkt. 75 ¶ 1. Stephenson was attempting to stop traffic on SR 91. Dkt. 75 ¶ 2. He jumped on one car and pounded his fist on another. *Id.* Norem used his PA system and hand gestures to direct Stephenson to the shoulder at the side of the highway. *Id.* ¶ 4. Stephenson initially complied, but then began "fast walking" or "slow running" toward the highway. *Id.* ¶ 5. Norem exited his patrol vehicle and deployed his Taser twice toward Stephenson. *Id.* ¶ 6; Dkt. 76 ¶ 2. The first shot was ineffective. Dkt. 75 ¶ 7. The second shot caused Stephenson to fall to the ground as a result of "lock up" where a person's muscles contract and they lose voluntary control of their body due to the electrical current from a Taser device. Dkt. 75 ¶ 8; Dkt. 76 ¶ 3.

Norem testified that Stephenson fell to the ground on the shoulder, or "gore point," between the off-ramp lane and the slow lane of traffic, with Stephenson's head facing oncoming traffic. Dkt. 64-3 at 42. Norem "sprawled out" on Stephenson's back to prevent him from moving into traffic and to handcuff him. Dkt. 75 ¶ 10. Norem's weight, with his attached equipment, was at least 220 pounds. Dkt. 76 ¶ 6. Norem had difficulty handcuffing Stephenson. Dkt. 75 ¶ 11.

A plainclothes law enforcement officer, Borden, and at least one civilian, Eric Leighton ("Leighton") and/or Dennis Owen Stout ("Stout"), assisted Officer Norem in that process. *Id.* ¶ 12. Borden arrived and put his knee on Stephenson's upper back. Dkt. 76 ¶ 9. At this point, Norem had his right knee on Stephenson's back. *Id.* ¶ 10. Borden cut the backpack that Stephenson was wearing, and Stephenson was then handcuffed within seconds. *Id.* ¶ 11. Subsequently, Norem called in over his radio and stated, "one detained," which is a phrase that means a suspect was in handcuffs. *Id.* ¶¶ 14, 22. When Leighton arrived, Borden and Norem still had their knees pressed into Stephenson's upper body and another civilian, Stout, had Stephenson's feet crossed and pressed up towards his buttocks. *Id.* ¶ 13. Stout weighed approximately 350 pounds. *Id.* ¶ 8. Leighton used his body weight to press Stephenson's lower body down. *Id.* ¶ 16. Leighton weighed approximately 400 pounds. *Id.* ¶ 17. During this time, a young man also arrived at the scene and pressed his foot into Stephenson's upper body, and took photographs and/or recorded a video by using his phone. *Id.* ¶ 19.

Norem testified that after Stephenson was handcuffed, he was "still kicking and trying to get himself up," "essentially bucking around" and could potentially "still get up . . . and [] run around." Dkt. 64-3 at 43:5–6, 50:12–25. Leighton testified that Stephenson was rolling left and right, "trying to get . . . his chest up" and after Leighton took over Stout's position, Stephenson was "trying to extend his legs" such that Leighton forcefully pushed them back down multiple times. *Id.* at 80:9–11, 82:13–19. Borden testified that after Stephenson was handcuffed and he felt the area was secured, he removed his knee from Stephenson's shoulder and observed that Stephenson was "moving his head back and forth in a sideways manner . . . yelling, moaning, making nonsensical statements." *Id.* at 69:18–20. Throughout the encounter, Stephenson had not punched or kicked anyone. Dkt. 76 ¶ 29.

           2.   <u>McKee's Actions</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

Prior to the foregoing events related to the detention of Stephenson, McKee heard a radio transmission about a pedestrian on a freeway and responded to the call. Dkt. 75 ¶ 14. While travelling to the location, McKee heard by radio Norem report that he had deployed his Taser toward the pedestrian. *Id.* ¶ 15. McKee testified that based on the information he had heard, he formed the opinion that there was an ongoing struggle between Stephenson and Norem. Dkt. 64-3 at 95:24–96:2. In the MVARS recording from McKee's patrol vehicle, several additional radio broadcasts by Norem are audible; however, the parties dispute whether McKee "heard" each of them.[2] Norem stated "one detained," two minutes and 35 seconds before McKee arrived at the scene. Dkt. 76 ¶¶ 21, 22. Norem also broadcast the statement that the slow lane (meaning the far-right lane) on the freeway was blocked. *Id.* ¶ 20. Norem broadcast the statement "Code 4," 45 seconds before McKee arrived at the scene. *Id.* ¶ 23. Code 4 is a term used to state that the situation is stable, and there is no ongoing emergency. *Id.* ¶ 24.

When McKee arrived, Stephenson was in a prone position, face down, in the gore point. Dkt. 75 ¶ 17. McKee's MVAR recording shows that there were five men around Stephenson. Dkt. 68 at 11:30. One man had his foot on Stephenson's back, Norem appears to have his knee pressed into Stephenson's torso, and Borden is on the other side of Stephenson's upper body, although it is unclear from the video how he is making contact with Stephenson's body. *Id.* Two other men are crouched near Stephenson's legs, and appear to be restraining him. *Id.* No movement by Stephenson is visible in the MVAR recording. *Id.*

After McKee exited his vehicle, he moved to where Stephenson was detained, and took immediate control of Stephenson's legs, replacing the two civilians. Dkt. 75 ¶ 21; Dkt. 68 at 11:45. McKee testified that he then placed Stephenson's legs into a figure four formation. Dkt. 64-3 at 101:5–8. In doing so, he pressed his weight into Stephenson's lower body for approximately 18 seconds. Dkt. 76 ¶ 32. From the MVAR recording, it appears he folds Stephenson's legs into the figure four and sits onto them. Dkt. 68 at 11:46. McKee testified that, upon taking control of Stephenson's legs, he was unable to determine whether Stephenson was alive or conscious. Dkt. 64-3 at 101:12, 16–17. He testified that, although Stephenson was not kicking or moving his legs, they did not feel limp as they would had he been unconscious. Dkt. 69-4 at 2:21–3:2.

While sitting on Stephenson's legs, McKee told Norem they needed a strap to hobble Stephenson. Dkt. 76 ¶ 33. About 18 seconds after taking control of Stephenson's legs, McKee walked away to get a nylon strap to use to restrain Stephenson's legs. Dkt. 75 ¶ 23. McKee testified that he formed the opinion that the nylon restraint was necessary because of how many people it appeared to have taken to restrain Stephenson. Dkt. 64-3 at 103:1–11. He testified that he believed that there was potential for danger from the situation, and that Stephenson was "possibly playing possum or faking momentarily." Dkt. 64-3 at 115:4–16. He also testified that the nylon leg restraints were to ensure that Stephenson would not escape the detention, and then continue to run onto the lanes of the freeway. *Id.* McKee testified that he did not remember Stephenson moving of his own volition at any point and that he was "restrained pretty well." Dkt. 69-4 at 4:21–25. He testified that he also does not recall Stephenson speaking. Dkt. 69-4 at 5:20–23.

While he went to get the nylon strap, McKee asked a civilian to take his place of restraining

---

[2] The MVARS recording from McKee's patrol vehicle was lodged. Dkt. 64-3 ¶ 10; Dkt. 68. The MVARS recording from Norem's patrol vehicle was also lodged; however, Plaintiff's counsel declares that the audio had not been maintained in its original form at the time Plaintiff received it. Dkt. 65-2 ¶ 11; Dkt. 76 ¶ 55.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

Stephenson's legs to prevent any flailing or kicking. Dkt. 64-3 at 105:25–106:2, 18–23. A few seconds before McKee ordered Leighton to "sit on his legs for me," Dkt. 76 ¶ 34, the civilian who previously had placed his foot on Stephenson's back removed his foot, stopped recording video or taking photographs, and walked away. *Id.*

Before McKee returned with the nylon strap, it became apparent to those restraining Stephenson that he was not breathing. Dkt. 75 ¶ 26; Dkt. 76 ¶ 37. When McKee approached the scene with the nylon strap, Norem, Borden and Leighton were still making contact with Stephenson's body. Dkt. 76 ¶ 36.

During the entire interaction, Norem's knee had been pressing into Stephenson's lower back. *Id.* ¶ 38. Norem did not tell McKee whether Stephenson had been offering resistance. *Id.* ¶ 40. McKee never heard anyone give Stephenson an order or opportunity to comply, nor did he speak to Stephenson himself. *Id.* ¶¶ 39, 41.

After it was apparent that Stephenson was not breathing, McKee and Norem provided CPR until paramedics arrived and took over. Dkt. 75 ¶ 27. Stephenson was transported to a hospital, but died. *Id.* ¶ 28.

The parties do not dispute that the medical examiner determined Leroy's cause of death to be "acute methamphetamine intoxication." Dkt. 75 ¶ 29. The Coroner's Supplemental Report states that the cause of death was determined to be "Acute Methamphetamine Intoxication, with other significant conditions of Atherosclerotic Cardiovascular Disease, Physical Confrontation with Law Enforcement." Dkt. 64-3 at 128. It classified the manner of death as "homicide" and the mode of death as "Physical Confrontation with Law Enforcement while under the Influence of an Illicit Drug." *Id.*

3.   Law Enforcement Training and Policy

The applicable CHP policy was to keep a suspect in a prone position for as little time as possible and to get the person on his or her side as soon as possible. Dkt. 76 ¶ 42. CHP policy directs officers to avoid prolonged pressure on a person's back. *Id.* ¶ 43. When a situation with a detained person becomes stable, the standard practice is for officers to begin efforts at patient care, *i.e.,* rolling the person to a recovery position or sitting him or her up. *Id.* ¶ 45. The purpose of doing this is to ensure that the detained person is breathing, and not to have the person in the prone position longer than reasonably necessary. *Id.* ¶ 46.

Norem testified that there is recurrent training regarding a duty of an officer to intervene if other officers or civilians use unreasonable force or restraint against a person. Dkt. 69-3 at 26:23–27:11. CHP Officers respond regularly to reports of individuals walking on the freeway; sometimes there is more than one such call during a single shift. Dkt. 76 ¶ 56. In some of those cases, the individuals wandering on the freeway are experiencing a mental health crisis. *Id.* ¶ 57.

**III.   Evidentiary Objections**

McKee's Response to Plaintiff's Additional Material Facts, includes objections to statements from Stout's unsworn interview transcript, as inadmissible hearsay. *See* Dkt. 76 ¶¶ 4, 7, 15. Hearsay can be considered in connection with a motion for summary judgment if it can ultimately be presented in an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

admissible form at trial, *e.g.,* by live testimony. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). McKee states that the parties were unable to locate Stout, and this makes it questionable whether Stout could be available to testify at trial. Dkt. 76 ¶¶ 4, 7, 15. However, it is unnecessary to resolve this issue. The specific statements presented by Plaintiffs from Stout's interview are not material to the issues presented as to McKee's alleged liability. They concern events prior to McKee's arrival at the scene and there is no proffer that McKee was, or became, aware of these matters upon his arrival.

## IV.    Requests for Admissions

Plaintiffs did not respond to Defendants' requests for admissions ("RFAs"). McKee contends that, as a result, Plaintiffs can be deemed to have admitted the matters addressed in the RFAs and that they may be "relied on as the basis for granting summary judgment." Dkt. 64-1 at 12 (quoting *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007)). Plaintiffs concede that they did not respond to the RFAs, but argue that they were not properly served on them because they were sent via email, and Plaintiffs never provided written consent to service by "electric means" as required by Fed. R. Civ. P. 5(b)(2)(E). Dkt. 65 at 12–13. Thus, they argue that the matters in the RFAs cannot be deemed admitted. *Id.*

Fed. R. Civ. P. 5(b)(2)(E) allows service of a paper by "filing it with the court's electronic-filing system *or sending it by other electronic means that the person consented to in writing.*" *Id.* (emphasis added). There has been no proffer of written consent by Plaintiffs to electronic service. McKee argues that Plaintiffs should be equitably estopped from contesting electronic service of the RFAs because they also engaged in electronic service throughout discovery, acknowledged receipt of the RFAs, and never previously objected to electronic service. Dkt. 72 at 5–6.[3]

McKee further argues that written consent is only required for electronic service under Rule 5 because when it was adopted, "it [was] not yet possible to assume universal entry into the world of electronic communication." *Id.* at 6 (quoting Fed. R. Civ. P. 5, Advisory Committee Notes to 2001 Amendments). Given Plaintiffs' awareness of the RFAs and the technological advances since the 2001 amendment, McKee argues that the rule should not prevent the RFAs from being deemed admitted. *Id.*

Notwithstanding that Plaintiffs engaged in electronic service and that the RFAs may have been received, the text of Fed. R. Civ. P. 5(b)(2)(E) requires written consent. The advisory notes confirm that consent "must be express, and cannot be implied from conduct." Fed. R. Civ. P. 5, Advisory Committee Notes, 2001 Amendment. Without an electronic service agreement in place, the unanswered RFAs cannot deemed admitted contrary to the plain text of the rule. *See Bunn v. Dash*, No. 2:20-CV-07389-DMG-JC, 2021 WL 4868353, at *6 (C.D. Cal. July 23, 2021) (defendant was under no obligation to respond to RFAs "even assuming defense counsel actually did receive and see [them]" and regardless of defense counsel's use of electronic service throughout discovery).

---

[3] Roistacher, who is counsel for McKee, declares that he was told by McKee's former counsel that an "e-service agreement" existed, and that he had no reason to believe otherwise because the parties had e-served all discovery. Dkt. 72-1 ¶ 3. Co-counsel, Sullivan, declares that Plaintiffs' counsel confirmed receipt of the RFAs after an inquiry into the delayed response. Dkt. 72-2 ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

## V.    Analysis

### A.    Summary Judgment Standards

A motion for summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 324. Where the non-moving party will have the burden of proof on an issue, the movant need only demonstrate that there is an absence of evidence to support such claims. *Id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

With certain exceptions, only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. *Id.* All inferences are to be drawn in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). This means that "where the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

A court is not required to assume that "general averments embrace the 'specific facts' needed to sustain the complaint." *Id.* "The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Id.* Thus, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of material fact and defeat summary judgment. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009); *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). "If the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998).

In deadly force cases, in which a decedent is not available to contest an officer's testimony, courts "must carefully examine the evidence in the record to determine whether the officers' testimony is internally consistent and consistent with other known facts." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 791 (9th Cir. 2014). Thus, courts " 'may not simply accept what may be a self-serving account by the police officer.' " *Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) (quoting *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir. 1994)).

### B.    Section 1983 Causes of Action

As noted, there are two causes of action against McKee under 42 U.S.C. § 1983. They are the Third Cause of Action for excessive force in violation of the Fourth Amendment, and the Fourth Cause of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

Action for interference with the familial relationship in violation of the Fourteenth Amendment. McKee argues that the Motion should be granted as to both claims under the doctrine of qualified immunity. Dkt. 64-1 at 9.

        1.   <u>Qualified Immunity</u>

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

"Qualified immunity is the default status of natural persons employed by the government." 139 Am. Jur. Proof of Facts 3d 1 § 21. Thus, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In resolving questions of qualified immunity at summary judgment, courts engage in a two-step inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). *First*, it must be determined whether "the officer violated a plaintiff's constitutional right." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011). *Second*, the court must assess "whether the constitutional right was clearly established in light of the specific context of the case at the time of the events in question." *Id.* (internal quotation marks and citation omitted). These steps may be addressed in either sequence. *See Pearson*, 555 U.S. at 236. Once the defendant asserts qualified immunity, the burden is on the plaintiff to prove both elements. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017) (citation omitted). When considering whether qualified immunity applies to members of a group, the actions of each must be considered separately. *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000), *as amended* (Oct. 31, 2000) ("In resolving a motion for summary judgment based on qualified immunity, a court must carefully examine the specific factual allegations against each individual defendant (as viewed in a light most favorable to the plaintiff).").

Although qualified immunity is a question of law, defendants are "only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to [Plaintiff], they violated no clearly established constitutional right." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008) (citing *Hunter v. Bryant*, 502 U.S. 224 (1991)). Further, "[a] court must deny the motion for judgment as a matter of law if reasonable jurors could believe that Defendants violated [Plaintiff's] constitutional right, and the right at issue was clearly established." *Id.* Thus, "if genuine issues of material fact prevent a determination of qualified immunity, the case must proceed to trial." *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018), *cert. denied sub nom. Thompson v. Copeland*, 586 U.S. 947 (2018) (citing *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014)).

Even if a constitutional violation occurred, "qualified immunity nevertheless applies unless the violation was clearly established." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019). Deciding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

whether a right was "clearly established" at the relevant time turns on whether a "reasonable official could have believed that the conduct at issue was lawful." *Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1285 (9th Cir. 1994) (citing *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991)); *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."). "Reasonableness is not a demanding standard." *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013).

The "contours of a right" must have been sufficiently clear, so that at the time of the challenged conduct, "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (cleaned up). Although the Supreme Court " 'does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.' " *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 78 (2017)). "[T]he prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. Cnty of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

        2.    <u>Fourth Amendment: Excessive Force</u>

        a)    Legal Standards

"Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (quoting *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011)). "This is because such cases almost always turn on a jury's credibility determinations." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). However, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

To evaluate whether an officer's use of force during an investigatory detention or arrest was excessive, a court must determine whether the challenged conduct was objectively reasonable under the circumstances. *See Graham*, 490 U.S. at 395. Thus, a court is to balance the " 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.' " *Vos v. City of Newport Beach*, 892 F.3d 1024, 1030–31 (9th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).

The nature and quality of the intrusion is measured by an " 'evaluati[on of] the type and amount of force inflicted.' " *Thompson v. Rahr*, 885 F.3d 582, 586 (2018) (quoting *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)). The countervailing governmental interests are "measured by examining three primary factors: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.' " *Vos*, 892 F.3d at 1031 (quoting *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016)) (alterations in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

Throughout, the court should remain mindful that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 1031 (quoting *Graham*, 490 U.S. at 396).

        b)     Application

        (1)    First Prong of Qualified Immunity: Whether There Was a
               Constitutional Violation

The first issue is whether McKee used excessive force against Stephenson in violation of the Fourth Amendment. Plaintiffs advance three theories of liability under the Fourth Amendment: (1) McKee directly used excessive force; (2) he is liable for Officer Norem's use of excessive force because he was an "integral participant" in that use of force; and (3) he is responsible for failing to intervene in Norem's use of excessive force. Dkt. 65 at 13–20.

        (a)     McKee's Use of Force

McKee argues that his 18-second control hold on Stephenson's legs was a "minimal" level of force, which was not excessive. Dkt. 64-1 at 16–17. He contends that it was commensurate with the necessity of securing Stephenson given the dangerous location on the side of the highway and the "still fluid situation." *Id.* at 16. Plaintiffs contend that the force used was not "minimal," but rather, "deadly force," because it created a "substantial risk of causing death or serious bodily injury." Dkt. 65 at 13–14.

"Deadly force" is defined as "force that creates a substantial risk of causing death or serious bodily injury." *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005). Plaintiffs argue that because "prevailing precedent in the Ninth Circuit is that law enforcement officers' use of body weight to restrain a prone and handcuffed individual in an agitated state can cause suffocation under the weight of restraining officers . . . such conduct may be considered deadly force." Dkt. 65 at 13 (quoting *Garlick v. County of Kern*, 167 F.Supp.3d 1117, 1154 (E.D. Cal. 2016)) (cleaned up); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056–57 (9th Cir. 2003) (holding that the officers applied severe force that resulted in compression asphyxia, despite the minimal need for force because the plaintiff was not resisting and no underlying crime was at issue); *Arce v. Blackwell*, 294 Fed. App'x 259, 260–62 (9th Cir. 2008). McKee argues that these cases are distinguishable because each concerns the application of prolonged body-weight pressure on an individual's back or neck, and that McKee's use of force was on Stephenson's legs. Dkt. 72 at 11. It is undisputed that McKee did not press down on Stephenson's back or neck. He argues that his involvement, a "control hold" of Stephenson's legs, was a minimal level of force.

Plaintiffs have cited, *Scott v. Smith*, 109 F.4th 1215, 1226 (9th Cir. 2024), which held that, under *Drummond*, two officers—one of whom applied weight to the plaintiff's back and neck while the other restrained the lower body—collectively used deadly force. Dkt. 91. McKee responds that *Scott* does not change that *Drummond* applies to neck and back compression, not leg restraint. Dkt. 92. *Scott* did not determine that only the officer who pressed on the decedent's back and neck had used deadly forced, but that collectively the two officers had done so. *See Scott*, 109 F.4th at 1223–24 (A "jury could find Smith *and* Huntsman's conduct was similar deadly force.") (emphasis added). Therefore, restraint of the lower body while another officer compresses the neck and back may constitute the use of deadly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

force by both officers. It is undisputed that McKee knowingly restrained Stephenson's legs while Norem placed weight on Stephenson's back with his knee. Accordingly, a reasonable jury could find that McKee used deadly force.

The next step in the analysis is whether the use of such force was reasonable. The first *Graham* factor considers the "severity of the crime at issue." It is undisputed that Stephenson was attempting to walk into traffic on the freeway, and that he jumped on a car and pounded his fist on another. This is not, as Plaintiffs contend, simply a "run-of-the-mill traffic violation" which provides "little, if any support for the use of force." Dkt. 65 at 15 (quoting *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1164 (9th Cir. 2011)). However, it is undisputed that CHP Officers regularly respond to reports of individuals walking on the freeway, and that in some of those cases, the individual is suffering from a mental health crisis. Dkt. 76 ¶¶ 56–57. Further, McKee does not state the crime that Stephenson allegedly committed. The foregoing supports the conclusion that the crime would not be considered highly severe. *See Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2001) ("[T]he problems posed by, and thus the tactics to be employed against, an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense.") (internal quotation marks and citation omitted). This factor weighs in favor of Plaintiffs.

The next *Graham* factors are "whether the suspect poses an immediate threat to the safety of the officers or others" and "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." By the time that McKee arrived, Stephenson was prone, handcuffed and being restrained by five men. McKee never heard him speak or saw him make any movements. Further, viewing the facts in the light most favorable to the non-moving party, Norem's radio calls can be deemed to have alerted McKee that Stephenson had been handcuffed and that the scene had been secured. The traffic lane adjacent to the gore point had been blocked off. Because Stephenson was no longer resisting, the threat to safety was minimal. As in *Drummond*, "[a]ll three *Graham* factors would have permitted the use of only minimal force once [the plaintiff] was handcuffed and lying on the ground." *Drummond*, 343 F.3d at 1058.

Courts also consider whether officers had reasonable alternative methods available to them other than the force used (*Smith*, 394 F.3d at 701), and whether the officers perceived the person might be emotionally disturbed (*Glenn*, 673 F.3d at 872). There is a triable issue as to whether it should have been apparent to officers that Stephenson was "emotionally distraught" through his actions of walking onto the freeway. A triable issue also exists as to whether there were other, less intrusive methods available to McKee to ensure the scene continued to be secure once he arrived.

Although in certain circumstances a "control hold" is deemed minimal force, there is a triable issue as to whether McKee's application of force was more than what was required under the circumstances. Viewing the evidence in a light most favorable to Plaintiffs and acknowledging that excessive force claims are rarely appropriate for summary judgment, a reasonable jury could find that the nature and quality of McKee's intrusion outweighed the governmental interest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

(b)     Threshold Question on the Other Bases for Fourth Amendment Liability

Plaintiffs argue that McKee is also responsible for "failure to intervene" in a constitutional violation and for being an "integral participant" in an unconstitutional arrest. Dkt. 65 at 19. McKee disputes that Plaintiffs cannot rely on "failure to intervene" and "integral participant" theories because they were not alleged in the FAC. Dkt. 64-1 at 14 n.2. McKee states that it is fundamentally unfair to allow Plaintiffs to rely on these theories since McKee did not brief them. Dkt. 72 at 8.

"A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Am. Timber & Trading v. First Nat'l Bank*, 690 F.2d 781, 786 (9th Cir. 1982) (citation omitted). The FAC includes the essential allegations at issue in this matter, including that McKee arrived on scene after Norem and Borden, observed their actions, and then joined in applying pressure to Stephenson's legs. Dkt. 1 at 14 ¶¶ 24–27. Although the allegations in support of the excessive force cause of action focus primarily on the contention that all three officers unreasonably applied their weight to Stephenson's body, it is also alleged that their actions generally "constituted a violation of Leroy Stephenson's rights under the Fourth Amendment . . . to be free from the use of unlawful and unreasonable and excessive force upon his person." *Id.* at 17 ¶ 45. This is sufficient to have placed McKee and other defendants on notice of any derivative or related theories.

Further, McKee has not shown how the claimed lack of notice as to these specific theories has restricted his ability to respond to the Motion or otherwise assert a defense in this action. *Cf. Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2020) ("The lack of notice on this issue central to the cause of action makes it difficult, if not impossible, for [the defendant] to know how to defend itself.") McKee has not explained any differences in discovery he would have been sought as a result of these new theories. There is also no showing that Plaintiffs purposefully, or otherwise, "withheld" these theories before the close of discovery. *Cf. Corona v. Time Warner Cable, Inc.*, No. CV-135521-PSG-(VBKx), 2014 WL 11456535 at *4 (C.D. Cal. Oct. 16, 2014)

Further, McKee had an opportunity to respond to the theories in his Reply, and after the hearing, to present a response in a supplemental brief. *See* Dkt. 79. Accordingly, Plaintiffs may rely upon these theories in response to the Motion.

(c)     McKee's Failure to Intervene

Under the "failure to intervene" theory, "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996). "[A]n officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." *Id*. However, officers may be held liable for failing to intercede only if they had a "realistic opportunity" to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000); *see also Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022). An officer has an opportunity to intercede only if he is aware of the constitutional violation as it occurs. *See Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021) (citing *Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1029–30 (9th Cir. 2002), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

The applicability of this basis for liability depends upon a violation of Stephenson's rights in which McKee failed to intervene. Because McKee's awareness of the conduct is central to this theory, only what McKee could reasonably have observed, or otherwise have been aware, is material.

*First,* Plaintiffs state that when McKee arrived at the scene, he knew that Stephenson had been handcuffed for two minutes and 35 seconds, that the situation had been stable for at least 45 seconds, that Stephenson was motionless and silent, and that he was pinned down by five individuals including Norem whose knee was on Stephenson's back. Dkt. 80 at 7. Plaintiffs contend that any reasonable officer in McKee's position would have known that Norem's conduct was clearly excessive in violation of the Fourth Amendment because he was using body compression to restrain a prone and bound suspect who was in no position to offer any meaningful resistance. *Id.* (citing *Abston v. City of Merced*, 506 Fed. App'x 650, 653 (9th Cir. 2013)); *Zelaya v. Las Vegas Metro. Police Dep't*, 682 Fed. App'x 565, 567 (9th Cir. 2017)).

In McKee's Supplemental Brief, he argues that when he arrived, he saw officers and others holding Stephenson on the ground while handcuffed, which was not "obviously unconstitutional requiring his immediate intervention." Dkt. 79 at 8. McKee acknowledges that he knew there had been a prior struggle with Stephenson and that a Taser had been deployed. *Id.* He contends that the "Code 4" signal told him "nothing other than Officer Norem is no longer struggling to secure the decedent." *Id.*

*Second,* Plaintiffs contend that McKee had a reasonable opportunity to intervene because the situation was stable and McKee had time to evaluate the circumstances. Dkt. 80 at 7. They contend that this is confirmed by his conversation with Norem while both continued to use body compression to pin Stephenson to the ground as well as McKee's decision to retrieve the hobble. *Id.* Plaintiffs contend that because McKee had a duty to intervene but chose not to do so makes him liable for his failure to intervene. Dkt. 65 at 20 (citing *Casillas v. City of Los Angeles*, No. CV-1609606-TJH(GJSx), 2020 WL 5413023 (C.D. Cal. Apr. 14, 2020)).

McKee argues that his 15 to 20 second observation of the scene did not provide a sufficient or realistic opportunity to recognize the use of excessive force and then to intervene. Dkt. 79 at 7.

McKee's argument is based on his interpretation of the evidence that has been proffered by the parties. However, there are genuine issues as to those matters. Accordingly, viewing the evidence in the light most favorable to Plaintiffs, a factfinder could conclude as follows:

When McKee arrived at the location of the incident, there were five men applying body weight to Stephenson's back and neck while he was in a prone position and handcuffed. Three were applying pressure to Stephenson's back. Further, McKee knew that a Taser had previously been discharged toward Stephenson, and had heard by radio while travelling to the location that the scene was secure. McKee was also aware that Stephenson had already been handcuffed for nearly three minutes. When McKee began restraining Stephenson's legs, Norem and Borden continued pressing weight on Stephenson's back and neck. Norem and McKee discussed restraining Stephenson with a hobble. Throughout the time that McKee saw Stephenson, he did not observe Stephenson say anything nor did he see Stephenson resist. After 18 seconds of evaluating the situation, McKee decided to not intervene in the constitutionally excessive force

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

being applied by Norem, but instead asked Leighton to take over while he retrieved a nylon strap. While getting the nylon strap, it was discovered that Stephenson was no longer breathing. Within about a minute of McKee's arrival, there was no longer any restraint or pressure being applied to Stephenson's body.

In applying the *Graham* factors to this version of the facts, triable issues are presented that even one minute of bodily compression on a non-resistant, prone and handcuffed individual constituted excessive force, and that McKee had a realistic opportunity to intervene in the force being applied by others. *See Scott*, 109 F.4th at 1226 ("Our caselaw makes clear that any reasonable officer should have known that bodyweight force on the back of a prone, unarmed person who is not suspected of a crime is constitutionally excessive."); *Spencer v. Pew*, 117 F.4th 1130, 1144 (9th Cir. 2024) ("Although [the plaintiff] continued to move somewhat on the ground, he was handcuffed and surrounded by multiple officers, and a jury could reasonably conclude that he was no longer providing any serious resistance and that he posed only a minimal threat to anyone's safety. Some force might have been warranted to check his remaining movements, every reasonable officer would recognize that full-body-weight compression of a then largely compliant, prone, and handcuffed individual despite his pleas for air involve[d] a degree of force that is greater than reasonable.") (quotation marks and citation omitted); *Abston*, 506 Fed. App'x. at 653 (denying motion for summary judgment where officer applied body weight to a prone person for one minute and seven seconds notwithstanding that the person was "in no position to offer any meaningful resistance"); *Zelaya*, 682 Fed. App'x. at 567 (denying motion for summary judgment where decedent was "motionless and unresisting for more than 90 seconds while officers continued to pin him to the ground with their body weight and bend his legs toward his torso"); *Casillas*, 2020 WL 5413023 at *3 (denying motion for summary judgment by officers who failed to intervene in another officer's use of force by pinning a suspect to ground, noting that if the suspect was not resisting, the officers had a duty to intervene).

In light of the foregoing, a reasonable jury could find that McKee was aware that Norem was applying excessive force, that McKee had a realistic opportunity to intervene, and that McKee failed to do so.

(d)    McKee's Role as an Integral Participant

Plaintiffs argue that McKee is responsible for being an "integral participant" in the unconstitutional arrest of Stephenson. Dkt. 65 at 19. Under the "integral participant" theory of liability, "an official whose individual actions do 'not themselves rise to the level of a constitutional violation' may be held liable under section 1983 only if the official is an 'integral participant' in an unlawful act." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)). An official may only be deemed an "integral participant" if "(1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Id*. at 891. " '[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004). It instead requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 n.12 (9th Cir. 2007).

This basis for liability depends upon a constitutional violation of Stephenson's rights in which McKee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

participated. Because McKee's awareness of the overall conduct is central to this theory, only what McKee himself observed, or about which he was otherwise aware, is material.

As to the first category of conduct identified in *Boyd*, McKee argues that there is no evidence of a "common plan" among McKee and others to use excessive force. Dkt. 79 at 12. In response, Plaintiffs contend that McKee participated in Norem's restraint of Stephenson by pressing his weight into Stephenson's lower body for 18 seconds. Dkt. 80 at 11. During that time he and Norem discussed the need for a strap to hobble Stephenson. *Id.* at 11–12. Then, "[i]n pursuit of this objective, Plaintiffs left to retrieve the strap and delegated his restraining role to a civilian, thereby ensuring the continuity of their concerted plan to maintain Stephenson in a prone position." *Id.* at 12.

Plaintiffs argue that, under *Blankenhorn v. City of Orange*, 485 F.3d, 463, 682 n.12 (9th Cir. 2007) and *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996), these actions by McKee were sufficient to show integral participation. Dkt. 65 at 19. Plaintiffs contend that a reasonable jury could conclude that McKee formed a plan with Norem to keep Stephenson restrained in a prone position with weight on his body until the hobble could be applied. Dkt. 80 at 12.

In McKee's Notice of Supplemental Authority, he contends that under *Spencer v. Pew*, 117 F.4th 1130 (9th Cir. 2024), Plaintiffs' "integral participant" theory fails as a matter of law. Dkt. 93. There, the plaintiff advanced an "integral participant" theory as to two law enforcement officers who "leaned on [the plaintiff's] legs" and who "attached leg shackles to [the plaintiff] during part of the time that [a third law enforcement officer] had his knee on [the plaintiff's] back [in an unlawful use of force]." *Spencer*, 117 F.4th at 1145. *Spencer* held that this was not a sufficient basis to find that the two officers were integral participants in the third officer's post-handcuffing misconduct (leaning on the back) because there was no evidence that either "knowingly acquiesced" in the third officer's "unlawful conduct 'as part of a common plan' with him." *Id.* (quoting *Peck*, 51 F.4th at 891). Nor did their conduct "set in motion acts that they reasonably should have known 'would cause' the third officer to engage in unlawful conduct." *Id.* (quoting *Peck* 51 F.4th at 891).

*Spencer* is distinguishable. Here there is evidence that McKee acted as part of a common plan to keep Stephenson prone. McKee told Norem that they needed a strap to hobble Stephenson, and he directed a 400-lb citizen to sit on Stephenson's legs while he retrieved the hobble. A reasonable jury could conclude that McKee and Norem formulated a plan to keep Stepheson restrained in a prone position with weight on his body until the hobble could be applied, and that this continued restraint was an unreasonable use of force.

As to the second category of conduct identified in *Boyd*, McKee argues that it does not apply because he arrived at the scene of the incident at its end, and did not set in motion the conduct preceding his arrival. Dkt. 79 at 12. However, because Plaintiffs do not rely on this potential basis for liability, it is unnecessary to address it.

        (2)    <u>Second Prong of Qualified Immunity: Whether Constitutional Right Was Clearly Established</u>

The next issue is whether there was clearly established law which would have made it apparent to McKee that his conduct was unconstitutional. Plaintiff has the burden to make this showing. *Sharp v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
| Title | Devonte Stephenson et al. v. State of California et al. | | |

*Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert [the officers] in this case that their particular conduct was unlawful.") (emphases omitted).

(a)    McKee's Use of Force

McKee argues that he has qualified immunity because there is an absence of clearly established law that would have put him on notice that his specific conduct violated Stephenson's constitutional rights. Dkt. 64-1 at 17.

Plaintiffs argue that McKee is not entitled to qualified immunity because the case law clearly established at the time of Stephenson's death that forcing a compliant person to remain prone after handcuffing is a violation of the person's rights under the Fourth Amendment. Dkt. 65 at 20–22. Plaintiffs rely on *Drummond*, in which the Ninth Circuit held that "any reasonable person[] should have known that squeezing the breath from a compliant, prone, and handcuffed individual . . . involves a degree of force that is greater than reasonable." *Id.* at 21 (quoting *Drummond*, 343 F.3d at 1052).

Plaintiffs argue that subsequently, "the Ninth Circuit repeatedly has held that officers who hold a handcuffed, subdued person prone, interfering with the ability to breathe, causing asphyxia, violate clearly established law." *Id.* (citing *Zelaya*, 682 Fed. App'x at 567) (affirming the denial of qualified immunity due to *Drummond* where officers pinned man with their body weight, bending his legs toward his torso after he was motionless and no longer resisting for ninety seconds); *Abston*, 506 Fed. App'x at 653) (affirming the denial of qualified immunity due to *Drummond* where body compression was used to restrain a prone and bound suspect, despite possibly minimal resistance for one minute and seven seconds); *Tucker v. Las Vegas Metro. Police Dep't*, 470 Fed. App'x 627, 629 (9th Cir. 2012) (affirming the denial of qualified immunity due to *Drummond* where officer used body pressure to restrain a delirious, prone, and handcuffed individual who posed no serious safety threat violated clearly established law regardless of continued resistance after handcuffing); *Arce v. Blackwell*, 294 Fed. App'x 259, 261 (9th Cir. 2008) (same)).

Plaintiffs also cite, *Scott v. Smith*. Dkt. 91. There, the Ninth Circuit evaluated the actions of two officers, Smith and Huntsman, and determined that each used excessive, deadly force that violated the decedent's constitutional rights. 109 F.4th at 1223, 1226. Huntsman used bodyweight compression on the plaintiff's back and neck during and shortly after handcuffing him. *Id.* at 1223. Smith restrained the plaintiff's lower body. *Id.* Shortly thereafter, the plaintiff lost consciousness and died. *Id.* The Ninth Circuit determined that, under *Drummond*, there was no qualified immunity for either officer. *Id.* at 1226–27. Because McKee's actions are substantively the same as those by Huntsman—restraining a person's lower body while another officer pins the body down with a knee on the back and or neck—and because *Drummond* clearly established Huntsman's actions as constitutional violations, McKee is not entitled to qualified immunity as to his use of force against Stephenson.

(b)    Failure to Intervene

The "failure to intervene" theory of excessive force was clearly established at the time of Stephenson's death. *See Cunningham*, 229 F.3d at 1290. Plaintiffs cite *Cunningham* for the proposition that it has long been clearly established that an officer who knows excessive force is being used by another

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

person and has an opportunity to intervene must do so. Dkt. 80 at 9. Thus, "[i]f an officer fails to intercede, 'the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who' performed the offending action." *Id.* (quoting *Tobias*, 996 F.3d at 584).

The facts in *Drummond* are sufficiently similar to Norem's alleged behavior to have put a reasonable officer on notice that this conduct was unconstitutional. Moreover, *Drummond* sufficiently put McKee on notice that one minute of compression on Stephenson's back and legs while he was prone, handcuffed and not resisting, would have been an excessive use of force. *Spencer*, on which McKee relies, acknowledges this point. 117 F.4th at 1143.

Plaintiffs also cite *Lolli v. Cnty. of Orange*, 351 F.3d 410 (9th Cir. 2003) for the proposition that a jury could find that McKee had a reasonable opportunity to intervene and chose not to so in violation of clearly established law. Dkt. 80 at 10. *Lolli* denied qualified immunity to a sergeant who observed and did not intercede as other officers used excessive, nonlethal force against an individual. 351 F.3d at 418. If the duty to intervene in cases of excessive non-lethal force is clearly established, then duty to intercede in instances of excessive use of deadly force is even more unequivocally established.

McKee contends that Plaintiffs have failed to proffer a binding case defining "realistic opportunity." Dkt. 79 at 9. McKee cites, *Penaloza v. City of Rialto*, a non-binding decision that states that Ninth Circuit precedent "does not clearly establish when an officer has a 'realistic opportunity to intercede.' " Dkt. 79 at 9–10 (quoting 836 Fed. App'x 547, 549–50 (9th Cir. 2020)). Several district courts have found qualified immunity on this basis. *See id.* at 10 (collecting cases).

Other district courts have concluded that "the law that an officer must intercede when presented with a realistic opportunity is clearly established, even though whether an officer had a realistic opportunity requires consideration of the unique facts in each case." *Segura v. Miller*, No. 6:20-CV-911-YY, 2022 WL 1165728, at *2 (D. Or. Apr. 20, 2022). "The Ninth Circuit's recent decision in *Tobias* comports with decades of decisions that look to the facts of the alleged failure to intervene to see whether the plaintiff sufficiently alleged (at the motion to dismiss stage) or demonstrated that there are disputed facts (at the summary judgment stage) that the officers had a realistic opportunity to intervene." *Id.* (citing *Denby v. Engstrom*, 2021 WL 2885846, at *3 (9th Cir. 2021)) ("The district court concluded the complaint plausibly alleged that each individual defendant had a realistic opportunity to intercede during the destruction of plaintiffs' property. At the 12(b)(6) stage, these allegations are sufficient to support the denial of qualified immunity to defendants . . . on the failure-to-intervene claim."); *Cortesluna v. Leon*, 979 F.3d 645, 656 (9th Cir. 2020), *cert. denied sub nom. Cortesluna v. Rivas-Villegas*, 142 S. Ct. 397 (2021), *and cert. granted, decision rev'd on other grounds sub nom. Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021), *and adhered to in part*, 22 F.4th 866 (9th Cir. 2022) ("But there is no evidence that Kensic knew what the other defendants would do, and the events unfolded very rapidly—in a matter of seconds. Kensic therefore lacked any realistic opportunity to intercede.").

The issue has also been addressed in other decisions. *See Fernandez v. Virgillo*, 651 Fed. App'x 692, 694 (9th Cir. 2016) ("[T]he district court did not err in holding that such a fleeting period of time did not offer a realistic opportunity for [the defendant officer] to intercede in a meaningful way, and that he is not liable for failing to do so."); *Cunningham*, 229 F.3d at 1290 ("In this case, officers who were not present at the time of the shootings could not intercede to prevent their fellow officers from shooting at [the plaintiffs]. Moreover, the undisputed evidence shows that the non-shooting officers who were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

present at the shootouts had no "realistic opportunity" to intercede. Thus, we find that the non-shooting and non-present officers cannot be held liable for failing to intercede to prevent the shooting of the plaintiffs in the instant case."); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("In none of the affidavits submitted with the officers' motion for summary judgment do any of the officers state they did not have the opportunity to intervene to prevent Officer Meecham from firing the gun. On the other hand, the affidavits of the officers and Robins indicate that all three officers were together in the control bubble. The officers failed to carry their burden of showing that Officers Morris and Cox could not have prevented Officer Meecham from firing the shotgun, or much less that they even disagreed with Officer Meecham's actions. Therefore, the district court did not err in denying the motion for summary judgment as to Officers Cox and Morris."); *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991) ("Additionally, the agents were positioned around the room away from Burns and Ting and were thus physically incapable of preventing the incidents surrounding the shooting, all of which transpired in a matter of seconds. Therefore, it cannot be said that the agents' failure to intervene was the cause in fact of Ting's injuries.")).

In *Hernandez v. Hodges*, a jury found the defendant officer liable for failing to intervene in unconstitutional behavior. No. 20-CV-01183-AGT, 2023 WL 5336856, at *1 (N.D. Cal. Aug. 17, 2023). The defendant then brought a motion for judgment as a matter of law based, in part, on *Penaloza. Id.* at *14. The district court denied the motion, explaining that "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Id.* at *16 (quoting that *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The court explained that the clearly established duty of police officers to intervene in the use of excessive force when they have a realistic opportunity to do so applied "with obvious clarity." *Id.* (quoting *Hope*, 536 U.S. at 741).

There are also "relatively recent district court cases that appear to rely on a general rule that the issue of whether an officer had sufficient time to intercede should be sent to the jury where there are material disputes of fact." *Perkins v. City of Modesto*, No. 119-CV-00126-JLT(EPG), 2023 WL 3620901, at *17 (E.D. Cal. May 24, 2023) (citing *AGG v. City of Hayward*, No. 19-CV-00697-DMR, 2020 WL 6047233, at *12 (N.D. Cal. Oct. 13, 2020) (finding genuine issue of fact because observing officer "had time to— and in fact did—insert herself into the situation and then chose to stop," without discussing clearly established law prong in detail)); *Beltran v. Cnty. of San Bernardino*, No. ED-CV-19-01522-CJC(KKx), 2021 WL 3185474, at *6 (C.D. Cal. Jan. 28, 2021) (relying on *AGG* to find that qualified immunity did not bar a failure to intervene claim where defendant officer was "fifteen to twenty feet" away from where another officer was allegedly beating and tasering the plaintiff who was calling for help)).

In light of these cases, binding Ninth Circuit case law was sufficient to have put McKee on notice that when given a realistic opportunity, he had a duty to intervene in an unconstitutional use of force. A factual issue is presented as to whether under the specific circumstances presented in this action, including the detention of Stephenson prior to McKee's arrival, the short period in which he was involved, his recommendation to use a nylon leg restraint, and the time of Stephenson's death, McKee had such a realistic opportunity.

(c)    McKee's Role as Integral Participant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

Plaintiffs contend that McKee is responsible for Norem's excessive use of force because McKee was an integral participant in the arrest and the associated excessive use of force. Dkt. 65 at 19. Plaintiffs argue that the "integral participation" theory of excessive force was clearly established at this time, citing *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004), which explained that "integral participation" does not require that each officer's actions rise to the level of a constitutional violation." Dkt. 80 at 10. *Boyd* held that every officer who provided backup for an officer who unconstitutionally deployed a flash-bang device to enter a suspect's home could be held liable for that use of excessive force because "every officer participated in some meaningful way" and "was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flashbang was to be deployed." 374 F.3d at 780.

Plaintiffs also rely on *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007). Dkt. 65 at 19. There, several officers tackled an individual, after which the defendant officer arrived and provided minor assistance in effecting the arrest by holding the individual's arm for handcuffing. The Ninth Circuit held this assistance to be adequately alleged integral participation. 485 F.3d at 482 n.12. Plaintiffs also cite *Chuman v. Wright*, 76 F.3d 292 (9th Cir. 1996). Dkt. 65 at 19. The court in *Chuman* explained that "[b]eing a mere bystander is insufficient" for integral participant liability. 76 F.3d at 294. Plaintiffs argue that McKee played a "far greater" role in Norem's unconstitutional use of force because McKee believed that sitting on Stephenson's legs was essential to effecting the arrest because when he stood up to retrieve the nylon leg restraint, he directed that a 400-pound civilian take his place. Dkt. 65 at 20.

McKee cites cases to support the position that the Ninth Circuit has not previously defined the base level of involvement necessary to establish liability under the integral-participant doctrine. Dkt. 79 at 14 (citing *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022)). McKee then argues that the "contours" of the integral participant doctrine are not clearly established. *Id.* (citing *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). However, *Peck* explained that, although the minimum level of involvement has not been clearly defined, Ninth Circuit "precedents have permitted liability in two situations," and then stated the two categories discussed above—knowingly acquiescing in the constitutionally defective conduct as part of a common plan with those whose conduct constates the violation, or setting in motion a series of acts by others which the defendant knows or reasonably should know would cause others to inflict the constitutional injury. *Peck*, 51 F.4th at 889.

*Blankenhorn* clearly established that an officer who does not use excessive force but who restrains a suspect, thereby facilitating another officer's subsequent unlawful act of applying "hobble restraints" was an integral participant in that unconstitutional use of force. 485 F.3d at 481 n.12. There, the Ninth Circuit noted the close physical and temporal connection between the defendant's act and that of the other officer, made it reasonable for a jury to infer that the defendant knew what his fellow officer was about to do and intended to facilitate it. *Id.*

Viewing the facts in the light most favorable to Plaintiffs, a factfinder could determine that McKee held down the legs of Stephenson, which facilitated Norem's unlawful act of applying his knee to the back of Stephenson, who was handcuffed, lying prone, and not resisting. A factfinder could also determine that McKee's request that a civilian who weighed 400 pounds sit on Stephenson's legs so that McKee could get the nylon restraint, was integral participation in Norem's use of deadly force.

\*    \*    \*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|----------|--------------------------|------|------------------|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

For the foregoing reasons, the Motion is **DENIED** on the basis of qualified immunity as to McKee's alleged use of force, alleged failure to intervene in the use of excessive force by Norem, and alleged integral participation in the alleged use of excessive force by Norem.

> 3.    Fourteenth Amendment: Loss of Familial Association

> > a)    Legal Standard

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A " 'parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child and . . . a child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest." *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022) (quoting *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)) (internal quotation marks omitted).

The "Fourteenth Amendment standard applicable to a claim by a relative demands more of such a plaintiff than a Fourth Amendment claim by the victim of an officer's actions." *Id.* at 1056–57. Only official conduct that "shocks the conscience" is cognizable as a due process violation. *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

The Ninth Circuit has adopted two standards to determine whether official conduct shocks the conscience: "deliberate indifference" and "purpose to harm." *Ochoa*, 26 F.4th at 1056. The core issue in applying the former is whether it is reasonable to conclude that the officer could have deliberated before taking the challenged action:

> Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives.

*Wilkinson*, 610 F.3d at 554 (citing *Porter v. Osborn*, 546 F.3d 1131, 1140 (9th Cir. 2008)). The term "deliberation" is not to be interpreted in a narrow, literal, or technical sense. *Id.*

The deliberate indifference standard "entails something more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The plaintiff may prevail by showing that the officer " 'disregarded a known or obvious consequence of his action.' " *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). In applying the subjective "purpose to harm" test, "even precipitate recklessness fails to inch close enough to harmful purpose" due to the unforeseen circumstances and fast-paced judgment ordinarily involved in the officer's decision-making. *Lewis*, 523 U.S. at 853.

> > b)    Application

> > > (1)    <u>Whether There Was a Constitutional Violation</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

McKee contends that the "purpose to harm" standard, not the "deliberate indifference" standard applies because McKee had "no time to deliberate different potential courses of action but had to make a split-second decision on what to do." Dkt. 64-1 at 20. Plaintiffs have not disputed that, if the "purpose to harm" standard applies, the Motion would be granted, but contend that "deliberate indifference" is the correct standard. Dkt. 65 at 22–23.

Viewing the evidence in the light most favorable to Plaintiffs, there is a genuine dispute of material fact as to whether actual deliberation would have been practical. The "purpose to harm" standard applies to situations "that escalate so quickly that the officer must make a snap judgment." *Porter v. Osborn*, 546 F.3d 1131, 1137–40 (9th Cir. 2008) (collecting cases). A factfinder could conclude that, before McKee arrived at the scene of the incident, Stephenson had already been subdued and that McKee was aware that Stephenson had been handcuffed. Because a factfinder could then conclude that there was no longer an emergency, there is a triable issue as to whether McKee had time for actual deliberation. *Cf. Ochoa v. City of Mesa*, 26 F.4th 1050, 1057 (affirming district court's use of "purpose to harm" test where the undisputed facts demonstrated that "the urgency of that moment—caused by [the suspect's] failure to follow police commands—forced the officers to react instantly, without deliberation.") This is also supported by McKee's subsequent discussion and agreement with Norem that a nylon strap would be necessary. *See Gonzalez v. City of Alameda*, No. 21-CV-09733-DMR, 2023 WL 6232239 at *24 (N.D. Cal. Sept. 23, 2023) ("A reasonable jury could find that [the defendant officers] had sufficient opportunity to deliberate once [the plaintiff] was lying prone and in handcuffs on the basis that he no longer presented an immediate threat to the officers. In fact, a reasonable jury could find that they did actually deliberate, since [a defendant officer] asked the other officers, '[t]hink we can roll him on his side?' ").

Applying the "deliberate indifference" test, the question is whether there is a triable issue that McKee " 'disregarded a known or obvious consequence of his action.' " *Patel*, 648 F.3d at 974 (quoting *Bryan Cnty.*, 520 U.S. at 410). Considering the same factual matters discussed earlier with respect to McKee's use of, failure to intervene in or integral participation in excessive force, there is a triable issue of fact on this issue. There is "well-known police guidance recommending that officers get a subject off his stomach as soon as he is handcuffed because of [the risk of suffocation]." *Lombardo v. City of St. Louis*, 594 U.S. 464, 467 (2021) (per curiam). A reasonable jury could find that McKee disregarded a known or obvious risk to Stephenson by acquiescing to, and participating in the continued placement of body weight on Stephenson.

        (2)     <u>Second Prong of Qualified Immunity: Whether Constitutional Right Was Clearly Established</u>

Plaintiffs cite a single unpublished decision as to excessive force under the Fourth Amendment. *See* Dkt. 65 at 23 (citing *Tucker v. Las Vegas Metro. Police Dep't*, 470 Fed. App'x 627 (9th Cir. 2012)). However, Fourth Amendment cases do not satisfy the "clearly established" component of qualified immunity for a Fourteenth Amendment claim. *See Nicholson v. City of Los Angeles,* 935 F.3d 685, 696 n.5 (9th Cir. 2019) ("[O]ur Fourth Amendment cases cannot clearly establish the contours of the Fourteenth Amendment right, despite similarities between the standards."); *see also Barrera v. City of Woodland,* 2023 WL 3977397, at *4 (E.D. Cal. Jun. 13, 2023) ("Because deliberate indifference is a higher bar than objective unreasonableness, it is possible for one's actions to violate the Fourth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

Amendment without violating the Fourteenth Amendment. As such, notice that one's action violates the Fourth Amendment does not put one on notice that one's action violates the Fourteenth Amendment."); *Gonzalez v. City of Alamada*, 2023 WL 6232239, at *27 ("Plaintiffs offer no authority that *Drummond* clearly established rights under the Fourteenth Amendment even though it addressed only a Fourth Amendment excessive force claim. In light of the binding authority of *Nicholson*, the court concludes that the law was not clearly established at the time of [the plaintiff's] detention and arrest that the officers violated Plaintiffs' Fourteenth Amendment familial association rights by using force on [the plaintiff] while he was handcuffed and lying prone on the ground."). Accordingly, qualified immunity is warranted as to this claim.

\*     \*     \*

Because McKee has qualified immunity as to Plaintiffs' Fourteenth Amendment claim, the Motion is **GRANTED** as to the Fourth Cause of Action.

    C.    The State Law Claims

        1.    <u>Legal Standards</u>

            a)    Wrongful Death

California law "authorizes a wrongful death action by specified persons including the decedent's spouse and children." *Ruiz v. Podolsky*, 50 Cal. 4th 838, 844 (2010) (citing Cal. Civ. Proc. Code § 377.60). "Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 creates a new cause of action in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived.' *Id.* (internal quotation marks and citation omitted). "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages." *Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015) (internal quotation marks and citation omitted).

            b)    Negligence

To prevail on a claim for negligence, a plaintiff must establish: (1) a legal duty to use due care; (2) a breach of that duty; and (3) injury that was proximately caused by the breach. *Ladd v. Cnty. of San Mateo*, 12 Cal.4th 913, 917 (1996). Police officers in California have a duty not to use excessive force. *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1101 (2004) (recognizing "a duty on the part of police officers to use reasonable care in deciding to use and in fact using deadly force"). The reasonableness of an officer's conduct in using force is determined in light of the totality of circumstances. *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013). As long as an officer's conduct falls "within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Id.* at 632 (quoting *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 537–38 (2009)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

Negligence standards are also stated California codes. For example, Cal. Civ. Code § 1714(a) provides that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." Further, "[e]xcept as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov. Code § 820(a). Finally, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee." Cal. Gov. Code § 815.2(a).

"[S]tate negligence law, which considers the totality of the circumstances surrounding any use of . . . force, is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when . . . force is used." *Hayes*, 57 Cal.4th at 639 (internal citation omitted). Thus, "[l]aw enforcement personnel's tactical conduct and decisions preceding the use of [challenged] force are relevant considerations under California law in determining whether the use of [such] force gives rise to negligence liability." *Id*. "There are circumstances in which a court must allow a negligence claim to go to a jury even if summary judgment and/or qualified immunity on a Section 1983 excessive force claim is proper." *Alves v. Riverside County*, No. ED-CV-192083-JGB(SHKx), 2023 WL 4104185, at *11 (C.D. Cal. May 19, 2023).

Subject to the immunity granted by certain statutes, sections 1714, 820, and 815.2 collectively provide a basis for negligence liability against public employees. They also provide for vicarious liability of public entities for negligent acts of their employees that occurred within the scope of their employment. *See Hayes*, 57 Cal. 4th at 628–29.

2.    <u>Application</u>

Plaintiffs contend that McKee was negligent for several reasons: (1) McKee's use of force; (2) McKee's failure to intervene in the use of force by civilians and Norem; (3) McKee ordering of a civilian to sit on Stephenson's legs; and (4) McKee's delay in providing medical assistance. Dkt. 65 at 23–25.

a)    Negligence: McKee's Use of Force

McKee contends that, similar to the Fourth Amendment claim of excessive force against him, his use of force was reasonable. Dkt. 64-1 at 23–24. Plaintiffs incorporate the same arguments made regarding the excessive force claim to contend that McKee's use of force was unreasonable. Dkt. 65 at 23.

For the reasons stated earlier with respect to that claim, and viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could find that McKee's use of force was unreasonable given the "totality of the circumstances." As noted, a jury could find that Stephenson was not resisting when McKee folded his legs into a control hold, decided to retrieve a nylon strap to further secure them, or ordered Leighton to sit on Stephenson.

Therefore, the Motion is **DENIED** as to McKee's alleged negligent use of force.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
| Title | Devonte Stephenson et al. v. State of California et al. | | |

b)    Additional Theories of Negligence

As stated, the other bases for the negligence cause of action are: (1) McKee's alleged failure to intervene in the use of force by citizens and Norem; (2) McKee ordering of a civilian to sit on Stephenson's legs; and (3) McKee's delay in providing medical assistance. Dkt. 65 at 25. McKee contends that he was not sufficiently notified of these theories and underlying factual allegations either in the FAC, or in Plaintiff's claims submitted pursuant to the California Government Code. Dkt. 64-1 at 24–25.

Claim presentation is a mandatory prerequisite under the government claims statute. *See* Cal. Gov. Code §§ 905, 911.2, 945.4, 950, 950.2. McKee argues that these theories of negligence are premised on different factual bases than what was presented in the claims and are, therefore, precluded. Dkt. 64-1 at 25–57.

The claims presented by each Plaintiff asserted an "unlawful seizure" of Stephenson and "excessive force against [him] which caused [his] death." Dkt. 67 ¶¶ 89–90. Under California law,

> [t]he claim . . . need not specify each particular act or omission later proven to have caused the injury. A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an "entirely different set of facts." Only where there has been a "complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim," have courts generally found the complaint barred. Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint.

*Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004) (internal citations omitted).

Under these standards the claims submitted by Plaintiffs were sufficient to put McKee and the State defendants on notice as to the present claims. *Stockett* explained that "so long as the policies of the claims statutes are effectuated, the statutes should be given a liberal construction to permit full adjudication on the merits," and that "if the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted." *Id*. at 449 (cleaned up). In this matter, there was a response to each of the submitted claims from the Government Claims Program that each "involves complex issues that are beyond the scope of analysis and legal interpretation typically undertaken by the [Government Claims Program]" and that the claims would not be evaluated on the merits and would instead be rejected such that they could be pursued in court if Plaintiffs so chose. Dkt. 1 at 88, 97, 106. Therefore, there was sufficient claims presentation.

As to the sufficiency of the FAC, as previously stated, "a party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Am. Timber & Trading*, 690 F.2d at 786 (citation omitted). The cause of action for negligence defines the duty broadly as a "duty to use reasonable care to prevent harm and injury to others" and a list of actions and inactions of defendants are included but explicitly noted to be non-exhaustive. Dkt. 1 at 16–17, FAC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
| Title | Devonte Stephenson et al. v. State of California et al. | | |

¶¶ 40–42. This was sufficient to put McKee on notice of theories of negligence that would reasonably arise from the facts alleged. McKee has failed to show any prejudice from these not being specifically pled in FAC.

McKee argues that even if considered, each theory fails because Plaintiffs have not established the corresponding duties under California law. Dkt. 64-1 at 27–30.

(1)   Failure to Intervene

Plaintiffs do not present any cases to establish a specific "duty to intervene" under California law as to negligence. Rather, Plaintiffs only discuss the allegations. However, some district courts have recognized that there is a duty to intercede under California negligence law that mirrors § 1983 for excessive force claims. *See Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) (concluding that under California negligence law, officers had "legal duty either to not use excessive force or to intercede in instances of the use of excessive force."); *Cunniingham v. City of Los Angeles*, No. 2:18-CV-08146-AB(PLAx), 2021 WL 6102431, at *10 (C.D. Cal. Oct. 28, 2021) (citing *Knapps* when denying summary judgment as to a negligence claim because a jury could find that each officer failed to intervene in the use of excessive force); *Est. of Risher v. City of Los Angeles*, No. ED-CV-17-995-MWF(KKx), 2020 WL 5377306, at *17 (C.D. Cal. July 29, 2020) (same).

As previously discussed, a jury could reasonably find that McKee failed to intervene during the use of excessive force. Because causation is not addressed by the Defendant, there is no remaining issue. Therefore, the Motion is **DENIED** as to the claim that McKee was negligent by failing to intervene.

(2)   Ordering Civilian to Sit on Stephenson's Legs

Plaintiffs appear to contend that McKee's order that Leighton sit on Stephenson's legs was "negligent supervision." They argue that "[A] jury could find that Officer McKee negligently supervised Leighton because as an officer on the scene, he had the ability to direct Mr. Leighton's actions, which he did; but he directed Mr. Leighton's actions in a way that breached his duty toward Stephenson and contributed to his death." Dkt. 65 at 25.

Plaintiffs have not cited any California caselaw to support this theory. The general legal standard for negligent supervision under California law concerns the hiring of employees. *See Delfino v. Agilent Techns*, 145 Cal. App. 4th 790, 815 ("Negligence liability will be imposed upon the employer if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.") (citation omitted).

For these reasons, the Motion is **GRANTED** as to this basis for the alleged negligence.

(3)   Delay in Providing Medical Care

Plaintiffs contend that McKee "breached his duty of reasonable care" by failing to put Stephenson in a recovery position upon arrival. Dkt. 65 at 25. Law enforcement officers have a duty of reasonable care to those who need immediate medical attention. *See Winger v. City of Garden Grove*, 806 Fed. App'x 544, 546 (9th Cir. 2020) ("[W]e conclude that the California Supreme Court would conclude that a law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

enforcement officer owes a duty of reasonable care to an arrestee in his custody who needs immediate medical attention."); *Frausto v. Dep't of Cal. Highway Patrol*, 53 Cal. App. 5th 973, 993 (2020) ("Once in custody, an arrestee is vulnerable, dependent, subject to the control of the officer and unable to attend to his or her own medical needs. Due to this special relationship, the officer owes a duty of reasonable care to the arrestee.")

It is undisputed that, prior to McKee's arrival, paramedics had already been called after Norem had deployed his Taser. Dkt. 67 ¶ 96. It is also undisputed that McKee provided CPR to Stephenson until paramedics arrived. *Id.* ¶ 97. The issue raised by Plaintiffs is whether upon his initial arrival, McKee should have recognized that Stephenson should have been turned on to his side into a recovery position to ensure that he would be able to breathe. Dkt. 65 ¶ 25. The parties agree that, once a situation has become stabilized, an officer should turn to the care of the person, which includes rolling the person to a recovery position or having the person sit up. Dkt. 76 ¶ 45. Even assuming that McKee breached his duty of care by failing to put Stephenson in a recovery position, Plaintiffs proffer no facts relating to what injury was allegedly caused by this alleged breach. For example, there is no evidence that has been proffered that, but-for McKee's failure to have Stephenson turned on to his side, Stephenson would not have died.

For these reasons, the Motion is **GRANTED** as to this theory of negligence.

c)      Wrongful Death Claim

McKee does not contest the other elements of Plaintiffs' wrongful death claim under Cal. Code Civ. Proc. § 377.60. Therefore, the Motion is **DENIED** as to this claim.

**VI.      <u>Conclusion</u>**

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Motion is **DENIED** as to the First Cause of Action, and the Second Cause of Action with respect to McKee's alleged use of excessive force. The Motion is **GRANTED** as to the remaining bases for negligence advanced in the Second Cause of Action. The Motion is **DENIED** as to the portion of the Third Cause of Action (4th Amendment Excessive Force) that challenges McKee's own use of force and is also **DENIED** as to the theories of liability related to McKee's alleged failure to intervene and/or integral participation in the use of excessive force by others. The Motion is **GRANTED** as to the Fourth Cause of Action (14th Amendment Loss of Familial Association).

On January 31, 2024, it was stated that a separate order will issue as to the process that will be adopted to set the schedule for the Final Pretrial Conference and Trial. Dkt. 86. On or before January 21, 2025, after meeting and conferring, the parties shall file a joint report with their respective and/or collective positions as to proposed trial dates, and whether any further settlement efforts would be productive. A status conference as to scheduling is set for January 27, 2025, at 10:30 a.m.; provided, however, that time may be changed when the final calendar is issued for that date.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 5:21-00526-JAK (KKx) | Date | January 2, 2025 |
|---|---|---|---|
| Title | Devonte Stephenson et al. v. State of California et al. | | |

**IT IS SO ORDERED.**

Initials of Preparer          _____ : _____

                             DT