Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
Kimberly A. Sullivan, Esq. (317857)
440 Stevens Avenue, Suite 100
Solana Beach, CA  92075
Telephone:  (858) 380-4683
Facsimile:  (858) 492-0486
E-mail: lroistacher@deangazzo.com
        ksullivan@deangazzo.com

Attorneys for Defendant
Jeffrey McKee

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; LINDEN STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; KEANDRE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; COUNTY OF RIVERSIDE; DANE NOREM; JEFFREY MCKEE; MATT BORDEN; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.:  5:21−cv−00526−JAK−DTBx <br><br> **MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> Judge: John A. Kronstadt <br> Mag. Judge David T. Bristow <br><br> Complaint Filed:  March 24, 2021 <br> Trial Date:  September 09, 2025 |

## FACTS, CLAIMS AND DEFENSES

**A.    FACTS**

On January 24, 2019, California Highway Patrol Officer (CHP) Dane Norem responded to the Adams Avenue on-ramp to State Route 91 in response to 911 calls of a man in traffic (decedent Leroy Stephenson).  Leroy was trying to

1

stop busy traffic on State Route 91, endangering and terrifying drivers as he jumped on one car and pounded his fist on another. Leroy was under the influence of methamphetamine (subsequent blood tests revealed high concentration levels).

Officer Norem first observed Leroy on the on-ramp and used his PA system to direct Leroy to the shoulder of the on-ramp, away from the highway. Leroy initially complied but then took off running in the opposite direction toward the busy highway. Because Leroy was now fleeing from Officer Norem and was headed toward a dangerous situation for Leroy and the drivers on the highway, Officer Norem exited his vehicle and deployed his Taser twice to stop Leroy from entering the highway traffic lanes.

The first Taser shot had no effect. Although the second shot did not cause Leroy to "lock out," Leroy did fall to the ground on the gore point of westbound State Route 91 at the Adams Avenue off ramp between the off-ramp lane and the slow lane of traffic. It is unclear whether the Taser had any effect or if Leroy simply tripped.

Because Leroy was now on the ground and not at all incapacitated by the Taser, Officer Norem "sprawled out" on Leroy's back and struggled to handcuff Leroy, who was 6'4 and 230 pounds (Officer Norem was 6' and 200 pounds). The struggle was significant enough that an off-duty law enforcement officer and two civilians who were in traffic stopped, exited their vehicles and came to Officer Norem's aid. With their help, Officer Norem was able to handcuff Leroy. Leroy continued to resist and yell after being handcuffed.

The material facts regarding CHP Officer McKee's involvement are simple and limited and were recorded by the MVARS (i.e., "dash cam") in his vehicle.

While at the shooting range, Officer McKee heard and responded to a radio transmission about a pedestrian (Leroy) on the freeway. While on route,

2

Officer McKee heard Officer Norem report deploying his Taser.  Based on the
reported Taser use and other radio traffic about Leroy's behavior, Officer McKee
believed a struggle between Officer Norem and Leroy had occurred or was still
occurring.

When Officer McKee arrived, Leroy was prone on the shoulder adjacent to
State Route 91. Officer Norem and three other people (plain cloths law
enforcement officer and two civilians) were holding Leroy down. One of the
civilians was holding Leroy's lower legs.

Seeing this unusual situation, Officer McKee believed the struggle
between Officer Norem and Leroy was significant enough for Officer Norem to
need assistance from three other people.  Officer McKee exited his vehicle and
immediately took control of Leroy's legs from the civilian.  Based on Leroy's
resistance, Officers McKee and Norem discussed getting a nylon strap to secure
Leroy's legs.

About 18 seconds after taking control of Leroy's legs, Officer McKee
went to his patrol car to get the strap. Officer McKee still believed the situation
presented a danger given their location on the shoulder of a busy highway.  A
civilian took Officer McKee's place holding Leroy's legs.  While McKee was
getting the strap, Leroy apparently stopped breathing. Officer McKee and Officer
Norem provided CPR until paramedics arrived and took over.

Leroy was transported to the hospital but did not survive. The medical
examiner determined Leroy's cause of death to be "acute methamphetamine
intoxication."

**B.    Plaintiffs' Claims Against Officer McKee**

Leroy's sons, plaintiffs Devonte Stephenson, Linden Stephenson and
Keandre Stephenson maintain a state law wrongful death claim and a negligence
claim against Officer McKee asserting Officer McKee holding Leroy's legs

3

1   down with a control hold for 15-20 seconds constituted unreasonable force.[1]

2   Plaintiffs pursue survivor and wrongful death damages from Officer McKee.

3

**Claims 1 and 2**

4       *       State law wrongful death claim

5       *       State law negligence claim

6

7   **C.    Elements Of Plaintiffs' Claims Against Officer McKee[2]**

8   **CLAIM 1**

9   **Wrongful Death**

10          "'The elements of the cause of action for wrongful death are the tort

11  (negligence or other wrongful act), the resulting death, and the damages,

12  consisting of the pecuniary loss suffered by the heirs.'"  *Lattimore v. Dickey*, 239

13  Cal. App. 4th 959, 968 (2015).  It is McKee's position that this claim is based

14  only on negligence because plaintiffs' dismissed the excessive force claim under

15  the Fourth Amendment against McKee and plaintiffs' stand-alone state law

16  battery claim was dismissed with prejudice in state court prior to removal.  Doc.

17  1, pp. 36-37 (fourth cause of action), pp. 65-115 (demurrer), pp. 183-184

18  (superior court order).

19

20  _____

21  [1] The wrongful death/negligence claims against Officer McKee is the sole claims
    remaining after summary judgment and plaintiffs' voluntary dismissals of claims
22  against Officer McKee.  *See* Doc. 62 (order dismissing 14th Amendment based
    42 U.S.C. § 1983 due process depravation of life claim (fifth claim for relief) and
23  punitive damages); Doc. 96 (court granting summary judgment on 14th
    Amendment based § 1983 claim for loss of familial association (fourth claim for
24  relief) and granting summary judgment on negligence claims unrelated to force
    (second claim for relief)); Doc. 115 (order dismissing 4th Amendment based §
25  1983 claim for excessive force (third claim for relief)).

26
27  [2] Other claims are arrested against Officer Norem.  Vicarious liability claims are
    asserted against CHP for both Officer McKee's and Officer Norem's conduct.
28

4

1

## CLAIM 2

2

### State law negligence claim for unreasonable use of force

3      It is unclear whether this claim is brought as a wrongful death claim, a

4   survivor claim, or both.  To the extent this claim seeks survivor damages, those

5   damages are precluded by the state court findings and judgment dismissing

6   without leave and with prejudice all survivor claims for failure to comply with

7   the Government Code claim presentation mandates.  *See* Doc. 1, pp. 65-115

8   (demurrer), pp. 183-184 (superior court order).  Also, no claims in the first

9   amended complaint, (Doc. 1, pp. 9-12), are asserted as survivor claims other than

10   the fifth claim for relief for loss of familial association which is not a survivor

11   claim but a direct claim for plaintiff's own damages (which is only now asserted

12   against Officer Norem).   Thus, this is solely a wrongful death negligence claim.

13      The current version of California Penal Code § 835a became effective

14   January 1, 2020. Amended Stats 2019 ch 170 § 2 (AB 392).  It significantly

15   modified the then existing § 835a.  Because amended § 835a does not clearly

16   state its retroactive, it operates prospectively only and does not apply to Officer

17   McKee's conduct.  *McClung v. Emp't Dev. Dep't*, 34 Cal. 4th 467, 475 (2004)

18      The current California jury instruction for non-deadly force is CACI 440,

19   and it was amended in May 2020 to reflect the newly amended § 835a.  CACI

20   441, which governs deadly force, was newly added in November 2020.

21      Because the incident occurred in January 2019, the liability standard

22   applicable is the one in existence at that time.  In January 2019, California Penal

23   Code § 835a stated:

24      Any peace officer who has reasonable cause to believe that the
        person to be arrested has committed a public offense may use

25      reasonable force to effect the arrest, to prevent escape or to
        overcome resistance. [¶] A peace officer who makes or attempts to

26      make an arrest need not retreat or desist from his efforts by reason
        of the resistance or threatened resistance of the person being

27      arrested; nor shall such officer be deemed an aggressor or lose his
        right to self-defense by the use of reasonable force to effect the

28      arrest or to prevent escape or to overcome resistance.

5

Cal. Pen. Code, § 835a, effective until January 1, 2020, Added Stats 1957 ch. 2147 § 11.

The CACI force instruction existing in January 2019 was the 2016 version, and as applicable to this case provides, as modified accordingly:

**Unreasonable Force By Law Enforcement Officer In Arrest Or Other Seizure – Essential Factual Elements**

A law enforcement officer may use reasonable force to arrest or detain a person when the officer has reasonable cause to believe that that person has committed or is committing a crime.  However, the officer may use only that degree of force necessary to accomplish the arresting or detention.

Plaintiffs claim that Officer Dane Norem [and Officer Jeffrey McKee] used unreasonable force in arresting or detaining Leroy Stephenson.  To establish this claim, plaintiffs must prove all of the following:

1.    That [Officer Dane Norem and] Officer Jeffrey McKee used force in arresting or detaining Leroy Stephenson;

2.    That the amount of force used by [Officer Dane Norem and] Officer Jeffrey McKee was unreasonable;

3.    That Leroy Stephenson was harmed; and

4.    That [Officer Dane Norem's and] Officer Jeffrey McKee's use of unreasonable force was a substantial factor in causing Leroy Stephenson's death.

In deciding whether [Officer Dane Norem or] Officer Jeffrey McKee used unreasonable force, you must consider all of the circumstances of the arresting or detention and determine what force a reasonable officer in [Officer Dane Norem's or] Officer Jeffrey McKee's position would have used under the same or similar circumstances. Among the factors to be considered are the following:

(a)    Whether Leroy Stephenson reasonably appeared to pose an immediate threat to the safety of Officer Dane Norem or Officer Jeffrey McKee or others;

6

1        (b)    The seriousness of the crime at issue;

2        (c)    Whether Leroy Stephenson was actively resisting arrest or detention

3    or attempting to avoid arresting or detention by flight; and

4        (d)    [Officer Dane Norem's and] Officer Jeffrey McKee's tactical

5    conduct and decisions before using force on Leroy Stephenson.

6    CACI 440, 2016 Edition.

7    **D.    Defendant's Evidence In Opposition To Plaintiffs' Claims**

8        Officer McKee will rely on his testimony and Officer Dane Norem's

9    testimony, whose own accounts establish the actions taken in restraining Leroy

10   in the face of his continued resistance. Civilian witnesses Matthew Borden,

11   Dennis Stout, Eric Leighton, and others will provide independent accounts

12   confirming the circumstances and duration of the restraint, as well as the need for

13   the continued restraint given Leroy's continued resistance throughout the

14   encounter.

15       Expert testimony from Robert Fonzi (police practices) will address the

16   reasonableness of the non-deadly force used and how it followed accepted law

17   enforcement standards.  Plaintiffs' police practices expert offers no opinions

18   about Officer McKee's use of force or any other conduct.

19       Dr. Micheal Graham (forensic pathology) and Dr. John S. MacGregor,

20   (cardiology), a representative from Bio-Tox Laboratories, Celina Beckham, and

21   Dr. Allison Hunt who performed the autopsy, will all testify that Leroy died from

22   acute methamphetamine toxicity and cardiovascular disease related to his

23   physical altercation with law enforcement personnel.

24       Dr. Richard F. Clark (emergency medicine/toxicology) will provide

25   opinions regarding toxicological effects of methamphetamine on behavior,

26   physiology, cardio/respiratory, neurologic, and all other body systems affected

27   by methamphetamine, as they pertain to and relate to Leroy's death and his

28

behavior, actions, signs, and symptoms at the time of the events at issue in this case. Dr. Clark will also opine about the relationship between substances that Leroy consumed or ingested and his actions, behaviors, signs, symptoms, and cause of death, as such substances were detected in pre- and post-mortem examination and toxicological screening and/or as such substances were reported or determined through any other sources to have been consumed or ingested.

Dr. Gary M. Vilke (emergency medicine) specializes in and will provide expert testimony in this case on all issues regarding relationships between officers' use of force and plaintiffs' allegations that such actions caused and/or contributed to Leroy's death. Dr. Vilke will provide opinions opposing and rebutting Plaintiffs' contentions that officers caused and/or contributed to Leroy's death through restraint asphyxia, positional asphyxia, compression asphyxia, any other form of asphyxia, physical efforts to restrain Leroy, use of any weapons or any other striking object or mechanism, use of a TASER device upon Leroy, and/or any other method of force and/or restraint used upon Leroy. This is consistent with the opinion of plaintiffs' expert cardiologist that McKee holding down Leroy's legs for 15-20 seconds did not have a "significant contribution" to Leroy's death. Dr. Vilke will also opine regarding Leroy's physical conditions (preexisting and acute) and/or causes of death from an emergency medicine perspective.

**E.  Defendants' Affirmative Defenses**

**First Affirmative Defense**

Comparative fault of decedent

**Second Affirmative Defense**

Immunity under California Government Code § 820.2

**Third Affirmative Defense**

Immunity under California Government Code § 820.4

///

8

**Fourth Affirmative Defense**

Immunity under California Government Code § 845.8(b)(3)

**F.    Elements Of Defendants' Affirmative Defense**

**First Affirmative Defense**

Comparative Fault

**CACI 401**

Basic Standard of Care

Negligence is the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or by failing to act. A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.  You must decide how a reasonably careful person would have acted in Leroy Stephenson's situation.

**CACI 407**

Comparative Fault of Decedent

Officer McKee claims that Leroy Stephenson's own negligence contributed to his death. To succeed on this claim, Officer McKee must prove both of the following:

1.    That Leroy Stephenson was negligent; and

2.    That Leroy Stephenson's negligence was a substantial factor in causing his death.

**CACI 418**

Presumption of Negligence

California Penal Code § 148(a)(1) provides that no person shall willfully resist, delay, or obstruct any peace officer in the discharge or attempt to discharge any duty of his or her office or employment.

California Penal Code § 834a provides: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested

9

by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest."

If Officer McKee proves that Leroy Stephenson violated either of these laws and that a violation was a substantial factor in bringing about the death of Leroy Stephenson, then you must find that Leroy Stephenson was negligent.

If you find that Leroy Stephenson did not violate this law or that a violation was not a substantial factor in bringing about the death of Leroy Stephenson, then you must still decide whether Leroy Stephenson was negligent in light of the other instructions.

**Second Affirmative Defense**

Immunity under California Government Code § 820.2.

The elements for this affirmative defense are:

1.     Officer Jeffrey McKee exercised discretion in using non-deadly force on Leroy Stephenson;

2.     The discretion was vested in Officer Jeffrey McKee pursuant to his duties as a peace officer.

**Third Affirmative Defense**

Immunity under California Government Code § 820.4

The elements for this affirmative defense are:

1.     Officer Jeffrey McKee was exercising due care;

2.     Officer Jeffrey McKee was enforcing the law.

**Fourth Affirmative Defense**

Immunity under California Government Code § 845.8(b)(3)

The element for this affirmative defense is:  Leroy Stephenson was resisting arrest at the time he was injured.

**F.     Evidence In Support Of Defendants' Affirmative Defenses**

See evidence in opposition to plaintiffs' claims.

///

**G.    Not Applicable**

**H.    Anticipated Evidentiary Issues**

Evidentiary issues are addressed in the motions in limine.

**I.    Issues Of Law**

Whether Officer McKee's conduct is measured by the use of force standard set out in the version of California Penal Code § 835a existing at the time he used force (January 2019) which differs significantly than the standard in the amended version of § 835a that became effective on January 1, 2020 and whether this Court must instruct the jury under that standard as reflected in the 2016 version of CACI 440?

Whether the state court judgment finding plaintiffs cannot maintain any survivor claims bars plaintiffs from pursuing survivor claims in this case for their state law claims?

Whether the first amended complaint fails to assert any survivor claims (other than the fifth claim for relief for loss of familial association which is not a survivor claim but a direct claim for plaintiff's own damages) and, therefore, bars plaintiffs from pursuing any survivor claims in this case?

Whether plaintiffs' claims exceed the scope of their California Government Code claim by expanding on theories of liability to include a negligent failure to intervene or negligence integral participant theory of liability?

**BIFURCATION OF ISSUES**

None planned at this time but liability and damages may need to be bifurcated depending on how this Court rules on the admissibility of some of defendants' evidence.

**JURY TRIAL**

Both parties demanded a jury trial.

///

11

1

## ABANDONMENT OF ISSUES

2          Defendants do not abandon any issues.

3

4     Dated: August 4, 2025                    Dean Gazzo Roistacher LLP

5

6
                                        By: /s/ Lee H. Roistacher
7
                                           Lee H. Roistacher
8                                          Kimberly A. Sullivan
                                           Attorneys for Defendant
9                                          Jeffrey McKee
10                                         Email:  lroistacher@deangazzo.com
                                                    ksullivan@deangazzo.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        Case No.:  5:21−cv−00526−JAK−DTBx