ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General
DAVID KLEHM
Deputy Attorney General
State Bar No. 165302
STEPHANIE A. VOLLMER
Deputy Attorney General
State Bar No. 309407
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3849
 Fax:  (415) 703-5480
 E-mail:  David.Klehm@doj.ca.gov
*Attorneys for Defendants State of California, acting
by and through the California Highway Patrol, and
Dane Norem*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEVONTE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; LINDEN STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; KEANDRE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**STATE OF CALIFORNIA; and DOES 1 through 100, inclusive,**<br><br>Defendants. | Case No.: 5:21-cv-00526-JWH (KKx)<br><br>**DEFENDANTS STATE OF CALIFORNIA'S, ACTING BY AND THROUGH THE CALIFORNIA HIGHWAY PATROL, AND DANE NOREM'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>FPTC Date:  August 25, 2025<br>Time:  1:30 p.m.<br>Courtroom:  10C<br><br>Judge:  The Honorable John A. Kronstadt<br><br>Trial Date:  September 9, 2025<br>Action Filed: December 18, 2019 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    Plaintiffs' Claims ...................................................................... 1
      A.    Legal Theories ............................................................. 1
      B.    Elements of Plaintiffs' Claims ................................... 1
      C.    Defendants' Evidence in Opposition .......................... 6
II.   Defendants' Affirmative Defenses ........................................ 7
      A.    Legal Theories ............................................................. 7
      B.    Elements of Affirmative Defenses ............................. 8
      C.    Defendants' Evidence in Support of Affirmative Defenses ..... 10
III.  Third Parties ......................................................................... 12
IV.   Anticipated Evidentiary Issues ............................................ 12
V.    Other Germane Issues of Law.............................................. 12
VI.   Bifurcation of Issues ............................................................ 13
VII.  Jury Trial .............................................................................. 13
VIII. Attorneys' Fees ..................................................................... 13
IX.   Abandonment of Issues ........................................................ 13

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Anderson v. Creighton*
    483 U.S. at 641 (1987) ...............................................................12

5

6

*Elliott v. Leavitt*
    99 F.3d 640 (4th Cir. 1996) .......................................................13

7

8

*Graham v. Connor*
    490 U.S. 386 (1989) ...............................................................2, 3

9

10

*Johnson v. Breeden*
    280 F.3d 1308 (11th Cir. 2002) .................................................12

11

12

*Lampkins v. Thompson*
    337 F.3d 1009 (8th Cir. 2003) ...................................................12

13

14

*Nehad v. Browder*
    929 F.3d 1125 (9th Cir. 2019) .....................................................3

15

16

*Orn v. City of Tacoma*
    949 F.3d 1167 (9th Cir. 2020) .....................................................4

17

18

*Ortiz v. Jordan*
    562 U.S. 180 (2011) ...................................................................8

19

20

*S.B. v. Cty. of San Diego*
    864 F.3d 1010 (9th Cir. 2017) .....................................................4

21

22

*Saucier v. Katz*
    533 U.S. 194 (2001) .................................................................13

23

24

*Scott v. Harris*
    550 U.S. 372 (2007) ...................................................................3

25

26

*Stephenson v. Doe*
    332 F.3d 68 (2d Cir. 2003) .......................................................12

27

28

*Tatum v. City & Cty. of San Francisco*
    441 F.3d 1090 (9th Cir. 2006) .....................................................2

# TABLE OF AUTHORITIES
## (continued)

                                                                                    **Page**

*Tennessee v. Garner*
        471 U.S. 1 (1985) ........................................................................ 3, 4

*Tuuamalemalo v. Greene*
        946 F.3d 471 (9th Cir. 2019) ................................................................ 4

*Wilkinson v. Torres*
        610 F.3d 546 (9th Cir. 2010) ................................................................ 4

**STATUTES**

United States Code, Title 42
        § 1983 ............................................................................ 1, 2, 4, 7

California Government Code
        § 815.2(b) ........................................................................... 8, 10
        § 820.2 .............................................................................. 7, 8
        § 820.4 .............................................................................. 8, 9
        § 845.8(b)(3) ........................................................................ 8, 9

California Penal Code
        § 196(b) ........................................................................... 8, 9, 10
        § 835 ................................................................................ 8, 9
        § 835a ............................................................................... 8, 9

**CONSTITUTIONAL PROVISIONS**

United States Constitution
        Fourth Amendment ............................................................... 1, 3, 7, 11
        Fourteenth Amendment .......................................................... 1, 4, 7, 11

Defendants State of California, acting by and through the California Highway
Patrol (CHP), and CHP Officer Dane Norem submit the following Memorandum of
Contentions of Fact and Law, pursuant to L.R. 16-4.

## I.    PLAINTIFFS' CLAIMS

Plaintiffs are pursuing claims related to the reasonableness of Officer Norem's
use of force against Decedent Leroy Stephenson on January 25, 2019, which
include different legal theories with additional elements and differing potential
recoveries.

### A.    Legal Theories

Claim 1:  Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre
Stephenson, individually, and as successors-in-interest, claim, pursuant to 42
U.S.C. § 1983, that Officer Norem's use of force against Leroy Stephenson violated
Leroy Stephenson's Fourth Amendment rights.

Claim 2: Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre
Stephenson, individually, and as successors-in-interest, claim pursuant to 42 U.S.C.
§ 1983 that Officer Norem violated plaintiffs' substantive due process rights under
the Fourteenth Amendment.

Claim 3:  Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre
Stephenson, individually, and as successors-in-interest, claim that Officer Norem
and Office McKee were negligent under state law.

### B.    Elements of Plaintiffs' Claims

Claim 1 - Unreasonable Search and Seizure – Excessive Force (42 U.S.C. §
1983) (Survival):

The elements of a section 1983 excessive force claim arising under the Fourth
Amendment are:

1. Defendant Dane Norem acted under color of state law;

2. Defendant Dane Norem intentionally seized decedent's person;

1

3. The use of force was objectively unreasonable under all of the circumstances;

4. The use of force caused decedent harm; and

5. Plaintiffs Devonte Stephenson, Linden Stephenson and Keandre Stephenson are successors-in-interest to Leroy Stephenson.

*See* Ninth Circuit Model Civil Jury Instrs. 9.3, 9.20, 9.25*; Graham v. Connor,* 490 U.S. 386, 395 (1989); *Tatum v. City & Cty. of San Francisco,* 441 F.3d 1090, 1100 n.2 (9th Cir. 2006) ("[T]he decedent's 'successor in interest' may prosecute [a section 1983] survival action if the person . . . satisfies the requirements of California law.").

In determining whether the officer used excessive force, all of the circumstances known to the officer on the scene must be considered, including:

(1) the nature of the crime or other circumstances known to Defendant Dane Norem at the time force was applied;

(2) whether Leroy Stephenson posed an immediate threat to the safety of Defendant Dane Norem or others;

(3) whether Leroy Stephenson was actively resisting arrest or attempting to evade arrest by flight;

(4) the amount of time Defendant Dane Norem had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the relationship between the need for the use of force and the amount of force used;

(6) any effort made by Defendant Dane Norem to temper or to limit the amount of force;

(7) the severity of the security problem at issue;

(8) the availability of alternative methods to subdue Leroy Stephenson;

2

(9) the number of lives at risk (motorists, police officers) and the parties'
relative culpability; *i.e.*, which party created the dangerous situation, and
which party is more innocent;

(10) whether it was practical for Defendant Dane Norem to give warning of
the imminent use of force, and whether such warning was given;

(11) whether a reasonable officer would have or should have accurately
perceived a mistaken fact; and

(12) whether there was probable cause for a reasonable officer to believe that
the suspect had committed a crime involving the infliction or threatened
infliction of serious physical harm.

Ninth Circuit Model Civil Jury Inst. 9.25.

In general, all claims of excessive force, whether deadly or not, should be
analyzed under the objective reasonableness standard of the Fourth Amendment as
applied in *Scott v. Harris*, 550 U.S. 372, 381-85 (2007), *Graham v. Connor*, 490
U.S. 386, 397 (1989), *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985), and *Nehad v.
Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

In assessing reasonableness, the factfinder should give "careful attention to the
facts and circumstances of each particular case, including the severity of the crime
at issue, whether the suspect poses an immediate threat to the safety of the officers
or others, and whether he is actively resisting arrest or attempting to evade arrest by
flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force
must be judged from the perspective of a reasonable officer on the scene, rather
than with the 20/20 vision of hindsight." *Id*. (citation omitted). In addition, "[t]he
calculus of reasonableness must embody allowance for the fact that police officers
are often forced to make split-second judgments-in circumstances that are tense,
uncertain, and rapidly evolving-about the amount of force that is necessary in a
particular situation." *Id*. at 396-97.

The Ninth Circuit has repeatedly emphasized that the most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others." *See, e.g.*, *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal quotation marks omitted); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). It is well-established that where a suspect threatens an officer with a weapon or where the officer has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others, the officer is justified in using deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres,* 610 F.3d 546, 546 (9th Cir. 2010).

Claim 2: Fourteenth Amendment Substantive Due Process (Interference with Parent/Child Relationship) - (42 U.S.C. § 1983)

The elements of a section 1983 substantive due process claim arising under the Fourteenth Amendment are:

1. Defendant Dane Norem acted under color of state law;

2. Defendant Dane Norem's conduct "shocks the conscience" in that either:

    a.   If Defendant Dane Norem did not have time to actually deliberate, Defendant Dane Norem acted with a purpose to harm the decedent for reasons unrelated to legitimate law enforcement objectives; or

    b.   If Defendant Dane Norem had time to actually deliberate, Defendant Dane Norem with deliberate indifference to the decedent's rights or safety in that he was aware of a substantial risk of serious harm to the decedent and consciously disregarded that risk.

4. Defendant Dane Norem's conduct caused decedent harm; and

5. Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson are successors-in-interest to Leroy Stephenson.

4

Claim 3: Unreasonable Force By Law Enforcement Officer in Arrest or Other
Seizure— Essential Factual Elements

A law enforcement officer may use reasonable force to arrest or detain a
person when the officer has reasonable cause to believe that that person has
committed or is committing a crime.  However, the officer may use only that degree
of force necessary to accomplish the arresting or detention.

Plaintiffs claim that Officer Dane Norem and Officer Jeffrey McKee used
unreasonable force in arresting or detaining Leroy Stephenson. To establish this
claim, Plaintiffs must prove all of the following:

1.      That Officer Dane Norem and Officer Jeffrey McKee used force in
arresting or detaining Leroy Stephenson;

2.      That the amount of force used by Officer Dane Norem and Officer
Jeffrey McKee was unreasonable;

3.      That Leroy Stephenson was harmed; and

4.      That Officer Dane Norem's and Officer Jeffrey McKee's use of
unreasonable force was a substantial factor in causing Leroy Stephenson's death.

In deciding whether Officer Dane Norem or Officer Jeffrey McKee used
unreasonable force, you must consider all of the circumstances of the arresting or
detention and determine what force a reasonable officer in Officer Dane Norem's or
Officer Jeffrey McKee's position would have used under the same or similar
circumstances. Among the factors to be considered are the following:

(a)      Whether Leroy Stephenson reasonably appeared to pose an
immediate threat to the safety of Officer Dane Norem or Officer Jeffrey McKee or
others;

(b)      The seriousness of the crime at issue;

(c)      Whether Leroy Stephenson was actively resisting arrest or detention
or attempting to avoid arresting or detention by flight; and

1    (d)    Officer Dane Norem's and Officer Jeffrey McKee's tactical conduct

2  and decisions before using force on Leroy Stephenson.

3    **C.    Defendants' Evidence in Opposition**

4    Defendants will rely on testimony from Officer Dane Norem and Officer

5  Jeffrey McKee, whose own accounts will establish the actions they took in

6  restraining Leroy Stephenson in the face of his continued resistance. Civilian

7  witnesses Matthew Borden, Dennis Stout, Eric Leighton, and others will provide

8  independent accounts confirming the circumstances and duration of the restraint, as

9  well as Mr. Stephenson's resistance condition throughout the encounter.

10    Expert testimony from Robert Fonzi (police practices) will address the

11  reasonableness of the force used and in compliance with accepted law enforcement

12  standards. Dr. Michael Graham (forensic pathology) and Dr. John S. MacGregor,

13  (cardiology), a representative from Bio-Tox Laboratories, Celina Beckham, and Dr.

14  Allison Hunt, who performed the autopsy, will testify that Mr. Stephenson died

15  from acute methamphetamine toxicity and cardiovascular disease related to his

16  physical altercation with law enforcement personnel. Dr. Richard F. Clark

17  (emergency medicine/toxicology) will provide opinions regarding toxicological

18  effects of methamphetamine on behavior, physiology, cardio/respiratory,

19  neurologic, and all other body systems affected by methamphetamine, as they

20  pertain to and relate to Mr. Leroy Stephenson's death and his behavior, actions,

21  signs, and symptoms at the time of the events at issue in this case. Dr. Clark will

22  also opine about the relationship between substances that Mr. Stephenson had

23  consumed or ingested and his actions, behaviors, signs, symptoms, and cause of

24  death, as such substances were detected in pre- and post-mortem examination and

25  toxicological screening and/or as such substances were reported or determined

26  through any other sources to have been consumed or ingested. Dr. Gary M. Vilke

27  (emergency medicine) specializes in and will provide expert testimony in this case

28  on all issues regarding relationships between officers' use of force and Plaintiffs'

allegations that such actions caused and/or contributed to Mr. Leroy Stephenson's death. Dr. Vilke will provide opinions opposing and rebutting Plaintiffs' contentions that officers caused and/or contributed to Mr. Stephenson's death through restraint asphyxia, positional asphyxia, compression asphyxia, any other form of asphyxia, physical efforts to restrain Mr. Stephenson, use of any weapons or any other striking object or mechanism, use of a TASER device upon Mr. Stephenson, and/or any other method of force and/or restraint used upon Mr. Stephenson. Dr. Vilke will also opine regarding Mr. Stephenson's physical conditions (preexisting and acute) and/or causes of death from an emergency medicine perspective.

Medical evidence includes the autopsy report prepared by Dr. Allison Hunt, the AMR and fire department incident reports, and testimony from the treating physician who pronounced Mr. Stephenson deceased. Defendants will also introduce dispatch communications, MVARS dash camera footage from both Officer Dane Norem and Officer Jeffery McKee, still images and video clips from those recordings, the Taser deployment logs, and photographs depicting the scene, Mr. Stephenson's injuries, his clothing and personal effects, and other forensic documentation of the incident.

This combination of officer testimony, eyewitness accounts, expert analysis, and visual and medical records will support Defendants' defenses regarding the reasonableness of the force under the Fourth Amendment and under the Fourteenth Amendment, and related state-law tort claims.

## II. DEFENDANTS' AFFIRMATIVE DEFENSES

### A. Legal Theories

Affirmative Defense 1: Qualified immunity against the Section 1983 claims.

Affirmative Defense 2: Self-defense and defense of others against the state law negligence.

Affirmative Defense 3: Comparative fault of decedent.

Affirmative Defense 4: Immunity under California Government Code § 820.2.

7

Affirmative Defense 5: Immunity under California Government Code § 820.4.

Affirmative Defense 6: Immunity under California Penal Code §§ 835, 835a.

Affirmative Defense 7: Immunity under California Government Code § 845.8(b)(3).

Affirmative Defense 8: Immunity under California Penal Code § 196(b).

Affirmative Defense 9: Immunity under California Government Code § 815.2(b)

**B.    Elements of Affirmative Defenses**

Affirmative Defense 1:

Qualified immunity is a legal defense for the Court to decide when raised by a non-suit or post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180, 191 (2011) (holding qualified immunity must be raised by a Rule 50 motion following trial where disputed facts precluded resolution on summary judgment).

Affirmative Defense 2: Comparative Fault

The elements of comparative fault are:

1. Leroy Stephenson was negligent; and

2. Leroy Stephenson's negligence was a substantial factor in causing his death or plaintiffs' harm.

CACI  407, Comparative Fault.

Affirmative Defense 3: Immunity under California Government Code § 820.2.

The elements for this affirmative defense are:

1.    Officer Dane Norem and Officer Jeffrey McKee exercised discretion in using force on Leroy Stephenson;

2.    The discretion was vested in Officer Dane Norem and Officer Jeffrey McKee pursuant to their duties as a peace officer.

Cal. Code Gov. § 820.2.

Affirmative Defense 4: Immunity under California Government Code § 820.4.

The elements for this affirmative defense are:

8

1.    Officer Dane Norem and Officer Jeffrey McKee were exercising due care;

2.    Officer Dane Norem and Officer Jeffrey McKee were enforcing the law. Cal. Gov, Code § 820.4.

Affirmative Defense 5: Immunity under California Penal Code §§ 835, 835a.

The elements for this affirmative defense are:

1.    Officer Dane Norem and Officer Jeffrey McKee had reasonable cause to believe Leroy Stephenson committed a public offense;

2.    The force used was reasonable to overcome Leroy Stephenson's resistance and in protection of the life and safety of Officer Dane Norem or others;

3.    Leroy Stephenson was subject to restraint reasonable to overcome his resistance and in protection of the life and safety of Officer Dane Norem or others.

Cal. Code Pen. §§ 835, 835a.

Affirmative Defense 6: Immunity under California Government Code § 845.8(b)(3).

The element for this affirmative defense is:

Decedent was resisting arrest at the time he was injured.

Cal. Code Gov. § 845.8(b)(3).

Affirmative Defense 7: Immunity under California Penal Code § 196(b).

The elements for this affirmative defense are:

1.    Officers Dane Norem and Jeffrey McKee had reasonable cause to believe Leroy Stephenson committed a public offense;

2.    The force used was reasonable to overcome Leroy Stephenson's resistance and in protection for the life and safety of Officer Dane Norem or others; and

3.    Leroy Stephenson was subject to restraint reasonable to overcome his resistance and in protection of the life and safety of Officer Dane Norem or others.

Cal. Code Pen. § 196(b),

Affirmative Defense 8: Immunity under California Government Code § 815.2(b).

Defendant State of California is not "liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

## C.    Defendants' Evidence in Support of Affirmative Defenses

Defendants will rely on testimony from Officer Dane Norem and Officer Jeffrey McKee, whose own accounts will establish the actions they took in restraining Leroy Stephenson in the face of his continued resistance. Civilian witnesses Matthew Borden, Dennis Stout, Eric Leighton, and others will provide independent accounts confirming the circumstances and duration of the restraint, as well as Mr. Stephenson's resistance condition throughout the encounter.

Expert testimony from Robert Fonzi (police practices) will address the reasonableness of the force used and in compliance with accepted law enforcement standards. Dr. Micheal Graham (forensic pathology), and Dr. John S. MacGregor, (cardiology), a representative from Bio-Tox Laboratories, Celina Beckham, and Dr. Allison Hunt, who performed the autopsy, will testify that Mr. Stephenson died from acute methamphetamine toxicity and cardiovascular disease related to his physical altercation with law enforcement personnel. Dr. Richard F. Clark (emergency medicine/toxicology) will provide opinions regarding toxicological effects of methamphetamine on behavior, physiology, cardio/respiratory, neurologic, and all other body systems affected by methamphetamine, as they pertain to and relate to Mr. Stephenson's death and his behavior, actions, signs, and symptoms at the time of the events at issue in this case. Dr. Clark will also opine

about the relationship between substances that Mr. Stephenson had consumed or ingested and his actions, behaviors, signs, symptoms, and cause of death, as such substances were detected in pre- and post-mortem examination and toxicological screening and/or as such substances were reported or determined through any other sources to have been consumed or ingested. Dr. Gary M. Vilke (emergency medicine) specializes in and will provide expert testimony in this case on all issues regarding relationships between officers' use of force and Plaintiffs' allegations that such actions caused and/or contributed to Mr. Stephenson's death. Dr. Vilke will provide opinions opposing and rebutting Plaintiffs' contentions that officers caused and/or contributed to Mr. Stephenson's death through restraint asphyxia, positional asphyxia, compression asphyxia, any other form of asphyxia, physical efforts to restrain Mr. Stephenson, use of any weapons or any other striking object or mechanism, use of a TASER device upon Mr. Stephenson, and/or any other method of force and/or restraint used upon Mr. Stephenson. Dr. Vilke will also opine regarding Mr. Stephenson's physical conditions (preexisting and acute) and/or causes of death from an emergency medicine perspective.

Medical evidence includes the autopsy report prepared by Dr. Allison Hunt, the AMR and fire department incident reports, and testimony from the treating physician who pronounced Mr. Stephenson deceased. Defendants will also introduce dispatch communications, MVARS dash camera footage from both Officer Dane Norem and Officer Jeffrey McKee, still images and video clips from those recordings, the Taser deployment logs, and photographs depicting the scene, Mr. Stephenson's injuries, his clothing and personal effects, and other forensic documentation of the incident.

This combination of officer testimony, eyewitness accounts, expert analysis, and visual and medical records will support Defendants' defenses regarding the reasonableness of the force under the Fourth Amendment and under the Fourteenth Amendment, and related state-law tort claims.

## III. THIRD PARTIES

There are no third parties asserting claims or defenses in this matter.

## IV. ANTICIPATED EVIDENTIARY ISSUES

There are no witnesses that are anticipated to be presented by deposition testimony at this time.

Defendants have not filed any motions in limine at the time of this Memorandum filing and are continuing to meet and confer with Plaintiffs' counsel regarding such motions.

## V. OTHER GERMANE ISSUES OF LAW

Officer Dane Norem plans to raise the defense of qualified immunity by Rule 50 motion. If raised after the close of evidence, the qualified immunity defense may require special interrogatories. "In a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002). "Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted." *Id.; see also Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003) (holding district court properly allowed special interrogatories relating to facts underpinning qualified immunity defense); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide 'what the facts were that the officer faced or perceived' and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts.").

There is no law clearly establishing that a law enforcement officer is not entitled to use force when confronted with a subject under the circumstances in this case. Even if Officer Norem may have been mistaken about the nature of the threat posed by Leroy Stephenson, any such mistake was reasonable. *Anderson v.*

12

*Creighton*, 483 U.S. 635 at 641 (1987); *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996). There is not a "robust 'consensus of cases of persuasive authority'" on this issue, either. To the contrary, officers are on notice that they are permitted to use deadly force when there is probable cause to believe there is an immediate threat of serious bodily injury or death, which was the case here.

## VI.  BIFURCATION OF ISSUES

Defendants seek bifurcation of the issue of punitive damages.

## VII.  JURY TRIAL

All issues are triable to a jury (except as discussed in Section V), and timely demands for jury have been made by all parties.

## VIII.  ATTORNEYS' FEES

Defendants do not waive their right to attorneys' fees if the court finds the action was brought in bad faith.

## IX.  ABANDONMENT OF ISSUES

No affirmative defenses have been abandoned by Defendants.

Dated:  August 4, 2025                    Respectfully submitted,

ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General

*/s/ David Klehm*

DAVID KLEHM
STEPHANIE A. VOLLMER
Deputy Attorneys General
*Attorneys for Defendants State of
California, acting by and through the
California Highway Patrol, and Dane
Norem*

SD2020700119
85277173

13

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for **STATE OF CALIFORNIA; and DOES 1 through 100, inclusive**, certifies that this brief contains 3,356 words, which:

    <u>X</u> complies with the word limit of L.R. 11-6.1.

    __ complies with the word limit set by court order dated.

Dated:  August 4, 2025                       Respectfully submitted,

                                                    ROB BONTA
                                                    Attorney General of California

                                                    */s/ David Klehm*

                                                    DAVID KLEHM
                                                    STEPHANIE A. VOLLMER
                                                    Deputy Attorneys General
                                                    *Attorneys for Defendants State of California, acting by and through the California Highway Patrol, and Dane Norem*

14