**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; LINDEN STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; KEANDRE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; DANE NOREM; and JEFFREY MCKEE, <br><br> Defendants. | Case No.: 5:21-cv-0526-JAK-KK <br><br> [*Hon. John A. Kronstadt*] <br><br> **JOINT DISPUTED JURY INSTRUCTIONS** <br><br> <u>Pre-Trial Conference</u> <br> August 25, 2025 at 1:30 p.m. <br><br> <u>Trial</u> <br> September 9, 2025 at 9:00 a.m. |

1

**PLEASE TAKE NOTICE** that the Parties hereby submit their Disputed Jury Instructions for the trial of this matter.

Respectfully submitted,

DATED:  August 11, 2025      **LAW OFFICES OF DALE K. GALIPO**


By:     */s/ Cooper Alison-Mayne*
         Dale K. Galipo, Esq.
         Cooper Alison-Mayne[1]
         *Attorneys for Plaintiffs*


DATED:  August 11, 2025      **DEAN GAZZO ROISTACHER**


By:     */s/ Lee H. Roistacher*
         Lee H. Roistacher, Esq.
         *Attorneys for Defendant*
         *Jeffrey McKee*

---

[1] Pursuant to Local Rule 5-4.3.4, as the filer of this document, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  August 11, 2025

ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General

*/s/ David Klehm*

DAVID KLEHM
STEPHANIE A. VOLLMER
Deputy Attorney General
*Attorneys for Defendants State of California, acting by and through the California Highway Patrol, and Dane Norem*

3

## DISPUTED JURY INSTRUCTIONS

| NUMBER | TITLE | SOURCE | PAGE |
|--------|-------|--------|------|
| **Claims** | | | |
| 1. | Integral Participation | 9th Cir. 9.2 | |
| 2. | Fourteenth Amendment – Interference with Parent/Child Relationship | 9th Cir. 9.32 | |
| 3. | Battery by Peace Officer (Non-Deadly Force) | CACI 1305A | |
| 4. | Battery by Peace Officer (Deadly Force) | CACI 1305B | |
| 5. | Negligence – Essential Factual Elements | CACI 400 | |
| 6. | Negligent Use of Non-Deadly Force by Law Enforcement Officer in Arrest or Other Seizure | CACI 440 | |
| 7. | Unreasonable force by Law Enforcement Officer in Arrest or Other Seizure – Essential Factual Elements | CACI 440 in effect in January 2019 | |
| 8. | Negligent Use of Deadly Force by Peace Officer—Essential Factual Elements | CACI 441 | |
| 9. | Prone Restraint and Bodyweight Compression Can Constitute Deadly Force | *Scott v Smith,* 109 F.4th 1215, 1223 (9th Cir. 2024); *Drummond v City of Anaheim* 343 F.3d 1052, 1058-59 (9th Cir. 2003); *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005); *A.B. v. County of San Diego,* | |

| | | | |
|---|---|---|---|
| | | No. D084376, 2025 WL 2017244 (Cal. Ct. App. July 18, 2025). | |
| 10. | Failure to Intervene | *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019); *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) | |
| 11. | Basic Standard of Care | CACI 401 | |
| 12. | Apportionment of Responsibility | CACI 406 | |
| 13. | Presumption of Negligence Per Se | CACI 418; Cal. Pen. Code § 148(a)(1); Cal. Pen. Code § 834a. | |
| 14. | Immunity – Exercise of Discretion | Cal. Gov. Code § 820.2 | |
| 15. | Immunity – Non-Negligent Law Execution of Enforcement | Cal. Gov. Code § 820.4 | |
| 16. | Immunity – Liability of Public Employees | Cal. Gov. Code § 802.8 | |
| 17. | Immunity – Injury Caused by Escaping Arrestee | Cal. Pen. Code § 845.8(b)(3) | |
| 18. | Vicarious Liability | CACI 3703 | |
| 19. | Unusually Susceptible Decedent | CACI 3928 | |
| 20. | Damages – Proof | 9th Cir. 5.1, 5.2 | |

JOINT DISPUTED JURY INSTRUCTIONS

## DISPUTED INSTRUCTION NO. 1
## INTEGRAL PARTICIPATION – FEDERAL CLAIMS

A police officer could be held liable under Section 1983 even if he did not personally commit the constitutional violation. Peace officers can be held liable if they do any of the following

1. Directly participate in the deprivation of another's constitutional rights; or
2. Set in motion a series of acts by others which the actor knows or reasonably should know would cause others to suffer constitutional violations.

This claim is brought only against Defendant Dane Norem.

Authority: Based on Comment of Model Civil Jury Instructions for The District Courts of the Ninth Circuit (2023), 9.2

## DEFENDANTS' OBJECTIONS TO
## DISPUTED INSTRUCTION NO. 1

Defendant Norem contends that this instruction should not be included at all because there is no claim against Defendant McKee based on a constitutional violation and thus Defendant Norem cannot be an integral participant in the constitutional violation of any other defendant. Given that the claims against Defendant Norem are that he violated the Fourth and Fourteenth Amendment, the causation instructions in the joint agreed instructions are sufficient.

Officer McKee further objects for the same reasons as Officer Norem.

CHP objects to this instruction for the same reasons as Officer McKee and Officer Norem.

## PLAINTIFFS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 1

Plaintiffs allege that multiple individuals participated in the violation of Mr. Stephenson's constitutional rights, including private citizens who physically restrained him. Defendant Dane Norem's liability is not limited to direct application of force; Plaintiffs contend that Norem integrally participated in the unlawful restraint by, among other things, directing and facilitating the citizens' actions, failing to intervene, and thereby setting in motion a series of acts that he knew or reasonably should have known would cause a deprivation of Mr. Stephenson's rights. Under Ninth Circuit authority, such conduct constitutes "integral participation" sufficient for § 1983 liability, and the jury should be instructed accordingly.

**DISPUTED INSTRUCTION NO. 2**

**FOURTEENTH AMENDMENT – INTERFERENCE WITH PARENT/CHILD**

**RELATIONSHIP**

Under the Fourteenth Amendment to the United States Constitution, a child has a constitutionally protected liberty interest in the companionship and society of their parent. To find a violation of the Fourteenth Amendment, you must determine that the defendant's conduct "shocks the conscience."

Conduct shocks the conscience if:

1. The defendant acted with a purpose to harm the decedent for reasons unrelated to legitimate law enforcement objectives; or

2. The defendant acted with deliberate indifference to the decedent's rights or safety.

If the situation escalated so quickly that the defendant had to make an instant judgment and did not have a practical opportunity to actually deliberate, the plaintiffs must prove that the defendant acted with a purpose to harm.

The purpose to harm standard requires the plaintiffs to prove that Defendant Dane Norem acted with the intent to cause harm for reasons unrelated to legitimate law enforcement objectives, such as arrest, self-defense, or protecting others. **Illegitimate objectives include when the officer had any ulterior motives for using force against the subject, such as to bully a suspect or get even or when an officer uses force against a clearly harmless or subdued suspect.**

If, instead, the defendants had a reasonable opportunity to deliberate before acting, the plaintiffs must prove that the defendants acted with deliberate indifference.

A defendant acts with deliberate indifference if he is aware of a substantial risk of serious harm to the decedent and consciously disregards that risk. **If the defendant knew of a danger and chose to ignore it, thereby exposing the decedent to harm, then the defendant acted with deliberate indifference.**

9

This claim is brought only against Officer Norem.

<u>Authority</u>: Based on Comment to Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit (2023), 9.32

1
2

## DEFENDANTS' OBJECTION REGARDING
## DISPUTED INSTRUCTION NO. 2

3
4
5
6
7
8
9
10
11
12
13
14

Officer Norem proposes the sentence that states, "Illegitimate objectives include when the officer had any ulterior motives for using force against the subject, such as to bully a suspect or get even or when an officer uses force against a clearly harmless or subdued suspect" be added to clarify the difference between legitimate and illegitimate law enforcement objectives. *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022) (quoting *Gonzalez v. City of Anaheim*, 747 F.3d 789, 798 (9th Cir. 2014); *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Defendant Norem objects to the sentence that states, "If the defendant knew of a danger and chose to ignore it, thereby exposing the decedent to harm, then the defendant acted with deliberate indifference." This sentence improperly attempts to redefine the correct standard – i.e., awareness of "a substantial risk of serious harm" – to mean mere knowledge of "a danger" of exposure to "harm." *See*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

15
16

CHP objects to this instruction for the same reasons as Officer McKee and Officer Norem.

17
18
19
20
21
22
23
24
25
26
27
28

1

2

<u>PLAINTIFFS' STATEMENT REGARDING</u>
<u>DISPUTED INSTRUCTION NO. 2</u>

3

4

5

6

7

8

9

10

The sentence, "If the defendant knew of a danger and chose to ignore it, thereby exposing the decedent to harm, then the defendant acted with deliberate indifference," is drawn almost verbatim from the comment to Ninth Circuit Model Civil Jury Instruction 9.32 (2023). It accurately conveys Ninth Circuit precedent that an officer's failure to protect can support a § 1983 claim when the officer affirmatively places a person in danger by acting with deliberate indifference to a known or obvious danger. *Herrera v. LAUSD*, 18 F.4th 1156, 1158 (9th Cir. 2021). This sentence simply explains that principle in terms a jury can understand without altering the legal standard.

11

12

13

14

15

Defendants' proposed addition defining "illegitimate objectives" is unnecessary. The preceding sentence already explains that "purpose to harm" means intent to cause harm for reasons unrelated to legitimate law enforcement objectives, with examples of legitimate objectives. Adding specific "illegitimate" examples risks overemphasis and could improperly suggest those examples are exclusive or controlling.

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED INSTRUCTION NO. 3

## BATTERY BY PEACE OFFICER (NON-DEADLY FORCE)

Plaintiffs claim that Defendants Norem and/or McKee harmed decedent by using unreasonable force or restraint to arrest/detain him. To establish this claim, plaintiffs must prove all of the following:

1. That Defendants Norem and/or McKee intentionally touched decedent or caused decedent to be touched;

2. That Defendants Norem and/or McKee used unreasonable force or restraint on decedent;

3. That decedent did not consent to the use of that force or restraint;

4. That decedent was harmed; and

5. That Dane Norem and/or Jefferey McKee's use of unreasonable force or restraint was a substantial factor in causing decedent's harm.

An officer may use reasonable force to arrest a person when the officer has reasonable cause to believe that that person has committed a crime.

In deciding whether Dane Norem and/or Jefferey McKee used unreasonable force, you must consider the totality of the circumstances and determine what amount of force a reasonable officer in Dane Norem and/or Jefferey McKee's position would have used under the same or similar circumstances. "Totality of the circumstances" means all facts known to the officer at the time, including the conduct of Dane Norem and/or Jefferey McKee and decedent leading up to the use of force. You should consider, among other factors, the following:

(a) Whether decedent reasonably appeared to pose an immediate threat to the safety of Dane Norem and/or Jefferey McKee or others;

(b) The seriousness of the crime at issue; and

(c) Whether decedent was actively resisting arrest or attempting to evade arrest.

Authority: California Civil Jury Instructions (2025), 1305A

## DEFENDANTS' OBJECTIONS TO
## DISPUTED INSTRUCTION NO 3.

Defendants object to this instruction in totality because there is no battery claim alleged in the first amended complaint and the wrongful death claim does not properly assert a battery claim. If this Court disagrees, defendants object to the instruction because it applies only to conduct occurring after January 1, 2020, and the incident forming the basis of this lawsuit occurred in January 2019.

Penal Code section 835a was amended effective on January 1, 2020, significantly altering the then existing standard section 835a which provided: "Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance. [P] A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance."

The current version of CACI 1305A was modified in accordance with section 835a in May 2020. Because Penal Code section 835a does not expressly state that it is retroactive, the new standard of care operates prospectively only. See *McClung v. Emp't Dev. Dep't*, 34 Cal. 4th 467, 475 (2004). The appropriate instruction would be the version of CACI 1305 in existence in January 2019, which provided:

[*Name of plaintiff*] claims that [*name of defendant*] harmed [him/her] by using unreasonable force to [arrest [him/her]/prevent [his/her] escape/overcome [his/her] resistance/[*insert other applicable action*]]. To establish this claim, [*name of plaintiff*] must prove all of the following:

    1.    That [*name of defendant*] intentionally touched [*name of plaintiff*] [or caused [*name of plaintiff*] to be touched];

2.    That [*name of defendant*] used unreasonable force to [arrest/prevent the escape of/overcome the resistance of/*insert other applicable action*] [*name of plaintiff*];

3.    That [*name of plaintiff*] did not consent to the use of that force;

4.    That [*name of plaintiff*] was harmed; and

5.    That [*name of defendant*]'s use of unreasonable force was a substantial factor in causing [*name of plaintiff*]'s harm.

[A/An] [*insert type of peace officer*] may use reasonable force to arrest or detain a person when he or she has reasonable cause to believe that that person has committed a crime. Even if the [*insert type of peace officer*] is mistaken, a person being arrested or detained has a duty not to use force to resist the [*insert type of peace officer*] unless the [*insert type of peace officer*] is using unreasonable force.

In deciding whether [*name of defendant*] used unreasonable force, you must determine the amount of force that would have appeared reasonable to [a/an] [*insert type of peace officer*] in [*name of defendant*]'s position under the same or similar circumstances. You should consider, among other factors, the following:

(a)    The seriousness of the crime at issue;

(b)    Whether [*name of plaintiff*] reasonably appeared to pose an immediate threat to the safety of [*name of defendant*] or others; and

(c)    Whether [*name of plaintiff*] was actively resisting arrest or attempting to evade arrest.

[[A/An] [*insert type of peace officer*] who makes or attempts to make an arrest is not required to retreat or cease from his or her efforts because of the resistance or threatened resistance of the person being arrested.]

2019 CACI Archive 1305.

Defendants further object to the inclusion of the words "or restraint" because those words are not in either version of CACI 1305 or 1305A.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### PLAINTIFF'S STATEMENT IN SUPPORT OF DISPUTED INSTRUCTION NO. 3

Plaintiffs request a jury instruction on battery because their wrongful death claim is based on the theory that the decedent's death was caused by an intentional tort—i.e., a battery. Although the stand-alone battery claim was dismissed, the wrongful death cause of action remains and is premised on the same underlying conduct. Under California law, a wrongful death claim based on a tortious act—such as battery—requires the jury to evaluate whether that underlying tort occurred. Accordingly, to properly assess liability, the jury must be instructed on the elements of battery. *Smith v. City of Los Angeles*, 2025 WL 57327, at *1, *3 (C.D. Cal. Jan. 6, 2025) (giving a battery instruction where the plaintiff brought a "wrongful death based on battery")

Defendants' attempt to revert to an outdated version of the model instruction is without merit. While it is true that Penal Code § 835a was amended effective January 1, 2020, the CACI jury instructions at issue—CACI 1305A/B—are not solely grounded in the statutory text, but rather reflect the common law standard of care applicable to battery and negligence claims against peace officers, which is interpreted through case law. *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 932-36 (2020) (recognizing that the January 2020 amendments to Penal Code section 835a "are declaratory of preexisting case law.").

## DISPUTED INSTRUCTION NO. 4

## BATTERY BY PEACE OFFICER (DEADLY FORCE)

A peace officer may use deadly force or restraint only when necessary in defense of human life. Plaintiffs Devonte, Linden, and Keandre Stephenson claim that Dane Norem and/or Jefferey McKee unnecessarily used deadly force or restraint on decedent Leroy Stephenson. To establish this claim, plaintiffs must prove all of the following:

1. That Norem and/or McKee intentionally touched Leroy Stephenson or caused Leroy Stephenson to be touched;

2. That Norem and/or McKee used deadly force or restraint on Leroy Stephenson;

3. That Norem and/or McKee's use of deadly force or restraint was not necessary to defend human life;

4. That Leroy Stephenson was killed; and

5. That Norem and/or McKee's use of deadly force or restraint was a substantial factor in causing Leroy Stephenson's death.

Dane Norem and/or Jefferey McKee use of deadly force or restraint was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Norem and/or McKee at the time, that deadly force or restraint was necessary to defend against an imminent threat of death or serious bodily harm to Dane Norem, Jefferey McKee, or another person.

A peace officer must not use deadly force or restraint against persons based only on the danger those persons pose to themselves, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person. A person being arrested/detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force or restraint.

"Deadly force" means any use of force or restraint that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a

17

firearm. A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of Norem, McKee, and Leroy Stephenson leading up to the use of deadly force. In determining whether Norem and/or McKee's use of deadly force was necessary in defense of human life, you must consider Norem and/or McKee's tactical conduct and decisions before using deadly force on Leroy Stephenson and whether Norem and/or McKee used other available resources and techniques as [an] alternative[s] to deadly force, if it was reasonably safe and feasible to do so. You must also consider whether Norem and/or McKee knew or had reason to know that the person against whom they used force was suffering from a physical, mental health, developmental, or intellectual disability that may have affected the person's ability to understand or comply with commands from the officers.


Authority: California Civil Jury Instructions (2025), 1305B

JOINT DISPUTED JURY INSTRUCTIONS

1
2

<u>DEFENDANTS' OBJECTIONS TO</u>
<u>DISPUTED INSTRUCTION NO. 4</u>

3    Defendants object to this instruction in totality because there is no battery claim

4    alleged in the first amended complaint and the wrongful death claim does not properly

5    assert a battery claim.  Defendants further object to the instruction because neither Officer

6    Norem nor Officer McKee used deadly force.  Defendants additionally contend giving this

7    instruction – as the title of it states – amounts to instructing the jury that the officers used

8    deadly force.  Most objectionable is that this instruction only applies to conduct occurring

9    after January 1, 2020, and the incident forming the basis of this lawsuit occurred in

10   January 2019.

11   Penal Code section 835a was amended effective on January 1, 2020, significantly

12   altering the then existing standard section 835a which provided: "Any peace officer who

13   has reasonable cause to believe that the person to be arrested has committed a public

14   offense may use reasonable force to effect the arrest, to prevent escape or to overcome

15   resistance. [P] A peace officer who makes or attempts to make an arrest need not retreat or

16   desist from his efforts by reason of the resistance or threatened resistance of the person

17   being arrested; nor shall such officer be deemed an aggressor or lose his right to self-

18   defense by the use of reasonable force to effect the arrest or to prevent escape or to

19   overcome resistance."

20   The current version of CACI 1305B was modified in accordance with section 835a

21   in created as new in May 2021.  Because Penal Code section 835a does not expressly state

22   that it is retroactive, the new standard of care operates prospectively only.  See *McClung*

23   *v. Emp't Dev. Dep't*, 34 Cal. 4th 467, 475 (2004).

24   The appropriate instruction would be the version of CACI 1305 in existence in

25   January 2019, which provided:

26   [*Name of plaintiff*] claims that [*name of defendant*] harmed [him/her] by using

27   unreasonable force to [arrest [him/her]/prevent [his/her] escape/overcome [his/her]

28

resistance/[*insert other applicable action*]]. To establish this claim, [*name of plaintiff*] must prove all of the following:

    1.    That [*name of defendant*] intentionally touched [*name of plaintiff*] [or caused [*name of plaintiff*] to be touched];

    2.    That [*name of defendant*] used unreasonable force to [arrest/prevent the escape of/overcome the resistance of/*insert other applicable action*] [*name of plaintiff*];

    3.    That [*name of plaintiff*] did not consent to the use of that force;

    4.    That [*name of plaintiff*] was harmed; and

    5.    That [*name of defendant*]'s use of unreasonable force was a substantial factor in causing [*name of plaintiff*]'s harm.

[A/An] [*insert type of peace officer*] may use reasonable force to arrest or detain a person when he or she has reasonable cause to believe that that person has committed a crime. Even if the [*insert type of peace officer*] is mistaken, a person being arrested or detained has a duty not to use force to resist the [*insert type of peace officer*] unless the [*insert type of peace officer*] is using unreasonable force.

In deciding whether [*name of defendant*] used unreasonable force, you must determine the amount of force that would have appeared reasonable to [a/an] [*insert type of peace officer*] in [*name of defendant*]'s position under the same or similar circumstances. You should consider, among other factors, the following:

    (a)    The seriousness of the crime at issue;

    (b)    Whether [*name of plaintiff*] reasonably appeared to pose an immediate threat to the safety of [*name of defendant*] or others; and

    (c)    Whether [*name of plaintiff*] was actively resisting arrest or attempting to evade arrest.

[[A/An] [*insert type of peace officer*] who makes or attempts to make an arrest is not required to retreat or cease from his or her efforts because of the resistance or threatened resistance of the person being arrested.]

2019 CACI Archive 1305.

Defendants further object to the inclusion of the words "or restraint" because those words are not in either version of CACI 1305 or 1305B.

PLAINTIFF'S STATEMENT IN SUPPORT OF
DISPUTED INSTRUCTION NO. 4

Regarding having a Battery instruction at all, see above argument regarding non-deadly battery instruction.

Plaintiffs request that the jury be instructed with the deadly force versions of the battery and negligence instructions—CACI 1305B (Battery by Peace Officer – Deadly Force) and CACI 441 (Negligent Use of Deadly Force by Peace Officer)—because the evidence supports a finding that Defendant Norem used deadly force through the application of prolonged prone restraint and bodyweight compression.

The Ninth Circuit has consistently held that prone restraint and bodyweight compression can constitute deadly force, especially when applied to a person in distress or with compromised breathing. *Scott v Smith,* 109 F.4th 1215, 1223 (9th Cir. 2024); *Drummond v City of Anaheim* 343 F.3d 1052, 1058-59 (9th Cir. 2003); *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005). State courts have found the same. *A.B. v. County of San Diego*, No. D084376, 2025 WL 2017244 (Cal. Ct. App. July 18, 2025).

Defendants' attempt to revert to an outdated version of the model instruction is without merit. While it is true that Penal Code § 835a was amended effective January 1, 2020, the CACI jury instructions at issue—CACI 1305A/B—are not solely grounded in the statutory text, but rather reflect the common law standard of care applicable to battery and negligence claims against peace officers, which is interpreted through case law. *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 932-36 (2020) (recognizing that the January 2020 amendments to Penal Code section 835a "are declaratory of preexisting case law.").

## DISPUTED INSTRUCTION NO. 5

## NEGLIGENCE

Plaintiffs claim that decedent Leroy Stephenson was harmed by Norem and/or McKee's negligence. To establish this claim, plaintiffs must prove all of the following:

1. That Norem and/or McKee were negligent;

2. That Leroy Stephenson was harmed; and

3. That Norem and/or McKee's negligence was a substantial factor in causing Leroy Stephenson's harm.

Authority: California Civil Jury Instructions (2025), 400

<u>DEFENDANTS' OBJECTIONS TO</u>
<u>DISPUTED INSTRUCTION NO. 5</u>

Because the negligence claim is asserted against law enforcement officers, the general negligence jury instruction does not apply.  The negligence claim is governed by the more specific instructions governing the use of force by law enforcement, CACI 440. However, given the comparative fault instruction, defendants propose the following instruction on negligence:

**NEGLIGENCE**

Defendants claim that decedent Leroy Stephenson was harmed by his own negligence. To establish this claim, defendants must prove all of the following:

4.   That Leroy Stephenson was negligent;

5.   That Leroy Stephenson was harmed; and

6.   That Leroy Stephenson's negligence was a substantial factor in causing Leroy Stephenson's harm.

<u>Authority</u>: California Civil Jury Instructions (2025), 400.

1
2

## PLAINTIFF'S STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 5

3

4

5

6

7

8

Defendants are incorrect that CACI 400 should be omitted in relation to the officers' negligence. While CACI 440 and related instructions provide the more specific framework for evaluating negligence in the law enforcement use-of-force context, they do so by elaborating on how the general negligence standard applies in that setting. The elements of negligence—duty, breach, causation, and harm—remain the same. Therefor, the jury should still be given this instruction.

9

10

11

Providing both CACI 400 and CACI 440 ensures the jury understands the general legal standard as well as the specific rules that govern police conduct, avoiding confusion and giving a complete statement of the law.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DISPUTED INSTRUCTION NO. 6

## NEGLIGENT USE OF NON-DEADLY FORCE BY A LAW ENFORCEMENT OFFICER IN ARREST OR OTHER SEIZURE

A law enforcement officer may use reasonable force or restraint to arrest a person when the officer has reasonable cause to believe that that person has committed or is committing a crime. However, the officer may use only that degree of force or restraint necessary to arrest the person. Even if the officer is mistaken, a person being arrested or detained has a duty not to use force to resist the officer unless the officer is using unreasonable force.

Plaintiffs Devonte, Linden, and Keandre Stephenson claim that Norem and/or McKee were negligent in using unreasonable force to arrest,  decedent Leroy Stephenson. To establish this claim, plaintiffs must prove all of the following:

1. That Norem and/or McKee used force to arrest Leroy Stephenson;
2. That the amount of force used by Norem and/or McKee was unreasonable;
3. That Leroy Stephenson was harmed; and
4. That Norem and/or McKee's use of unreasonable force was a substantial factor in causing Leroy Stephenson's harm.

In deciding whether Norem and/or McKee used unreasonable force, you must consider the totality of the circumstances to determine what amount of force a reasonable California Highway Patrol officer in Norem and/or McKee's position would have used under the same or similar circumstances. "Totality of the circumstances" means all facts known to the officer at the time, including the conduct of Norem and/or McKee and Decedent Leroy Stephenson leading up to the use of force. Among the factors to be considered are the following:

(A) Whether Leroy Stephenson reasonably appeared to pose an immediate threat to the safety of Norem and/or McKee or others;

(B) The seriousness of the crime at issue;

(C) Whether Leroy Stephenson was actively resisting arrest; and

(D) Norem and/or McKee's tactical conduct and decisions before using force on Leroy
Stephenson.

<u>Authority</u>: California Civil Jury Instructions (2025), 440

## DEFENDANTS' OBJECTION REGARDING

## DISPUTED INSTRUCTION NO. 6

Defendants object to this instruction because it is not appropriate. It applies only to conduct occurring after January 1, 2020, and the incident forming the basis of this lawsuit occurred in January 2019.

Penal Code section 835a was amended effective on January 1, 2020, significantly altering the then existing standard section 835a which provided: "Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance. [P] A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance."

The current version of CACI 440 was modified in accordance with section 835a in May 2020 Because Penal Code section 835a does not expressly state that it is retroactive, the new standard of care operates prospectively only. See McClung v. Emp't Dev. Dep't, 34 Cal. 4th 467, 475 (2004).

The appropriate instruction would be the version of CACI 440 in existence in January 2019, which was the 2016 version, and provided:

### 440 - UNREASONABLE FORCE BY LAW ENFORCEMENT OFFICER IN ARREST OR OTHER SEIZURE—ESSENTIAL FACTUAL ELEMENTS

A law enforcement officer may use reasonable force to [arrest/detain] a person when the officer has reasonable cause to believe that that person has committed or is committing a crime. However, the officer may use only that degree of force necessary to accomplish the [arresting/detention].

[Name of Plaintiffs] claim[s] that [Name of Defendants] used unreasonable force in [arresting/detaining] [him/her]. To establish this claim, [Name of Plaintiffs] must prove all of the following:

1.    That [Name of Defendants] used force in [arresting/detaining] [Name of Plaintiffs];

2.    That the amount of force used by [Name of Defendants] was unreasonable;

3.    That [Name of Plaintiffs] was harmed; and

4.    That [Name of Defendants]['s] use of unreasonable force was a substantial factor in causing [Name of Plaintiffs]['s] harm.

In deciding whether [Name of Defendants] used unreasonable force, you must consider all of the circumstances of the [arresting/detention] and determine what force a reasonable officer in [Name of Defendants]['s] position would have used under the same or similar circumstances. Among the factors to be considered are the following:

(a)    Whether [Name of Plaintiffs] reasonably appeared to pose an immediate threat to the safety of [Name of Defendants] or others;

(b)    The seriousness of the crime at issue;

(c)    Whether [Name of Plaintiffs] was actively resisting [arresting/detention] or attempting to avoid [arresting/detention] by flight; and

(d)    [Name of Defendants]['s] tactical conduct and decisions before using [deadly] force on [Name of Plaintiffs].


Defendants further object to the inclusion of the words "or restraint" because those words are not in either version of CACI 440.

<u>PLAINTIFF'S STATEMENT REGARDING</u>

<u>DISPUTED INSTRUCTION NO. 6</u>

Defendants' attempt to revert to an outdated version of the model instruction is without merit. While it is true that Penal Code § 835a was amended effective January 1, 2020, the CACI jury instructions at issue—CACI 440/441—are not solely grounded in the statutory text, but rather reflect the common law standard of care applicable to battery and negligence claims against peace officers, which is interpreted through case law. *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 932-36 (2020) (recognizing that the January 2020 amendments to Penal Code section 835a "are declaratory of preexisting case law.").

# DISPUTED INSTRUCTION NO. 7
## UNREASONABLE FORCE BY LAW ENFORCEMENT OFFICER IN ARREST OR OTHER SEIZURE—ESSENTIAL FACTUAL ELEMENTS

A law enforcement officer may use reasonable force to arrest or detain a person when the officer has reasonable cause to believe that that person has committed or is committing a crime. However, the officer may use only that degree of force necessary to accomplish the arresting or detention.

Plaintiffs claim that Officer Dane Norem and Officer Jeffrey McKee used unreasonable force in arresting or detaining Leroy Stephenson. To establish this claim, plaintiffs must prove all of the following:

1. That Officer Dane Norem and Officer Jeffrey McKee used force in arresting or detaining Leroy Stephenson;

2. That the amount of force used by Officer Dane Norem and Officer Jeffrey McKee was unreasonable;

3. That Leroy Stephenson was harmed; and

4. That Officer Dane Norem's and Officer Jeffrey McKee's use of unreasonable force was a substantial factor in causing Leroy Stephenson's death.

In deciding whether Officer Dane Norem or Officer Jeffrey McKee used unreasonable force, you must consider all of the circumstances of the arresting or detention and determine what force a reasonable officer in Officer Dane Norem's or Officer Jeffrey McKee's position would have used under the same or similar circumstances. Among the factors to be considered are the following:

(a) Whether Leroy Stephenson reasonably appeared to pose an immediate threat to the safety of Officer Dane Norem or Officer Jeffrey McKee or others;

(b) The seriousness of the crime at issue;

(c) Whether Leroy Stephenson was actively resisting arrest or detention or attempting to avoid arresting or detention by flight; and

31

1       (d)      Officer Dane Norem's and Officer Jeffrey McKee's tactical conduct

2          and decisions before using force on Leroy Stephenson.

3

4 <u>Authority:</u> California Civil Jury Instructions (2016), 440; *McClung v. Emp't Dev. Dep't*,

5 34 Cal. 4th 467, 475 (2004) (when a statute does not expressly state that it is retroactive,

6 the new standard of care operates prospectively only.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

<u>PLAINTIFFS' OBJECTION REGARDING
DISPUTED INSTRUCTION NO. 7</u>

3
4
5
6
7
8
9

Defendants' attempt to revert to an outdated version of the model instruction is without merit. While it is true that Penal Code § 835a was amended effective January 1, 2020, the CACI jury instructions at issue—CACI 440/441—are not solely grounded in the statutory text, but rather reflect the common law standard of care applicable to battery and negligence claims against peace officers, which is interpreted through case law. *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 932-36 (2020) (recognizing that the January 2020 amendments to Penal Code section 835a "are declaratory of preexisting case law.").

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 7

Penal Code section 835a was amended effective on January 1, 2020, significantly altering the then existing standard section 835a which provided: "Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance. [P] A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance."

The current version of CACI 440 was modified in accordance with section 835a in May 2020 Because Penal Code section 835a does not expressly state that it is retroactive, the new standard of care operates prospectively only. *See McClung v. Emp't Dev. Dep't*, 34 Cal. 4th 467, 475 (2004).

The appropriate instruction would be the version of CACI 440 in existence in January 2019, which was the 2016 version is the instruction offered by defendants

## DISPUTED INSTRUCTION NO. 8

## NEGLIGENT USE OF DEADLY FORCE BY A PEACE OFFICER

A peace officer may use deadly force or restraint only when necessary in defense of human life. Plaintiffs claim that Norem and/or McKee were negligent in using deadly force or restraint to arrest decedent Leroy Stephenson. To establish this claim, plaintiffs must prove all of the following:

1. That Norem and/or McKee were peace officers;

2. That Norem and/or McKee used deadly force or restraint on Leroy Stephenson;

3. That Norem and/or McKee's use of deadly force or restraint was not necessary to defend human life;

4. That Leroy Stephenson was killed; and

5. That Norem and/or McKee's use of deadly force or restraint was a substantial factor in causing Leroy Stephenson's death.

Norem and/or McKee's use of deadly force or restraint was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Norem and/or McKee at the time, that deadly force or restraint was necessary to defend against an imminent threat of death or serious bodily injury to Norem, McKee, or another person.

A peace officer must not use deadly force or restraint against persons based only on the danger those persons pose to themselves, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person. A person being arrested has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force or restraint.

"Deadly force" is force or restraint that creates a substantial risk of causing death or serious bodily injury. It is not limited to the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Norem and McKee and Leroy Stephenson leading up to the use of deadly force. In determining whether Norem and McKee's use of deadly force was necessary in defense of human life, you must consider Norem and/or McKee's tactical conduct and decisions before using deadly force on Leroy Stephenson and whether Norem and/or McKee used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

Authority: California Civil Jury Instructions (2025), 441

## DEFENDANTS' OBJECTIONS TO
## DISPUTED INSTRUCTION NO. 8

Defendants object to this instruction because neither Officer Norem nor Officer McKee used deadly force.  Defendants additionally object because giving this instruction – as its title states – amounts to instructing the jury that the officers used deadly force. Most objectionable is the instruction applies only to conduct occurring after January 1, 2020, and the incident forming the basis of this lawsuit occurred in January 2019.

Penal Code section 835a was amended effective on January 1, 2020, significantly altering the then existing standard section 835a which provided: "Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance. [P] A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance."

The current version of CACI 440 was modified in accordance with section 835a in created as new in November 2020.  Because Penal Code section 835a does not expressly state that it is retroactive, the new standard of care operates prospectively only.  See *McClung v. Emp't Dev. Dep't*, 34 Cal. 4th 467, 475 (2004).

The appropriate instruction would be the version of CACI 440 in existence in January 2019, which was the 2016 version that provided:

## 440 - UNREASONABLE FORCE BY LAW ENFORCEMENT OFFICER IN ARREST OR OTHER SEIZURE─ESSENTIAL FACTUAL ELEMENTS

A law enforcement officer may use reasonable force to [arrest/detain] a person when the officer has reasonable cause to believe that that person has committed or is

committing a crime.  However, the officer may use only that degree of force necessary to accomplish the [arresting/detention].

[Name of Plaintiffs] claim[s] that [Name of Defendants] used unreasonable force in [arresting/detaining] [him/her]. To establish this claim, [Name of Plaintiffs] must prove all of the following:

1.    That [Name of Defendants] used force in [arresting/detaining] [Name of Plaintiffs];

2.    That the amount of force used by [Name of Defendants] was unreasonable;

3.    That [Name of Plaintiffs] was harmed; and

4.    That [Name of Defendants]['s] use of unreasonable force was a substantial factor in causing [Name of Plaintiffs]['s] harm.

In deciding whether [Name of Defendants] used unreasonable force, you must consider all of the circumstances of the [arresting/detention] and determine what force a reasonable officer in [Name of Defendants]['s] position would have used under the same or similar circumstances. Among the factors to be considered are the following:

(a)    Whether [Name of Plaintiffs] reasonably appeared to pose an immediate threat to the safety of [Name of Defendants] or others;

(b)    The seriousness of the crime at issue;

(c)    Whether [Name of Plaintiffs] was actively resisting [arresting/detention] or attempting to avoid [arresting/detention] by flight; and

(d)    [Name of Defendants]['s] tactical conduct and decisions before using [deadly ]*force on [Name of Plaintiffs].


        Defendants further object to the inclusion of the words "or restraint" because those words are not in either version of CACI 441.

1

## PLAINTIFFS' STATEMENT IN SUPPORT OF DISPUTED INSTRUCTION NO. 8

2

3      Plaintiffs request that the jury be instructed with the deadly force versions of the

4  battery and negligence instructions—CACI 1305B (Battery by Peace Officer – Deadly

5  Force) and CACI 441 (Negligent Use of Deadly Force by Peace Officer)—because the

6  evidence supports a finding that Defendant Norem used deadly force through the

7  application of prolonged prone restraint and bodyweight compression.

8      The Ninth Circuit has consistently held that prone restraint and bodyweight

9  compression can constitute deadly force, especially when applied to a person in distress or

10  with compromised breathing. *Scott v Smith,* 109 F.4th 1215, 1223 (9th Cir. 2024);

11  *Drummond v City of Anaheim* 343 F.3d 1052, 1058-59 (9th Cir. 2003); *Smith v. City of*

12  *Hemet*, 394 F.3d 689, 693 (9th Cir. 2005). State courts have found the same. *A.B. v.*

13  *County of San Diego*, No. D084376, 2025 WL 2017244 (Cal. Ct. App. July 18, 2025).

14      Defendants' attempt to revert to an outdated version of the model instruction is

15  without merit. While it is true that Penal Code § 835a was amended effective January 1,

16  2020, the CACI jury instructions at issue—CACI 440/441—are not solely grounded in the

17  statutory text, but rather reflect the common law standard of care applicable to battery and

18  negligence claims against peace officers, which is interpreted through case law. *Koussaya*

19  *v. City of Stockton*, 54 Cal. App. 5th 909, 932-36 (2020) (recognizing that the January

20  2020 amendments to Penal Code section 835a "are declaratory of preexisting case law.").

21

22

23

24

25

26

27

28

# DISPUTED INSTRUCTION NO. 9
## PRONE RESTRAINT AND BODYWEIGHT COMPRESSION
## CAN CONSTITUTE DEADLY FORCE

Applying bodyweight to a person's back or neck while they are restrained in a prone position constitutes deadly force when it creates a substantial risk of causing death or serious bodily injury.

Authority:

*Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005), disapproved of by Lemos v. Cnty. of Sonoma, 40 F.4th 1002 (9th Cir. 2022) ("We define deadly force as force that creates a substantial risk of causing death or serious bodily injury."); *Scott v Smith* 109 F.4th 1215, 1223 (9th Cir. 2024); *Drummond v City of Anaheim* 343 F.3d 1052, 1058-59 (9th Cir. 2003); *A.B. v. County of San Diego*, No. D084376, 2025 WL 2017244 (Cal. Ct. App. July 18, 2025).

DEFENDANTS' OBJECTIONS TO
DISPUTED INSTRUCTION NO. 9

Defendants object to this instruction because it is an argument and also it

improperly resolves a factual issue by instructing the jury that the force used was deadly.

1

## PLAINTIFFS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 9

Plaintiffs request this instruction because there is substantial evidence that Defendant Norem used bodyweight force on Leroy Stephenson while he was restrained in a prone position, and multiple courts have recognized that such force can constitute deadly force when it creates a substantial risk of death or serious bodily injury. This instruction is necessary to ensure the jury understands that prone restraint and bodyweight compression may qualify as deadly force under the law, allowing the jury to properly evaluate whether the use of force was justified under the heightened standards that apply to deadly force. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1058–59 (9th Cir. 2003); *Scott v. Smith*, 109 F.4th 1215, 1223 (9th Cir. 2024).

JOINT DISPUTED JURY INSTRUCTIONS

## DISPUTED INSTRUCTION NO. 10

## FAILURE TO INTERVENE

Plaintiff asserts that Dane Norem and Joseph McKee failed to intervene in the use of excessive force against Leroy Stephenson. Police officers have a duty to intervene when another person acting under color of law violates the constitutional rights of a citizen. An officer can be held liable for failing to intervene only if they had a realistic opportunity to intervene.

To prove their failure to intervene claim, the plaintiffs must prove all of the following:

1.    A person acting under color of law used excessive force or restraint against Leroy Stephenson.

2.    Norem and/or McKee were aware of the need to intervene in the use of excessive force or restraint against

3.    Norem and/or McKee had an opportunity to intervene in the use of excessive force or restraint.

4.    Norem and/or McKee failed to intervene in the use of excessive force and/or restraint.

Authority: *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n. 12 (9th Cir. 2007); *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009).

<u>DEFENDANTS' OBJECTIONS TO</u>
<u>DISPUTED INSTRUCTION NO. 10</u>

Defendant McKee objects to this instruction because there is no 42 U.S.C. § 1983 claim against him.  Defendant McKee further objects that this is not a viable basis of liability under California law and plaintiff can provide no California authority recognizing that one officer has a duty to and thus can be negligent for failing to intervene in another officer's alleged violation of constitutional rights.  Moreover, such a claim is specifically precluded against a government entity employee.  *See* Cal. Gov. Code § 820.8 ("Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. …").  Also, the theory was not alleged in the complaint. See Doc. 1, pp. 9-21.

Finally, the claim presented under California's Government Code did not include this theory of liability and it accordingly cannot be maintained. *See* Doc. 1, pp. 85-111 (plaintiffs' Government Code claims).

Claims in a complaint must match the factual assertions and theories in a Government Code claim. *Fall River Joint Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431, 435 (1988) ("The third cause of action patently attempts to premise liability on an entirely different factual basis than what was set forth in the tort claim. Such a variance has been held fatal to a plaintiff's pleading in several analogous cases."); *Cal. ex rel. Dep't of Transp. v. Superior Court*, 159 Cal. App. 3d 331, 336 (1984) ("Courts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity.").  "'In other words, the factual content of the plaintiff's claim [is] viewed by the trial court as operating to proscribe the limits of any later action for which filing the claim is a precondition.'" *Portillo v. City of Nat'l City*, No. 20-cv-2429 W (MDD), 2022 U.S. Dist. LEXIS 62751, at *7, 2022 WL 1004238 (S.D. Cal. Apr. 4, 2022) (quoting *Williams v. Braslow*, 179 Cal. App. 3d 762, 770 (1986)). "Each 'theory of recovery' must be reflected in a timely claim, and 'the factual circumstances set forth in the claim must correspond with the facts alleged in the

complaint.'" *Talk N Win, Inc. v. Harris*, No. CV F 13-0971 LJO SMS, 2013 U.S. Dist. LEXIS 169528, at *42-43, 2013 WL 6198939 (E.D. Cal. Nov. 27, 2013) (quoting *Munoz v. State of California*, 33 Cal. App. 4th 1767, 1776 (1995)).  In sum, a Government Code claim "'must set forth all the legal and factual bases that will be asserted in any subsequent lawsuit.'"  *Id.* (quoting *Doe 1 v. City of Murrieta*, 102 Cal.App.4th 899, 920 (2002)).

Defendant Norem agrees with McKee's objection and further objects to this instruction on the ground that there is no claim against Defendant McKee based on a constitutional violation and thus Defendant Norem had no duty to intervene.

CHP objects for the same reasons as Officer McKee and Officer Norem.

1

2

## PLAINTIFFS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 10

3

4

5

6

7

8

9

10

Plaintiffs request an instruction on failure to intervene because it is supported by the facts and the law, and the Court has already found that the complaint sufficiently alleges this theory of liability. In its ruling on Defendants' motion to dismiss, the Court expressly held that Plaintiffs adequately stated a claim against McKee for failure to intervene under federal and state law. See ECF No. 96 at 25. The logic of the Court's analysis applies equally to Norem. The instruction is therefore warranted and necessary to permit the jury to evaluate whether either defendant had a realistic opportunity to intervene to prevent or stop the use of excessive force but failed to do so.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED INSTRUCTION NO. 11
## PRESUMPTION OF NEGLIGENCE PER SE

California Penal Code § 148(a)(1) provides that no person shall willfully resist, delay, or obstruct any peace officer in the discharge or attempt to discharge any duty of his or her office or employment.

California Penal Code § 834a provides: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest."

If Officer McKee or Officer Norem proves that Leroy Stephenson violated either of these laws and that a violation was a substantial factor in bringing about the death of Leroy Stephenson, then you must find that Leroy Stephenson was negligent.

If you find that Leroy Stephenson did not violate this law or that a violation was not a substantial factor in bringing about the death of Leroy Stephenson, then you must still decide whether Leroy Stephenson was negligent in light of the other instructions.

Authority: California Civil Jury Instructions (2026), 418; California Penal Code § 148(a)(1); California Penal Code § 834a.

## PLAINTIFFS' OBJECTIONS TO
## DISPUTED INSTRUCTION NO. 11

Negligence per se only applies when the Court finds that the death resulted from an occurrence the statute was designed to prevent; and that Mr. Stephenson was within the class of persons the statute was intended to protect. Penal Code §§ 148(a)(1) and 834a were enacted to deter violence against peace officers and protect officers from harm, not to protect arrestees from injury. The statutes' protective purpose runs to law enforcement, not to individuals in Mr. Stephenson's position.

More importantly, Penal Code § 148(a)(1) and §834 only apply when officers are acting within their lawful role, not when they are using excessive or unreasonable force or restraint. *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) ("Excessive force used by a police officer at the time of the arrest is not within the performance of the officer's duty."). That question—whether the officers acted lawfully—is at the core of this case. Giving this instruction would effectively signal to the jury that the court has resolved that disputed issue in defendants' favor.

## DEFENDANTS' STATEMENT IN SUPPORT OF DISPUTED INSTRUCTION NO. 11

"Where a statute establishes a party's duty, proof of the party's violation of a statutory standard of conduct raises a presumption of negligence that may be rebutted only by evidence establishing a justification or excuse for the statutory violation. This rule, generally known as the doctrine of negligence per se, means that where the court has adopted the conduct prescribed by statute as the standard of care for a reasonable person, a violation of the statute is presumed to be negligence." *Spriesterbach v. Holland,* 215 Cal. App. 4th 255, 263 (2013) (simplified). "The negligence per se doctrine, as codified in Evidence Code section 669, creates a presumption of negligence if four elements are established: '(1) the party opposing a finding of negligence per se violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. The first two elements are questions of fact, while the latter two are questions of law." *Id.* at 263-64 (simplified).

Defendants will present evidence that Leroy Stephenson violated Penal Code § 148(a)(1) and §834a by willfully resisting, delaying, or obstructing Officer Norem in the discharge or attempt to discharge any his law enforcement duties and that Leroy Stephenson know or should have known that Officer Norem was attempting to arrest him and Leroy Stephenson used force against Officer Norem to resist the arrest. And one obvious purpose of both statutes – which essentially require a person subject to a law enforcement officer's authority not to resist – is to prevent physical confrontations posing risk of injury to both the officer and suspect.

1

2

## DISPUTED INSTRUCTION NO. 12

## BASIC STANDARD OF CARE

3

4

Negligence is the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or by failing to act.

5

6

7

A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

8

9

You must decide how a reasonably careful person would have acted in Leroy Stephenson's situation.

10

11

<u>Authority:</u> California Civil Jury Instructions (2025), 401.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFFS' OBJECTIONS TO

## DISPUTED INSTRUCTION NO. 12

Plaintiffs agree this instruction should be included.

1

## DEFENDANTS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 12

2

3     Since there are instructions that use the word "negligence," the jury should be

4     instructed on the definition of negligence.

# DISPUTED INSTRUCTION NO. 13
## APPORTIONMENT OF RESPONSIBILITY

Defendants claim that the negligence/fault of Matthew Borden and others at the scene of the incident contributed to Leroy Stephenson's harm. To succeed on this claim, the defendants must prove both of the following:

1. That Matthew Borden and others at the scene of the incident were negligent/at fault; and

2. That the negligence/fault of Matthew Borden and others at the scene of the incident was a substantial factor in causing Leroy Stephenson's harm.

If you find that the negligence/fault of more than one person including Dane Norem, Jeffrey McKee, Leroy Stephenson, Matthew Borden, and others at the scene of the incident was a substantial factor in causing Leroy Stephenson's harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent.

You will make a separate finding of Leroy Stephenson's total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility.


Authority: California Civil Jury Instructions (2025), 406.

## PLAINTIFFS' OBJECTIONS TO

## DISPUTED INSTRUCTION NO. 13

Plaintiffs were presented with this proposed jury instruction for the first time on the date this document is due with the Court. Plaintiffs have not had time to consider this issue in detail but believe it is not appropriate given the issues presented in this case. At the Final Pre-trial Conference, Plaintiffs will be prepared to present their argument that this jury instruction is inappropriate.

1
2

## DEFENDANTS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 13

3
4

   This instruction is appropriate because, as plaintiffs acknowledge, multiple non-party individuals were present at the scene and participated in the incident.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DISPUTED INSTRUCTION NO. 14
# IMMUNITY – EXERCISE OF DISCRETION

The elements for this affirmative defense are:

1.    Officer Jeffrey McKee and Officer Dane Norem exercised discretion in using non-deadly force on Leroy Stephenson;

2.    The discretion was vested in Officer Jeffrey McKee and Dane Norem pursuant to their duties as a peace officer.


Authority: California Government Code § 820.2

1
2

## PLAINTIFFS' OBJECTIONS TO
## DISPUTED INSTRUCTION NO. 14

3

It is well-established that § 820.2 does not provide immunity from excessive force

4

claims. *Lifton v. City of Vacaville*, 72 F. App'x 647, 649 (9th Cir. 2003).

5

Defendants citation to *Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1075

6

(S.D. Cal. 1994), is misleading. In that case the Court found that the officer's actions were

7

reasonable as a matter of law; that is not the case here.

8

Regarding California Government Code § 820, "courts have determined

9

discretionary immunity does not apply to. . . using unreasonable force when making an

10

arrest or overcoming resistance to it." *Conway v. Cnty. of Tuolumne*, 231 Cal. App. 4th

11

1005, 1015, 180 Cal. Rptr. 3d 598, 605 (2014).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

<u>DEFENDANTS' STATEMENT IN SUPPORT OF</u>
<u>DISPUTED INSTRUCTION NO. 14</u>

3
4
5
6
7
8
9
10
11
12
13
14
15

Defendants contend this proposed instruction applies to Plaintiffs' state law claims. Defendants contend that the instruction is appropriate because the use of force inherently calls for an exercise of the discretion vested in Defendants as California peace officers—the very discretion the immunity is designed to protect.  See, *Hayes v. County of San Diego*, 57 Cal.4th 622, 632 (2013) ("Law enforcement personnel have a degree of discretion as to how they choose to address a particular situation."); see also, *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1075 (S.D. Cal. 1994) (finding deputy immune under Government Code § 820.2 from Plaintiff's state law claims when using deadly force; "[a]s discussed, supra, police officers are privileged to use force against assailants when the officers reasonably believe the assailants to be armed, and when officers reasonably believe their own safety is in jeopardy. Jackson's split-second decision to use force is exactly the kind of act which section 820.2 was enacted to shield from liability. That exercise of discretion is exactly what this immunity seeks to protect.").

16
17
18
19
20
21
22
23
24
25
26
27
28

## DISPUTED INSTRUCTION NO. 15

## IMMUNITY – NON-NEGLIGENT LAW EXECUTION OR ENFORCEMENT

The elements for this affirmative defense are:

1.      Officer Jeffrey McKee and Officer Dane Norem were exercising due care;

2.      Officer Jeffrey McKee and Officer Dane Norem were enforcing the law.

Authority: California Government Code § 820.4

## PLAINTIFFS' OBJECTIONS TO
## DISPUTED INSTRUCTION NO. 15

Regarding California Government Code § 820, "courts have determined discretionary immunity does not apply to. . . using unreasonable force when making an arrest or overcoming resistance to it." *Conway v. Cnty. of Tuolumne*, 231 Cal. App. 4th 1005, 1015, 180 Cal. Rptr. 3d 598, 605 (2014).

Defendants citation to *Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1075 (S.D. Cal. 1994), is misleading. In that case the Court found that the officer's actions were reasonable as a matter of law; that is not the case here.

## DEFENDANTS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 15

Defendants contend this proposed instruction applies to Plaintiffs' state law claims. Courts have recognized uses of force like the type at issue here as conduct falling within and deserving the protection of this immunity.  See, *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1075 (S.D. Cal. 1994) (holding that a sheriff's deputy was immune from state law tort claims under Government Code § 820.2 and 820.4, even when using deadly force).

## DISPUTED INSTRUCTION NO. 16

## IMMUNITY – LIABILITY OF PUBLIC EMPLOYEES

Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission.

Authority: California Government Code § 820.8

## PLAINTIFFS' OBJECTIONS TO
## DISPUTED INSTRUCTION NO. 16

Regarding Government Code § 820.8, courts have held that the statute—which generally shields public employees from liability for injuries caused by the acts or omissions of others—does not provide immunity against direct negligence claims. In *A.B. v. Cnty. of San Diego*, 112 Cal. App. 5th 404, 334 Cal. Rptr. 3d 245, 266–67 (2025), the court held that § 820.8 did not shield a sheriff from liability for the death of a man who died while being forcibly restrained by deputies, because the statute does not exonerate public employees from liability for injuries proximately caused by their own negligent or wrongful acts or omissions.

1

2

## DEFENDANTS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 16

3

4

5

6

7

If the jury concludes Leroy Stephenson's injuries/death and plaintiffs' damages sought by their negligence claim were the product of Leroy Stephenson's own malfeasance, then defendants are immune from liability on that claim. Further, defendants Norem and McKee are not liable for any injury or damages caused by the other or by other individuals involved in the incident.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 17**

**IMMUNITY – INJURY CAUSED BY ESCAPING ARRESTEE**

Neither a public entity nor a public employee is liable for any injury caused by a person resisting arrest.  Leroy Stephenson was resisting arrest at the time he was injured.

<u>Authority:</u> California Government Code § 845.8(b)(3)

## PLAINTIFFS' OBJECTIONS TO
## DISPUTED INSTRUCTION NO. 17

Under California Government Code § 845.8, police officers are not entitled to immunity from suit on claim alleging use of excessive force against suspect. *Lifton v. City of Vacaville*, 72 F. App'x 647 (9th Cir. 2003).

## DEFENDANTS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 17

This instruction supplements instructions regarding an individual's statutory duty to not resist arrest by explaining that a public employee and his/her employer are not liable for injury in such circumstances.

# DISPUTED INSTRUCTION NO. 18

## VICARIOUS LIABILITY

In this case Dane Norem and Jeffrey McKee were the employees of the State of California. If you find that Dane Norem or Jeffrey McKee were acting within the scope of their employment when the incident occurred, then the State of California is responsible for any harm caused by their negligence **<span style="color:red">or battery</span>**.

Authority: CACI No. 3703. Legal Relationship Not Disputed

1

2

## DEFENDANTS' OBJECTIONS TO
## DISPUTED INSTRUCTION NO. 18

3

4       Defendants object to the language in this instruction because there is no battery

5   claim alleged in the first amended complaint and the wrongful death claim does not

    properly assert a battery claim.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFFS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 18

See argument above regarding battery instruction.

Since the parties have stipulated that the defendant officers were acting within the scope of their employment, the State of California is vicariously liable for any harm caused by its employees under Plaintiffs' state law claims. The jury should be informed that the State of California is responsible for any harm caused by the defendants during this incident and be allowed to award damages accordingly.

## DISPUTED INSTRUCTION NO. 19

## UNUSUALLY SUSCEPTIBLE DECEDENT

You must decide the full amount of money that will reasonably and fairly compensate for all damages caused by the wrongful conduct of defendants McKee and Norem, even if Mr. Stephenson was more susceptible to injury than a normally healthy person would have been, and even if a normally healthy person would not have suffered similar injury.

Source: California Civil Jury Instructions (2025), 3928.

DEFENDANTS' OBJECTIONS TO
DISPUTED INSTRUCTION NO. 19

As the case noted in the use notes for CACI 3928 provides, the "instruction simply restates the principle that a tortfeasor may be held liable in an action for damages where the effect of his negligence is to aggravate a preexisting condition or disease. Plaintiff may recover to the full extent that his condition has worsened as a result of defendant's tortious act." *Ng v. Hudson*, 75 Cal. App. 3d 250, 255 (1977) (citations omitted, disapproved on another ground in *Soule v. G.M. Corp.* 8 Cal. 4th 548, 574 (1994); *accord Sanchez v. Kern Emergency Med. Transp. Corp.*, 8 Cal. App. 5th 146, 168 (2017).

Plaintiffs are not using the instruction as intended.  Plaintiffs are not claiming defendants aggravated a preexisting heart condition Leroy Stephenson may have had.

## PLAINTIFFS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 19

Mr. Stephenson had preexisting health conditions, including a heart condition, that made him more susceptible to serious injury or death from the force used against him. Allison Hunt, who performed Mr. Stephenson's autopsy, found that atherosclerotic cardiovascular disease was a contributing factor to his death. Under California law, this is precisely the circumstance in which the "eggshell plaintiff" instruction is warranted. The law is clear that a defendant is liable for all harm proximately caused by their wrongful conduct, even if the injured person was more fragile or susceptible to injury than an average healthy person, and even if a healthier person would not have been harmed.

Without this instruction, the jury may improperly shift the burden of Mr. Stephenson's physical vulnerability onto him rather than the party whose conduct caused his death. The instruction ensures the jury understands this fundamental principle of causation and damages.

## DISPUTED INSTRUCTION NO. 20
## DAMAGES – PROOF

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Plaintiffs on any of their claims, you must determine Plaintiffs' damages. Plaintiffs have the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiffs or decedent for any injury you find was caused by the defendants.

There are two categories of damages in this case. The first are the damages Leroy Stephenson sustained as a result of his death. The second are the damages his children Devonte, Keandre and Linden Stephenson sustained as a result of the death of Leroy Stephenson.

You should consider the following as to the Leroy Stephenson's damages:

1.  The nature and extent of the injuries;

2.  The loss of enjoyment of life experienced; and

3.  The mental, physical, and emotional pain and suffering experienced prior to death.

**In deciding Leroy Stephenson's life expectancy, you may consider, among other factors, the average life expectancy of a person of that age, as well as that person's health, habits, activities, lifestyle, and occupation. According to the National Vital Statistic Reports, the average life expectancy of a 48-year-old male is 78 years. This published information is evidence of how long a person is likely to live but is not conclusive. Some people live longer and others die sooner.**

You should consider the following as to the wrongful death damages for Plaintiffs **Devonte, Keandre and Linden Stephenson**:

1. The loss of the decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

2. Funeral and burial expenses.

**In deciding the life expectancy of Devonte, Keandre and Linden Stephenson, you may consider, among other factors, the average life expectancy of a person of that age, as well as that person's health, habits, activities, lifestyle, and occupation. According to the National Vital Statistic Reports, the average life expectancy of: (1) Devonte Stephenson, a 30-year old male is 76 years; (2) Keandre Stephenson, a 32-year old male is 76 years; and (3) Linden Stephenson, a 28-year old male is 76 years old. Again, this published information is evidence of how long a person is likely to live but is not conclusive. Some people live longer, and others die sooner.**

**In determining Devonte, Keandre and Linden Stephenson's loss, do not consider:**

**1.    Devonte, Keandre and Linden Stephenson's grief, sorrow, or mental anguish;**

**2.    Leroy Stephenson's pain and suffering; or**

**3.    The poverty or wealth of Devonte, Keandre and Linden Stephenson.**

**In computing these wrongful death damages, consider the losses suffered by all plaintiffs and return a verdict of a single amount for all plaintiffs.**

**I will divide the amount between the plaintiffs.**

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Source: Ninth Circuit Manual of Model Jury Civil Instructions Nos. 5.1, 5.2; CACI 3921**; CACI Life Expectancy Table – Male; *Hammonds v. Yeager*, 2017 U.S. Dist. LEXIS**

225742, at *12-13 (C.D. Cal. Aug. 9, 2017); *Allen v. Toledo*, 109 Cal. App. 3d 415, 424 (1980); Cal. Civ. Proc. Code § 377.61

.

JOINT DISPUTED JURY INSTRUCTIONS

<u>DEFENDANTS' OBJECTIONS TO</u>
<u>DISPUTED INSTRUCTION NO. 20</u>

Defendants object to this instruction without the additional language because the instruction is otherwise misleading and does not fully state the law and further clarifies the damages recoverable in this action by the plaintiffs in their different capacities.

Also, for wrongful death, one lump sum is awarded, and the court apportions the damages among the plaintiffs, Cal. Code Civ. Proc. § 377.61, or the plaintiffs agree on an apportionment after the jury returns a single verdict. *See Corder v. Corder*, 41 Cal. 4th 644, 654, n. 5 (2007); *Medina v. Pile Trucking, Inc.*, 594 F. App'x 358, 359 (9th Cir. 2015) ("The district court erred in providing the jury with a verdict form that included separate blank lines for the awards of damages to Juan and Ramona, allowing a jury verdict with two sums for damages. In a wrongful death action under California law, "'the court or jury must compute the damages, if any, by considering the pecuniary damage suffered by all the heirs and return a verdict for one sum.'" *Corder v. Corder*, 41 Cal. 4th 644, 61 Cal. Rptr. 3d 660, 161 P.3d 172, 176 (Cal. 2007) (quoting *Watkins v. Nutting*, 17 Cal. 2d 490, 110 P.2d 384, 388 (Cal. 1941))"). Defendants' requested language confirms the instruction to this rule, which exists in the instruction itself. *See* CACI 3921 ("In computing these damages, consider the losses suffered by all plaintiffs and return a verdict of a single amount for all plaintiffs. I will divide the amount among/between the plaintiffs.")

"The right to sue for wrongful death damages is a creature of statute, and exists only so far and in favor of such persons as the Legislature has provided." *Kim v. Yi*, 139 Cal. App. 4th 543, 546 (2006).

"Under California law, either the heirs or the personal representative on behalf of the heirs may bring a single joint indivisible action for wrongful death. This means that all heirs should join in a single action and there cannot be a series of suits by heirs against the tortfeasor for their individual damages. Any recovery for wrongful death is in the form of

a lump sum, i.e., a single verdict is rendered for all recoverable damages.  The respective rights of the heirs in any award are determined by the court based on the proportion that the heir's personal damage bears to the damage suffered by the others." *McDaniel v. Asuncion*, 214 Cal. App. 4th 1201, 1206-07 (2013) (citations omitted and emphasis added); *see also* Cal. Code Civ. Pro., § 377.61 ("In an action under this article, damages may be awarded that, under all the circumstances of the case, may be just, but may not include damages recoverable under Section 377.34. The court shall determine the respective rights in an award of the persons entitled to assert the cause of action.") (emphasis added); *Canavin v. Pac. Sw. Airlines*, 148 Cal. App. 3d 512, 533 (1983) (the Legislature found "it was more desirable not to add to the jury's burden the task of apportioning the damages and the practical consideration the trial judge had already heard the evidence of the pecuniary loss as to each heir and thus was the most desirable party to apportion the damages.") (citation omitted).

"Indeed, long before section 377.61 and its 1949 predecessor provided statutory authorization for judicial apportionment in wrongful death actions, the established procedure in this state where plaintiffs recovered judgment was for the court, in a separate proceeding, to apportion the amount to be awarded each heir.  Thus, judicial apportionment in a wrongful death action is consistent with historical precedent which has relied upon the equity powers of the court in dividing such funds, regardless whether the recovery was the result of compromise, settlement, litigation instituted by a personal representative of the decedent as a statutory trustee for the heirs, or trial litigation pursued by any of the heirs." *Corder*, 41 Cal. 4th at 654 n.5 (simplified); *see also Canavin*, 148 Cal. App. 3d at 529-36.

Plaintiffs' position is the verdict form should have separate questions for individual damage awards to each plaintiff.  Plaintiffs' position is contrary to the law.  Despite proffering Canavin as support, the case does not endorse a jury rendering separate individual wrongful death damage awards.

In *Canavin*, the court instructed the jury to return a single lump sum verdict on the plaintiffs' wrongful death claim. 148 Cal. App. 3d at 518. On appeal, the plaintiffs argued the failure to allow the jury to make separate awards to each plaintiff denied them their constitutional right to a jury trial. *Id.* After examining the historical practice and statutory direction, *id.* at pp. 529-36, the court concluded a single lump sum award to wrongful death plaintiffs did not implicate each plaintiffs' right to a jury trial and the trial court did not err in refusing to allow the jury to return separate damage verdicts for each plaintiff. *Id.* at 518.

The holding of *Canavin* does not support plaintiffs' position. Plaintiffs do, however, rely on dicta in *Canavin* for the proposition that "where all statutory plaintiffs, properly represented by legal counsel waive judicial apportionment, the trial court should instruct the jury to return separate verdicts." 148 Cal. App. 3d at 536.

This procedure contravenes § 377.61's plain and unambiguous language. The express provisions of § 377.61 -- enacted after *Canavin* -- provide in wrongful death cases that "[t]he court shall determine the respective rights in an award of the persons entitled to assert the cause of action. [Italics added]."

Because § 377.61 was adopted after Canavin, the Legislature likely chose not to adopt *Canavin*'s alternative procedure because it mandated that the court "shall" make the allocation. *See Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1253 (2018) ("A principle of statutory construction states the Legislature is deemed to be aware of existing statutes and judicial decisions when it adopts a statute.").

But more importantly, the California Supreme Court had repeatedly said, "the term 'shall' is interpreted as mandatory and not permissive. Indeed, 'the presumption [is] that the word "shall" in a statute is ordinarily deemed mandatory and "may" permissive.'" *People v. Standish*, 38 Cal. 4th 858, 869 (2006) (quoting *California Correctional Peace Officers Assn. v. State Personnel Bd.,* 10 Cal. 4th 1133, 1143 (1995)).

Accordingly, "[u]se of the mandatory language 'shall' [in § 377.61] indicates a legislative intent to impose a mandatory duty; no discretion is granted." *In re Luis B.*, 142 Cal. App. 4th 1117, 1123 (2006); *Kim*, 139 Cal. App. 4th at 548 ("[W]e are left with section 377.61, which provides that the court must apportion the award."); *People v. Yartz* (2005) 37 Cal. 4th 529, 538 ("If there is no ambiguity in the statutory language, its plain meaning controls; we presume the Legislature meant what it said.").)

Finally, on the issue of life expectancy, plaintiffs misread the use notes for CACI 3291. Life expectancy clearly applies to the damages plaintiffs seek. Leroy Stephenson seeks damages for his "loss of life." Plaintiffs seek damages for the loss of Leroy Stephenson's love, companionship, comfort, care, assistance, protection, affection, society, and moral support. Both categories of damage are necessarily limited to the life expectancy of Leroy Stephenson. Plaintiffs' position is absurd and would mean a jury could award damages based on a 200 year life expectancy for Leroy Stephenson. *See Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 800 (201) ("the plaintiff in a common law action for loss of consortium may not recover for loss during a period in which the companionship and affection of the injured spouse would have been lost anyway, irrespective of the defendant's wrongdoing, and therefore the life expectancy of the plaintiff and the life expectancy of the injured spouse, whichever is shorter, necessarily places an outer limit on damages."); *Francis v. Sauve*, 222 Cal. App. 2d 102, 120-21 (1963) ("We note that the court instructed the jury that in determining pecuniary loss they should consider inter alia the age, state of health and respective life expectancies of the deceased and each plaintiff but should be concerned only with 'the shorter of the life expectancies, that of one of the plaintiffs or that of the deceased. . . .' This was a correct statement of the law.").

JOINT DISPUTED JURY INSTRUCTIONS

## PLAINTIFFS' STATEMENT IN SUPPORT OF
## DISPUTED INSTRUCTION NO. 20

Defendants rely on the so-called "lump-sum" rule for wrongful death damages, but as the court explained in *Canavin v. Pac. Sw. Airlines*, 148 Cal. App. 3d 512, 535, 196 Cal. Rptr. 82, 97 (Ct. App. 1983), the principal reason for that rule is to avoid the difficulty of juries calculating separate awards where economic damages—such as lost financial support—are involved. That concern does not apply here because plaintiffs are not seeking that type of damages.

Moreover, Canavin makes clear that the lump-sum approach is procedural, not jurisdictional, and courts retain discretion to have the jury return separate awards where the circumstances warrant.

Here, the only wrongful death damages at issue are noneconomic—the loss of the decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support. These losses are deeply personal and will differ in nature and magnitude for each child. Leaving the damages determination to the jury on an individual basis is more consistent with the evidence and will yield a more accurate and just verdict. Barring some specific concerns, "where all statutory plaintiffs, properly represented by legal counsel waive judicial apportionment, the trial court should instruct the jury to return separate verdicts." *Canavin v. Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 536.; *see also Corder v. Corder*, 41 Cal. 4th 644, 661 (2007) ("[T]he wrongful death statute recognizes that each heir has a personal and separate claim.").

Plaintiffs also object to including any information about life-expectancy in this instruction. The *Directions for Use* for CACI 3921 explains that the life expectancy instruction "is intended to apply to the element of damages pertaining to the financial support that the decedent would have provided to the plaintiff." There are no such claims in this case. These paragraphs would unnecessarily lengthen the damages instruction.

Additionally, Plaintiffs seek wrongful death damages under the Fourteenth Amendment, and Defendants' arguments for "lump-sum" damages rely solely on state

law. It would be far better for the jury to make the difficult determination of how to

compensate each Plaintiff for their particular loss, based on their testimony regarding their

relationship with the Decedent. The Court can avoid creating an unnecessary post-trial

issue by addressing this now through the verdict form.