1   ROB BONTA
    Attorney General of California
2   DONNA M. DEAN
    Supervising Deputy Attorney General
3   DAVID KLEHM
    Deputy Attorney General
4   State Bar No. 165302
    STEPHANIE A. VOLLMER
5   Deputy Attorney General
    State Bar No. 309407
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 510-3849
     Fax:  (415) 703-5480
8    E-mail: David.Klehm@doj.ca.gov;
     Stephanie.Vollmer@doj.ca.gov
9   *Attorneys for Defendants State of California, acting
    by and through the California Highway Patrol, and*
10  *Dane Norem*

11              IN THE UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14

15  **DEVONTE STEPHENSON,**          5:21-cv-00526-JWH (KKx)
    **individually and as successor in**
16  **interest to Decedent LEROY**   **DEFENDANTS STATE OF**
    **STEPHENSON; LINDEN**           **CALIFORNIA'S, ACTING BY AND**
17  **STEPHENSON, individually and as**  **THROUGH THE CALIFORNIA**
    **successor in interest to Decedent**  **HIGHWAY PATROL, DANE**
18  **LEROY STEPHENSON; KEANDRE**    **NOREM'S, AND JEFFREY**
    **STEPHENSON, individually and as**  **MCKEE'S JOINT OPPOSITION**
19  **successor in interest to Decedent**  **TO PLAINTIFFS' MOTION IN**
    **LEROY STEPHENSON,**            **LIMINE NO. 1 TO EXCLUDE**
20                                   **EVIDENCE OF DECEDENT'S**
                                     **ALLEGED MENTAL HEALTH**
                        Plaintiffs,  **ISSUES AND ALLEGED HISTORY**
21                                   **OF DRUG USE**
22       v.
                                     *[Filed Concurrently with Declaration*
23  **STATE OF CALIFORNIA; and**     *of Stephanie A. Vollmer in support of*
    **DOES 1 through 100, inclusive,**  *Opposition to MIL No. 1]*
24
                        Defendants.  Date:      August 25, 2025
25                                   Time:      1:30 p.m.
                                     Courtroom: 10B
26                                   Judge:     The Honorable John A.
                                                Kronstadt
27                                   Trial Date:  September 9, 2025
                                     Action Filed:  12/18/2019
28

                                    1

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.     PRELIMINARY STATEMENT**

3          On a Thursday afternoon, January 24, 2019, starting at around 12:20 p.m.,

4   more than a dozen alarmed motorists called 911 to report a man walking in and

5   across multiple lanes of high-speed traffic on State Route (SR)-91 in Riverside

6   County. This man, later identified as Leroy Stephenson, was also reported by

7   passing motorists as jumping over the freeway's median barrier. Callers further

8   reported that Mr. Stephenson was seen in both east- and westbound lanes on the

9   freeway. Essentially, Mr. Stephenson was alternately running and walking back and

10  forth across both the eastbound and westbound lanes of  SR-91 in broad daylight,

11  dodging cars as they passed at high speeds. Riverside Police Department officers

12  managed to chase Mr. Stephenson off the freeway before he caused a serious

13  accident, but they lost him on surface streets. Around 12:40 p.m., Mr. Stephenson

14  returned to his dangerous conduct on SR-91, resulting again in numerous concerned

15  drivers calling 911. And this was not the first time Mr. Stephenson engaged in this

16  extremely dangerous conduct, which posed significant risks not only to himself but

17  also to the motoring public.

18         The instant litigation arises from the January 24, 2019, incident. Specifically,

19  it arises from the reasonable and critically necessary efforts to try and contain Mr.

20  Stephenson and to prevent him from continuing to run onto SR-91 and into the

21  direct path of oncoming cars travelling at freeway speeds.

22         When CHP Officer Dane Norem arrived on scene, Mr. Stephenson was

23  walking down the Adams Street off-ramp, against traffic. Officer Norem directed

24  Mr. Stephenson to the off-ramp's shoulder (away from SR-91). Rather than heed

25  the directive, Mr. Stephenson bolted to his right, directly toward the freeway that

26  was just yards away.

27         Recognizing the danger Mr. Stephenson posed by running into SR-91 traffic,

28  Officer Norem immediately pursued Mr. Stephenson. At six-foot, four inches tall,

1   230 pounds, and high on methamphetamine, Mr. Stephenson aggressively resisted

2   all attempts to restrain him. Two Taser deployments were wholly ineffective.

3   Finally, with the help of others, including good Samaritans who rushed from their

4   cars to assist after recognizing the difficulty that Officer Norem – the only law

5   enforcement officer on scene – had controlling Mr. Stephenson and how dangerous

6   the situation was given Officer Norem and Mr. Stephenson were in the "gore

7   point," parallel to the off-ramp and only inches from the swiftly moving freeway

8   traffic in the far-right lane of SR-91, Mr. Stephenson was prevented from re-

9   entering the traffic lanes. Ultimately, Mr. Stephenson was detained and handcuffed.

10   Shortly thereafter, Mr. Stephenson appeared to lose consciousness and ceased

11   breathing. Despite life-saving measures by trained personnel, Mr. Stephenson was

12   later pronounced dead at Parkview Community Hospital in Riverside.

13          Relevant here, Plaintiff's Motion in Limine No. 1 ("Motion") seeks to

14   "exclude any evidence, testimony, argument, or reference at trial to Mr.

15   Stephenson's alleged mental health issues and alleged history of drug use, including

16   but not limited to hospital records from Riverside Community Hospital Medical

17   Center, Riverside University Health System, Public Intoxication records from an

18   incident that occurred in March 2017, and the Coroner's Autopsy Report." Dkt. 126

19   (Motion, pps. 1-2, lns. 27-28; 1-4.) The body of the motion requests an order

20   excluding references to "Riverside Community Hospital records to alleged

21   methamphetamine use or homelessness;" "[t]he March 2017 public intoxication

22   records referencing alleged methamphetamine use and Mr. Stephenson speaking to

23   himself;" and "[a]ny portion of the Coroner's Autopsy Report referencing alleged

24   drug abuse, schizophrenia, or depression." *Id.* at p. 5, lns. 22-27. In sum, Plaintiffs

25   do not want the jury to know the true facts about this incident. This is particularly

26   true regarding the Autopsy Report, which concluded Mr. Stephenson died from

27   acute methamphetamine intoxication. (Declaration of Stephanie A. Vollmer

28   (Vollmer Decl.), Exh. 1, Autopsy Report.)

3

1   Through this litigation, Defendants have learned about Mr. Stephenson's

2   drug use history and mental health issues, both on the day of the incident and for

3   years prior, which demonstrate a pervasive and persistent drug use history and

4   significant mental health issues, each of which dramatically impacted Mr.

5   Stephenson's life and, the lives of his family, through repeated arrests and repeated

6   incidents of dangerous behavior.

7   Evidence of Mr. Stephenson's mental health and methamphetamine

8   intoxication on the day of the incident is probative of Officer Norem's perceptions

9   of Mr. Stephenson's conduct during the incident. Mr. Stephenson's acute

10   methamphetamine intoxication on the day of the incident is also highly probative of

11   his cause of death. Again, the Autopsy Report lists it as the cause of death. Such

12   evidence is also relevant to Mr. Stephenson's comparative fault in the incident,

13   which the jury must assess in resolving the state law negligence claims.

14   Mr. Stephenson's mental health and drug use are relevant to plaintiffs' claims

15   for damages, which seek compensation for Mr. Stephenson, measured by the

16   quality of the life he lost, and for Plaintiffs, who seek damages measured by the

17   loss of their relationship with Mr. Stephenson, which, again, is measured by the

18   quality of that relationship.

19   **II.   EVIDENCE OF MR. STEPHENSON'S DRUG USE AND MENTAL**

20   **HEALTH ISSUES ON THE DAY OF THE INCIDENT IS RELEVANT**

21   **TO CORROBORATE DEFENDANTS' VERSION OF THE FACTS**

22   "Evidence is relevant if it has '*any* tendency to make the existence of any fact

23   that is of consequence to the determination of the action more probable or less

24   probable than it would be without the evidence.'" *United States v. Stever*, 603 F.3d

25   747, 753 (9th Cir. 2010) (quoting Fed. R. Evid. 401, emphasis in original). Here,

26   there are two separate, although intimately related, issues for the jury to decide in

27   this action. First, "whether [defendant's] actions [were] 'objectively reasonable' in

28   light of the facts and circumstances confronting [him]." *Graham v. Connor*, 490

4

1   U.S. 386, 397 (1989). Second, what were those "facts and circumstances" that

2   Officer Norem faced? These are questions for the jury to decide. The evidence at

3   issue is thus relevant because the facts relating to Officer Norem's attempts to

4   restrain Mr. Stephenson, and the eventual restraint of Mr. Stephenson for the safety

5   of all involved, are contested by the parties.

6        A peace officer is permitted to introduce evidence of facts that were

7   unknown to him at the time of the incident where such facts corroborate or increase

8   the likelihood of the existence of facts that were observed and relied upon by the

9   officer in the officer's decision to use force during the incident. *Boyd v. City and*

10   *County of San Francisco*, 576 F.3d 938 (9th Cir. 2009); *see also*, *Graham*, 490 U.S.

11   at 399, n. 2; *id.* at 399, n. 12 (factfinder may consider outside evidence "in assessing

12   the credibility of an officer's account of the circumstances that prompted the use of

13   force"); *Estate of Chum v. City of Los Angeles*, 585 Fed. Appx. 435, 436 (9th Cir.

14   2014), citing *Boyd,* 576 F.3d at 943-45 ("Because the challenged testimony made

15   [defendant's] account more probable, the testimony was relevant, and the district

16   court did not abuse its discretion by admitting it").

17        Thus, in an excessive force case, like this one, "where what the officer

18   perceived just prior to the use of force is in dispute, evidence that may support one

19   version of events over another is relevant and admissible." *Boyd*, 576 F.3d at 944.

20   In *Boyd*, the Ninth Circuit upheld the trial court's ruling that allowed evidence that

21   a decedent had been on drugs at the time of a police shooting because the evidence

22   was "highly probative of decedent's conduct, particularly in light of [the

23   decedent's] erratic behavior." *Id.* at 949. Thus, facts unknown to the officer were

24   relevant because they helped the jury decide what actually happened by giving

25   insight into the decedent's intent, which would corroborate either the plaintiff's, or

26   the officer's, version of events.

27        Evidence of drug intoxication is relevant to explain irrational behavior. *See,*

28   *e.g.*, *Estate of Lopez by Lopez v. City of San Diego*, 2018 WL 620089, *5 (S.D. Cal.

1    Jan. 30, 2018); *Boyd*, 576 F.3d at 943-945; *Turner v. White*, 980 F.2d 1180, 1182-

2    1183 (8th Cir. 1992) (evidence of alcohol consumption found relevant to the

3    question of the decedent's "actions and reactions" to the officer's commands and to

4    the "jury's assessment" of the situation); *Saladino v. Winkler*, 609 F.2d 1211 (7th

5    Cir. 1979) (evidence of a plaintiff's intoxication is admissible to show that his

6    judgment was impaired at the time the alleged use of excessive force occurred); *see*

7    *also Dibbern v. City of Bakersfield*, No. 1:22-cv-00723-CDB, 2024 U.S. Dist.

8    LEXIS 155671, at *10-11 (E.D. Cal. Aug. 29, 2024) ("Here, as in *Boyd*, the parties'

9    proffer of facts reveals disputed characterizations of the incident that may be

10   bolstered or undermined by evidence that Plaintiff was on drugs at the time.

11   [Citations]. Accordingly, evidence of Plaintiff's drug intoxication is relevant and

12   may be admitted."); *Diaz v. Cnty. of Ventura*, No. CV 19-4695-DMG (AGRx),

13   2021 U.S. Dist. LEXIS 245752, 2021 WL 6752003, at *4 (C.D. Cal. Nov. 22,

14   2021) (admitting evidence of decedent's methamphetamine intoxication even

15   though unknown to the officer because decedent's "erratic behavior … squarely at

16   issue at trial").

17   **III.    EVIDENCE OF MR. STEPHENSON'S DRUG USE IS RELEVANT TO**

18   **HIS CAUSE OF DEATH**

19         As discussed above, the medical examiner determined that Mr. Stephenson's

20   death was caused by acute methamphetamine intoxication. Plaintiffs intend to

21   present testimony from their expert, Dr. Bennett Omalu to the contrary and to argue

22   that Mr. Stephenson's death was caused by the actions of the defendants. Given that

23   the cause of Mr. Stephenson's death is a key issue in this case, the evidence

24   regarding Mr. Stephenson's drug use on the date of the incident is relevant

25   Plaintiffs' reliance of *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th

26   Cir.) is misplaced because that case does not discuss the introduction of evidence of

27   drug use when the decedent's cause of death was determined to be drug

28   intoxication.

1  **IV.   EVIDENCE OF MR. STEPHENSON'S PAST HISTORY OF DRUG**

2  **USE AND MENTAL HEALTH ISSUES ARE ALSO RELEVANT TO**

3  **PLAINTIFFS' DAMAGES CLAIMS**

4        Plaintiffs seek "loss of life" damages. These damages, otherwise known as

5  "hedonic" damages, "purport to compensate a victim for the lost pleasure he would

6  have enjoyed from his life." *Valenzuela v. City of Anaheim*, 29 F.4th 1093, 1096

7  (9th Cir. 2022).

8        Plaintiffs also seek their own wrongful death damages for diminishment in

9  the love, care and affection from Mr. Stephenson which is measured by the quality

10  of the relationship.

11        These damage claims are blunted by Mr. Stephenson's prior history of drug

12  use and mental health instability for at least three reasons. First, Mr. Stephenson's

13  drug use and mental health issues are relevant to a jury's fair assessment of Mr.

14  Stephenson's life expectancy. Second, this evidence is also relevant and probative

15  of the nature, depth and quality of Plaintiffs' respective relationships with Mr.

16  Stephenson. Third, this evidence is relevant to plaintiffs'  claim for damages for

17  Mr. Stephenson's "loss of enjoyment of life." Accordingly, Plaintiffs' Motion

18  should be denied.

19        Indisputably, Mr. Stephenson's life expectancy is at issue in this "wrongful

20  death" case. *See*, *Francis v. Sauve*, 222 Cal. App. 2d 102, 121 (1963); *see also*,

21  *Parsons v. Easton*, 184 Cal. 764, 770-771 (1921) ("It is the shorter expectancy of

22  life that is to be taken into consideration [in computing wrongful death damages];

23  for example; if as in the case here, the expectancy of life of the parents is shorter

24  than that of the son, the benefits to be considered are those only which might accrue

25  during the life of the surviving parents."); *see also*, *McAsey v. U.S. Department of*

26  *Navy*, 201 F.Supp.2d 1081, 1097 (N.D. Cal. 2002) ("In wrongful death actions,

27  damages for pecuniary loss are limited by the life expectancy of the decedent

28  immediately before he sustained the injuries which caused his death.") (internal

1    citations omitted).

2          Here, the defense has uncovered evidence that Mr. Stephenson abused drugs

3    (methamphetamine) with vigor – including on the day of the incident. Courts have

4    repeatedly found that such self-destructive conduct is directly relevant in "wrongful

5    death" trials because it enables the jury to fairly assess a decedent's true "life

6    expectancy." *See*, *Nelson v. County of Los Angeles*, 113 Cal. App. 4th 783, 793

7    (2003) (finding decedent's "drug" history relevant to "wrongful death" damages

8    issues); *see also*, *Fife v. Bailey*, 2016 WL 1404202 (M.D. Pa. 2016) (finding "prior

9    . . . drug history" is relevant and admissible to impeach plaintiff's future earning

10   capacity and life expectancy claims at trial.); *see also*, *Allen v. Toledo*, 109 Cal.

11   App. 3d 415, 424 (1980) ("The life expectancy of the deceased is a question of fact

12   for the jury to decide considering all relevant factors including the deceased's

13   *health*, *lifestyle* and occupation") (emphasis added.).

14         Drug abuse is also relevant to assist the jury's evaluation of the quality of

15   Plaintiffs' relationship with Mr. Stephenson – another key issue in "wrongful

16   death" trials. Federal courts in California have repeatedly found as much. *See*, *e.g.*,

17   *Nehad v. Browder*, 2016 WL 1428069, at *2 (S.D. Cal. 2016) (the extent to which

18   decedent "had substance abuse issues may have affected Decedent and his family

19   relationships"); *Castro v. City of Los Angeles*, 2015 WL 4694070, at *7 (C.D. Cal.

20   Aug. 3, 2015) (A "decedent's history of drug use is relevant to proof of . . .

21   noneconomic damages . . .. If decedent had a significant drug problem at the time of

22   the incident, his relationship with his wife and children could have been adversely

23   affected prior to his death which may be related to their loss of consortium and loss

24   of society claims.") (quoting *Aguilar v. City of Fresno*, 2009 WL 3617984, at *5

25   (E.D. Cal. Oct. 29, 2009)); *Martinez v. City of Pittsburg*, 2018 WL 2946368, at *3

26   (N.D. Cal. 2018) ("Defendants are entitled to a complete view of Decedent's

27   health" to defend "wrongful death" case and Decedent's medical records were

28   "relevant to determining wrongful death damages, which considers the life

8

1   expectancy of the deceased.").[1]

2       All of these cases are grounded in the commonsense reality that ingestion of

3   illegal drugs presents health risks that can, and do, impact relationships and life

4   expectancy. *See*, CACI Jury Instruction No. 3921(wrongful death damages

5   calculations require the jury to evaluate decedent's "*health*, habits, *activities* [and]

6   *lifestyle*….") (emphasis added); *see also*, *Witkin, Summary of Cal. Law,* Wrongful

7   Death, § 181.17 (10th ed. 2015) ("[E]vidence that [parties' relationship] was

8   strained and unhappy at the time of death may suffice to negate or minimize a

9   surviving [heir's] damages for loss of the decedent's society, comfort, and

10  protection."); *Benwell v. Dean*, 249 Cal. App. 2d 345, 353 (1967) ("'It is always

11  proper to make proof of the relations of the decedent to the person for whose

12  benefit the action is being maintained, because such proof has a bearing upon the

13  pecuniary loss suffered by the person entitled to recovery…'").

14      Plaintiffs' cases that pre-date the 2022 decision in *Valenzuela v. City of*

15  *Anaheim,* which allowed for loss of life damages in Fourth Amendment cases are

16  inapt and should be disregarded.

17      Courts have continuously held that a decedent's mental health is relevant to

18  damages. *Sesma v. State of California*, 21-cv-01694-JWH-DTB, Doc. 112, pp. 8-10

19  (finding decedent's mental health evidence admissible on damages); *Lindsey v. City*

20  *of Pasadena*, 2018 WL 6164262, at *2 (C.D. Cal. Jan. 9, 2018) ("Plaintiffs' request

21  _____

22  [1] These California holdings also represent the rule nationally. *See, e.g., Cobige v.
    City of Chicago*, 651 F.3d 780, 784-85 (7th Cir. 2011) (admitting drug history
    evidence as it "potentially affect[s] not only the damages recoverable . . . for loss of
23  companionship but also the damages for [plaintiff's] loss of the enjoyment of life.";
    although this type of evidence may be unfavorable to a party, it does not create
24  "'prejudice' at all . . . let alone 'unfair prejudice.'"); *Estate of Gee v. Bloomington
    Hosp.*, 2012 WL 639517 (S.D. Ind. 2012) ("Simply stated, [decedent] was not a
25  saint. He had a rap sheet; he used alcohol and *intravenous drugs* [and] he *abused
    prescription medications*. . .. Plaintiff seeks to bar this evidence by highlighting
26  principles of relevance and prejudice, and the rule that character evidence is not
    admissible for the purpose of proving action in conformity therewith. . ..Of course,
27  none of this evidence is relevant to the question of liability . . .. In contrast, at least
    some of this evidence is *extremely relevant to damages*....") (emphasis added.).

28

1   for damages places decedent's medical and mental health prior to the incident at

2   issue, as the documents would be relevant to decedent's ability to provide care,

3   sustenance, comfort, and society to Plaintiffs."); *Silva v. Chung*, 2019 WL

4   2292073, at *6 (D. Haw. May 29, 2019) ("Defendants are able to inquire with

5   witnesses about the Decedent's quality of life, including his history of drug abuse

6   and mental illness for purposes of damages. [¶] The Decedent's history of drug

7   abuse and mental health treatment are relevant to the issue of life expectancy,

8   occupation, and enjoyment of life."); *Nehad v. Browder*, 2016 WL 1428069, at *2

9   (S.D. Cal. Apr. 11, 2016) (finding mental health of decedent relevant to damages

10   for impairment of relationship with decedent); *Arellano v. City of Santa Ana*, 2015

11   U.S. Dist. LEXIS 200531, at *4-5 (C.D. Cal. Dec. 29, 2015) ("By seeking damages

12   for the loss of decedent's financial and emotional support, Plaintiffs have made

13   decedent's mental health relevant.").

14          Mental health, among other things, is relevant evidence for the jury to consider

15   in evaluating the quality of Mr. Stephenson's life. *Silva*, *supra*, 2019 WL 2292073,

16   at *6; *McCoy v. City of Vallejo*, 2023 WL 7927967, at *4 (E.D. Cal. Nov. 16, 2023)

17   ("[I]nformation regarding Mr. McCoy's physical and mental health .... would be

18   relevant to how Mr. McCoy lived and his life expectancy and therefore relevant to

19   damages.").

20          In the instant matter, evidence of Mr. Stephenson's mental health is not only

21   relevant to the "wrongful death" damages, but it is also relevant to Plaintiffs' claim

22   for Mr. Stephenson's "loss of life" damages. These damages, again, "purport to

23   compensate a victim for the lost pleasure he would have enjoyed from his life."

24   *Valenzuela, supra*, 29 F.4th at 1096.

25   **V.     EVIDENCE OF MR. STEPHENSON'S DRUG USE IS ALSO**

26   **        RELEVANT TO PLAINTIFFS' STATE LAW CLAIM FOR**

27   **        NEGLIGENCE**

28          In addition to their federal claims of excessive force, plaintiffs assert a state

1   law claim based on negligence. Evidence that Mr. Stephenson was under the

2   influence of methamphetamine at the time of the incident is unquestionably

3   probative of his contributory negligence and comparative fault. Courts have held

4   that evidence of intoxication is relevant and admissible for purposes of establishing

5   contributory negligence. *See, e.g., Jackson v. County of San Bernardino*, 194 F.

6   Supp. 3d 1004, 1010-11 (C.D. Cal. 2016) (in action where the plaintiff pursued

7   negligence claim, in addition to force claim, evidence that he was intoxicated was

8   relevant); *Estate of Casillas v. City of Fresno*, 2019 WL 586747, at *4 (E.D. Cal.

9   Feb. 13, 2019) (denying the plaintiffs' motion in limine to exclude evidence of

10  decedent's intoxication during the incident - plaintiffs asserted excessive force and

11  negligence). *Turner v. County of Kern*, 2014 WL 560834, at *3 (E.D. Cal. Feb. 13,

12  2014) (denying the plaintiffs' motion in limine to exclude decedent's intoxication

13  during the incident because the "evidence is relevant … to explain Turner's conduct

14  …."); *Willis v. City of Fresno*, 2014 WL 1419239, at *22 (E.D. Cal. Apr. 14, 2014)

15  ("Evidence of intoxication and drug use is relevant to explain Stephen Willis's

16  conduct and may tend to corroborate the officers' version of events, even if this

17  same evidence is not admissible towards the objective reasonableness of the

18  officers' conduct.")

19  **VI.   EVIDENCE OF MR. STEPHENSON'S DRUG USE SHOULD NOT BE**

20  **EXCLUDED AS CHARACTER EVIDENCE**

21       Defendants do not seek to have the evidence admitted as character evidence,

22  but rather to explain Mr. Stephenson's conduct, to corroborate defendants' account

23  of the incident, to establish comparative fault, and to counter plaintiffs' damages

24  claims. [2] While evidence of prior bad acts is inadmissible "to prove the character of

---

25       [2] Should Plaintiffs introduce evidence of Mr. Stephenson's "good" character
26  and the relationship they had with him, the defense will seek to rebut the character
    evidence by way of introducing evidence of Mr. Stephenson's drug use. *See*
27  Advisory Committee Notes to Rule 404. Moreover, Plaintiffs Linden and KeAndre
    Stephenson testified that their father did not do drugs and did not have any mental
28  health issues. If they are permitted to testify that he did not do drugs and/or that he
                                                                    (continued…)

1  a person in order to show action in conformity therewith," (Fed. R. Evid. 404(b)),

2  such evidence is admissible for other purposes, "such as proof of motive,

3  opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

4  accident ...." *Id*. "Unless the evidence of other crimes tends to only prove

5  propensity, it is admissible. *United States v. Jackson*, 84 F.3d 1154, 1159 (9th Cir.

6  1996) (internal quotation marks omitted). The intent behind the character evidence

7  rule is not to "flatly prohibit the introduction of such evidence," but to limit the

8  purpose for which it may be introduced. *Huddleston v. United States*, 485 U.S. 681,

9  687 (1988).

10       Here, Mr. Stephenson's drug use provides a motive for his aggressive

11  resistance to detainment. It helps explain the sheer physical strength available to

12  Mr. Stephenson while he fought attempts to keep him from running back onto the

13  freeway. Mr. Stephenson's drug use and mental state also help explain his inability

14  to comprehend or appreciate the consequences of walking on a freeway amid high-

15  speed traffic, and the danger it created for him, the officers, and the motorists alike.

16  Even as Officer Norem struggled to contain Mr. Stephenson inches from moving

17  freeway traffic, Mr. Stephenson aggressively resisted attempts to ensure his own

18  safety, showing no regard for, or cognizance of, the fact that a continued struggle

19  could catapult him and others directly into high-speed freeway traffic. Thus, this

20  evidence is relevant to show Mr. Stephenson's motive and intent and to corroborate

21  defendants' version of the events. Additionally, Mr. Stephenson's drug use speaks

22  to the damages claims being made in this case. Such evidence is therefore not being

23  offered to prove conformity of Mr. Stephenson with a particular character trait

24  during the incident.

25  **VII.   EVIDENCE OF DECEDENT'S DRUG USE SHOULD NOT BE**

26  **EXCLUDED UNDER RULE 403**

27  _____

28  did not have any mental health issues, then evidence related to his past drug abuse and mental health issues will come in to rebut that testimony.

1    Relevant evidence may be excluded under Rule 403 only if its probative

2    value is "substantially" outweighed by an articulated danger or concern within the

3    rule. This requires the court to compare the probative value of the evidence against

4    the articulated reasons for its exclusion, "and permits exclusion only if one or more

5    of those reasons 'substantially outweigh' the probative value." *United States v.*

6    *Hankey,* 203 F.3d 1160, 1172 (9th Cir. 2000).

7    Use of Rule 403 to exclude evidence should be done sparingly and

8    cautiously. *Hankey,* 203 F.3d at 1172. Evidence must concededly be relevant for

9    the rule to even apply. *United States v. Madruga,* 897 F.2d 1099, 1117 (11th Cir.

10    1990). All relevant evidence is inherently prejudicial, but it is only "unfair"

11    prejudice that can tip the scales to provide a basis for exclusion. *Hankey,* 203 F.3d

12    at 1172. The balance under the rule should be struck in favor of admissibility.

13    *Blancha v. RaymarkIndustries,* 972 F.2d at 507, 516 (3rd Cir. 1992). Accordingly,

14    if the evidence's probative value, and the danger of its use, are of relatively equal

15    weight, the evidence should be admitted. *Id.*

16    Plaintiffs argue that the evidence of Mr. Stephenson's "drug use,

17    schizophrenia, or homelessness" will evoke an "emotional reaction rather than a

18    reasoned evaluation of the facts." Dkt. 126 (MIL No. 1, p. 5, lns. 1-5.) Mr.

19    Stephenson's drug use, mental health, and living arrangements are facts. Moreover,

20    they are facts that have a direct bearing on this case. Plaintiffs' argument that they

21    would be forced to rebut these "collateral allegations" in "mini trials on unrelated

22    events from years before" Mr. Stephenson's passing is a red herring. *Id.* at lns. 5-6.

23    Mr. Stephenson was a present-day drug user with active mental health issues, which

24    collaterally impacted his ability to secure and maintain permanent housing. The

25    evidence of Mr. Stephenson's drug use and mental health on January 24, 2019,

26    corroborates defendants' account and helps explain Mr. Stephenson's intense

27    resistance to being detained. The evidence also helps explain Mr. Stephenson's

28    capacity to generate the intense physical resistance that he did, which necessitated

the assistance of numerous individuals. In addition, the evidence of Mr. Stephenson's past drug use and mental health issues is key to Plaintiffs' damages claims based on their alleged loss of comfort and society and Mr. Stephenson's loss of enjoyment of life, as well as Mr. Stephenson's longevity.

## VIII.    THE EVIDENCE TO BE OFFERED ON THESE ISSUES IS NOT SUBJECT TO EXCLUSION BASED ON HEARSAY

Plaintiffs contend that portions of the evidence are subject to hearsay objections. Dkt. 126 (MIL No. 1, p. 5, lns. 12-15.) Plaintiffs contend no exceptions apply. *Id.* at ln. 15. Plaintiff is mistaken. The records are admissible because they fit within the hearsay exceptions for business records (Fed. R. Evid. 803(6)).

Moreover, the statements in the records are not hearsay under Rule 803(3), 803(4) and 803(6). *See United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005) ("The medical records from Hawkins' hospital visit and the notes of Hall's parole officer were records kept in the ordinary course of business, classic exceptions to the hearsay rule. Fed. R. Evid. 803(6). Hawkins' statements to Dr. Grover, including that her live-in boyfriend had caused her injuries, were statements made for the purpose of medical diagnosis or treatment, and also hearsay exceptions.").

Plaintiffs erroneously contends that Defendants will be unable to provide sufficient evidence regarding his drug abuse and mental health history because any such records are subject to exclusion based on hearsay. Defendants will present testimony from the custodians of records to establish these hearsay exceptions.

## IX.    CONCLUSION

Based on the foregoing, Defendants respectfully request this Court deny Plaintiffs' Motion in Limine No. 1 to Exclude Evidence of the Mr. Stephenson's Alleged Mental Health Issues and Alleged History of Drug Use.

1    Dated:  August 18, 2025                 Respectfully submitted,

2                                             ROB BONTA
Attorney General of California

3                                             DONNA M. DEAN
Supervising Deputy Attorney General

4

5                                             *s/ Stephanie A. Vollmer*

6                                             DAVID KLEHM
STEPHANIE A. VOLLMER
Deputies Attorney General

7                                             *Attorneys for Defendants State of*
*California, acting by and through the*

8                                             *California Highway Patrol, and Dane*
*Norem*

9

10

11

12    DATED:  August 18, 2025                 DEAN GAZZO ROISTACHER

13

14                           By:     *s/ Lee H. Roistacher*

15

16                                         Lee H. Roistacher, Esq.
Kimberly A. Sullivan, Esq.

17                                         *Attorneys for Defendant Jeffrey McKee*

18

19

20

21

22

23

24

25

26

27

28