Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
Kimberly A. Sullivan, Esq. (317857)
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Telephone: (858) 380-4683
Facsimile: (858) 492-0486
E-mail: lroistacher@deangazzo.com
ksullivan@deangazzo.com

Attorneys for Defendant
Jeffrey McKee

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DEVONTE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; LINDEN STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; KEANDRE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON,

Plaintiffs,

v.

STATE OF CALIFORNIA; COUNTY OF RIVERSIDE; DANE NOREM; JEFFREY MCKEE; MATT BORDEN; and DOES 1 through 100, inclusive,

Defendants.

Case No.: 5:21−cv−00526−JAK−DTBx

**DENFENDANTS' NOTICE OF INTENTION TO OFFER EXCERPTS FROM DEPOSITION TRANSCRIPT OF SHAWN CASTEEL AT TRIAL**

Judge: John A. Kronstadt
Mag. Judge David T. Bristow

Complaint Filed: March 24, 2021
Trial Date: September 9, 2025

Defendants intend to offer the following excerpts from the deposition transcript of Shawn Casteel at trial.

Plaintiffs note that they have prepared certain counter-designations to be included only if the Court determines that Defendants' designations are admissible. However, Plaintiffs maintain that no portion of this deposition should

be read to the jury. *See* Plaintiffs' Motion in Limine No. 2, ECF No. 129 (citing FRE 401, 402, 403, 404, and supporting case law); Order re Motions in Limine, ECF No. 165 at 1 (granting Motion in Limine No. 2 in part and denying it in part); and Plaintiffs' September 14, 2025 Trial Brief, ECF No. 173 (arguing that Casteel should not testify and his deposition should not be read). Plaintiffs' objections to this deposition testimony largely repeat the arguments set forth in the above-referenced briefing, which Plaintiffs incorporate herein by reference.

It is Defendants' position that Casteel's testimony corroborates the testimony of Officer Norem and what he faced on the date of the incident, including Stephenson's combative and resistive nature, and Stephenson running into traffic when he saw law enforcement. See *Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009) (peace officer is permitted to introduce evidence of facts that were unknown to him at the time of the incident where such facts corroborate or increase the likelihood of the existence of facts that were observed and relied upon by the officer in the officer's decision to use force during the incident.) Norem and McKee learned information from dispatch about Stephenson being on the freeway prior to their arrival, which goes to the totality of the circumstances. Moreover, this Court did not rule that Casteel's testimony was excluded but that it was admissible for the reasons just stated.

**DEFENDANTS' DESIGNATIONS**

| Page Line | Testimony | OBJ | RESP | Court Ruling |
|---|---|---|---|---|
| Page 7, lines 12-15 | Q Would you please state and spell your full name for the record? | See Plaintiffs' trial brief | This testimony merely | Sustained__ Overruled__ |

| | | | | |
|---|---|---|---|---|
| | A Yes. It's Shawn Patrick Casteel. S-H-A-W-N, P-A-T-R-I-C-K, last name C-A-S-T-E-E-L. | arguing that Casteel should not testify. ECF No. 173. FRE 401/402. | provides the deponent's name. | |
| Page 21, line 23 – page 22, line 3 | Q Okay. So your last employer as a law enforcement officer was where?<br>A City of Riverside.<br>Q And from when to when did you work as a law enforcement officer for the City of Riverside?<br>A June 29th of 1999 until April 7th of 2022. | See Plaintiffs' trial brief arguing that Casteel should not testify. ECF No. 173. FRE 401/402. | Testimony related to Casteel's background qualifications is necessary foundation evidence for his observations and the impressions he formed related to Stephenson. | Sustained__<br>Overruled__ |
| Page 23, line 2 – page 25, line 17 | Q So at the time of our incident in January 2019, your rank was motorcycle officer?<br>A Correct.<br>Q Very, very briefly, like if you | See Plaintiffs' trial brief arguing that Casteel | Testimony related to Casteel's background qualifications | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | can do it in 60 seconds or less, what assignments have you had since starting your employment with Riverside Police Department? A I started off as everybody does working patrol, and then I applied and was selected for a position as a school resource officer, and was assigned to Notre Vista High School, where I spent three years as a -- commonly known SRO, School Resource Officer. I was put on loan to investigations during the summer so I worked homicide investigation, I worked domestic violence investigations. And I was assigned to the -- excuse me -- sexual -- violent sexual registration team. And I did that for a while. And then I went back to patrol. Did approximately another year, I believe. And then I applied and was selected for the motorcycle officer position in January of 2007. | should not testify. ECF No. 173. FRE 401/402. | is necessary foundation evidence for his observations and the impressions he formed related to Stephenson. | |

| | | | | |
|---|---|---|---|---|
| | Q Your first stent on patrol before becoming a school resource officer, how did that -- how long did that last?<br>A Maybe three to four years.<br>Q So from approximately June 1999 to approximately June-ish 2003?<br>A Yes.<br>Q And then you became a school resource officer, did you say Norte Vista High School?<br>A Norte Vista High School in the City of Riverside.<br>Q Okay. So you would have done that from approximately 2003 to approximately 2006?<br>A Yes.<br>Q Were you loaned to the investigations department where you worked as a homicide and domestic violence and sex crimes investigator, were you loaned at the same time that you were an SRO or was that a separate assignment?<br>A Same time. | | | |

| | | | | |
|---|---|---|---|---|
| | Q So that overlapped for one summer?<br>A Correct.<br>Q Which summer did it overlap?<br>A It would actually be every summer.<br>Q Oh.<br>A So 2000 -- summer of 2003, 2004, and '05.<br>Q Thank you.<br>A Uh-huh.<br>Q And then you returned to patrol in approximately 2006?<br>A Yes.<br>Q And until approximately 2007?<br>A Correct.<br>Q And then a motorcycle officer from 2007 until this year 2022, April?<br>A Yes.<br>Q Have you worked as a law enforcement officer anywhere else?<br>A Yes.<br>Q Where at? | | | |

| | | | | |
|---|---|---|---|---|
| | A I was a reserve officer for the City of Los Angeles from October of 1992 until early 1999.<br>Q So that would be for the Los Angeles Police Department?<br>A Yes. | | | |
| Page 26, lines 4 - 23 | Q Did you attend a police academy?<br>A Yes.<br>Q Which one?<br>A First I went to LAPD, Los Angeles Police Department Academy.<br>Q What class year?<br>A October of '92. 1992.<br>Q And then there was another one?<br>A Yes. I went to Rio Hondo Police Academy in -- when I graduated in March of 1997, and that was a six-month academy.<br>Q Are you familiar with the California Commission on Peace Officers Standards and Training -<br>-<br>A Yes.<br>Q -- or POST? | See Plaintiffs' trial brief arguing that Casteel should not testify. ECF No. 173. FRE 401/402. | Testimony related to Casteel's background qualifications is necessary foundation evidence for his observations and the impressions that he formed related to Stephenson. | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | A Yes.<br>Q Do you have any POST certificate?<br>A Yes.<br>Q Which ones do you have?<br>A I have a basic, an intermediate, and advanced. | | | |
| Page 29, line 8 – page 30, line 10 | Q Do you have any problems or impairment with your vision?<br>A No.<br>Q Do you have any problems or impairment with your memory?<br>A No.<br>Q I'm going to show you a photograph. It's been Bates Stamped AGO 106. We'll mark that as Exhibit 2 to the deposition.<br>*(Exhibit 2 was marked for identification by the Certified Shorthand Reporter and a copy is attached hereto.)*<br>Q Have you ever seen that gentleman before? Do you recognize who is depicted in that photo?<br>A Yes.<br>Q Where do you recognize that | See Plaintiff's Motion in Limine No. 2 (citing 401/402, 403, 404, and case law); see also Plaintiffs' September 14, 2025 Trial Brief arguing that Casteel should not testify and his deposition | This testimony merely establishes foundations that his visions and memory is not impaired and shows that he could identify Stephenson as the person he encountered on the date of the incident. | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | person from?<br>A He looks like somebody I saw on the 91 Freeway in the City of Riverside.<br>Q During our incident?<br>A Yes.<br>Q When you say that this exhibit, Exhibit 2 looks like someone you saw during the incident, this person that you recognize, that we see in Exhibit 2, without going into a lot of detail, generally what do you remember him doing during the incident?<br>A He was up on the freeway on the westbound lanes of traffic, stopping traffic as a pedestrian. | should not be read. ECF No. 173.<br><br>Additionally, Exhibit 2 lacks foundation. There is no information about When that photo was taken and under what circumstances. It is an unflattering photo of Mr. Stephenson, which is perhaps why Defendants would like to introduce it. But there | | |

| | | | | |
|---|---|---|---|---|
| | | is not specific information indicating when and Where the photo was taken and under what circumstances. Furthermore, Mr. Casteel's recognition of a photo is irrelevant since the issue is whether Norem though he was engaging with the same individual | | |

| | | | | |
|---|---|---|---|---|
| | | who had been reported on the Freeway earlier. | | |
| Page 31, lines 22 – page 33, line 11 | Q Okay. On the incident date of January 24th, 2019, what was your duty shift?<br>A I was working day watch.<br>Q What hours is day watch at that time?<br>A 0600 to 1530, 3:30 p.m.<br>Q Was your assignment that day as -- on patrol as a motor officer?<br>A Yes.<br>Q Do you have a specific area that you were assigned to patrol that day?<br>A No.<br>Q So you just patrol the whole city?<br>A Yes.<br>Q Of Riverside?<br>A Yes.<br>Q At some point on the incident | See Plaintiff's Motion in Limine No. 2 (citing 401/402, 403, 404, and case law); See also Plaintiffs' September 14, 2025 Trial Brief arguing that Casteel should not testify and his deposition should not be read. | Foundational evidence. Moreover, this testimony corroborates the testimony of Officer Norem and what he faced on the date of the incident, including Stephenson's combative and resistive nature, and Stephenson running into traffic when he saw law enforcement. Norem and | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | date did you see the gentleman that you identified in Exhibit 2, Leroy Stephenson?<br>A Yes.<br>Q Where were you when you first saw Mr. Stephenson?<br>A Eastbound lanes of the 91 Freeway, west of -- I believe it was Madison exit.<br>Q Did you say Madison?<br>A Yes.<br>Q And you were driving a motorcycle?<br>A Yes.<br>Q Standard black and white police motorcycle?<br>A Yes. Marked.<br>Q What were you wearing that day?<br>A A full police uniform.<br>Q What does the Riverside PD police uniform look like back then?<br>A I had a black and white motorcycle helmet. Had a full uniform, wool blue shirt with Riverside Police Department | ECF No. 173. | McKee learned information from dispatch about Stephenson being on the freeway prior to their arrival, which goes to the totality of the circumstances. Further, this Court did not rule that Casteel's testimony was excluded but that it was admissible for the reasons just stated. | |

| | | | | |
|---|---|---|---|---|
| | patches, with my badge and name plate. I had wool britches on, riding britches, that are also blue in color with a yellow stripe going down one side, a yellow and blue stripe. And I was wearing full length leather, commonly known as motorcycle or riding boots. | | | |
| Page 34, lines 12-18 | Q About what time of day was it when you first saw Mr. Stephenson?<br>A Afternoon.<br>Q Approximately when?<br>A Maybe 11:00 o'clock. Could have been – could have been earlier, could have been later. I don't know. I just know it was daylight. | See Plaintiff's Motion in Limine No. 2 (citing 401/402, 403, 404, and case law); See also Plaintiffs' September 14, 2025 Trial Brief arguing that Casteel should not testify and | Foundational evidence. Moreover, this testimony corroborates the testimony of Officer Norem and what he faced on the date of the incident, including Stephenson's combative and resistive nature, and Stephenson running into | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | | his deposition should not be read. ECF No. 173. | traffic when he saw law enforcement. Norem and McKee learned information from dispatch about Stephenson being on the freeway prior to their arrival, which goes to the totality of the circumstances. Further, this Court did not rule that Casteel's testimony was excluded but that it was admissible for the reasons just stated. | |

| Page 35, line 3 – page 38, line 25; page 39, lines 3 – 5; page 39, lines 14 -17, 19 | Q Okay. When you first saw Mr. Stephenson, what did he look like?<br>A I think he had sunglasses on. I remember he had some jewelry. I think it was a white-colored shirt,<br>dark pants.<br>Q Ethnicity?<br>A He was black.<br>Q Age?<br>A Maybe in his early 40's.<br>Q Hairstyle?<br>A Shaved head.<br>Q Approximate height?<br>A I'd say 6-foot or taller.<br>Q Approximate weight?<br>A Maybe 200 pounds.<br>Q How would you describe his build?<br>A Lien, muscular.<br>Q When you first saw Mr. Stephenson midday on the incident date, what drew your attention to him?<br>A I -- I had just finished with an enforcement stop on the onramp, | See Plaintiff's Motion in Limine No. 2 (citing 401/402, 403, 404, and case law); See also Plaintiffs' September 14, 2025 Trial Brief arguing that Casteel should not testify and his deposition should not be read. ECF No. 173.<br><br>Further, Plaintiffs | Foundational evidence. Moreover, this testimony corroborates the testimony of Officer Norem and what he faced on the date of the incident, including Stephenson's combative and resistive nature, and Stephenson running into traffic when he saw law enforcement. Norem and McKee learned information from dispatch about | Sustained__<br>Overruled__ |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | I believe to Adams and the 91. And as I started to get on -- back on the freeway going eastbound, I noticed traffic was coming to a stop. I could see brake lights, traffic slowing. So I was looking ahead for a road hazard or a traffic collision. Well, my peripheral vision to the left of me, I could see that the other side of the freeway was also coming to a stop. And when I slowed down and put my emergency lights on, I looked to my left and I could see Mr. Stephenson in the westbound lanes of travel on the 91 Freeway.<br>Q Was he in a vehicle?<br>A No, he was on foot.<br>Q So you saw a pedestrian crossing the freeway like a normal person would cross the street?<br>A He was almost -- the best way to describe it is like trying to stop traffic facing eastbound in the westbound lanes of traffic. And he appeared to be in the | renew objections to Leading questions, see page 39:1, 39:12.<br><br>His testimony that Stephenson "jumped up on the hood of a car and appeared to be jumping on the hood" is especially prejudicial because there is no indication that Norem or McKee were aware of this | Stephenson being on the freeway prior to their arrival, which goes to the totality of the circumstances . Further, this Court did not rule that Casteel's testimony was excluded but that it was admissible for the reasons just stated. There is no risk of confusing or misleading the jury. This is his observations on the date of the incident. | |

| | | | | |
|---|---|---|---|---|
| | number two or number three lane, which would be towards the center.<br>Q He was trying to stop the westbound traffic?<br>A That's what it appeared like.<br>Q And when you said he was trying to stop the westbound traffic, you raised both your hands like in a stop gesture. Is that what you remember him doing?<br>A Yes.<br>Q When you saw Mr. Stephenson making that stop gesture in the two or three lane of westbound 91, could you tell why he appeared to be trying to stop traffic?<br>A No.<br>Q So there was no obvious reason, like there was a car on fire or there was a dog in the road or a child or something like that? Some debris?<br>A No.<br>Q What's the very next thing | information before the incident. This information could not have contributed to defendant evaluation of the totality of the circumstanc es, and including it risks confusing the jury and would greatly prejudice the Plaintiffs due to the inflammator y nature of | | |

| | that you observed or did?<br>A I looked for a possible traffic collision. I thought Mr. Stephenson maybe had been involved in a collision so I was looking for his vehicle and perhaps another one or others. I did not see that. And so that's when I -- he jumped up on the hood of a car and appeared to be jumping on the hood.<br>Q What type of car?<br>A I just know it was white in color, like a sedan.<br>Q So one of the stopped vehicles, a white sedan, was in the westbound lane of traffic and Mr. Stephenson went from trying to stop traffic to jumping up on top of the hood?<br>A Yes.<br>Q When you say jumping up on top of the hood, what does that mean? Could you describe that for us?<br>A Sure. | the allegation. | | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | A vertical -- Mr. Stephenson basically conducted a vertical jump with both feet -- planted both feet on top of the hood of the car in a -- now he's standing on the hood of the car.<br>Q When he was standing on the hood of that white sedan, which way was he facing? Toward the windshield, toward the headlights, some other direction?<br>A Eastbound towards the windshield.<br>Q From what you could observe, was there something he was doing? Like, was he looking in the window? Was he trying to signal somebody? Was there any apparent reason for him jumping on the car in the manner he did?<br>A No.<br>Q When you saw him do this vertical jump, planting both of his feet on the top of the hood, what was your initial impression as to what was going on with him? | | | |

| | | | | |
|---|---|---|---|---|
| | A At that point I thought he was either having a mental episode or under the influence of some type of drug.<br>Q Is the reason that you thought at that moment in time that he might be under the influence or having a mental health episode was the behavior observed was extremely abnormal?<br>A I've only seen it one other -- that's the only time I've had that happen in my 29-career – 29 years as a police officer.<br>Q Was the fact that what you observed him do was so extremely abnormal, is that part of why in that moment you suspected he might be under the influence of drugs or having a mental episode?<br>A Yes. | | | |
| Page 39, line 25 – page 41, line 6; | Q What's the next thing you observed or did?<br>A He got down from that car. I believe he pounded with his fist | See Plaintiff's Motion in Limine | This testimony corroborates the testimony | Sustained__<br>Overruled__ |

| page 41, line 10 - page 42, line 10; page 42, lines 12 – 17 | on another car, the hood of another car.<br>Q What type of car was that?<br>A A sedan also, but I don't recall the color.<br>Q What's the next thing you observed or did?<br>A I can't recall if I shouted to him. I believe I had already communicated -- communicated with dispatch that I had a pedestrian up on the freeway trying to stop traffic. I don't recall if I called to him or if he saw me. But when he did look at me, he ended up running in a northwest direction off of the 91 westbound lanes of traffic.<br>Q Off of the freeway?<br>A Yes.<br>Q So you don't clearly recall whether you called to Mr. Stephenson and he looked at you, or he just happened to see you; is that correct?<br>A Yes. I know we made eye contact. | No. 2 (citing 401/402, 403, 404, and case law); See also Plaintiffs' September 14, 2025 Trial Brief arguing that Casteel should not testify and his deposition should not be read. ECF No. 173.<br><br>Casteel's subjective perception of the threat posed by Stephenson | of Officer Norem and what he faced on the date of the incident, including Stephenson's combative and resistive nature, and Stephenson running into traffic when he saw law enforcement. Norem and McKee learned information from dispatch about Stephenson being on the freeway prior to their arrival, which goes to the | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | Q Okay. And -- but as soon as you made eye contact, he then immediately ran away from you?<br>A Yes.<br>Q When that happened, what was your impression as to why he was running from you?<br>A My impression was he knew that he shouldn't have been up on the freeway, and that I was the police and he was going to be stopped or detained for being up on the freeway.<br>Q So it appeared to you that he recognized that you were a police officer?<br>A Yes.<br>Q And after recognizing that, he fled?<br>A Yes.<br>Q What's the next thing you observed or did?<br>A I continued on eastbound on the eastbound 91, exited the freeway, I believe it was the Madison exit, made a U-turn, got back on the freeway westbound | is irrelevant and risks confusing the issues as it invades the province of the jury which has the job of determining the level of threat Stephenson posed to a reasonable officer.<br><br>The description of Stephenson "banging and stomping" is especially prejudicial because | totality of the circumstances . Further, this Court did not rule that Casteel's testimony was excluded but that it was admissible for the reasons just stated. There is no risk of confusing or misleading the jury. This is his observations on the date of the incident. | |

| | | | | |
|---|---|---|---|---|
| | lanes to make sure that he wasn't going to return and create a hazard on the freeway again.<br>Q When you saw him run away off the freeway at this point, was that the last time you saw him that day?<br>A Yes.<br>Q Where location-wise was he the last moment in time that you saw him on the freeway or near the freeway?<br>A He dis -- he disappeared over the, I guess the berm or the -- the side gully of the freeway.<br>Q What was nearby that berm or side gully?<br>A There's a large wall. I think they call it a sound wall to keep the sound down from the residents living next to the freeway. He disappeared behind that.<br>Q So beyond the sound wall or berm, there was residential housing? | Norem and McKee did not have this information and therefore it did not play a role in their assessment of the totality of circumstances when they decided to use force. | | |

| | | | | |
|---|---|---|---|---|
| | A Yes, just immediately north of that location.<br>Q Was there anything that you observed Mr. Stephenson doing that day that you perceived as threatening to you or to others?<br>A Yes.<br>Q What was that?<br>A His behavior. One, being up in the lanes of travel on the 91 Freeway, and then his aggressive banging and stomping on -- of the cars on the freeway. | | | |
| Page 42, lines 12 – page 45, line 5 | Q What did you do in response to the observations that you made of Mr. Stephenson?<br>A I made an area check. When I got to where I last saw Mr. Stephenson, there was a Riverside police car, a unit, marked black and white unit stopped on the shoulder of the freeway. I made contact with those officers in the car.<br>Q Who were those officers?<br>A Officer Danny Cisneros and Officer Tim Roy. | See Plaintiff's Motion in Limine No. 2 (citing 401/402, 403, 404, and case law); See also Plaintiffs' September 14, 2025 Trial Brief | Foundational evidence. Moreover, this testimony corroborates the testimony of Officer Norem and what he faced on the date of the incident, including Stephenson's combative | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | Q Did it appear to you that they arrived on the scene after you?<br>A Yes.<br>Q Did you report your observations to them?<br>A Yes.<br>Q About Mr. Stephenson?<br>A Yes.<br>Q When you said you performed an area check, what is that?<br>A I was looking for Mr. Stephenson to see if he was still on the shoulder of the freeway, if he had went back into the lanes of traffic. I was looking for his location.<br>Q What was your -- your plan or intent at that point when you were looking for him?<br>A At that time I -- the biggest threat was having him go back up on the freeway, and either being struck or causing a collision on the freeway. So my first priority was to keep him off of the freeway. | arguing that Casteel should not testify and his deposition should not be read. ECF No. 173.<br><br>Additionally, Casteel's subjective opinions, plans, and intentions are irrelevant and risk confusing the issues. | and resistive nature, and Stephenson running into traffic when he saw law enforcement. Norem and McKee learned information from dispatch about Stephenson being on the freeway prior to their arrival, which goes to the totality of the circumstances. Further, this Court did not rule that Casteel's testimony was excluded but | |

| | | | | |
|---|---|---|---|---|
| | Q At that point, unless you saw him on the freeway again, did you plan to make an arrest of him?<br>A No.<br>Q Other than radioing in your observations to dispatch, other than doing the area check, and other than relaying your observations to the Riverside Police Department unit occupied by Officer Cisneros and Roy, is there anything else that you did in response to seeing Mr. Stephenson on the freeway that day?<br>A Yes.<br>Q What's that?<br>A I questioned Officer Roy and Cisneros as to his last location.<br>Q And what did they tell you?<br>A That he disappeared running westbound behind the sound wall of the 91 westbound freeway. | | that it was admissible for the reasons just stated. There is no risk of confusing or misleading the jury. This is his observations on the date of the incident. | |
| Page 46, lines 1-23 | Q I want to show you a photograph we're going to mark as Exhibit 4.<br>*(Exhibit 4 was marked for* | See Plaintiff's Motion in Limine | Foundational evidence. Moreover, this testimony | Sustained__<br>Overruled__ |

| | *identification by the Certified Shorthand Reporter and a copy is attached hereto.)*<br>Q Do you recognize what's shown in Exhibit 4?<br>A Yes.<br>Q What do you recognize on this photograph?<br>A It's the Adams -- appears to be the eastbound exit of the -- or correction, westbound exit of the Adams and 91 Freeway.<br>Q Does this photograph appear to accurately reflect the appearance of the westbound exit of Adams at the 91 Freeway as it appeared on the date of the incident?<br>A Other than the time of day, yes.<br>Q And does this photograph show the area where you saw Mr. Stephenson that day? Any of the areas?<br>A Yes.<br>Q Where?<br>A Just east of this wall and the | No. 2 (citing 401/402, 403, 404, and case law); See also Plaintiffs' September 14, 2025 Trial Brief arguing that Casteel should not testify and his deposition should not be read. ECF No. 173. | corroborates the testimony of Officer Norem and what he faced on the date of the incident, including Stephenson's combative and resistive nature, and Stephenson running into traffic when he saw law enforcement. Norem and McKee learned information from dispatch about Stephenson being on the freeway prior to their | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | location of the exit. | | arrival, which goes to the totality of the circumstances. Further, this Court did not rule that Casteel's testimony was excluded but that it was admissible for the reasons just stated. | |
| Page 50, line 17 – page 51, line 9 | Q Referring to the area of the 91 freeway in the westbound Adams exit area, in the course of your career with the Riverside PD, have you patrolled that area on a number of occasions?<br>A Yes.<br>Q Are you familiar with the available -- allowable speeds in the area?<br>A Yes.<br>Q And what is your general understanding of the allowable | See Plaintiff's Motion in Limine No. 2 (citing 401/402, 403, 404, and case law); See also Plaintiffs' September 14, 2025 | Foundational evidence. Moreover, this testimony corroborates the testimony of Officer Norem and what he faced on the date of the incident, including Stephenson's | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | top speeds that vehicles are allowed to go in that area?<br>A 65 is the maximum.<br>Q All right.<br>A But based on -- based on the prima facia conditions, it can vary.<br>Q All right. But -- so this is a regular freeway; correct?<br>A Yes. | Trial Brief arguing that Casteel should not testify and his deposition should not be read. ECF No. 173. | combative and resistive nature, and Stephenson running into traffic when he saw law enforcement. Norem and McKee learned information from dispatch about Stephenson being on the freeway prior to their arrival, which goes to the totality of the circumstances. Further, this Court did not rule that Casteel's testimony was | |

| | | | | |
|---|---|---|---|---|
| | | | excluded but that it was admissible for the reasons just stated. | |
| Page 51, line 22 – 52, line 17; page 52, line 20 – page 53, line 1; page 53, lines 3-8 | Q Did you have an opportunity to make any observations about whether the vehicles westbound were still slowing at the time you finished your area check as they had been before?<br>A No, traffic continued on as -- as normal.<br>Q Okay. And that time of day, do you have a recollection of -- just based on your training and experience and your knowledge as a driver -- have any observations about what kind of the average speed of the traffic was at that time going westbound?<br>A Yes.<br>Q What was that?<br>A 70 to 75.<br>Q All right. So at the | See Plaintiff's Motion in Limine No. 2 (citing 401/402, 403, 404, and case law); See also Plaintiffs' September 14, 2025 Trial Brief arguing that Casteel should not testify and his deposition should not | Foundational evidence. Moreover, this testimony corroborates the testimony of Officer Norem and what he faced on the date of the incident, including Stephenson's combative and resistive nature, and Stephenson running into traffic when he saw law enforcement. | |

| | conclusion of your area check, the traffic had resumed to going speeds as high as 70 to 75 going westbound near Adams; is that correct?<br>A Yes.<br>Q All right. If you had seen Stephenson come back and start appearing to go back into traffic at that time, just as a based on your training and experience, would that have been a safe thing for him to do?<br>A No.<br>Q Would that be a risk to motorists as a possible cause of a collision?<br>A Yes.<br>Q Would that be a risk to Mr. Stephenson himself as a possible fatal accident for him?<br>A Yes.<br>Q All right. Would you feel that any officer who saw that would be reasonable in attempting to stop him from going into traffic? | be read. ECF No. 173. Further, Plaintiffs renew objections to Leading questions, see page 53:2.<br><br>Testimony re speeds of "70 to 75" is irrelevant because the event at issue took place later and speeds may have changed.<br><br>Testimony regarding Casteel's | Norem and McKee learned information from dispatch about Stephenson being on the freeway prior to their arrival, which goes to the totality of the circumstances. Further, this Court did not rule that Casteel's testimony was excluded but that it was admissible for the reasons just stated. There is no risk of confusing or | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | A Yes. | perception of the risks of the situation he faced is irrelevant and prejudicial. It's for the jury to decide whether McKee or Norem reasonably assessed the risks of the situation that faced them and Casteel's subjective perceptions are irrelevant to the issue and invade | misleading the jury. This is his observations on the date of the incident. | |

| | | the province of the jury. | | |
|---|---|---|---|---|
| **PLAINTIFFS' DESIGNATIONS** | | | | |
| Page Line | Testimony | OBJ | RESP | Court Ruling |
| 27:5-13 | Q Okay. What's the highest level of schooling you ever completed?<br>A Two years of community college.<br>Q Did you obtain a degree?<br>A No, I did not.<br>Q What subject were you studying there?<br>A Sociology and psychology.<br>Q Have you ever served in the military?<br>A No. | No objection if testimony that the defendants designated related to this background qualifications is admitted. | | Sustained__<br>Overruled__ |
| 29:1-7 | Q Do you have any problems or impairments with your hearing?<br>A I have some impairment, but I can hear fine right now.<br>Q Did you have that slight hearing impairment on | No objection if the testimony designated by defendants related to | | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | the date of our incident?<br>A Yes. | him not having vision or memory impairments is admitted. | | |
| 30:16-25 | Q Did you give any interviews associated with the incident?<br>A No.<br>Q Did you make any writings or written reports regarding the incident?<br>A Yes.<br>Q What writings have you generated regarding the incident?<br>A If my memory serves me correctly, it was a supplemental report. | No objection. | | Sustained__<br>Overruled__ |
| 33:12-34:11 | A I carried a Glock 40 caliber sidearm. It was attached with a holster attached to my leather duty belt. Two handcuff cases, a radio, holder for my radio, | No objection if the testimony that defendants designated | | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | a lapel mic that attached to my handheld radio, and also attached to my helmet via Bluetooth. I had a container that held my pepper spray. I had another sidearm, a 380 Ruger, that I carried as a backup weapon in my left front pocket.<br>Q Anything else that you recall?<br>A No.<br>Q No Taser?<br>A I'm sorry? Yes.<br>Q No Taser?<br>A Yes. Yes, I did have a Taser attached with the issued holster. And I had the three magazines.<br>When I say magazines, I mean for my sidearm firearm.<br>Q Any baton?<br>A My baton was on my motorcycle, held on through a carrier that was built and attached to the motorcycle.<br>Q For your motorcycle, did you have a long gun | related to what Casteel was wearing and driving on the date of the incident is admitted. | | |

| | | | | |
|---|---|---|---|---|
| | or a shotgun or rifle available? A There was a AR15 colt 6940 attached to my motorcycle. | | | |
| 45:9-18 | Q At any time on the incident date, did you ever see Mr. Stephenson in a prone position? A No. Q At any time on the incident date, did you ever observe any law enforcement officer, whether it was your own agency, Riverside County Sheriff's Department, CHP or anyone else -- at any time on the incident date, did you ever observe any law enforcement officer restraining or attempting to restrain Mr. Stephenson? A No. | No objection. | | Sustained__ Overruled__ |
| 49: 14-25 | Q Okay. After you lost sight of Mr. Stephenson, did you ever see him again? A No. | No objection. | | Sustained__ Overruled__ |

| | | | | |
|---|---|---|---|---|
| | Q Other than me telling you his name, did you ever know his name?<br>A No.<br>Q And, obviously, you never touched him and never saw any Riverside officers touching him; correct?<br>A That is correct.<br>Q And you never observed any other law enforcement officers touching him at any point?<br>A I did not. | | | |
| 51:10-15 | Q Okay. And the -- at the time you were doing the area check, did you actually pull off onto the shoulder and walk and go talk to the two officers in the vehicle?<br>A I -- no. I believe I pulled alongside of them. | Irrelevant. FRE 401. | This testimony is relevant because it tends to contradict the witness's claim that being near traffic is extremely dangerous. By choosing to | Sustained__<br>Overruled__ |

| | | | | |
|---|---|---|---|---|
| | | | pull up alongside the vehicle rather than stopping behind it, he showed he did not actually perceive the risk to be as severe as he claims when recounting Stephenson's actions. | |
| 53:15-17 | Q On the date of our incident, did you ever directly communicate with CHP Officer Dane Norem?<br>A No. | No objection. | | Sustained__<br>Overruled__ |
| 53:23-54:1 | Q On the date of our incident did you ever speak with CHP Officer Jeffrey McKee? And that's M, little C, 11:25:28:23 big K-E-E.<br>A No. | No objection. | | Sustained__<br>Overruled__ |

Dated: September 15, 2025

LAW OFFICES OF DALE K. GALIPO

By: */s/ Cooper Alison-Mayne*
Dale K. Galipo, Esq.
Cooper Alison-Mayne
*Attorneys for Plaintiffs*

Dated: September 15, 2025

Rob Bonta
Attorney General of California
Donna M. Dean
Supervising Deputy Attorney General

By: */s/ David Klehm*
David Klehm
Stephanie A. Vollmer
Deputy Attorney General
*Attorneys for Defendants State of California, acting by and through the California Highway Patrol, and Dane Norem*
Email: David.klehm@doj.ca.gov
stephanie.vollmer@doj.ca.gov

Rob Bonta
Attorney General of California
Donna M. Dean
Supervising Deputy Attorney General
*/s/ David Klehm*
David Klehm
Stephanie A. Vollmer
Deputy Attorney General
*Attorneys for Defendants State of California, acting by and through the California Highway Patrol, and Dane Norem*

Dated: September 15, 2025

Dean Gazzo Roistacher LLP

By: */s/ Kimberly A. Sullivan*
Lee H. Roistacher
Kimberly A. Sullivan
Attorneys for Defendant Jeffrey McKee
Email: lroistacher@deangazzo.com
ksullivan@deangazzo.com

**SIGNATURE CERTIFICATION**

Pursuant to Local Rule 5-4.3.4, I hereby certify that the content of this document is acceptable to counsel for all parties and that I have obtained counsels' authorization to affix their electronic signature to this document.

Dated: September 15, 2025 Dean Gazzo Roistacher LLP

By: */s/ Kimberly A. Sullivan*
Lee H. Roistacher
Kimberly A. Sullivan
Attorneys for Defendant
Jeffrey McKee
Email: lroistacher@deangazzo.com
ksullivan@deangazzo.com