1 **LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
2 dalekgalipo@yahoo.com
Cooper Mayne (SBN 343169)
3 cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
4 Woodland Hills, CA 91367
Phone: (818) 347-3333
5

6 *Attorneys for Plaintiffs* Keandre Stephenson,
Devonte Stephenson, and Linden Stephenson
7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 DEVONTE STEPHENSON,                    5:21-cv-0526-JAK-DTB
individually and as successor in        *[Hon. John A. Kronstadt]*
interest to Decedent LEROY
12 STEPHENSON; LINDEN                     **PLAINTIFFS' OPPOSITION TO**
STEPHENSON, individually and as         **DEFENDANTS' MOTION FOR**
13 successor in interest to Decedent      **JUDGMENT AS A MATTER OF**
LEROY STEPHENSON; KEANDRE               **LAW UNDER RULE 50(A)**
14 STEPHENSON, individually and as
successor in interest to Decedent
15 LEROY STEPHENSON,

16
                    Plaintiffs,
17
            vs.
18
STATE OF CALIFORNIA; DANE
19 NOREM; and JEFFREY MCKEE,

20                  Defendants.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................... 6

II.     FACTUAL BACKGROUND.............................................. 6

III.    LEGAL STANDARD ...................................................... 7

IV.     ARGUMENT................................................................. 9

    A.      OFFICER NOREM IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE FOURTEENTH AMENDMENT CLAIM ..............................9

    B.      OFFICER NOREM IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE FOURTH AMENDMENT CLAIM ....................................12

        1.      Sufficient Evidence Supports the Fourth Amendment Violation.................................................................12

        2.      The Law was Clearly Established............................16

    C.      OFFICER NOREM IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE STATE LAW CLAIMS ...................................20

V.      CONCLUSION............................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Abdullahi v. City of Madison*
   423 F.3d 763 (7th Cir. 2005) ........................................................... 17, 19

*Abston v. City of Merced*
   506 F. App'x 650 (9th Cir. 2013) ...........................................................16

*Abston v. Merced*
   506 Fed. Appx. 650 (9th Cir. 2013) ....................................................19

*Arce v. Blackwell*
   294 F. App'x 259 (9th Cir. 2008) ................................................... 16, 19

*Atkinson v. Cnty. of Tulare*
   790 F. Supp. 2d 1188 (E.D. Cal. 2011) ................................................10

*Brown v. Ransweiler*
   171 Cal.App.4th 516, 89 Cal.Rptr.3d 801 (2009) ...............................20

*Bryan Cnty. v. Brown*
   520 U.S. 397 (1997) ...............................................................................11

*Bryan v. MacPherson*
   630 F.3d 805 (9th Cir. 2009) ................................................... 13, 14, 15

*Champion v. Outlook Nashville, Inc.*
   380 F.3d 893 (6th Cir. 2004) ........................................................... 17, 19

*Consol. Edison Co. v. NLRB*
   305 U.S. 197 (1938) ..................................................................................8

*Cruz v. City of Laramie*
   239 F.3d 1183 (10th Cir. 2001) ............................................................19

*Davis v. City of Las Vegas*
   478 F.3d 1048 (9th Cir. 2007) ..............................................................14

*Deorle v. Rutherford*
   272 F.3d 1272 (9th Cir. 2001) ..............................................................15

*Drummond v. City of Anaheim*
   343 F.3d 1052 (9th Cir. 2003) ...................................................... passim

*Gabales v. City of San Joaquin*
   No. S-07-1346LKKDAD, 2009 WL 2923037 (E.D. Cal. Sep. 4, 2009) .............19

*Gantt v. City of Los Angeles*
   717 F.3d 702 (9th Cir. 2013) ................................................................10

*Garlick v. Cnty. of Kern*
   167 F. Supp. 3d 1117 (E.D. Cal. 2016) ......................................... passim

*Glenn v. Washington Cnty.*
   673 F.3d 864 (9th Cir. 2011) ................................................................. 12
*Graham v. Connor*
   490 U.S. 386 (1989) ..................................................................... 12, 13
*Green v. City & City of San Francisco*
   751 F.3d 1039 (9th Cir. 2014) .............................................................. 12
*Greer v. City of Hayward*
   229 F. Supp. 3d 1091 (N.D. Cal. 2017)................................. 10, 13, 16, 19
*Gutierrez v. City of San Antonio*
   139 F.3d 441 (5th Cir. 1998) ............................................................... 19
*Landes Constr. Co. v. Royal Bank of Can.*
   833 F.2d 1365 (9th Cir. 1987) ............................................................... 8
*Lombardo v. City of St. Louis*
   594 U.S. 464 (2021) ......................................................................... 12
*Martin v. City of Broadview Heights*
   712 F.3d 951 (6th Cir. 2013) ............................................................... 19
*McCue v. City of Bangor, Me.*
   838 F.3d 55 (1st Cir. 2016) .......................................................... 17, 19
*Mosesian v. Peat, Marwick, Mitchell*
   727 F.2d 873 (9th Cir. 1984) ................................................................ 8
*Mullenix v. Luna*
   577 U.S. 7 (2015) ........................................................................... 16
*Nicholson v. City of Los Angeles*
   935 F.3d 685 (9th Cir. 2019)............................................................ 9, 11
*Patel v. Kent Sch. Dist.*
   648 F.3d 965 (9th Cir. 2011) ............................................................... 11
*Pelayo v. City of Anaheim*
    2021 WL 2153220 (C.D. Cal. Apr. 6, 2021)............................................ 10
*Porter v. Osborn*
   546 F.3d 1131 (9th Cir. 2008)......................................................... 9, 10
*Reeves v. Sanderson Plumbing Prods., Inc.*
   530 U.S. 133 (2000) ........................................................................... 8
*Reichle v. Howards*
   566 U.S. 658 (2012) ......................................................................... 16
*Sandoval v. Hish*
   461 Fed. Appx. 568 (9th Cir. 2011) ...................................................... 20

*Scott v. Smith*
    109 F.4th 1215 (9th Cir. 2024)................................................................15

*Slater v. Deasey*
    789 Fed. Appx. 17 (9th Cir. 2019) .........................................................20

*Smith v. City of Hemet*
    394 F.3d 689 (9th Cir. 2005) ........................................................... 12, 15

*Spencer v. Pew*
    117 F.4th 1130 (9th Cir. 2024)................................................................18

*Tucker v. Las Vegas Metro. Police Dep't*
    470 F. App'x 627 (9th Cir. 2012)..................................................... 11, 16

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*
    546 U.S. 394 (2006) ................................................................................8

*Vos v. City of Newport Beach*
    892 F.3d 1024 (9th Cir. 2018) ...............................................................15

*Weigel v. Broad*
    544 F.3d 1143 (10th Cir. 2008) ...................................................... 17, 19

*Young v. Cnty. of Los Angeles*
    655 F.3d 1156 (9th Cir. 2011) ...............................................................13

*Zelaya v. Las Vegas Metro. Police Dep't*
    682 F. App'x 565 (9th Cir. 2017) ..........................................................16

## Statutes

California Vehicle Code § 21960(a) ............................................................13

## Rules

Federal Rule of Civil Procedure 50(a) ....................................................6, 8

Federal Rule of Civil Procedure 50(b) ....................................................6, 8

# I.    INTRODUCTION

Officer Norem and the State of California moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) after the close of evidence but before the jury returned its verdict. Courts are not required to rule on a Rule 50(a) motion at that stage, and they frequently elect to reserve ruling. When a Rule 50(a) motion is not granted before the case is submitted to the jury, the motion is deemed submitted "subject to the court's later deciding the legal questions raised by the motion" if the moving party renews it under Rule 50(b). Fed. R. Civ. P. 50(b).

Accordingly, Plaintiffs respectfully submit that the most appropriate course is for the Court to deny the motion summarily and only address the substantive issues upon the filing of a renewed motion under Rule 50(b). The Court will be in a better position to consider the substantive issues based on the Rule 50(b) motion because that briefing will contain citations to the trial record and more detailed recitations of the relevant factual basis of the same issues raised by this motion.

Nonetheless, should the Court choose to consider the Rule 50(a) motion at this juncture, the motion should be denied because a reasonable jury could find in Plaintiffs' favor on all claims. Indeed, after careful deliberation, a jury returned a unanimous verdict finding that Officer Norem's conduct violated the Fourth and Fourteenth Amendments of the United States Constitution and constituted battery and negligent use of force under California law.

# II.    FACTUAL BACKGROUND

This case arises from the death of Leroy Stephenson, who died after being restrained chest-down on the ground by California Highway Patrol Officer Dane Norem and several other individuals for more than six minutes. The evidence at trial showed that Mr. Stephenson was restrained in a chest-down position for more than three minutes and forty seconds after he was handcuffed behind his back.

Several witnesses testified that Mr. Stephenson calmed down and stopped resisting shortly after being handcuffed. Investigator Borden testified that he

"chilled out" about 15 seconds after being handcuffed. Deena Corbett-Wolf, the former Public Safety Dispatcher who watched the incident over a Cal Trans camera, testified that Mr. Stephenson stopped moving around and resisting after he was handcuffed. When Officer McKee arrived, he found Mr. Stephenson entirely inert and unresponsive. He never saw Stephenson make a voluntary movement and testified that he was so securely restrained that no one in his position could have moved. The only video of the incident confirms the same: Mr. Stephenson made no sounds and no voluntary motions.

Even though Mr. Stephenson calmed down and stopped resisting after being handcuffed, Officer Norem and several other people continued to hold Mr. Stephenson in a prone position that restricted his ability to breathe. Witnesses testified that throughout the incident weight was applied to Mr. Stephenson's shoulder blades, which are located directly above the lungs when a person is in a prone position. Eric Leighton testified that Officer Norem kept his knee on Mr. Stephenson's shoulder-blade from the time he was handcuffed until Officer McKee arrived several minutes later. Officer McKee testified that when he arrived, Mr. Stephenson was not moving or making any noises and that he was so restrained that nobody in his position would have been able to move.

Viewing the evidence in the light most favorable to Plaintiffs, this case is straightforward. For more than three minutes and forty seconds, Officer Norem and three large men acting under his direction pressed a prone, handcuffed, non-resisting man into the ground, restricting his ability to breathe until he died. Officer Norem did this even though it has been well known for decades that compressive prone restraint is extremely dangerous. A jury could readily find that such conduct was unreasonable—and that is precisely what this jury did.

## III.    LEGAL STANDARD

Rule 50(a) permits a party to move for judgment as a matter of law before a case is submitted to the jury, authorizing the district court to grant the motion "at

the court's discretion." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc*., 546 U.S. 394, 394 (2006). If a court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. Proc. 50(b). Typically, a court revisits such issues upon a renewed motion filed within 28 days after entry of judgment under Rule 50(b).

Importantly, a ruling on a Rule 50(a) motion is discretionary, as the issues are preserved for consideration later if the moving party files a renewed motion under Rule 50(b). Because it is discretionary, the denial or deferral of a Rule 50(a) motion is not independently appealable. *Unitherm*, 546 U.S. at 404 (a "Rule 50(a) motion . . . cannot be appealed unless that motion is renewed pursuant to Rule 50(b).").

Should the Court decide to consider a Rule 50(a) motion, the standard that is applied mirrors the standard for summary judgment under Rule 56. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Courts review the record and "draw all reasonable inferences in favor of the nonmoving party. *Id*. In doing so, courts "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* A motion for judgment as a matter of law may be granted only if "there is no legally sufficient basis for a reasonable jury to find for [the non-moving party] on that issue." *Id*. at 149. The court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists to support the non-moving party. *See Mosesian v. Peat, Marwick, Mitchell*, 727 F.2d 873, 877 (9th Cir. 1984). Substantial evidence is more than a "mere scintilla." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Rather, it is defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987).

**IV.    ARGUMENT**

    **A.    Officer Norem is Not Entitled to Judgment as a Matter of Law on the Fourteenth Amendment Claim**

Courts apply two different standards to substantive due process claims arising from police conduct: the purpose-to-harm standard and the deliberate indifference standard. The deliberate indifference standard applies when "the circumstances are such that actual deliberation is practical," *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008), while the purpose-to-harm standard applies when an officer has "no time for reflection, as in a high-speed chase involving a fleeing suspect in a fast-moving vehicle," *Nicholson v. City of Los Angeles*, 935 F.3d 685, 694 (9th Cir. 2019).

In this case, the deliberate indifference standard applies. Once Mr. Stephenson was handcuffed behind his back, Officer Norem had ample opportunity to deliberate, particularly because he was assisted by three individuals. According to several witnesses—including Deena Corbett-Wolf and Matthew Borden—Mr. Stephenson stopped moving and calmed down shortly after being handcuffed. During the three minutes and forty seconds that followed, Officer Norem had more than enough time to reflect on his actions. In fact, Officer Norem testified that he had time to deliberate when he was cross examined regarding his testimony about the "decision tree."

At a minimum, deliberation was plainly practical once Officer McKee arrived. At that point, Officer Norem and Officer McKee discussed what to do next and decided to use a leg restraint on Mr. Stephenson's unconscious body.

Courts apply the deliberate indifference standard in circumstances similar to those presented here. In *Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117 (E.D. Cal. 2016), the court held that deputies' application of body weight was subject to the deliberate indifference standard. *Id.* at 1170-71. Once the decedent was in handcuffs, the deputies could deliberate about how best to restrain him. *Id.*

Likewise, in *Greer v. City of Hayward*, 229 F. Supp. 3d 1091, 1105 (N.D. Cal. 2017), the court agreed with the reasoning of *Garlick* and found the officers had time to deliberate while they held Greer down as he struggled to breathe. *Id.* at 1108.

Defendants cite several cases for the proposition that the purpose-to-harm test applies when the time period at issue is three and a half minutes, but none of those cases resemble the situation here. In *Porter*, 546 F.3d at 1135, the officer shot the decedent within seconds of seeing the decedent attempt to drive his car directly into another officer. In *Atkinson v. Cnty. of Tulare*, 790 F. Supp. 2d 1188, 1196 (E.D. Cal. 2011), the decedent fought so violently that the officer sustained injuries—including a torn tendon in his right bicep—and the officer shot the decedent "immediately after [the decedent] got up and started to sprint away." *Id.* at 1200. And in *Pelayo v. City of Anaheim*, No. 819-CV-02318-MCSADSX, 2021 WL 2153220 (C.D. Cal. Apr. 6, 2021), the officer shot the decedent when he saw the decedent raise a gun in his direction. *Id.* at *2.

While each of those encounters lasted several minutes, they all involved rapidly evolving, high-stakes situations that required split-second decisions. The contrast here could not be clearer. After Mr. Stephenson was handcuffed, he calmed down, stopped resisting, and posed no immediate threat. The scene was stable, and Officer Norem had several minutes to consider his next steps, yet he and the individuals assisting him continued to apply compressive force to Mr. Stephenson's prone body until he stopped breathing.

Applying the deliberate indifference standard, Plaintiffs' Fourteenth Amendment familial interference claim clearly presents triable issues of fact. Deliberate indifference "entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or within knowledge that harm will result." *Gantt v. City of Los Angeles,* 717 F.3d 702, 708 (9th Cir. 2013). A reasonable jury could conclude that Officer Norem was

deliberately indifferent to the obvious risk of serious injury caused by continuing to restrain Mr. Stephenson after he was handcuffed. The evidence supports a finding that Officer Norem knew prolonged prone restraint prevented Mr. Stephenson from adequately breathing, understood that such restraint posed a serious danger, and nevertheless "disregarded a known or obvious consequence of his action." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "The deliberate-indifference inquiry should go to the jury if any rational fact-finder could find this requisite mental state." *Nicholson*, 935 F.3d at 693.

In *Garlick*, the court held that a jury could find deliberate indifference under similar circumstances. 167 F. Supp. 3d at 1171–72. The court emphasized that the risk of positional asphyxia was well known, based on both *Drummond* and standard police training. Here, Officer Norem's conduct was even more egregious than the conduct at issue in *Garlick*. According to several witnesses, Mr. Stephenson was no longer resisting after he was handcuffed, and there was no justification for continuing to hold him in a prone position.

Officer Norem is not entitled to qualified immunity on Plaintiffs' familial interference claim. As explained above, the law clearly established that continuing to apply bodyweight force to a prone, handcuffed individual who is no longer resisting is unconstitutional. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1056–67 (9th Cir. 2003); *see also Tucker v. Las Vegas Metro. Police Dep't*, 470 F. App'x 627, 629 (9th Cir. 2012) (affirming district court's denial of qualified immunity on Fourth and Fourteenth Amendment claims where officer used body pressure to restrain a delirious, prone, and handcuffed individual who posed no serious safety threat). Standard police training and policy—discussed at length by Plaintiffs' police practices expert, Jeffrey Noble—provided further notice that such conduct was unconstitutional. *Drummond*, 343 F.3d at 1061 (policy and training can be considered as a factor when determining whether the law was clearly

established). In discussing a 2015 incident, the Supreme Court itself noted that there is "well-known police guidance recommending that officers get a subject off his stomach as soon as he is handcuffed because of [the risk of suffocation]." *Lombardo v. City of St. Louis*, 594 U.S. 464, 467 (2021).

For all these reasons, this portion of the motion should be denied.

## B. Officer Norem Is Not Entitled to Judgment as a Matter of Law on the Fourth Amendment Claim

### 1. Sufficient Evidence Supports the Fourth Amendment Violation

"Because the [excessive force] inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable should only be taken from the jury in rare cases." *Green v. City & City of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014); *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) ("Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions . . . judgment as a matter of law in excessive force cases should be granted sparingly.").

The Fourth Amendment standard is whether an officer's actions were "objectively reasonable" in light of the facts and circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The "nature and quality of the intrusion" must be weighed against the "countervailing governmental interests at stake." *Id*. at 396. Courts consider: (1) the severity of the crime, (2) whether the suspect posed an immediate threat, and (3) whether the suspect was resisting or fleeing. *Id*. Additional factors include whether alternative methods were available, *Smith*, 394 F.3d at 701, and whether the officer recognized the person as emotionally disturbed, *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011).

**Severity of the Force.** A reasonable juror could have found that deadly force was used by Officer Norem. Any force that creates a substantial risk of causing death or serious bodily injury may be considered deadly. *Smith*, 394 F.3d at 705–07. "Prevailing precedent in the Ninth Circuit is that law enforcement

officers' use of body weight to restrain a 'prone and handcuffed individual[] in an agitated state' can cause suffocation 'under the weight of restraining officers,' therefore, such conduct may be considered deadly force." *Garlick*, 167 F. Supp. 3d at 1155 (quoting *Drummond*, 343 F.3d at 1056–67); *see also Greer*, 229 F. Supp. 3d at 1105 ("Even though the officers may not have intended to use deadly force [when restraining decedent prone on the ground], their actions may have resulted in [decedent's] death and could be found substantially likely to cause serious harm or death."). The intrusiveness of a seizure by means of deadly force is unmatched. *Graham*, 490 U.S. at 396.

Defendants attempt to minimize the amount of force used by Officer Norem and the individuals assisting him, asserting that "no testimony" showed any use of "body weight to restrain Mr. Stephenson" or weight being applied to his back. (ECF No. 179 at 16). However, Officer Norem admitted placing his knee on the "*lower back* buttocks area," and several witnesses testified that weight was applied to Mr. Stephenson's shoulder blade—a location on Mr. Stephenson's back directly behind the lungs and among the most dangerous places to apply pressure. Mr. Leighton testified that Norem's knee remained on Stephenson's shoulder blade from handcuffing until Officer McKee arrived more than two and a half minutes later.

**Factor One: Severity of Crime.** Stephenson's conduct—walking on the freeway—was nonviolent and minor, possibly violating California Vehicle Code § 21960(a). Officer Norem explained that CHP officers respond to such calls on a daily basis. "[R]un-of-the-mill traffic violation[s] . . . provide[ ] little, if any, support for the use of force." *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1164 (9th Cir. 2011); *see Bryan v. MacPherson*, 630 F.3d 805, 828 (9th Cir. 2009) ("Traffic violations generally will not support the use of a significant level of force."). Moreover, even if the court accepts Officer Norem's assertion that Mr. Stephenson was resisting arrest, such an offense is a misdemeanor that is not an

inherently dangerous or violent offense. *Bryan*, 630 F.3d at 829 (noting that resisting a police officer and failing to comply with a lawful order are not "inherently dangerous or violent" offenses); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055–56 (9th Cir. 2007) (obstructing a police officer is a minor offense). No witness testified that Stephenson struck, threatened, or attempted to harm anyone. Therefore, this factor weighs in Plaintiffs' favor.

**Factor Two: Immediate Threat.** While Plaintiffs agree that Stephenson posed some threat to the safety of himself and others when he was moving toward highway traffic, that threat had completely dissipated once Officer Norem had him prone, in handcuffs, with two law enforcement agents and two citizens controlling his body. Several witnesses stated that he calmed down and stopped moving shortly after being handcuffed. It is undisputed that Mr. Stephenson was unarmed, and he was not kicking, biting, or threatening anyone. After he was handcuffed, Stephenson posed no threat to anybody, and therefore, this factor weighs heavily in Plaintiffs' favor.

**Factor Three: Resistance.** The Ninth Circuit cautions that because "[r]esistance . . . should not be understood as a binary state," the nature of any resistance must be evaluated in light of the particular facts of the case. *Bryan*, 630 F.3d at 830. Here, viewing the evidence and taking all reasonable inferences in the light most favorable to Plaintiffs, Stephenson offered no more resistance once he was handcuffed. Investigator Borden testified that he "chilled out" 10–15 seconds after being handcuffed. Deena Corbett-Wolf, the former Public Safety Dispatcher who watched the incident over a Cal Trans camera, testified that Mr. Stephenson stopped moving around after he was handcuffed. Upon arriving, Officer McKee found Stephenson entirely inert and unresponsive; he never saw Stephenson make any voluntary movements. And finally, the only video of the incident does not show Mr. Stephenson making a single voluntary movement. Therefore, this factor weighs heavily in Plaintiffs' favor.

**Other Factors:** Officer Norem admitted that he believed Stephenson was emotionally disturbed. Officers are expected to exercise "greater effort to take control of the situation through less intrusive means" in such cases. *Bryan*, 630 F.3d at 829; *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) (state's interest in using deadly force is diminished when "officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual"); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) (same). Norem also had less intrusive alternatives available—he could have rolled Stephenson onto his side into a position where he would still be fully controlled but would have a better ability to breath. *Smith*, 394 F.3d at 701 (courts consider whether the officer had reasonably less intrusive means of seizure).

Considering all factors, a reasonable jury could find that Norem's use of force was excessive. Stephenson's offense was minor and after he was handcuffed, he posed no threat was not resisting. Yet Officer Norem continued to apply compressive force until Stephenson died of asphyxiation.

The Ninth Circuit's recent decision in *Scott v. Smith*, 109 F.4th 1215, 1223 (9th Cir. 2024), confirms that such conduct constitutes "severe, deadly force." In *Scott*, two officers used body-weight compression on a restrained man for "about one to two minutes," leading to death. The court emphasized that the officers had been summoned to help, not to arrest, and held that "[a] jury could find the use of bodyweight force given these circumstances was deliberate indifference." *Id*. at 1229. The parallels here are striking—Officer Norem likewise expected only to detain Stephenson for psychiatric evaluation, not arrest him, but he ended up choosing to restrain him in an extremely dangerous manner that resulted in Mr. Stephenson's death.

In sum, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude that Officer Norem's continued prone, compressive

restraint of Stephenson once he was handcuffed and subdued constituted excessive force. Therefore, this portion of the motion should be denied.[1]

### 2. The Law was Clearly Established

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Twenty years ago, the Ninth Circuit declared that "any reasonable person[] should have known that squeezing the breath from a compliant, prone, and handcuffed individual . . . involves a degree of force that is greater than reasonable." *Drummond*, 343 F.3d at 1052. Since then, the Ninth Circuit has repeatedly held that officers who hold a handcuffed, subdued person prone, interfering with the ability to breathe violate clearly established law. *See, e.g., Zelaya v. Las Vegas Metro. Police Dep't*, 682 F. App'x 565, 567 (9th Cir. 2017) (officers pinned man with their body weight, bending his legs toward his torso after he was motionless and no longer resisting); *Abston v. City of Merced*, 506 F. App'x 650, 653 (9th Cir. 2013) (use of body compression to restrain a prone and bound suspect, despite possibly minimal resistance); *Tucker*, 470 F. App'x at 629 (use of body pressure to restrain a delirious, prone, and handcuffed individual who posed no serious safety threat violated clearly established law regardless of continued resistance after handcuffing); *Arce v. Blackwell*, 294 F. App'x 259, 261 (9th Cir. 2008) (same); *accord, e.g., Greer*, 229 F. Supp. 3d at 1106–07 (similar cases placed officers on notice that keeping an individual who is in a state of excited delirium restrained with his chest to the ground while applying pressure to his back constituted excessive force); *Garlick*, 167 F. Supp. 3d at 1158 (law clearly

---

[1] For essentially the same reasons, this Court denied Officer McKee's motion for summary judgment on excessive force claims. (ECF No. 96.)

established putting officers on notice that the use of prolonged pressure to a person's back after handcuffing was unconstitutional).

These decisions are consistent with those of other circuits, such as *McCue v. City of Bangor, Me.*, 838 F.3d 55, 63–64 (1st Cir. 2016) (clearly established that exerting continued force on person's back while face down after being subdued, despite the continual movements, constitutes excessive force), *Weigel v. Broad*, 544 F.3d 1143, 1152–53, 1155 (10th Cir. 2008) ("the law was clearly established at the time of the incident that applying pressure to [a person's] upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxiation associated with such actions."); *Abdullahi v. City of Madison*, 423 F.3d 763, 765, 771, 775 (7th Cir. 2005) (denying qualified immunity where an officer, for 30 to 45 seconds, placed his knee and shin on a person's shoulder to keep him from squirming, kicking his legs and arching his back); and *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) ("[P]utting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force.").

In *Drummond*, the Ninth Circuit held that where "two officers, at least one of whom was substantially larger than [the plaintiff] was, pressed their weight against his torso and neck, crushing him against the ground" they used "severe" force posing an "extreme danger" of death. *Drummond*, 343 F.3d at 1059. That force was "wholly unwarranted" because the plaintiff was handcuffed and no longer resisting. *Id.* at 1063.

Analyzing the *Graham* factors, *Drummond* first found there was no underlying crime at issue—a neighbor called the police concerned that Drummond was emotionally disturbed and might hurt himself. *Id.* at 1057. Second, "while Drummond may have represented a threat" initially, once he was knocked to the ground and handcuffed, "a jury could find that he posed only a minimal threat to

anyone's safety." *Id*. at 1057–58. Third, at some point Drummond was no longer resisting. *Id*. at 1058. Balancing these government interests against the serious degree of force, "any reasonable person [] should have known that squeezing the breath from a compliant, prone, and handcuffed individual despite his pleas for air" was excessive force. *Id*. at 1059.

Like Drummond, Mr. Stephenson was under control and no immediate threat.  Several witnesses testified that Mr. Stephenson calmed down shortly after being handcuffed and the only video evidence of the restraint shows no voluntary motion by Mr. Stephenson at all, which is consistent with Officer McKee's testimony that when he arrived Mr. Stephenson was not moving or making any noise. Under these facts, taken in the light most favorable to Plaintiffs, *Drummond* clearly established that Officer Norem's conduct violated Mr. Stephenson's constitutional rights.

In *Spencer v. Pew*, 117 F.4th 1130 (9th Cir. 2024), the Ninth Circuit overturned a district court that granted qualified immunity to an officer who kept a handcuffed suspect prone with a knee on his back for nearly three minutes, explaining that *Drummond* clearly established that post-handcuffing compressive force was unconstitutional when the suspect is no longer resisting or posing a serious threat. In *Spencer*, the compressive restraint did not kill or even severely injury the suspect; here, the restraint resulted in Stephenson's death. In *Spencer*, the suspect had been fighting with officers, had injured one of them, and been convicted of felony assault on an officer; here, it is undisputed that Mr. Stephenson never threw a punch or threatened to hurt anyone. And finally, in *Spencer*, the suspect was responsive, moving and talking during the restraint, but here Mr. Stephenson was unresponsive for at least some portion of the restraint. While Spencer is not controlling precedent for "clearly established" law, it illustrates how the Ninth Circuit continues to apply *Drummond* consistently to similar conduct.

Other circuits have routinely deemed asphyxiating force excessive and denied qualified immunity under analogous circumstances.  *See Martin v. City of Broadview Heights*, 712 F.3d 951, 961 (6th Cir. 2013) ("The prohibition against placing weight on [the subject's] body after he was handcuffed was clearly established in the Sixth Circuit as of August 2007.");*Weigel v. Broad*, 544 F.3d 1143, 1152-55 (10th Cir. 2008) ("[T]he law was clearly established that applying pressure to [plaintiff's] upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxia[].");  *Abdullahi*, 423 F.3d at 771; *McCue*, 838 F.3d at 64; *Champion*, 380 F.3d at 903; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446-47 (5th Cir. 1998) (clearly established that hog-tying a person suspected of being in a state of excited delirium and leaving him prone constitutes deadly force); *Cruz v. City of Laramie*, 239 F.3d 1183, 1188 (10th Cir. 2001).

Courts within this Circuit have likewise denied qualified immunity for analogous conduct, under *Drummond*.  *See Garlick*, 167 F. Supp. 3d at 1155, *Greer*, 229 F. Supp. 3d at 1104 (genuine dispute regarding level of resistance during under 4 minutes of forceful prone restraint precluded qualified immunity); *Gabales v. City of San Joaquin*,  No. S-07-1346LKKDAD, 2009 WL 2923037, at *11 (E.D. Cal. Sep. 4, 2009) ("[T]he officers here were on notice of the potentially lethal effect of kneeling on or compressing a suspect's back while he lay prone.").

And in unpublished decisions, the Ninth Circuit has applied *Drummond* to deny qualified immunity under similar circumstances.  *See Abston v. Merced*, 506 Fed. Appx. 650, 652-53 (9th Cir. 2013) ("It was clearly established that defendants' use of body compression [for one minute] to restrain a prone and bound suspect, who was in no position to offer any meaningful resistance, would violate the rule established by *Drummond* nearly five years earlier."); *Arce v. Blackwell*, 294 Fed. Appx. 259, 260-61 (9th Cir. 2008) (keeping arrestee restrained with his chest to the ground while applying pressure to his back and ignoring pleas

that he could not breathe was unconstitutionally excessive); *Sandoval v. Hish*, 461 Fed. Appx. 568, 569 (9th Cir. 2011) (*Drummond* clearly established it was excessive to use restraint methods that caused positional asphyxia); see also *Slater v. Deasey*, 789 Fed. Appx. 17, 21 (9th Cir. 2019).

For all these reasons, and the reasons discussed in the Court's order denying Officer McKee's motion for summary judgment (ECF No. 96), this portion of the motion should be denied.

### C. Officer Norem is not Entitled to Judgment as a Matter of Law on the State Law Claims

Battery and negligence claims brought under California law based on excessive force are judged by a similar standard to Fourth Amendment claims. *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 n. 11, 89 Cal.Rptr.3d 801 (2009) ("Because federal civil rights claims of excessive use of force are the federal counterpart to state battery and wrongful death claims, federal cases are instructive in this area."). Thus, judgment as a matter of law should be denied for the same reasons that it should be denied on the Fourth Amendment claim.

## V.    CONCLUSION

The evidence presented at trial was more than sufficient for a reasonable jury to find in Plaintiffs' favor on each claim. Viewing the record in the light most favorable to Plaintiffs—as Rule 50 requires—a reasonable juror could conclude that Officer Norem's continued use of compressive, prone restraint on a handcuffed and subdued individual constituted excessive force or restraint and violated clearly established constitutional law. For these reasons, Defendants' motion for judgment as a matter of law should be denied.

Respectfully submitted,

Dated: October 2, 2025          **LAW OFFICES OF DALE K. GALIPO**

                    By:    /s/   Cooper Mayne
                           Dale K. Galipo
                           Cooper Mayne
                           *Attorneys for Plaintiffs Keandre Stephenson,*
                           *Devonte Stephenson, and Linden Stephenson*

**Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs Keandre Stephenson, Devonte Stephenson, and Linden Stephenson, certifies that this brief contains 4,922 words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: October 2, 2025          **LAW OFFICES OF DALE K. GALIPO**

                    By:    /s/   Cooper Mayne
                           Dale K. Galipo
                           Cooper Mayne
                           *Attorneys for Plaintiffs Keandre Stephenson,*
                           *Devonte Stephenson, and Linden Stephenson*