ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney Genera
State Bar No. 187104
DAVID KLEHM
Deputy Attorney General
State Bar No. 165302
STEPHANIE A. VOLLMER
Deputy Attorney General
State Bar No. 309407
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  Telephone:  (619) 738-9733
  Fax:  (916) 732-7920
  E-mail:  David.Klehm@doj.ca.gov
*Attorneys for Defendants State of California,
Acting by and through the California Highway
Patrol, and Dane Norem*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEVONTE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; LINDEN STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON; KEANDRE STEPHENSON, individually and as successor in interest to Decedent LEROY STEPHENSON,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**STATE OF CALIFORNIA; and DOES 1 through 100, inclusive,**<br><br>Defendants. | 5:21-cv-00526-JAK-DTB<br><br>**DEFENDANTS STATE OF CALIFORNIA'S AND DANE NOREM'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, OR, IN THE ALTERNATIVE, NEW TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DONNA M. DEAN IN SUPPORT THEREOF**<br><br>[Fed. R. Civ. P. 50(b)]<br><br>[Fed. R. Civ. P. 59]<br><br>Date: April 20, 2026<br>Time: 8:30 a.m.<br>Courtroom: 5D<br><br>Judge: The Honorable John A. Kronstadt<br><br>Trial Date: September 9, 2025<br>Action Filed: December 18, 2019 |

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on April 20, 2026, at 8:30 a.m., or as soon thereafter as counsel may be heard in Courtroom 5D of the above-entitled court located at 350 West First Street, Los Angeles, California, Defendants State of California, acting by and through the California Highway Patrol (CHP), and Officer Dane Norem (collectively, "Defendants") will and hereby do move for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), with respect to the jury verdict reached on September 23, 2025 (Dkt. 189), and the judgment entered on February 20, 2026, as a matter of law pursuant to Rule 58(c)(2)(B).[1]  In the alternative, Defendants request a new trial under Rule 59.

Defendants' motion for judgment as a matter of law is a renewed motion from a timely Rule 50(a) motion made during trial.

This motion is made on the following grounds:

1.   There is no legally sufficient evidence that any unlawful conduct by Officer Norem was a cause of death and thus no evidence to support any of plaintiffs' claims for relief;

2.   Plaintiffs' counsel committed prejudicial misconduct in closing argument by inviting the jury to speculate as to the cause of Mr. Stephenson's death;

3.   Officer Norem used reasonable force to restrain the decedent, and, therefore, Defendants are entitled to judgment as a matter of law as to all of plaintiffs' claims for relief;

3.   Officer Norem is entitled to qualified immunity as to the Fourteenth Amendment claim because he did not violate the Fourteenth Amendment or clearly established law;

[1] Although the Court recently ruled on Defendants' Rule 50(a) motion and requested a proposed judgment, it did so after judgment was constructively entered as a matter of law on February 20, 2026.  *See Orr v. Plumb*, 884 F.3d 923, 928-929 (2018).  Thus, the deadline to file post-trial motions or a notice of appeal is March 20, 2026.

4.    Officer Norem is entitled to qualified immunity as to the Fourth Amendment claim because he did not violate the Fourth Amendment or clearly established law.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the attached Declaration of Donna M. Dean, all pleadings and records on file in this action, and such oral argument as may be presented at the hearing.

This Motion is brought following the conference of counsel pursuant to Local Rule 7-3, which took place on March 16, 2026. See Dean Decl. ¶ 2.

Dated:  March 20, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General

*s/ David Klehm*

DAVID KLEHM
Deputy Attorney General
*Attorneys for Defendants State of California, Acting by and through the California Highway Patrol, and Dane Norem*

4

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

LEGAL STANDARDS....................................................................................... 4

ARGUMENT ...................................................................................................... 7

I.    Defendants Are Entitled to Judgment As A Matter Of Law on All Claims Based on Lack of Causation............................................................................. 7

    A.    After the Court Struck the "Shorter-Time" Causation Opinion, No Admissible Evidence Supported Causation from Less Than Five Minutes of Restraint ................................................................ 7

    B.    Plaintiffs' Counsel's Closing Argument Expressly Invited the Jury to Adopt the Excluded "Shorter-Time" Causation Theory, and the Verdict Shows That the Jury Adopted This Suggested Inference.............. 8

    C.    The Verdict is Speculative Because it Adopts a Medical Theory No Admissible Expert Endorsed, and it Conflicts with the Court's Gatekeeping Ruling.................................................................. 10

II.    Because Officer Norem's Use of Force Was Reasonable, Defendants Are Entitled to Judgment as a Matter of Law or a New Trial on All Claims .............. 11

III.    Officer Norem's Use of Force Did Not Violate Clearly Established Fourth Amendment Law.................................................................................. 14

IV.    There Is Insufficient Evidence to Prove a Fourteenth Amendment Claim Against Officer Norem................................................................................ 17

    A.    The Purpose to Harm Standard Applies...................................... 17

    B.    There Is No Evidence That Officer Norem Acted with a Purpose to Harm Unrelated to a Legitimate Law Enforcement Objective ................ 19

    C.    Even if the Deliberate Indifference Standard Applies, There Is No Evidence That Officer Norem Acted with Deliberate Indifference .......... 20

    D.    Officer Norem Did Not Violate Clearly Established Law Under Either Standard................................................................................ 21

    E.    If the Court Determines That Officer Norem Is Entitled to Qualified Immunity as to the Fourteenth Amendment Claim, a New Trial on Damages Is Necessary............................................................... 21

CONCLUSION ................................................................................................. 22

CERTIFICATE OF COMPLIANCE ................................................................. 24

**TABLE OF AUTHORITIES**

**Page**

CASES

*A. D. v. California Highway Patrol*
712 F.3d 446 (9th Cir. 2013)............................................................................................ 4, 19

*Alston v. Read*
663 F.3d 1094 (9th Cir. 2011).............................................................................................. 14

*Atkinson v. County of Tulare*
790 F.Supp.2d 1188 (E.D. Cal. 2011).................................................................................. 18

*Brosseau v. Haugen*
543 U.S. 194 (2004)............................................................................................................... 15

*Brown v. Ransweiler*
171 Cal.App.4th 516 (2011)............................................................................................ 12, 13

*County of Sacramento v. Lewis*
523 U.S. 833 (1998)............................................................................................................... 17

*District of Columbia v. Wesby*
583 U.S. 48 (2018)..................................................................................................... 14, 15, 16

*Drummond v. City of Anaheim*
343 F.3d 1052 (9th Cir. 2003)..................................................................................... 15, 16, 20

*Farmer v. Brennan*
511 U.S. 825 (1994)............................................................................................................... 20

*Gonzalez v. City of Anaheim*
747 F.3d 789 (9th Cir. 2014)................................................................................................ 19

*Graham v. Connor*
490 U.S. 386 (1989)......................................................................................................... 11, 12

*Hayes v. County of San Diego*
57 Cal.4th 622 (2013) ........................................................................................................... 13

*Kisela v. Hughes*
584 U.S. 100 (2018)............................................................................................................... 12

*Krouse v. Graham*
19 Cal.3d 59 (1977) .............................................................................................................. 21

*Lam v. City of Los Banos*
976 F.3d 986 (9th Cir. 2020)................................................................................................ 19

**TABLE OF AUTHORITIES**
(continued)

Page

*Mullenix v. Luna*
577 U.S. 7 (2015) .................................................................................................... 15

*Munoz v. City of Union City*
120 Cal.App.4th 1077 (2004) ................................................................................ 12

*Nicholson v. City of Los Angeles*
935 F.3d 685 (9th Cir. 2019) ................................................................................. 17

*Ochoa v. City of Mesa*
26 F.4th 1050 (9th Cir. 2022) ................................................................... 17, 18, 19

*Patel v. Kent Sch. Dist.*
648 F.3d 965 (9th Cir. 2011) ................................................................................. 20

*Pelayo v. City of Anaheim*
No. 819CV02318MCSADSX, 2021 WL 2153220 (C.D. Cal. Apr. 6, 2021) ........................ 18

*Porter v. Osborn*
546 F.3d 1131 (9th Cir. 2008) ................................................................... 17, 18, 19

*S.B. v. County of San Diego*
864 F.3d 1010 (9th Cir. 2017) ............................................................................... 12

*Smith v. Agdeppa*
81 F.4th 994 (9th Cir. 2023) .................................................................................. 14

*Tucker v. Las Vegas Metro. Police Dep't*
470 F.App'x 627 (9th Cir. 2012) ........................................................................... 16

*Wilkinson v. Torres*
610 F.3d 546 (9th Cir. 2010) ................................................................................. 17

*Williams v. City of Sparks*
112 F.4th 635 (9th Cir. 2024) .......................................................................... 11, 12

*Zion v. County of Orange*
874 F.3d 1072 (9th Cir. 2017) ............................................................................... 19

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ....................................................................................... *passim*

Fourteenth Amendment ................................................................................. *passim*

**TABLE OF AUTHORITIES**
(continued)

Page

**COURT RULES**

9th Cir. R. 36-3(a) ................................................................................................ 16

Federal Rules of Civil Procedure
    50(a) ....................................................................................... 3, 4, 5, 10, 16
    50(b) ............................................................................................ 4, 10, 11, 22

iv

**INTRODUCTION**

This is a wrongful death action arising out of the death of Leroy Stephenson following the restraint of Mr. Stephenson by California Highway Patrol Officer Dane Norem. Plaintiffs allege that Mr. Stephenson died from positional asphyxiation caused by Officer Norem holding him prone with weight on his back. The restraint occurred on the 91 freeway in Riverside after Mr. Stephenson, who was on foot, refused to obey Officer Norem's commands to get off the freeway and instead ran across an offramp toward the freeway lanes, causing Officer Norem to have to tackle and restrain Mr. Stephenson in the gore point between the freeway lanes and the offramp to prevent him from running back into fast-moving freeway traffic.

Plaintiffs' claims are for alleged 42 U.S.C. § 1983 violations based on the Fourth and Fourteenth Amendments against Officer Norem, and two state law claims for battery and negligence against Officer Norem and Defendant State of California, acting by and through the California Highway Patrol (CHP).

Once the Court instructed the jury during trial to disregard plaintiffs' excluded medical opinions tying death to post-handcuff prone restraint, plaintiffs were left with no competent expert testimony isolating any allegedly wrongful conduct as a but-for or substantial factor in Mr. Stephenson's death. Any contrary finding rests on speculation. After the Court granted Defendants' motion to strike plaintiffs' medical expert's testimony purporting to support causation from less than five minutes of restraint, there was no legally sufficient evidentiary basis from which a reasonable jury could find that Officer Norem's conduct was a proximate cause of Mr. Stephenson's death. Any verdict premised on a shorter period of restraint necessarily rests on speculation rather than admissible evidence of medical causation and cannot stand under Federal Rule of Civil Procedure 50.[2] Further, the

---

[2] All subsequent references to "Rule(s)" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

1

verdict is against the clear weight of the evidence and plaintiffs' counsel committed prejudicial misconduct during closing argument by inviting the jury to speculate as to causation; thus, in the alternative, a new trial pursuant to Rule 59 is warranted.

In addition, based on the evidence presented, Officer Norem's use of force was reasonable.  As such, Officer Norem is entitled to judgment as a matter of law, or, in the alternative, a new trial, on all of plaintiffs' claims.  In addition, Officer Norem is entitled to qualified immunity as to plaintiffs' Fourteenth and Fourth Amendment claims because he did not violate any constitutional rights or any clearly established law.

## FACTUAL AND PROCEDURAL BACKGROUND

During trial, plaintiffs' medical experts, Dr. Daniel Wohlegelertner and Dr. Bennet Omalu, initially advanced two related cause of death timing theories: (1) that Mr. Stephenson's death resulted from approximately five to six minutes of prone restraint with weight on his back, and (2) that Mr. Stephenson either could have died from a shorter period of compression (less than three minutes after Mr. Stephenson was placed in handcuffs).  Reporter's Transcript (RT) 638:3-18, 664:5-18, 689:14-691:14, 799:10-15, 8-6:5-10.

Plaintiffs' police practices expert, Jeffrey Noble, testified that he was only critical of Officer Norem's conduct for the *3 minutes and 39 seconds after* Mr. Stephenson was handcuffed.  RT 573:8-12, Dkt. 124, 165.  Therefore, there was no testimony during trial that Officer Norem's conduct when he was trying to handcuff Mr. Stephenson during the first two and half minutes of interaction was a constitutional violation, negligent or tortious.

On September 15, 2026, Defendants filed a motion to strike portions of Dr. Wohlegelertner's testimony.  Dkt. 178.  After hearing oral argument, the Court granted Defendants' motion to strike the opinions of Dr. Daniel Wohlegelertner that a shorter period of restraint—*less than five minutes*—could have caused Mr. Stephenson's death, or that he would have survived had he been placed in a

2

recovery position sooner and instructed the jury to disregard that testimony.  RT 1400:3-1406:25, 1449:1-4.  Thus, plaintiffs' only remaining admissible medical causation testimony linked death to approximately five to six minutes of prone restraint with compression.

In closing argument, plaintiffs' counsel expressly told the jury that "even though" plaintiffs' medical experts testified it took five to six minutes of weight on Mr. Stephenson's back for him to asphyxiate and die, the "*inference*" was that, if there had been a shorter amount of time that weight was on Mr. Stephenson's back, he would have lived.  RT 1497:11-12, 1548:8-14.  The jury's verdict rests on this invited medical speculation, not on admissible expert evidence, and thus a reasonable jury did not have a legally sufficient evidentiary basis to find causation.

On September 17, 2026, at the close of evidence, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  Defendants argued that, based on the evidence presented: (1) plaintiffs had not established that Officer Norem used unreasonable force and is therefore entitled to judgment as a matter of law as to all of plaintiffs' claims; (2) Officer Norem is entitled to qualified immunity under the Fourth Amendment; (3) the Fourteenth Amendment claim was subject to the "purpose to harm standard, plaintiffs had not established that Officer Norem's actions violated the Fourteenth Amendment, and Officer Norem is entitled to qualified immunity.  Dkt. 179.  The Court took Defendants' Rule 50(a) motion under submission.

The jury verdict was entered into the docket on September 23, 2025.  No separate document setting forth the judgment on the jury verdict has been entered into the docket.  Accordingly, pursuant to Rule 58(c)(2)(B), judgment was entered as a matter of law 150 days later for purposes of the deadlines to file post-trial motions and a notice of appeal.  *Orr v. Plumb*, 884 F.3d 923, 928-929 (2018) (Court held that "entry of the jury special verdict started the 150-day countdown to . . . when an appealable judgment on the jury special verdict was constructively

3

entered due to the district court's inaction.")  Thus, judgment was constructively entered as a matter of law pursuant to Rule 58(c)(2)(B) on February 20, 2026, triggering the deadline to file post-trial motions or a notice of appeal.[3]

## LEGAL STANDARDS

### Rule 50

Rule 50(b) allows a party who previously moved under Rule 50(a) to renew the motion and seek judgment as a matter of law (JMOL) after entry of judgment. Judgment as a matter of law is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" on the issue.  Fed. R. Civ. P. 50(a) and (b).  In the Ninth Circuit, a denial of JMOL must be reversed (i.e., JMOL is appropriate) if the jury could have relied only on speculation to reach its verdict.  *Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 802-803 (9th Cir. 2009); *A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013).

In cases involving complex medical causation—such as alleged death by positional asphyxia—the plaintiff must ordinarily present expert testimony establishing causation to a reasonable medical probability.  The Ninth Circuit and district courts applying state law within the circuit have established that expert medical testimony is necessary when causation involves complex medical questions beyond lay understanding.  *See, e.g., Kennedy v. Collagen Corp.*, 161 F.3d 1226 (1998); *Sclafani v. Air & Liquid Sys. Corp.*, 14 F.Supp.3d 1351, 1355-1356 (C.D. Cal. 2014); *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F.Supp.2d 1193, 1198 (D. Nev. 2008), aff'd, 371 F.App'x 752 (9th Cir. 2010); *Bordelon v. Airgas USA, LLC*, 603 F.Supp.3d 946, 962 (D. Or. 2022).  This requirement prevents jurors from speculating about causation in cases where determination requires

---

[3] Although the Court recently ruled on Defendants' Rule 50(a) motion and requested a proposed judgment, it did so after judgment was constructively entered as a matter of law on February 20, 2026.  Defendants could find no authority addressing this unusual procedural issue, and, in an abundance of caution, Defendants file this motion to avoid any possibility of waiving their right to bring post-trial motions and an appeal.

4

expertise beyond the knowledge and experience of ordinary lay persons. *Bordelon*, 603 F.Supp.3d at 962. The rationale for this rule is that "once the theory of causation leaves the realm of lay knowledge for esoteric scientific theories, the scientific theory must be more than a possibility to the scientists who created it." *Sclafani*, 14 F.Supp.3d at 1355. Allowing lay juries to make medical causation determinations without expert guidance would provide "no reasoned protection from the speculations of courts and juries." *Id*. Lay jurors may not substitute their own medical judgment or infer causal mechanisms that no qualified expert has endorsed, particularly where the court has excluded such opinions under the rules of evidence. *See Engilis v. Monsanto Co.,* 151 F.4th 1040 (9th Cir. 2025) (affirming exclusion of causation expert under Rule 702 and upholding summary judgment because without that testimony there was no triable issue of fact for a jury to decide). The Ninth Circuit has affirmed judgment for the defendant where plaintiffs' causation evidence amounted to no more than speculation and conjecture, and thus there was no triable issue of fact for a jury to decide. *In re Incretin-Based Therapies Prods. Liab. Litig*. 524 F.Supp.3d 1007, 1050-1051 (S.D. Cal.), aff'd (9th Cir., Mar. 28, 2022, No. 21-55342) 2022 WL 898595.[4]

If the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may grant judgment as a matter of law against that party as to a claim or issue. Fed. R. Civ. P. 50(a) and (b). While the Court may not weigh witness credibility, it may assume the veracity "'of any admissions made and stipulations entered into by the party opposing the Rule 50 motion . . . as well as any evidence derived from disinterested witnesses that has not been contradicted or impeached.'" *Cruz-Vargas v. R.J. Reynolds Tobacco Co.,* 348 F.3d 271, 275 (1st Cir. 2003) (citation omitted, ellipses in

---

[4] The standard for granting judgment as a matter of law is the same as the standard for granting a pretrial motion for summary judgment. Fed. R. Civ. P. 50(a)(1), Adv. Comm. Notes, 1991 Amend.; *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000); *Hoffman v. Tonnemacher,* 593 F3d 908, 912 (9th Cir. 2010).

5

original).  The question is whether there is evidence upon which the jury could properly find for the nonmoving party.  *Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Services, Inc.,* 537 F.3d 1184, 1191 (10th Cir. 2008).

**Rule 59**

A district court may grant a new trial on any historic grounds that have previously been established by the federal court system.  Fed. R. Civ. P. 59(a)(1)(A).  Reasons for granting a new trial include situations where the verdict is against the weight of the evidence, or for other reasons, the trial was not fair to the moving party.  *Molski v. M. J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).  A new trial may also be ordered where the opposing counsel committed misconduct at trial that made it "reasonably probable that the verdict was influenced by prejudicial statements."  *Tesser v. Board of Ed. of City School Dist. of City of New York,* 370 F.3d 314, 321 (2nd Cir. 2004); *Miksis v. Howard,* 106 F.3d 754, 764 (7th Cir. 1997); *see California Sansome Co. v. United States Gypsum,* 55 F.3d 1402, 1405 (9th Cir. 1995).  Counsel may commit misconduct when addressing the jury during opening statement or closing argument.  *See Clapper v. American Realty Investors, Inc.,* 95 F.4th 309, 313-317 (5th Cir. 2024) (denial of new trial motion reversed based, in part, on counsel's references to matters not in record during closing argument ); *Christopher v. State of Florida,* 449 F.3d 1360, 1367 (11th Cir. 2006) (new trial granted where plaintiff's closing argument prejudiced defendant's rights because it incorrectly expanded potential grounds of liability and took away benefit defendant had won on partial summary judgment).

A verdict should be set aside where after giving full respect to the jury's findings the judge is left with the definite and firm conviction that a mistake has been committed by the jury.  *Landes Const. Co. Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-1372).  In ruling on a new trial motion based on insufficient evidence, the district court must "weigh the evidence as he saw it," and set aside the

verdict where the verdict is contrary to the clear weight of the evidence. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). The Court has broad discretion to order a new trial pursuant to Rule 59. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). The Ninth Circuit grants "considerable deference to the district court's new trial decision and will not overturn the district court's decision to grant a new trial absent an abuse of discretion." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL CLAIMS BASED ON LACK OF CAUSATION

#### A. After the Court Struck the "Shorter-Time" Causation Opinion, No Admissible Evidence Supported Causation from Less Than Five Minutes of Restraint

Following Defendants' objections, the Court granted Defendants' motion to strike the opinions of plaintiffs' medical expert, Dr. Wohlegelertner, related to putting Mr. Stephenson in a recovery position during the three minutes and thirty-nine seconds post-handcuffing time frame and expressly instructed the jury that those opinions were not to be considered:

> THE COURT: I want to make just one brief remark concerning the testimony by Dr. Wohlgelernter, Dr. W., as he's been referred to. I'm going to direct you to disregard testimony regarding the effect of placing Mr. Stephenson in a recovery position.

RT 1408:8-12.

Once that ruling was issued, plaintiffs' only admissible medical expert causation opinion in the record required five to six minutes of prone restraint with compression to produce positional asphyxiation and death. No expert testified, to a reasonable degree of medical probability, that Mr. Stephenson's death was caused by any shorter period of prone restraint. The physiologic mechanism, timing, and interaction of positional asphyxia with other factors are not within ordinary lay

7

knowledge and must be established by competent expert testimony. *In re Incretin-Based Therapies Prods. Liab. Litig.*, *supra*, (holding that medically complex causation claims require expert witness testimony on causation and affirming summary judgment where exclusion of plaintiffs' medical expert left no competent causation evidence).

### B. Plaintiffs' Counsel's Closing Argument Expressly Invited the Jury to Adopt the Excluded "Shorter-Time" Causation Theory, and the Verdict Shows That the Jury Adopted This Suggested Inference

Notwithstanding the Court's exclusion of the "shorter-time" causation opinions and its instruction that the jury disregard them, plaintiffs' counsel used closing argument to reinsert that theory into the case even after the Court expressly instructed counsel to only use evidence admitted during trial in their respective closing arguments.

THE COURT: Both sides are limited in arguments to making arguments based on the evidence that has been admitted at trial. If there's not evidence to support an argument, it shouldn't be made.

RT 1449:1-4.

Plaintiffs' counsel told the jury during his initial closing argument that the medical experts said it took five to six minutes of weight on Mr. Stephenson's back for him to asphyxiate and die.

And what did Dr. [Wohlgelertner] explain very clearly? His breathing was being restricted, his acidosis was building up, and he couldn't get enough oxygen to blow off or reduce this acidosis, and that's why he died of a lack of oxygen. Now, if you call it asphyxiation, you can call it what you want, that's why he died. Six minutes of prone restraint. That was important to him, because he mentioned the Campbell study and the Steinberg study, and once you get over five minutes, you're looking at risk of death. So the inference is the length of the restraint after the

8

handcuffing eventually killed him.  Six minutes in total. RT 1497:11-22.

Then, after Defendants' counsel's closing argument focused on the lack of any medical expert testimony that a shorter than five to six minute period of prone restraint caused Mr. Stephenson's death, plaintiffs' counsel stated in his rebuttal closing argument that the "*inference*" was that if there was a shorter amount of time that weight was on Mr. Stephenson's back, he would have lived.

> And also, both Dr. Omalu and Dr. [Wohlgelertner] said it was the five or six minutes' cumulative restraint, cumulative, because it was six minutes. It was five to six minutes. So reasonable inference from you is, had it not been six minutes, had they put him in a recovery position earlier, more likely than not he would have lived. That's the whole purpose of the recovery position.

RT 1548:8-14.

Plaintiffs' rebuttal closing argument directly contradicted the Court's evidentiary rulings by urging the jury to rely on an excluded medical proposition—that Dr. Wohlgelertner's shorter duration of compression would have altered the outcome.  Additionally, plaintiffs' closing argument invited the jury to find causation based on a medical scenario unsupported by any admissible expert testimony and based on testimony the jury was told not to consider, thereby expressly encouraging the jury to supply its own medical judgment regarding timing and mechanism of asphyxiation, despite the lack of expert support and the complex, technical nature of the issue.

The resulting verdict, which necessarily rests on the notion that Mr. Stephenson would have survived had he been released sooner than five minutes, reflects acceptance of that improper invitation because the only admissible expert opinion required five to six minutes of restraint with compression, any liability finding based on a shorter duration is not grounded in evidence but in speculation

9

and argument.

### C.   The Verdict is Speculative Because it Adopts a Medical Theory No Admissible Expert Endorsed, and it Conflicts with the Court's Gatekeeping Ruling

As discussed above, under Ninth Circuit standards, a verdict cannot stand where it rests on conjecture or on a causal theory that lacks admissible expert support in a technical medical context.  When a district court excludes an expert's causation theory and no other qualified testimony or evidence supplies the necessary causal link, a party cannot rely on attorney argument or lay inference to fill that gap.

Judgment as a matter of law is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" on an issue.  Fed. R. Civ. P. 50(a) and (b).  The Ninth Circuit has been clear that when expert testimony on causation is excluded and no other competent evidence fills the gap, judgment for the defense is required because a jury may not infer causation from the mere fact of injury or from conjectural lay inferences about complex medical mechanisms.  *Engilis, supra,* 151 F.4th at 1055.

As in *Engilis*, once this Court exercised its gatekeeping function and excluded plaintiffs' "shorter-time" causation opinions, plaintiffs were left without admissible evidence on the only theory of causation the jury ultimately adopted, and "no reasonable jury" could find causation on that record.  Under Rule 50(b), judgment as a matter of law is therefore required.  Since the verdict depends on that unsupported and excluded theory, it is speculative as a matter of law and fails to satisfy Rule 50(b)'s requirement of a "legally sufficient evidentiary basis" for the jury's finding on causation.

Here, the Court fulfilled its gatekeeping role by striking the "shorter-time" causation opinion and instructing the jury accordingly.  Plaintiffs' counsel then used closing argument to invite the jury to disregard that gatekeeping decision and adopt the "shorter-time" theory that had been excluded by the Court, asserting that

10

the jury could infer that a shorter period of restraint with compression would have meant Mr. Stephenson would have lived.  The jury's acceptance of that argument is not a "reasonable inference" from admissible evidence; it is the creation of a new medical proposition that no admitted expert testimony supports.

By returning a verdict for plaintiffs that necessarily depends on a shorter restraint period than the five to six minutes described in the surviving expert testimony, the jury adopted a causal theory that contradicted the limits of the only admissible expert opinion on time-to-death and found medical causation where no expert, and no other admissible evidence, established causation to a reasonable medical probability.  Such a verdict is impermissibly speculative because it requires lay jurors to create a new medical proposition—that positional asphyxiation caused death within a shorter time frame—without evidentiary support.  Rule 50(b) does not allow the Court to defer to a verdict that rests on conjecture rather than evidence.  In the alternative, a new trial should be granted based on the jury's speculative verdict and plaintiffs' counsel's prejudicial misconduct during closing argument.

## II.   BECAUSE OFFICER NOREM'S USE OF FORCE WAS REASONABLE, DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON ALL CLAIMS

A claim of excessive force against a police officer is considered a seizure that is analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Courts analyze reasonableness from the perspective of a reasonable officer on the scene, and under a totality-of-circumstances analysis with the facts and circumstances that existed at the time. *Id.* at 396-397. "*Graham* identified several factors to consider when evaluating the strength of the government's interest in the force used: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Williams v. City of Sparks*, 112 F.4th 635, 643

11

(9th Cir. 2024). "The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." *Id.* (quoting *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019); *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017).

Three key principles must be kept in mind when these competing factors are weighed. First, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the benefit of 20/20 vision of hindsight. *Kisela v. Hughes*, 584 U.S. 100, 103 (2018) (quoting *Graham*, 490 U.S. at 396); *Williams,* 112 F.4th at 643. Second, a court must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 396-97 (internal quotations omitted)); *Williams,* 112 F.4th at 643. Third, "officers need not employ the least intrusive means available, so long as they act within a range of reasonable conduct." *Id*.

Under California law, a state battery cause of action, similar to the federal excessive force claim discussed above requires proof of unreasonable force. *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2011). Police are not treated as ordinary battery defendants as they are charged with protecting public peace and order and use force as part of their duties. *Id*. Police are therefore "entitled to the even greater use of force than might be in the same circumstances required for self-defense." *Id*. An officer's use of force is reasonable if the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id*. at 528 (quoting *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1103 (2004)). The reasonableness analysis is "highly deferential to the police officer's need to protect himself and others." *Munoz v. City of Union City*, 120 Cal.App.4th at 1103.

//

12

Under California law, an officer will not be liable for negligence as long as his conduct falls "within the range of conduct that is reasonable under the circumstances," and officers are not required to choose the "most reasonable" action. *Hayes v. County of San Diego*, 57 Cal.4th 622, 632 (2013) (quoting *Brown v. Ransweiler*, 171 Cal.App.4th at 537-538). Courts must analyze the reasonableness of the officer's conduct using the totality of the circumstances and from the perspective of a reasonable officer on the scene, and not with the benefit of 20/20 hindsight. *Id.*

Here, the evidence presented is that Officer Norem's use of force was reasonable given the totality of the circumstances. Both plaintiffs' and Defendants' police practices experts agreed that Officer Norem's actions through the time of handcuffing was reasonable. RT 573:8-12, 1109:23-1110:1, Dkt. 124, 165. Testimony by Officer Norem and Defendants' police practices expert explained that there was no training on positional asphyxiation or putting a suspect in a recovery position in 2019 at the time of this incident; rather that training was implemented after the incident in this case. RT 425:16-426:11, 1116:20-1117:12. Further, there was no testimony that Officer Norem or anyone else present at the scene used body weight to restrain Mr. Stephenson in a manner that would restrict his breathing, and no one ever put their weight on Mr. Stephenson's head, neck, or back above the waist and below the shoulders. Rather, Officer Norem used his knee to control Mr. Stephenson's hip, Mr. Borden used his knee and hands to control Mr. Stephenson's shoulders, and Mr. Stout and Mr. Leighton used their hands to control Mr. Stephenson's legs. RT 258:22-259:17, 268:20-269:8, 330:2-18, 419:6-14. Further, as discussed above, the only admissible expert testimony regarding the danger of applying weight to Mr. Stephenson's back was that the application of such weight for five to six minutes would be necessary to cause death. Here, as can be seen in the MVARS video, any such weight was not applied continuously and was only applied for 3 minutes and 39 seconds after Mr. Stephenson was handcuffed. Trial

13

Exs. 6, 7.  Finally, Officer Norem and others testified regarding the danger to the public of having Mr. Stephenson break free from the restraint and resume running through freeway traffic lanes – i.e., it could cause death or serious injury to both Mr. Stephenson and the motorists on the freeway or could cause death or serious injury to Officer Norem or others if Mr. Stephenson were to knock them into traffic lanes.  RT 408:4-23, 507:17-508:3, 1107:18-1108:3.  Thus, the restraint of Mr. Stephenson under the circumstances was not unreasonable.

Accordingly, Officer Norem is entitled to judgment as a matter of law, or, in the alternative, a new trial on all of plaintiffs' claims.

## III.   OFFICER NOREM'S USE OF FORCE DID NOT VIOLATE CLEARLY ESTABLISHED FOURTH AMENDMENT LAW

The burden of showing that the constitutional right at issue was clearly established is upon the plaintiffs. *Alston v. Read*, 663 F.3d 1094 (9th Cir. 2011); *Smith v. Agdeppa*, 81 F.4th 994, 1004 fn. 4 (9th Cir. 2023). Defendants bear no such analogous burden and are neither required to find factually on-point cases that clearly establish the lawfulness of an officer's actions nor bring forward precedent that shows the *un*lawfulness of their conduct was *not* clearly established. *Hopson*, 71 F.4th at 708.

For a constitutional right to have been "clearly established", then-existing law must have placed the constitutionality of the officer's conduct "beyond debate," such that every reasonable official would have understood that what he is doing is unlawful.  *District of Columbia v. Wesby,* 583 U.S. 48, 63 (2018); *Hopson*, 71 F.4th at 697 (quoting same). "[A] rule is only clearly established if it has been settled by controlling authority or a robust consensus of cases of persuasive authority that clearly prohibits the officer's conduct in the particular circumstances, with a high degree of specificity." *Hopson*, 71 F.4th at 697 (quoting *Wesby*, 583 U.S. at 63-64) (internal quotation marks omitted).

//

The Supreme Court has "stressed that the 'specificity' of the rule is 'especially important in the Fourth Amendment context." *Wesby*, 583 U.S. at 64 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix,* 577 U.S. at 13 (original emphasis). The inquiry must be undertaken in light of the specific context of the case, and not as a broad general proposition. *Id*.; *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix,* 577 U.S. at 13 (quoting *Saucier v. Katz,* 533 U.S. 194, 205 (2001)). Thus, "Plaintiffs asserting excessive force claims must … point to an existing rule that 'squarely governs' the facts at issue and that moves the officer's actions outside the 'hazy border between excessive and acceptable force.'" *Hopson*, 71 F.4th at 698 (quoting *Brosseau*, 543 U.S. at 201 and citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)).

Here, the question is whether the law, as it existed on January 24, 2019, was clearly established that Officer Norem's use of force to restrain Mr. Stephenson and prevent him from running into freeway traffic, was unlawful. It was not.

Plaintiffs relied heavily on *Drummond v. City of Anaheim,* 343 F.3d 1052, 1056–67 (9th Cir. 2003), to support their argument that Officer Norem is not entitled to qualified immunity. However, the facts in *Drummond* are materially distinguishable. Mr. Drummond had not committed any crime. *Id.* at 1054. A neighbor called the Anaheim Police Department because he was concerned that Mr. Drummond might "dart into traffic." *Id.* Officers located Mr. Drummond, *not on a freeway*, but in a 7-Eleven parking lot. *Id.* There was *no indication* Mr. Drummond was a danger to himself or others at that moment. *Id.* Yet the officers decided to take him into custody. *Id.* Mr. Drummond was "knock[ed] to the

ground," handcuffed while prone, and even though Mr. Drummond did not resist, one of the officers "put his knees into Mr. Drummond's back and placed the weight of his body on him." *Id.* Another "also put his knees and placed the weight of his body" on Mr. Drummond, including "one knee on Mr. Drummond's neck." *Id.* Mr. Drummond repeatedly said he could not breathe and that the officers were choking him. *Id.* The officers continued pressing their weight down into his back and on his neck. *Id.* at 1055. Officer Norem testified that he made contact with Mr. Stephenson's belt-line area for purposes of controlling his pelvis, which would not restrict his breathing. RT 258:22-259:17, 419:6-14. In addition to witness testimony, Officer McKee's MVARs video (Dkt. 179, p. 1) clearly shows Officer Norem with his left leg stretched full length, perpendicular to his body. *Id.* This attests to the fact that Officer Norem was counterbalancing himself so as not to put his full body weight on the belt-line area of Mr. Stephenson as he sought to control Mr. Stephenson's pelvis and prevent him from further movement that would intensify a dangerous, freeway setting. *Id.* In the *Drummond* case, *twenty minutes* into the incident, officers used a "hobble restraint" to bind Mr. Drummond's ankles, and one minute later, Mr. Drummond lost consciousness and went limp (*Id.*) whereas the entire encounter from the time Officer Norem got out of his car to the time Mr. Stephenson became unresponsive was only about six minutes. The unpublished cases cited by the Court in its ruling on Defendants' Rule 50(a) motion are also distinguishable and do not establish a "robust consensus of cases of persuasive authority" (*Wesby*, 583 U.S. at 63-64) as they are not precedential (9th Cir. R. 36-3(a)), they follow *Drummond* with little to no analysis, and they do not address the specific facts that are present in this case but instead rely on broad statements such as, "existing law recognized a Fourth Amendment violation where two officers use their body pressure to restrain a delirious, prone, and handcuffed individual who poses no serious safety threat." *Tucker v. Las Vegas Metro. Police Dep't*, 470 F.App'x 627, 629 (9th Cir. 2012).

16

Accordingly, Officer Norem is shielded by qualified immunity.

## IV. THERE IS INSUFFICIENT EVIDENCE TO PROVE A FOURTEENTH AMENDMENT CLAIM AGAINST OFFICER NOREM

### A.    The Purpose to Harm Standard Applies

"[T]he Fourteenth Amendment standard applicable to a claim by a relative demands more of such a plaintiff than a Fourth Amendment claim by the victim of an officer's actions." *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056-57 (9th Cir. 2022). A claim asserting a violation of familial relationship under the Fourteenth Amendment requires proof that an officer's conduct "'shocks the conscience.'" *Id.* at 1055 (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). "[O]nly the most egregious official conduct" is conscience shocking. *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).

"There are two tests used to decide whether officers' conduct 'shocks the conscience.'" *Ochoa,* 26 F.4th at 1056. The test is either deliberate indifference or purpose to harm, and "[w]hich test applies turns on whether the officers had time to deliberate their conduct." *Id.* "[T]he deliberate-indifference test applies if the situation at issue 'evolve[d] in a time frame that permits the officer to deliberate before acting.'" *Id.* "Deliberation in this context 'should not be interpreted in the narrow, technical sense.'" *Id.* (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)). Only when "actual deliberation is practical," *A. D. v. State of Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013), may "an officer's deliberate indifference suffice to shock the conscience and the plaintiff may prevail by showing that the officer disregarded a known or obvious consequence of his action." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692-93 (9th Cir. 2019) (simplified). "Deliberation is not possible if the officers 'encounter[ed] fast paced circumstances presenting competing public safety obligations.'" *Ochoa*, 26 F.4th at 1056; *see Wilkinson*, 610 F.3d at 554 (observing the Supreme Court has "rejected the deliberate indifference standard even in cases where an officer giving chase

17

could have deliberated while pursuing the suspect"). Accordingly, "the purpose-to-harm test applies if the situation at issue 'escalate[d] so quickly that the officer [had to] make a snap judgment.'" *Ochoa*, 26 F.4th at 1056.

Officer Norem made the decision to restrain Mr. Stephenson under rapidly evolving and dangerous circumstances after Mr. Stephenson ran across an offramp and attempted to run into freeway lanes, both of which were busy with heavy traffic. The encounter lasted approximately six minutes from the time Officer Norem unsuccessfully deployed his taser to the time Mr. Stephenson became unresponsive. During the six-minute encounter, Officer Norem had to address competing concerns of the safety of the motoring public, the safety of Mr. Stephenson, and his own safety as he struggled to get Mr. Stephenson under control to prevent him from running into freeway traffic lanes. Moreover, given that plaintiffs' police practices expert, Jeffrey Noble, opined that Officer Norem's conduct *before* handcuffing Mr. Stephenson was reasonable and compliant with standards and training, the relevant time period is reduced to approximately three and a half minutes, during which time Officer Norem had to take into account the dangers to Mr. Stephenson, himself, and others if Mr. Stephenson were to get loose and run toward traffic lanes again. Under these circumstances, the "purpose to harm" standard applies. *See Porter*, 546 F.3d at 1139 (purpose to harm standard applied during five-minute altercation between officers and victim that evolved quickly and forced offers to make "split second decisions"); *Pelayo v. City of Anaheim*, No. 819CV02318MCSADSX, 2021 WL 2153220, at *6 (C.D. Cal. Apr. 6, 2021) (purpose to harm standard applied where incident from start to finish "happened in under six minutes"); *Atkinson v. County of Tulare*, 790 F.Supp.2d 1188, 1208 (E.D. Cal. 2011) (purpose to harm standard applied where "the entire incident lasted only a few minutes").

//

//

18

**B.    There Is No Evidence That Officer Norem Acted with a Purpose to Harm Unrelated to a Legitimate Law Enforcement Objective**

A claim against a police officer for substantive due process rights under the Fourteenth Amendment considers the subjective intent of the officer. *A.D.*, 712 F.3d at 453.  In circumstances with "constant flux" that require officers to make "snap judgments," substantive due process violations exist only when the officer intends to "harm, terrorize or kill" the suspect without a legitimate law enforcement objective.  *Porter*, 546 F.3d at 1140-1141 (applying a "purpose to harm" standard, reasoning that when the use of force against a suspect is only meant to "teach him a lesson" or "get even," officers would not be shielded from liability.)  "Legitimate [law enforcement] objectives can include 'arrest, self-protection, and protection of the public.'" *Ochoa*, 26 F.4th at 1056.  "Illegitimate [law enforcement] objectives include 'when the officer "had any ulterior motives for using force against" the suspect, such as "to bully a suspect or 'get even,'" or when an officer uses force against a clearly harmless or subdued suspect.'" *Id.; see, e.g., Zion v. County of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017) (jury could conclude officer acted without legitimate law enforcement objective when after shooting the suspect multiple times at close range, the officer took "a running start" and "head stomp[ed]" the clearly harmless and subdued suspect's head multiple times).

The evidence adduced at trial does not show any motivation for Officer Norem's use of force other than protection of Mr. Stephenson, protection of the motoring public on the freeway, and self-preservation.  Under these circumstances, the "purpose to harm" standard is not met, and Officer Norem did not commit a substantive due process violation.  *See, Gonzalez v. City of Anaheim*, 747 F.3d 789, 798-799 (9th Cir. 2014) (summary judgment affirmed on Fourteenth Amendment claim where plaintiff did not have evidence of officer's ulterior motive(s) for using force); *Lam v. City of Los Banos*, 976 F.3d 986, 1004 (9th Cir. 2020) (finding no Fourteenth Amendment violation where no evidence to support that an officer acted

19

to "bully a suspect or get even").  Thus, Officer Norem is entitled to judgment as a matter of law as to plaintiffs' cause of action under the Fourteenth Amendment.

### C.   Even if the Deliberate Indifference Standard Applies, There Is No Evidence That Officer Norem Acted with Deliberate Indifference

Under the deliberate indifference standard, a plaintiff may prevail by showing that the officer "'disregarded a known or obvious consequence of his action.'" *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (quoting *Bryan County v. Brown*, 520 U.S. 397, 410 (1997)).  Under *Farmer v. Brennan*, 511 U.S. 825 (1994), the deliberate indifference standard has both an objective and a subjective component.  To prove deliberate indifference, a plaintiff must prove that: (1) there was an objectively substantial risk of serious harm (*Id*. at pp. 843); (2) the defendant personally knew of facts, before the injury, from which the inference could have been drawn that there was a substantial risk of such injury occurring (*Id*. at 837); (3) before the alleged injury to the plaintiff, the defendant subjectively drew such inference (*Id*. at pp. 837-838); and (4) before the alleged injuries to the plaintiff, the defendant "consciously" or "recklessly" disregarded the risk in question (*Id*. at pp. 836, 839, 840, 846, 847).

First, given the testimony of plaintiffs' medical experts that the risk of death arises after five to six minutes of restraint with body weight applied, there is not sufficient evidence that the restraint of Mr. Stephenson for three minutes and 39 seconds after handcuffing while applying body weight to areas of the body that would not restrict breathing posed an objectively substantial risk of serious harm.  Second, although Officer Norem testified that POST currently provides instruction on positional asphyxiation, he and Defendants' police practices expert both testified that such training was not provided by POST *before* the incident with Mr. Stephenson.  RT 425:16-426:11, 1116:20-1117:12.  For the reasons discussed above, given that the *Drummond* case involves substantially different facts, it could not have provided Officer Norem with such knowledge.  Thus, there is no evidence

20

that Officer Norem knew of and consciously disregarded a serious risk of injuring Mr. Stephenson.

### D.    Officer Norem Did Not Violate Clearly Established Law Under Either Standard

Under the circumstances of this case Officer Norem did not violate clearly established law concerning plaintiffs' substantive due process rights.  Plaintiffs have not shown – and cannot show – that there existed clearly established law such that every reasonable officer would have understood that his restraint of Mr. Stephenson in the circumstances Officer Norem faced was unlawful under the Fourteenth Amendment.  Thus, Officer Norem is entitled to judgment as a matter of law on plaintiffs' cause of action under the Fourteenth Amendment.

### E.    If the Court Determines That Officer Norem Is Entitled to Qualified Immunity as to the Fourteenth Amendment Claim, a New Trial on Damages Is Necessary

Under California law, wrongful death damages include damages for the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of the decedent, but they do no include damages for emotional distress caused by the death of the decedent. *Krouse v. Graham* 19 Cal.3d 59, 72 (1977) ("California cases have uniformly held that damages for mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death action." [internal citations omitted].)  But damages for emotional distress are recoverable for due process violation claims by family members under the Fourteenth Amendment.  Defendants' proposed verdict form identified the wrongful death damages permitted under California law whereas plaintiffs' proposed verdict form – and the form adopted by the Court – made no distinction between the damages permitted under California law versus the Fourteenth Amendment.  Dkt. 128 and 189.  The jury was instructed on the damages to be awarded under each claim.  RT 1472:9-18.  Given that the jury awarded wrongful death damages for both the state law claims and the Fourteenth Amendment claim,

21

if the Court determines that Officer Norem is entitled to qualified immunity, a new trial on the appropriate wrongful death damages under California law is warranted to avoid the improper award of emotional distress damages on plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their renewed motion for judgment as a matter of law under Rule 50(b), enter judgment in favor of Defendants on plaintiffs' Fourth and Fourteenth Amendment, battery, and negligence claims, and award such other and further relief as the Court deems just and proper. Alternatively, Defendants respectfully request a new trial on all of plaintiffs' claims.

Dated: March 20, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General

*s/ David Klehm*

DAVID KLEHM
Deputy Attorney General
STEPHANIE A. VOLLMER
Deputy Attorney General
*Attorneys for Defendants State of California, Acting by and through the California Highway Patrol, and Dane Norem*

## DECLARATION OF DONNA M. DEAN

I, Donna M. Dean, hereby declare as follows:

1. I am a duly appointed Supervising Deputy Attorney General, and, along with Deputy Attorneys General David Klehm and Stephanie A. Vollmer, I am assigned to represent Defendants State of California, by and though the California Highway Patrol, and Dane Norem in the above-captioned action. The facts set forth herein are within my personal knowledge, except where otherwise indicated, and if called to testify herein I could and would competently testify thereto.

2. On March 16, 2026, I met and conferred via telephone with counsel for plaintiffs, Cooper Alison-Mayne. Mr. Alison-Mayne advised that plaintiffs oppose this motion, and he further advised that plaintiffs will move to strike the motion as premature on the ground that final judgment has not been entered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 20, 2026, at Los Angeles, California.

_s/Donna M. Dean_____
Donna M. Dean

SD2020700119

23

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for State of California,

Acting by and through the California Highway Patrol, and Dane Norem,

certifies that this brief contains 6,919 words, which complies with the word limit of

L.R. 11-6.1.


Dated:   March 20, 2026                    Respectfully submitted,

                                           ROB BONTA
                                           Attorney General of California

                                           *s/Donna M. Dean*

                                           DONNA M. DEAN
                                           Supervising Deputy Attorney General
                                           *Attorneys for Defendants State of
                                           California, Acting by and through the
                                           California Highway Patrol, and
                                           Dane Norem*

24