UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 5:21-00526-JAK (DTBx) | Date | August 26, 2026 |
| Title | Devonte Stephenson et al. v. State of California et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| M. Lindaya | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, NEW TRIAL (DKT. 247)**

## I. Introduction

On December 18, 2019, Devonte Stephenson, Keandre Stephenson and Linden Stephenson (collectively, "Plaintiffs"), the surviving children of Leroy Stephenson ("Stephenson" or "Decedent") who is deceased, filed the present action against the State of California in the Riverside Superior Court. Dkt. 1 at 28–38 (the "Complaint"). The Complaint alleges that the use of excessive force by California Highway Patrol Officers ("CHP Officers") caused Stephenson's death. Dkt. 1 at 31–32 ¶¶ 10–16.

On February 8, 2021, Plaintiffs filed a First Amended Complaint ("FAC"), which is the operative one. Dkt. 1 at 9–21. It advances six causes of action. The following parties are defendants: the State of California ("State"), the County of Riverside ("County"), California Highway Patrol ("CHP") Officers Dane Norem ("Norem") and Jeffrey McKee ("McKee"), and County of Riverside peace officer Matthew Borden ("Borden"). Dkt. 1 at 13–21 ¶¶ 15–30, 31–69. On March 24, 2021, defendants removed the action. Dkt. 1 at 2; Dkt. 1 at 6 ¶ 24.

Following several stipulations, an order granting in part the motion for summary judgment filed by McKee, and the dismissal of the County and Borden from the action, the following causes of action remained for trial:

1. Wrongful Death against Norem and McKee;
2. Negligence against Norem and McKee;
3. Fourth Amendment – Excessive Force (42 U.S.C. § 1983), against Norem; and
4. Fourteenth Amendment – Loss of Parent-Child Relationship Without Due Process (42 U.S.C. § 1983), against Norem.

A jury trial on these claims began on September 9, 2025. Dkt. 169. On September 17, 2025, the jury reached a unanimous verdict. Dkt. 184. Norem was found liable on all causes of action. McKee was found not liable for either negligence or wrongful death, which were the only claims that remained against him. The jury awarded $2,000,000 in damages for Leroy Stephenson's pre-death pain and suffering and loss of life, and $1,000,000 in wrongful death damages to each of the Plaintiffs. Dkt. 235. Because McKee was not found liable on any count, he was dismissed from the action pursuant to a stipulation by the parties. *See* Dkt. 213. Accordingly, only the State and Norem (collectively, "Defendants") remain as defendants in the action.

On September 17, 2025, before the case was submitted to the jury, the State and Norem jointly filed a timely motion for judgment as a matter of law regarding claims arising under the Fourth Amendment, Fourteenth Amendment and state law. Dkt. 179 ("Rule 50(a) Motion"). A ruling on the Rule 50(a) Motion was deferred until after jury deliberations. In an Order issued after the jury returned its verdict, the Rule 50(a) Motion was granted as to the Fourteenth Amendment claim based on Qualified Immunity. Dkt. 244 at 4–9. It was denied as to all other claims. *See id* at 9–14.

On March 20, 2026, Defendants filed a renewed Motion for Judgment as a Matter of Law, or in the Alternative, New Trial. Dkt. 247 ("Rule 50(b) Motion"). On March 27, 2026, Plaintiffs filed an opposition to the Rule 50(b) Motion. Dkt. 249. On April 20, 2026, Defendants filed a reply. Dkt. 251.

For the reasons stated in this Order, the Motion is **DENIED**.

## II. Background

### A. Parties

Keandre, Linden and Devonte are the surviving sons and "heirs at law" of Stephenson. Dkt. 1 at 10–11 ¶¶ 1–3. At the time of the incident, Norem was a CHP Officer. *Id.* at 11 ¶¶ 6–7.

## III. Analysis

### A. Legal Standards

#### 1. Motion for Judgment as Matter of Law

Judgment as a matter of law is warranted where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law under Rule 50(a) must be brought before the matter is submitted to the jury. Fed. R. Civ. P. 50(a)(2). If it is denied, it may be renewed, and "may include an

alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "A renewed motion for judgment as a matter of law is properly granted 'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

The following standards apply to a renewed motion brought pursuant to Rule 50:

> A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion. While the court must review the entire evidentiary record, it must view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe. If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict.

*Id.* (internal citations and quotation marks omitted).

2. <u>Motion for New Trial</u>

Following a jury trial, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(a). This includes if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133,1139 (9th Cir. 1999)).

"[A] district court may not grant a new trial simply because it would have arrived at a different verdict." *Id.* In assessing the clear weight of the evidence, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). Even if substantial evidence precludes the entry of judgment as a matter of law, a court may grant a motion for a new trial. *Id.* "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

/ / /

/ / /

Fed. R. Civ. P. 61 also applies to the matters at issue. It provides:

> Unless justice requires otherwise, no error in admitting or excluding evidence — or any other error by the court or a party — is ground for granting a new trial, [or] for setting aside a verdict . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Under these standards, in considering a motion for new trial, the first step is to determine whether an error occurred. If it is determined that there was an error, the second step is to decide whether the error caused prejudice to the party seeking a new trial.

B. Application

1. <u>Stricken Medical Expert Testimony</u>

Defendants contend that judgment as a matter of law, or, alternatively, a new trial, is appropriate as to all claims because certain testimony of Plaintiffs' medical expert, Dr. Wohlgelernter, was stricken. Dkt. 247 at 14–21. In particular, after reviewing a motion to strike by Defendants, Dkt. 178, the Court directed the jury to "disregard testimony [by Dr. Wohlgelernter] regarding the effect of placing Stephenson in a recovery position." Trial Tr. at 1408:10–12. This determination followed a colloquy between the Court and counsel for the parties as to whether Dr. Wohlgelernter's opinion that if Stephenson had been placed in a recovery position within three minutes after being handcuffed, he would not have died, was admissible. *See id.* at 1400:3–1406:25. The Court determined that it was not.

Plaintiffs contend that Defendants' argument is barred procedurally and fails on the merits. Dkt. 249 at 12–16. Plaintiffs argue that a Rule 50(b) motion is properly limited to the grounds asserted in a Rule 50(a) motion. *Id.* at 12 (citing *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009)). Because Defendants did not raise any causation issue in the Rule 50(a) Motion, Plaintiffs argue that this issue cannot be presented in support of the Rule 50(b) Motion. *Id.* at 12–14. Plaintiffs also contend that, even without the stricken testimony, there was sufficient evidence introduced at trial for the jury to conclude that Stephenson died of restraint asphyxia. *Id.* at 14–16.

Defendants respond that their Rule 50(a) Motion adequately raised the issue of sufficiency of the evidence, and Plaintiffs would not have been able to cure the deficiency because they would not have been able to bring back experts to offer testimony that had been stricken. Dkt. 251 at 5–6. They also contend that the Court should exercise its discretion under Fed. R. Civ. P. 59, which does not have an exhaustion requirement, to grant a new trial on the basis that the jury's verdict rested on speculation and is against the clear weight of evidence. *Id.* at 6–13. Thus, they argue that, "[a]fter the Court's instruction striking the shorter time causation opinions of Plaintiffs' medical experts, the jury was left with no admissible medical opinion that post-handcuff prone

restraint, or any other specifically actionable act or omission, caused death to a reasonable medical probability." *Id.* at 12.

Assuming without deciding that Defendants' argument is not procedurally barred with respect to the Rule 50(b) Motion, there was sufficient evidence admitted at trial to support the jury's finding as to causation. Dr. Wohlgelernter testified that Stephenson's medical records showed that the cause of his death was restraint asphyxia, and not a heart attack or methamphetamine. Trial Tr. 650:24–656:18; 704:9–706:7. This opinion was not stricken. Dr. Omalu, another medical expert, testified that brain cells sustain irreversible damage when deprived of oxygen, and that "[b]efore they reach the point of irreversibility, if you stop the prone positioning and the compression, the person will survive." *Id.* at 798:25–799:4.[1]

Contrary to Defendants' assertions, to support of the verdict, the jury did not have to receive precise testimony from a medical expert that being placed in a recovery position within a certain number of minutes would have prevented Stephenson's death. Instead, the aforementioned trial evidence was sufficient to support the finding by the jury based on its evaluation of that evidence, including the appropriate weight in light of the qualifications and credibility of expert witnesses. Thus, the trial evidence that was admitted was sufficient to support the finding that, based on the totality of the circumstances, Norem's use of force was excessive and caused Stephenson's death. This finding is neither unduly "speculative" nor against the clear weight of evidence. Accordingly, neither judgment as a matter of law nor a new trial is warranted.

2. <u>Qualified Immunity</u>

The Rule 50(b) Motion also renews Defendants' arguments in the Rule 50(a) Motion that Norem had qualified immunity as to both the Fourth Amendment and Fourteenth Amendment Claims. Dkt. 247 at 21–28.

As an initial matter, the Order on the Rule 50(a) Motion rejected Plaintiffs' Fourteenth Amendment claim against Norem, because Plaintiffs had not sufficiently shown that clearly established law put Norem on notice that his actions would deprive Plaintiffs of their right to familial association with Stephenson. Dkt. 244 at 6–9. Plaintiffs also acknowledge that this portion of the Rule 50(b) Motion is moot due to this prior ruling. Dkt. 249 at 5. Accordingly, it is

---

[1] Defendants cite *Engilis v. Monsanto Co.* for the proposition that "[l]ay jurors may not substitute their own medical judgment or infer causal mechanisms that no qualified expert has endorsed, particularly where the court has excluded such opinions under the rules of evidence." However, *Engilis* affirmed an order granting a motion for summary judgment brought by the defendant because the excluded evidence was the "sole evidence" upon which the plaintiff relied to establish causation; the expert had not properly ruled out other possible causes of the plaintiff's injury. 151 F.4th 1040, 1054–55 (9th Cir. 2025). In contrast, as noted, Dr. Wohlgelernter provided the basis for his opinion that other causes of death were not consistent with Stephenson's medical records. Dr. Omalu also testified about the causal link between prolonged restraint of a person and the risk of its causing the death of that person.

only necessary to consider whether Norem had qualified immunity as to the Fourth Amendment claim.

a) Legal Standards

(1) Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity is a question of law for the court, and not for the jury. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). In resolving questions of qualified immunity as a matter of law, courts follow a two-step process. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). *First*, it is determined whether "the officer violated a plaintiff's constitutional right." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011). *Second*, the court must assess "whether the constitutional right was clearly established in light of the specific context of the case at the time of the events in question." *Id.* (internal quotation marks and citation omitted).

Deciding if a right was "clearly established" at the relevant time turns on whether "a reasonable officer would have believed that the challenged conduct was lawful." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). Although qualified immunity does not "require a case directly on point," a right is not clearly established where it is merely defined "at a high level of generality." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 690 (9th Cir. 2019) (quoting *Kisela*, 584 U.S. 100 at 104).

Although qualified immunity is a question of law, Defendants are "only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to [Plaintiff]," Defendants "violated no clearly established constitutional right." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). Further, "[a] court must deny the motion for judgment as a matter of law if reasonable jurors could believe that Defendants violated [Plaintiff's] constitutional right, and the right at issue was clearly established." *Id.*

/ / /

/ / /

(2) Excessive Force in Violation of the Fourth Amendment

"Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (quoting *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011)). "This is because such cases almost always turn on a jury's credibility determinations." *Smith*, 394 F.3d 689 at 701 (en banc). However, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*,490 U.S. 386, 396 (1989).

To evaluate whether an officer's use of force during an arrest, investigatory stop, or other "seizure" was excessive, a court must determine whether the challenged conduct was objectively reasonable under the circumstances. *See Graham*, 490 U.S. at 395. Thus, a court is to balance the "'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Vos v. City of Newport Beach*, 892 F.3d 1024, 1030–31 (9th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).

The nature and quality of the intrusion is measured by "'evaluating the type and amount of force inflicted.'" *Thompson v. Rahr*, 885 F.3d 582, 586 (2018) (quoting *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)). The countervailing governmental interests are "measured by examining three primary factors: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" (the "Graham Factors") *Vos*, 892 F.3d at 1031 (quoting *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016)) (alterations in original).

Throughout the analysis, a court should remain mindful that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396).

b) Analysis

(1) Whether there was a Constitutional violation

The Order on Defendants' Rule 50(a) Motion determined that the evidence presented at trial was sufficient for a reasonable juror to conclude that Norem had used excessive force in the restraint of Stephenson thereby violating his rights under the Constitution. Dkt. 244 at 10–12. That discussion is incorporated here by this reference.

In the Rule 50(b) Motion, Defendants contend that Norem's use of force was reasonable under the totality of the circumstances. Dkt. 247 at 18–21. However, as stated in the Order on the Rule

50(a) Motion, there was sufficient evidence presented at trial for a reasonable juror to conclude that Norem used deadly force on Stephenson, Dkt. 244 at 10–11, and that this use of force was not reasonable under the *Graham* factors. *Id.* at 11–12. Accordingly, Norem is not entitled to qualified immunity on this basis.

(2) <u>Whether the law was clearly established</u>

The Order on Defendants' Rule 50(a) Motion also addressed whether the law was clearly established at the time of the incident to have put Norem on notice that his actions would violate Stephenson's rights under the Fourth Amendment. Dkt. 244 at 12–13. Defendants contend that *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), a seminal Ninth Circuit case in which positional asphyxiation by law enforcement was held to be excessive force, is distinguishable and does not provide a basis for clearly established law. Dkt. 247 at 22–24.

This issue was considered and addressed in the prior Order on the Rule 50(a) Motion. It determined that *Drummond* and its progeny are sufficient to show that the relevant law was clearly established at the time of the incident that led to Stephenson's death. Dkt. 244 at 12–13. Defendants argue that *Drummond* is distinguishable based on the evidence that was presented in that case. Thus, they note that a "hobble restraint" was used to bind the decedent's ankles 20 minutes into the incident in *Drummond*, whereas Stephenson became non-responsive after only six minutes. Dkt. 247 at 23. This and the other similar distinctions are parallel to those that have been considered, but rejected in other cases that have analyzed whether there is qualified immunity.

*Spencer v. Pew*, 117 F.4th 1130, 1143–44 (9th Cir. 2024), confirmed that *Drummond* provided adequate notice of clearly established law even where the use of body weight compression lasted for only three minutes. *Spencer* determined that the material factual elements in *Drummond* were that significant body weight was applied to a prone individual; the individual was no longer a threat to safety once handcuffed, prone, and surrounded by multiple officers; and the amount of force applied was not necessary to restrain the individual. *Id.* These same facts are supported by the trial evidence in this case. Further, the Ninth Circuit determined that *Drummond* could not be distinguished on the basis that the individual in *Spencer* resisted being handcuffed, *Drummond* involved body weight compression by more officers, or that the injuries sustained by the individual in *Spencer* were less severe. *Id.* at 1144. *Spencer* also concluded that it was not material that in *Drummond* the issue of the mental illness of the restrained person was part of the analysis as to whether the force used by officers was excessive. *Id.* at 1144–43 (citing *Drummond*, 343 F.3d at 1058).

In their reply, Defendants seek to distinguish *Drummond* and *Spencer* based on the facts that were present in those cases that they claim do not apply to the force applied to Stephenson. These include that the officers in *Drummond* and *Spencer* knelt on the necks of the persons who were restrained, and those persons complained that they could not breathe. Dkt. 351 at 14. However, these differences are not material to the qualified immunity analysis in light of the

clear holding in *Drummond* that positional asphyxiation on a prone individual may constitute excessive force.

That *Drummond* provides a sufficient basis for a clearly established rule in this case, is confirmed by other Ninth Circuit decisions. *See* Dkt. 244 at 13 (citing *Zelaya v. Las Vegas Metro. Police Dep't*, 682 F. App'x 565, 567 (9th Cir. 2017)) (affirming the denial of qualified immunity in light of *Drummond* where officers pinned a man with their body weight for at least 90 seconds after he was motionless and had stopped resisting, and bent his legs toward his torso); *Abston v. City of Merced*, 506 F. App'x 650, 653 (9th Cir. 2013) (affirming the denial of qualified immunity under *Drummond* where body compression was used to restrain a prone and bound suspect for one minute and seven seconds despite minimal resistance); *Tucker v. Las Vegas Metro. Police Dep't*, 470 Fed. App'x 627, 629 (9th Cir. 2012) (affirming the denial of qualified immunity in light of *Drummond* where an officer used body pressure to restrain a delirious, prone, and handcuffed individual who posed no serious safety threat because it violated clearly established law regardless of continued resistance by the person after he was handcuffed); *Arce v. Blackwell*, 294 Fed. App'x 259, 261 (9th Cir. 2008) (same)).

That *Spencer* was decided after the incident in this case, and that the decisions cited above are unpublished does not mean they do not inform the qualified immunity analysis. *See Rico v. Ducart*, 980 F.3d 1292, 1300–01 (9th Cir. 2020) (the Ninth Circuit is unlikely to conclude that the law is clearly established on the basis of unpublished decisions, but these decisions, even made by district courts, may inform a qualified immunity analysis). Rather, they are instructive because they show the breadth of factual circumstances for which *Drummond* may provide clearly established law, so long as the core concerns of positional asphyxiation by body weight compression on a prone and handcuffed individual are present.

For the foregoing reasons, Norem is not entitled to qualified immunity on this claim.

3. <u>New Trial on Damages</u>

Defendants also contend that a new trial on damages is necessary, because the verdict form did not distinguish between wrongful death damages under California law and under the Fourteenth Amendment. Dkt. 247 at 28–29. Under California law, wrongful death damages do not provide a basis for the recovery of emotional distress to a party that was caused by the death of a related person. *Krouse v. Graham*, 19 Cal.3d 59, 72 (1977) ("California cases have uniformly held that damages for mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death action."). However, such damages may be awarded in a § 1983 action. *See Anderson v. Cent. Point Sch. Dist. No. 6*, 746 F.2d 505, 508 (9th Cir. 1984).

Because the jury found liability under the Fourteenth Amendment, and the Court later determined that Norem had qualified immunity as to that claim, Defendants contend that a new trial on wrongful death damages is warranted to avoid the improper award of emotional distress damages on the remaining claims. Dkt. 247 at 28–29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 5:21-00526-JAK (DTBx) | Date | August 26, 2026 |
| Title | Devonte Stephenson et al. v. State of California et al. | | |

Plaintiffs contend that Defendants waived this argument when they failed to raise the potential for an inconsistent verdict before the case was submitted to the jury. Dkt. 249 at 22 (citing *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003)). Because the Court had already granted qualified immunity as to the Fourteenth Amendment claim in McKee's Motion for Summary Judgment, Plaintiffs argue that Defendants should have anticipated that they would be able to secure qualified immunity on this claim for Norem. Thus, Plaintiffs contend that Defendants should have known that an issue as to the scope of available wrongful death damages could later arise and should have presented it. *Id.* at 22–24.

Defendants contend that *Zhang* is distinguishable, because its analysis of waiver focuses on judgment as a matter of law, rather than a motion for new trial. Dkt. 251 at 14. They also argue that they did not waive any objection to the verdict form because there was discussion at trial about the differences in damages between the state and federal wrongful death claims. *Id.* (citing Trial Tr. at 1413:21-1421:13).

In *Zhang*, the jury rendered allegedly inconsistent verdicts: first, by finding liability for only certain defendants, despite overlapping theories of liability for all of them; and second, by finding that the damages for willfully withholding wages was greater than the amount of the lost wages. 339 F.3d at 1027. *Zhang* addressed these issues:

> [T]he potential for a legally irreconcilable verdict should be addressed through jury instructions properly proposed under Rule 51. *See Jarvis* [*v. Ford Motor Co.*], 283 F.3d [33] at 56 [(2d Cir 2002)] ("Objection to an inconsistency between two general verdicts that is traced to an alleged error in the jury instruction or verdict sheet is properly made under Fed.R.Civ.P. 51."); *Merchant* [*v. Ruhle*], 740 F.2d [86] at 91 [(1st Cir. 1984)] (noting that the defendant had agreed to instructions allowing the jury to find liability on either of two claims). Under Rule 51, instructional errors are waived if not raised in a timely fashion. "To excuse [the appellants] from the well-established rules of waiver would permit the sort of 'sandbagging' that the rules are designed to prevent, while undermining the ideal of judicial economy that the rules are meant to serve." *Jarvis*, 283 F.3d at 62.

339 F.3d at 1037.

These principles logically apply both to a motion for judgment as a matter of law, and one for new trial. They also apply whether the verdict returned by the jury is potentially inconsistent, as in *Zhang*, or where the issue arises from allegedly improper aggregation, as Defendants argue here. *See Howard v. City of Los Angeles*, No. 14-CV-3687, 2017 WL 11628133, at *9 n.13 (C.D. Cal. Mar. 30, 2017) ("Plaintiff must bear responsibility for any confusion in the damages award. The verdict form submitted by the Parties did not ask the jury to separately identify damages for various claims or theories of recovery. The Parties not only drafted the original version of the verdict form, but also had many opportunities to object to the interim drafts of the form that the Court presented to the Parties for comments and proposed edits. Plaintiff's failure to object to

the verdict form constituted a waiver of any objection regarding the calculation of damages."); *C.B. v. City of Sonora*, 769 F.3d 1005, 1032 (9th Cir. 2014) ("By failing to object to an undifferentiated verdict form, Defendants have not met their burden to show what portion of the jury's award was for economic damages.").

Consistent with these standards, Defendants should have objected to the verdict form and proposed an alternative due to the possibility that the Fourteenth Amendment claim would later be dismissed based on qualified immunity. Such a ruling would have required a verdict form in which the jury could disaggregate emotional distress damages from other wrongful death damages.

The initial proposed verdict form by Defendants and McKee (collectively, "Trial Defendants") and the colloquy between the Court and counsel during Trial Tr. at 1413:21-1421:13 were not sufficient to preserve this issue. The verdict form initially proposed by the Trial Defendants included the following question as to Plaintiffs' wrongful death damages:

> **QUESTION 10:** What are Plaintiffs' wrongful death damages for the loss of Leroy Stephenson?
> a. The loss of Leroy Stephenson's love, companionship, comfort, care, assistance, protection, affection, society, and moral support from January 25, 2019 to the present: $____________.
> b. The loss of Leroy Stephenson's love, companionship, comfort, care, assistance, protection, affection, society, and moral support from today forward: $____________.

Dkt. 128 at 14.

These questions are based on wrongful death damages available under state law. However, Trial Defendants' proposed verdict form did not include a question for jurors to determine emotional distress damages, which were, at that point, still potentially recoverable under Plaintiffs' Fourteenth Amendment claim. In their briefing in support of their verdict form, Trial Defendants also did not raise the issue of disaggregating emotional distress damages under federal and state law. Instead, they sought the use of a verdict form that would award a lump sum of wrongful death damages for all Plaintiffs, rather than, as Plaintiffs sought, separate damages for each Plaintiff. *See* Dkt. 128 at 17–19.

The colloquy between the Court and counsel during trial also shows that Defendants did not adequately preserve the issue. When discussing the verdict form that had been adopted prior to the commencement of the trial, counsel for McKee stated that certain damages could not be recovered under state law for wrongful death, but could be recovered under the Fourteenth Amendment. He noted that there were only state law claims pending against his client because the federal claims against him had already been dismissed or precluded based on qualified immunity through the order on his motion for summary judgment. *See* Trial Tr. at 1413:21–24;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 5:21-00526-JAK (DTBx) | Date | August 26, 2026 |
| Title | Devonte Stephenson et al. v. State of California et al. | | |

1415:10–14. Counsel for Trial Defendants were silent during this colloquy, and did not seek any modification of the verdict form to address a potential aggregation of damages attributable to the state and federal law claims against Norem. That they should have been aware of this issue is shown by their filing of a Rule 50(a) motion prior to when the jury reached its verdict asserting the same qualified immunity argument as to the Fourteenth Amendment claim that had been successful in McKee's Motion for Summary Judgment.

Indeed, the parties agreed to resolve this issue by adopting the collaborative proposal by McKee's counsel and Plaintiffs' counsel to include in Jury Instruction No. 27 "Damages – Proof," that Plaintiffs' damages could not include grief, sorrow, or mental anguish if the jury did not find for Plaintiffs on the Fourteenth Amendment claim. *Id.* at 1417:1–1418:18. The relevant portion of Instruction 27 provided:

> You should consider the following as to the wrongful death damages for Plaintiffs Devonte, Keandre and Linden Stephenson: the loss of the decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support.
>
> In determining Plaintiffs' loss, do not consider the poverty or wealth of the Plaintiffs. In determining Plaintiffs' loss, you may consider Plaintiffs' grief, sorrow, or mental anguish, but only if Plaintiffs prevail on their Fourteenth Amendment claim. If you do not find in favor of Plaintiffs on their Fourteenth Amendment claim, then you cannot award damages for Plaintiffs' grief, sorrow, or mental anguish.

Dkt. 199 at 32–33.

For the foregoing reasons, the issue as to damages was waived by the Trial Defendants, and cannot be the basis for granting the request for a new trial on damages.

## IV. Conclusion

For the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

________ : ________

Initials of Preparer LC1

,