**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEVONTE STEPHENSON, LINDEN STEPHENSON, and KEANDRE STEPHENSON, individually and as successors in interest to Decedent Leroy Stephenson,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA and DANE NOREM,<br><br>Defendants. | 5:21-cv-00526-JAK-DTB<br><br>*Assigned to:*<br>District Judge John A. Kronstadt<br><br>**MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988**<br><br>Hearing Date: November 2, 2026<br>Hearing Time: 8:30 a.m.<br>Location: Courtroom 10C |

PLEASE TAKE NOTICE that on **November 2, 2026**, at **8:30 a.m.**, or as soon thereafter as practicable, in Courtroom 10C, 350 West 1st Street, Los Angeles, CA 90012, Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson move this Court for an Order awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, Federal Rule of Civil Procedure 54(d), and Local Rule 54 in the amount of $1,748,287.50. Plaintiffs seek compensation for time spent litigating this case through trial and post-trial motion practice, for time spent drafting this motion and the anticipated reply, and for time spent on any further post-judgment proceedings. This Motion is based on Plaintiffs' status as the prevailing party under 42 U.S.C. § 1988 and on the Judgment entered by this Court on August 26, 2026.

Statement of Meet and Confer Compliance: The parties have discussed the Plaintiff's intention to file a motion for attorneys' fees on multiple occasions, including in person and over the phone. The parties were unable to resolve the matter prior to the filing of this motion.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, concurrently filed declarations and exhibits, the pleadings on file, and such other evidence as may be presented at the hearing.

Dated: September 9, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Cooper Alison-Mayne*

Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson*

**TABLE OF CONTENTS**


I. INTRODUCTION....................9
II. PLAINTIFFS ARE ENTITLED TO FEES UNDER § 1988....................10
- A. Legislative History of 42 U.S.C. § 1988....................10
- B. The Supreme Court's Standard in Hensley v. Eckerhart....................11
- C. Plaintiffs are the Prevailing Party....................13

III. PLAINTIFFS' "LODESTAR" IS APPROPRIATE AND REASONABLE....................14
- A. Counsel's Hours Are Reasonable Given the Time and Labor Required and Preclusion from Other Employment....................15
- B. Skill Necessary to Perform Proper Legal Services Given the Complexity and Undesirability of the Case, and Risk of Non-Payment....................18
- C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases....................20
  - 1. Hourly Rate for Dale K. Galipo....................23
  - 2. Hourly Rate for Cooper Alison-Mayne....................25
  - 3. Hourly Rate for Gregory Peacock....................26
  - 4. Hourly Rate for Steven A. Lerman....................26
  - 5. Hourly Rate for Nicholas M. Lerman....................27
  - 6. Hourly Rate for Darci Gilbert....................27
  - 7. Hourly Rate for Santiago Laurel....................28
- D. Plaintiffs' Counsels are Entitled to Fees for Litigating the Instant Motion....................28

IV. CONCLUSION....................29

# TABLE OF AUTHORITIES

## Cases

*Arizona v. ASARCO LLC*
773 F.3d 1050 (9th Cir. 2014)....................10

*Ballen v. City of Redmond*
466 F.3d 736 (9th Cir. 2006)....................14

*Beaty v. BET Holdings, Inc.*
222 F.3d 607 (9th Cir. 2000)....................15

*Blum v. Stenson*
465 U.S. 886 (1984)....................14, 20

*Bouman v. Block*
940 F.2d 1211 (9th Cir. 1991)....................11

*Brewster v. Dukakis*
786 F.2d 16 (1st Cir. 1986)....................12

*Camacho v. Bridgeport Financial, Inc.*
523 F.3d 973 (9th Cir. 2008)....................21

*Chavez v. City of Los Angeles*
47 Cal. 4th 970 (2010)....................13

*City of Riverside v. Rivera*
477 U.S. 561 (1986)....................12, 21

*Clark v. City of Los Angeles*
803 F.2d 987 (9th Cir. 1986)....................28

*Collins v. Chandler Unified Sch. Dist.*
644 F.2d 759 (9th Cir. 1981)....................11

*Dang v. Cross*
422 F.3d 800 (9th Cir. 2005)....................20

*Davis v. City & County of San Francisco*
976 F2d 1536 (9th Cir. 1992)....................12

*Dennis v. Chang*
611 F.2d 1302 (9th Cir. 1980)....................11
*Diaz v. City of Anaheim*
840 F.3d 592 (9th Cir. 2016)....................17
*Fair Housing of Marin v. Combs*
285 F3d 899 (9th Cir. 2002)....................12
*Farrar v. Hobby*
506 U.S. 103 (1992)....................14
*Fish v. St. Cloud State Univ.*
295 F.3d 849 (8th Cir. 2002)....................21
*Garcia v. Los Angeles Cnty. Sheriff's Dep't*
2015 WL 13646906 (C.D. Cal. Sept. 14, 2015)....................21
*Gates v. Deukmjian*
987 F2d 1392 (9th Cir. 1992)....................12, 21
*Glass v. Pfeffer*
849 F.2d 1261 (10th Cir. 1988)....................28
*Gregory v. Oliver*
2003 WL 1860270 (N.D. Ill. Apr. 9, 2003)....................17
*Guam Society of Obstetricians & Gynecologists v. Ada*
100 F.3d 691 (9th Cir. 1996)....................11
*Hall v. Cole*
412 U.S. 1 (1973)....................11
*Hensley v. Eckerhart*
461 U.S. 424 (1983)....................11, 12, 13, 14
*Hernandez v. George*
793 F.2d 264 (10th Cir. 1986)....................29
*Hernandez v. Kalinowski*
146 F.3d 196 (3rd Cir. 1998)....................28
*Horsford v. Bd. Of Trustees of Cal. State Univ.*
132 Cal. App. 4th 359 (2005)....................16

*Jordan v. Multnomah Cnty.*
815 F.2d 1258 (9th Cir. 1987)....................15

*Kerr v. Screen Extras Guild, Inc.*
526 F.2d 67 (9th Cir. 1975)....................15

*Ketchum v. Moses*
24 Cal. 4th 1122, (2001).................... 15

*Lund v. Affleck*
587 F.2d 75 (1st Cir.1978)....................29

*McGrath v. County of Nevada*
67 F.3d 248 (9th Cir. 1995)....................15

*McKibben v. McMahon*
2019 WL 1109683 (C.D. Cal. Feb. 28, 2019)....................21

*Mendez v. County of San Bernardino*
540 F.3d 1109 (9th Cir. 2009)....................10

*Moore v. James H. Matthews & Co.*
682 F.2d 830 (9th Cir. 1982)....................16

*Moreno v. City of Sacramento*
534 F.3d 1106 (9th Cir. 2008)....................16, 21

*National Ass'n of Corder v. Gates*
688 F Supp 1418 (C.D. Cal. 1988)....................12

*Odima v. Westin Tucson Hotel*
53 F.3d 1484 (9th Cir. 1995)....................11

*Parker v. Vulcan Materials Co. Long Term Disability Plan*
2012 WL 843623 (C.D. Cal. Feb. 16, 2012)....................22

*Peak-Las Positas Partners v. Bollag*
171 Cal. App. 4th 101 (2009)....................16

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*
163 Cal. App. 4th 550 (Cal. Ct. App. 2008)....................17

*Prison Legal News v. Schwarzenegger*
608 F.3d 446 (9th Cir. 2010)....................20

*Ramon v. County of Santa Clara*
173 Cal. App. 4th 915 (Cal. Ct. App. 2009)........................................................16
*Roberts v. City of Honolulu*
938 F.3d 1020 (2019)..........................................................................................22
*Schwarz v. Secretary of Health & Human Servs.*
73 F3d 895 (9th Cir. 1995)..................................................................................12
*Serrano v. Unruh*
32 Cal. 3d 621 (1982)..........................................................................................11
*Sethy v. Alameda County Water Dist*.
602 F.2d 894 (9th Cir. 1979)...............................................................................10
*Texas Teachers v. Garland School Dist.*
489 U.S. 782 (1989)............................................................................................14
*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996).................................................................................21
United Steelworkers of *Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990)........................................................................15, 21
*Ustrak v. Fairman*
851 F.2d 983 (7th Cir. 1988)...............................................................................12
*Vo v. Las Virgenes Municipal Utility Dist.*
79 Cal. App. 4th 440 (2000)................................................................................16
*Welch v. Metro. Life Ins. Co.*
480 F.3d 942 (9th Cir. 2007)...............................................................................21
*Wiersta v. Heffernan*
789 F.2d 968 (1st Cir. 1986)................................................................................17
*Wilson v. Union Pacific R. Co.*
56 F.3d 1226 (10th Cir. 1995).............................................................................17

**Statutes**

42 U.S.C. § 1988........................................................................................passim

**Other Authorities**

1976 U.S. Code Cong. & Ad. News
5908. Section 1988 .......... 10
1976 U.S.C.C.A.N. 5908 .......... 21
Legislative History of Section 1988
S. Rep. No. 94-1011, 94th Cong. 2d Session .......... 10
S. Rep. No. 94-1011 (1976) .......... 21

**Rules**

Federal Rule of Civil Procedure 54(d) .......... 2
Local Rule 54 .......... 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On September 18, 2025, the jury returned a verdict for Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson against Defendant Dane Norem on their Fourth Amendment excessive force claim, their Fourteenth Amendment claim, and their state-law claims for battery and negligence, all arising from the death of their father, Decedent Leroy Stephenson. The jury awarded Plaintiffs damages totaling $5,000,000. Dkt. 189.

On March 6, 2026, the Court granted judgment as a matter of law as to Plaintiffs' Fourteenth Amendment cause of action and denied Defendants' motion in all other respects. Dkt. 244. On August 26, 2026, the Court denied Defendants' renewed motion for judgment as a matter of law and alternative motion for a new trial in its entirety, Dkt. 264, overruled Defendants' objections to the form of judgment, Dkt. 266, and entered Judgment against Defendants Norem and the State of California, jointly and severally, in the sum of $5,000,000, together with costs, post-judgment interest, and reasonable statutory attorneys' fees as may be awarded by this Court. Dkt. 265.

As the prevailing party, Plaintiffs now request attorneys' fees pursuant to 42 U.S.C. § 1988 in the amount of $1,748,287.50. The award is justified by the verdict in Plaintiffs' favor, Plaintiffs' counsel's skill and experience in the civil rights field, the difficulties and complexities of this case, and the risk assumed by Plaintiffs' counsel. Plaintiffs litigated this case for over seven years, with diligence and dedication to vindicating Decedent's constitutional rights, ultimately culminating in a favorable result. Police misconduct lawsuits such as this one advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any meaningful restraints. This case exemplifies that, but for competent and willing counsel, police misconduct would have gone without consequence. For these reasons and those set forth below and in

the accompanying declarations, Plaintiffs' counsel are entitled to the full amount of the attorneys' fees requested.

## II. PLAINTIFFS ARE ENTITLED TO FEES UNDER § 1988

### A. Legislative History of 42 U.S.C. § 1988

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value. *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Section 1988 clearly provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

Congress has recognized that "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id.* at 5910. "[T]he citizen who must sue to enforce the law has little or no money with which to hire a lawyer," thus, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Id.* Given this purpose, courts have long established that a court's discretion to deny attorney's fees to a successful civil rights litigant "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), overruled on other grounds by *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *see also Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) ("Congress plainly intended that successful plaintiffs should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

The application for attorneys' fees "must be liberally construed to achieve Congress' purpose to encourage compliance with and enforcement of the civil rights laws." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (citation omitted). Justice Brennan opined that "[n]ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose." *Hall v. Cole*, 412 U.S. 1, 13 (1973). The difficulty for citizens to stand up to the police is great, especially considering the disparity in funding. *See id.* "An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes." *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

**B. The Supreme Court's Standard in Hensley v. Eckerhart**

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id.*; *see* also *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (plaintiffs cannot be faulted for their thoroughness in pleading related claims).

A full fee is one that encourages the vindication of constitutional and statutory rights through recovery of all costs and time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmjian*, 987 F2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976 F2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F2d 345; *National Ass'n of Corder v. Gates*, 688 F Supp 1418, 1422 (C.D. Cal. 1988), aff'd in part and rev'd in part 947 F2d 374 (9th Cir. 1991); *see* also *Fair Housing of Marin v. Combs*, 285

F3d 899, 908 (9th Cir. 2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F3d 895, 908 (9th Cir. 1995).

**C. Plaintiffs are the Prevailing Party**

Plaintiffs are the prevailing party in this litigation. Judgment was entered in Plaintiffs' favor and against Defendants Dane Norem and the State of California, jointly and severally, in the sum of $5,000,000, together with costs, post-judgment interest, and reasonable statutory attorneys' fees as may be awarded by this Court. *See* Dkt. 265. Under 42 U.S.C. § 1988, civil rights plaintiffs who have prevailed on some significant issue in his or her litigation are entitled to an award of fees. *See, e.g.*, *Hensley*, 461 U.S. at 433; *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citing *Hensley* and indicating that California law was "consistent" with it). Once the fee entitlement threshold has been crossed, the prevailing plaintiff's fee award is based upon the lodestar method. "[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

Defendants' motion for judgment as a matter of law was granted only as to Plaintiffs' Fourteenth Amendment cause of action and was denied in all other respects. Dkt. 244. That partial ruling is not a basis for reducing the fee. Plaintiffs' Fourth Amendment, Fourteenth Amendment, battery, and negligence claims all arose from a single course of conduct on January 24, 2019: Defendant Norem's use of force and prolonged restraint of Leroy Stephenson, and the asphyxial death that followed. The claims accordingly involve a common core of facts or related legal theories, and counsel's time was devoted generally to the litigation as a whole, so that the Court should focus on the significance of the overall relief obtained rather than divide the hours expended on a claim-by-claim basis. *Ustrak v. Fairman*, 851

F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435). Plaintiffs obtained the whole of the relief they sought: a $5,000,000 judgment against the officer who caused their father's death and against his employer, entered without reduction on the face of the judgment. “Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.” *Hensley*, 461 U.S. at 435. Plaintiffs are accordingly entitled to a fully compensatory fee.

The appropriate rate is the “market rate,” which is demonstrated by the moving party submitting “satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.” *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Such a rate “is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.” *Id.*

The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782, 792 (1989) expressly held that *Hensley* sets forth the appropriate test for determining a plaintiff’s prevailing party status. In determining whether a plaintiff has succeeded on any significant issue in litigation, the Garland Court looked at whether the relief on the merits of plaintiff’s claim changes the legal relationship between plaintiff and defendant. Applying this test, the Court in *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for any amount modified the defendant’s behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount that would otherwise not be paid.

## III. PLAINTIFFS’ “LODESTAR” IS APPROPRIATE AND REASONABLE

“In the Ninth Circuit, the customary method of determining the permissible amount of attorneys’ fees under § 1988 is the ‘lodestar’ method.” *Ballen v. City of*

*Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The lodestar method multiples the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate. *Id.* (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995) (quotations omitted). After computation, courts then assess whether it is necessary to adjust the lodestar figure on the basis of the twelve Kerr factors. *Id*. (citations omitted). These twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

**A. Counsel's Hours Are Reasonable Given the Time and Labor Required and Preclusion from Other Employment**

The total number of hours for which Plaintiffs' counsel request compensation is reasonable. "Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." *Ketchum v. Moses*, 24

Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent litigating a claim." (internal quotations omitted)). Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009).

In making that determination, courts must look at "the entire course of the litigation, including pre-trial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vo v. Las Virgenes Municipal Utility Dist.*, 79 Cal. App. 4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation). As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "inflating their fees," as the payoff is too uncertain. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to win the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.*

Counsel's sworn declarations and attached time records filed concurrently herewith document the attorney and legal assistant hours reasonably spent in the successful prosecution of this action. *See* Galipo Decl. and Ex. 1 thereto; Alison-Mayne Decl. and Ex. 1 thereto; Peacock Decl. and Ex. 1 thereto; S. Lerman Decl. and Ex. 1 thereto; N. Lerman Decl. and Ex. 1 thereto; Gilbert Decl. and Ex. 1 thereto; and Laurel Decl. and Ex. 1 thereto. These time records are prima facie

evidence that counsel's hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."). Plaintiffs' attorneys also have exercised billing judgment. First, attorney hours that were duplicative, unnecessary, or administrative in nature were either not entered by attorneys during the initial timekeeping process or were reduced during the review of the billing records done for this motion. Erroneous and overly vague billing entries were also removed during this review.

The burden shifts to Defendants to prove that any specific time is unreasonable and "to point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008). The hours for which Plaintiffs' counsel request compensation were reasonably necessary for the prosecution of Plaintiffs' claims for over seven years. Plaintiffs' counsel had an obligation to be diligent and thorough. Excessive force cases are extremely difficult given the inherent bias in favor of the police, especially in a case such as this where there was damaging evidence. *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016).

First, Plaintiffs bore the burden of proof and persuasion. Plaintiffs therefore had to convince the jury that Norem's account of the events lacked credibility against the physical and forensic evidence. This required meticulously analyzing all relevant documents, including CHP reports, medical records, autopsy findings, and witness statements from the January 24, 2019 incident, and extensive preparation for trial against multiple defendants represented by separate counsel.

Second, this case required a significant commitment of time and expense from Plaintiffs' counsel over the more than seven years of litigation.

Causation was among the most contested and complex issues in the case. Defendants disputed that Officer Norem's use of force and restraint caused Leroy Stephenson's death, and both sides retained medical experts who offered competing opinions on the cause of death. To meet their burden, Plaintiffs' counsel had to master the autopsy findings and medical records, work closely with their own medical experts to develop a coherent causation theory, prepare to cross-examine Defendants' medical experts on the underlying science, and present these technical issues to the jury in an understandable way. This work demanded a level of medical and forensic preparation well beyond that of a typical excessive force case.

Indeed, a tremendous amount of time was required. This case involved numerous percipient witnesses to the January 24, 2019 incident in which California Highway Patrol Officer Dane Norem used excessive force and restraint against Leroy Stephenson, resulting in his death. Plaintiffs' counsel spent significant time reviewing the recorded initial statements and deposing the percipient witnesses, examining the physical and forensic evidence, retaining and working with medical and use-of-force experts, and preparing for trial against the State of California and multiple law enforcement defendants.

Additionally, 19 depositions were taken in the case, including 7 expert depositions. Beyond participating in the depositions, Plaintiffs' counsel had to review the transcripts to oppose Defendant McKee's motion for summary judgment and to prepare for witness examinations at trial. Plaintiffs' counsel's close examination, organization, and analysis of the audio recordings, photographs, reports, and transcripts proved essential to the successful result.

**B. Skill Necessary to Perform Proper Legal Services Given the Complexity and Undesirability of the Case, and Risk of Non-Payment**

In general, successfully litigating police misconduct cases requires extensive experience and skill, along with an understanding of issues unique to civil rights victims as compared to general civil practice. Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police on the part of many jurors, as well as the polished testimony of officers who are trained to testify. The complexity and undesirability of this matter separate it from others. The favorable trial result on Plaintiffs' civil rights claim was the product of counsel's hard work and skill in preparing and presenting this case at trial.

This is especially true in light of the particular difficulties this case presented, including evidence or allegations that Decedent was running on the freeway before the encounter with officers; that Decedent had a history of prior arrests; and that Decedent was under the influence of drugs at the time of the incident. Compounding these problems, there was no video evidence for significant portions of the encounter, which forced Plaintiffs to rely heavily on testimony from adverse witnesses and the officers themselves to reconstruct the events.

The case also involved highly complex medical causation issues requiring extensive testimony from multiple experts on both sides, including forensic pathologists and use-of-force experts. Defendants vigorously contested the cause of death, attributing it to pre-existing conditions and drug use rather than the officers' use of force and restraint. The jury was presented with competing medical theories requiring careful analysis of autopsy findings, toxicology reports, and expert opinions regarding positional asphyxia and the role of restraint in causing death. Despite this negative evidence and the significant evidentiary challenges, Plaintiffs' counsel achieved a successful result.

Plaintiffs' counsel knew from their first review of the difficulty, risk, and expense of taking this case on contingency. Nevertheless, the Law Office of Gregory Peacock and Steven A. Lerman & Associates, Inc. took on the case. Despite the increasingly difficult evidence produced in discovery and the challenges of litigating against the State of California, the Law Offices of Dale K. Galipo associated into the case at approximately the time rebuttal experts were being designated, and Mr. Galipo, as lead trial counsel, ultimately won a $5,000,000 verdict for Plaintiffs. That result shows that difficult cases require dedicated and highly skilled representation. For all of these reasons, the risk of losing at trial was very high. To succeed, Plaintiffs' counsel had to conduct numerous depositions, review extensive documentation including CHP reports and medical records, retain, pay, and consult with multiple experts on use of force and medical causation, and spend over one week away from the office at trial.

Defendants vigorously contested this case. From the outset, Defendants contended that all of Defendant Dane Norem's uses of force and restraint were reasonable, that Leroy Stephenson was under the influence of drugs and posed a threat to public safety and the officers, and that any injury or death was caused by pre-existing medical conditions or drug use rather than the officers' conduct. Defendants' trial arguments and their minimal settlement offers showed that they believed they should receive a defense verdict. Plaintiffs' counsel therefore had to litigate well enough to prevail against not only Defendant Norem but also the State of California as his employer. "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." Serrano v. Unruh, 32 Cal. 3d 621, 638 (1982).

**C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases**

The "prevailing market rates in the relevant community," in the forum where the district court sits, govern the reasonable hourly rate for computing the lodestar amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum*, 465 U.S. at 895); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Within this community, the Court should take into account the "experience, skill, and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). "Affidavits of the plaintiffs' attorney . . . and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407 . "[C]ourts can also use survey data to evaluate the reasonableness of attorneys' rates." *Garcia v. Los Angeles Cnty. Sheriff's Dep't*, No. CV 09-8943 MMM (SHX), 2015 WL 13646906, at *16 (C.D. Cal. Sept. 14, 2015) (citing *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002)); *McKibben v. McMahon*, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *Gates*, 987 F.2d at 1405 (9th Cir. 1992). Congress expressly recognized that fees in federal civil rights cases should be comparable to those in complex federal civil litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§ *1988*] be governed by the same standards which prevail in other types of equally complex Federal litigation.'" (citing S. Rep. No. 94-1011, at 6 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913)).

Moreover, the Ninth Circuit has repeatedly held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008); *Orr v. Brame*, 793 F. App'x 485, 489 (9th Cir. 2019) (reversing because "the court simply re-invoked the 2015 rates and added a $30 enhancement, without discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is reasonable"); *Moreno*, 534 F.3d at 1115 ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate without regard to any contrary practice."); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019) ("Examining prior fee awards to Holcomb and Beck in the district was not an acceptable substitute for considering the declarations submitted by Holcomb, and explaining why those declarations did or did not establish the prevailing hourly rate in the district."). Courts also appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials Co. Long Term Disability Plan, No*. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012 (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice").

The Ninth Circuit has recently reiterated that "district courts may not reduce fee awards based on the size of counsel's firm. As we have held before, the district court is meant to compare lawyers, not firms." *LA Int'l Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 625 (9th Cir. 2026) (emphasis in original). The court explained that "[a] firm's size does not directly bear on the factors we must consider when awarding fees—the lawyers' skill, experience, and reputation." *Id.* at 626.

"Courts in this district have referred to the Real Rate Report in assessing the reasonableness of hourly rates in the Central District of California." *Bazarganfard v. Club 360, LLC*, No. 2:21-CV-02272-CBM (PLAx), 2026 WL 1625655, at *2 (C.D. Cal. May 15, 2026); *see Griffin v. City of Los Angeles*, No. 2:24-CV-06312-RGK-MAR, 2026 WL 1747212, at *4-5 (C.D. Cal. June 11, 2026). For litigation partner hourly rates in Los Angeles, the 2025 Real Rate Report sets forth a range of $519 (first quartile) to $1,334 (third quartile), with a median of $875. For associate hourly rates in Los Angeles, the report sets forth a range of $461 (first quartile) to $1,041 (third quartile), with a median of $700. The range for associates in Los Angeles with seven or more years of experience was $425 (first quartile) to $1,065 (third quartile), with a median of $815. For large Los Angeles firms, the report shows partner rates as high as $1,871 and associate rates as high as $1,251 at the third quartile. Ex. 12 to Galipo Decl. (2025 Real Rate Report). Because Plaintiffs' attorneys practice almost exclusively in police excessive force litigation and have earned reputations at the top of that specialized field, and because the Ninth Circuit directs that lawyers rather than firms be compared, those figures are the appropriate reference points here.

1. Hourly Rate for Dale K. Galipo

With 37 years of experience, the majority of which was spent litigating civil rights cases, Mr. Galipo's requested hourly rate of $1,500 is well within the reasonable range of billing rates for civil rights attorneys in Los Angeles with comparable skill and experience. Mr. Galipo graduated with a B.B.A. from the University of Michigan in 1981. Galipo Decl. ¶ 3. He attended law school at UCLA from 1981 to 1984. *Id.* Since 1991, he has managed his own law firm, originally specializing in major personal injury, wrongful death, and criminal defense work. His practice grew to specialize in police excessive force cases resulting in serious injury and death. *Id.* ¶ 4.

In 2012, Mr. Galipo received the Defender of the Constitution Award from the Inland Empire Chapter of the Federal Bar Association. *Id.* ¶ 5. In approximately the last nine years, he has prevailed in approximately thirty-eight jury trials, nearly all of them civil rights cases. *Id.* ¶ 19. He has had over twenty published opinions in civil rights cases and has argued numerous appellate cases before the Ninth Circuit. *Id.* ¶ 17. In 2019, Mr. Galipo was elected a Fellow of the American College of Trial Lawyers, *id.* ¶ 9, and was selected to the Inner Circle of Advocates, which is limited to approximately one hundred members nationwide. *Id.* ¶ 8. Also in 2019, he was chosen by UCLA School of Law to deliver the Irving H. Green Memorial Lecture; past honorees include Johnnie Cochran, Jr. *Id.* ¶ 10. In 2020, Mr. Galipo was recognized as both CAALA Trial Lawyer of the Year and CAOC Consumer Attorney of the Year. *Id.* ¶¶ 11-12. Mr. Galipo tried this case to verdict as lead trial counsel. *Id.* ¶ 31.

Courts within the Central District of California have consistently recognized Mr. Galipo as one of the top civil rights attorneys in the area of police misconduct in Los Angeles. *See, e.g.*, *Zelaya v. City of Los Angeles*, No. 2:20-CV-08382-ODW (MAAx), 2024 WL 3183882, at *3 (C.D. Cal. June 25, 2024) ("The Court agrees that Mr. Galipo is unquestionably at the top of his field and finds Mr. Galipo's requested rate [of $1,300] is appropriate given his 'experience, skill, and reputation.'"); *Donastorg v. City of Ontario*, No. EDCV 18-992 JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) ; *see also French v. City of Los Angeles*, No. EDCV 20-0416 JGB (SPx), 2024 WL 5424392, at *3-4 (C.D. Cal. Feb. 21, 2024) (awarding Mr. Galipo an hourly rate of $1,400 in 2024). Two more courts in this District awarded Mr. Galipo $1,400 per hour in 2026. Quan v. County of Los Angeles, No. 2:24-cv-04805-MCS-KS, Dkt. 157 at 9 (C.D. Cal. Aug. 18, 2026); Garcia v. City of Tustin, No. 8:22-cv-00131-SPG-KES, Dkt. 198 at 32 (C.D. Cal. July 29, 2026) (finding that Mr. Galipo "exhibited exceptional skill in litigating and trying this case" and applying a 1.6 multiplier to the lodestar).

Galipo Decl. ¶¶ 28-29; Exs. 13-14 to Galipo Decl. Following the trial in *Hurtado v. State of California*, Judge Drozd of the Eastern District of California observed on the record that in this "very specialized field" of civil rights excessive force cases, "Mr. Galipo is as good as it gets," and thereafter awarded him $1,300 per hour. Galipo Decl. ¶ 27; Ex. 10 to Galipo Decl. at 18-19. Courts in this district have since approved comparable and higher rates for attorneys of similar standing. *See C.B. v. Moreno Valley Unified Sch. Dist.*, No. EDCV 21-0194 JGB (SPx), 2025 WL 3040876, at *7 (C.D. Cal. Oct. 3, 2025) (approving an hourly rate of $1,550 for a founding partner in a single-plaintiff civil rights case). Accordingly, Mr. Galipo's requested hourly rate of $1,500 is reasonable for an attorney with his experience, skill, expertise, and reputation. Galipo Decl. ¶ 32; *see* Ex. 12 to Galipo Decl. (Declaration of Carol A. Sobel).

2. <u>Hourly Rate for Cooper Alison-Mayne</u>

Mr. Alison-Mayne was admitted to the State Bar of California in March 2022. Alison-Mayne Decl. ¶ 5. Before entering practice, Mr. Alison-Mayne served as a judicial law clerk to the Honorable William J. Martinez of the United States District Court for the District of Colorado, where he researched and analyzed complex legal issues, drafted orders, and assisted the court during trials and hearings. *Id.* ¶ 6. He joined the Law Offices of Dale K. Galipo, where he practices as an associate attorney almost exclusively in civil rights cases involving police excessive force, officer-involved shootings, in-custody deaths, and wrongful death. *Id.* ¶ 7. Mr. Alison-Mayne was the attorney at Mr. Galipo's office with primary responsibility for the day-to-day management of this case from the firm's association of counsel in July 2023 through entry of judgment. *Id.* ¶ 9. He took and defended depositions, prepared the opposition to Defendants' motion for summary judgment, prepared the pretrial filings, served as trial counsel with Mr. Galipo, and prepared Plaintiffs' opposition to Defendants' Rule 50(a) motion, Plaintiffs' opposition to Defendants' renewed Rule 50(b) and Rule 59 motion, Plaintiffs'

proposed judgment, and Plaintiffs' response to Defendants' objections to the form of judgment. *Id.* ¶ 9. He recorded 610.0 hours in this matter. *Id.* ¶ 2.

The 2025 Real Rate Report sets a median hourly rate of $700 for Los Angeles associates, with a third quartile of $1,041. Ex. 12 to Galipo Decl. Mr. Alison-Mayne's requested rate of $700 is therefore at the median for Los Angeles associates generally, in a case he helped try to a $5,000,000 verdict and then defended through two rounds of post-trial motions and a contested form-of-judgment proceeding. Courts in this district have approved comparable and higher rates for associates in civil rights cases. *See Richards v. Cnty. of San Bernardino*, No. 5:17-CV-00497-HDV-SP, 2026 WL 1383447, at *3 (C.D. Cal. May 12, 2026) (awarding an 8-year associate $750 per hour); *C.B.*, 2025 WL 3040876, at *7 (approving $800 to $850 per hour for attorneys in a single-plaintiff civil rights case); *French*, 2024 WL 5424392, at *3-4 (awarding associates at the Law Offices of Dale K. Galipo $800 per hour in 2024). Accordingly, Mr. Alison-Mayne's requested hourly rate of $700 is reasonable. Alison-Mayne Decl. ¶ 11; Galipo Decl. ¶ 35.

3. <u>Hourly Rate for Gregory Peacock</u>

Mr. Peacock is the principal of the Law Office of Gregory Peacock. Admitted in 2011, he has practiced for approximately fifteen years concentrating in police misconduct litigation and has handled over 160 such cases in federal court. Peacock Decl. ¶¶ 3, 5. He was among the first attorneys retained by Plaintiffs and served as lead counsel until Mr. Galipo's office associated in July 2023, drafting the complaint, handling written discovery, and taking and defending the critical depositions. *Id.* ¶ 11; Galipo Decl. ¶ 38. He recorded 208.0 hours in this matter. Peacock Decl. ¶ 2.

Mr. Peacock's requested hourly rate of $800 is below the median litigation partner rate of $875 for Los Angeles reported in the 2025 Real Rate Report and

well below its third quartile of $1,334. Ex. 12 to Galipo Decl. Accordingly, Mr. Peacock's requested hourly rate of $800 is reasonable. Peacock Decl. ¶¶ 8, 12.

4. Hourly Rate for Steven A. Lerman

Mr. Lerman is the principal of Steven A. Lerman & Associates, Inc. He was admitted to the State Bar of California in 1973 and has practiced for approximately fifty-three years, specializing in complex personal injury and wrongful death matters, with extensive civil rights trial experience. S. Lerman Decl. ¶¶ 1-2. His office was retained in 2019 and litigated this matter from intake until Mr. Galipo's office associated in July 2023. Galipo Decl. ¶ 38. His work included reviewing and drafting pleadings, meeting with co-counsel and Plaintiffs' experts, and communicating with the clients. S. Lerman Decl. ¶ 5. He recorded 17.6 hours in this matter. *Id.* ¶ 5.

Mr. Lerman's requested hourly rate of $900 is within the range of litigation partner rates reported for Los Angeles in the 2025 Real Rate Report, which runs from $519 at the first quartile to $1,334 at the third quartile. Ex. 12 to Galipo Decl. Accordingly, Mr. Lerman's requested hourly rate of $900 is reasonable. S. Lerman Decl. ¶ 6.

5. Hourly Rate for Nicholas M. Lerman

Mr. Nicholas Lerman is the managing attorney at Steven A. Lerman & Associates, Inc. He was admitted to the State Bar of California in 2013. N. Lerman Decl. ¶¶ 1, 3. He performed his office's work on this matter, including document collection, pleadings, court conferences, expert retention and Rule 26 disclosures, written discovery, depositions, record review, trial exhibits, and communications with Plaintiffs and co-counsel. *Id.* ¶ 4. He recorded 211.1 hours in this matter. *Id.* ¶ 7.

Mr. Lerman's requested hourly rate of $600 is above the first quartile and below the median of $700 for Los Angeles associates reported in the 2025 Real

Rate Report. Ex. 12 to Galipo Decl. Accordingly, Mr. Lerman's requested hourly rate of $600 is reasonable. N. Lerman Decl. ¶ 7.

6. Hourly Rate for Darci Gilbert

Ms. Gilbert is a litigation assistant at the Law Offices of Dale K. Galipo. Gilbert Decl. ¶ 1. She began working as a legal assistant in 2002, obtained her paralegal certification from the University of San Diego in 2006, and has worked in the legal profession for approximately twenty-four years. *Id.* ¶¶ 2, 7. From 2012 until 2025 she was employed by the United States District Court for the Southern District of California, rising from intake clerk to supervisor of its Case Services Department. *Id.* ¶ 2. She joined the Law Offices of Dale K. Galipo in March 2025 and worked on this case through trial, preparing exhibit and trial binders for the Court, the jury, the witnesses, and counsel, coordinating with experts and witnesses, and communicating with the clients. *Id.* ¶¶ 3-4. She recorded 59.6 hours in this matter. *Id.* ¶ 6.

On July 29, 2026, in *Garcia v. City of Tustin*, No. 8:22-cv-00131-SPG-KES, Dkt. 198 at 34-35, the court approved Ms. Gilbert's hourly rate of $250. *Id.* ¶ 7; Ex. 14 to Galipo Decl. Accordingly, Ms. Gilbert's requested hourly rate of $250 is reasonable. *Id.*; Galipo Decl. ¶ 36.

7. Hourly Rate for Santiago Laurel

Mr. Laurel has worked in the legal field for approximately twenty years, in both state and federal court, as a legal and litigation assistant for multiple law firms, including five years as Senior Litigation Assistant at Shimmel and Parks, APLC. Laurel Decl. ¶ 2. He joined the Law Offices of Dale K. Galipo in September 2021, where he works as a litigation assistant supporting Mr. Galipo and his associate attorneys. *Id.* ¶ 3. On this case he calendared deadlines, scheduled and coordinated depositions, filed documents with the Court, coordinated with experts, reviewed discovery and evidence, and prepared materials for filing and for trial. *Id.* ¶ 6. He recorded 52.75 hours in this matter. *Id.* ¶ 5.

Two courts in this District approved Mr. Laurel's $250 hourly rate in 2026. *Quan v. County of Los Angeles*, No. 2:24-cv-04805-MCS-KS, Dkt. 157 at 10; *Garcia v. City of Tustin*, No. 8:22-cv-00131-SPG-KES, Dkt. 198 at 34-35; Laurel Decl. ¶ 7; Exs. 13-14 to Galipo Decl. Federal courts previously approved him at $200 and $220. *Id.* Accordingly, Mr. Laurel's requested hourly rate of $250 is reasonable. Galipo Decl. ¶ 36.

**D. Plaintiffs' Counsels are Entitled to Fees for Litigating the Instant Motion**

In addition to the attorneys' fees derived from legal work performed in preparing and litigating a case, Plaintiffs' counsel are entitled to attorneys' fees for their time spent establishing their right to attorneys' fees in the amount requested. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."). Plaintiffs' counsel will supplement their total hours to include any additional time associated with the instant motion, reply brief, any further post-judgment proceedings, and preparation for and appearance at any related hearings.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court award attorneys' fees in the amount of $1,748,287.50. Plaintiffs also request that the Court award attorneys' fees for work performed in the litigation of the instant

motion for attorney fees, and the related reply and hearing, and for any further post-judgment proceedings.

The table below summarizes the fees requested, including the name of each biller, years of practice and graduation year if an attorney, the hourly rate, hours claimed, and the total for that biller. If the person is not an attorney, then the qualifying position of the biller is listed.

| **Attorney/Biller** | **Yrs. Practice** | **Rate** | **Hours** | **Total** |
|---|---|---|---|---|
| Dale K. Galipo | 37 | $1,500 | 656.2 | $984,300.00 |
| Cooper Alison-Mayne | 4 | $700 | 610.0 | $427,000.00 |
| Gregory Peacock | 15 | $800 | 208.0 | $166,400.00 |
| Steven A. Lerman | 53 | $900 | 17.6 | $15,840.00 |
| Nicholas Lerman | 12 | $600 | 211.1 | $126,660.00 |
| Darci Gilbert | Litigation Assistant | $250 | 59.6 | $14,900.00 |
| Santiago Laurel | Litigation Assistant | $250 | 52.75 | $13,187.50 |
| **TOTAL:** | | | | **$1,748,287.50** |

Respectfully Submitted,

Dated: September 9, 2026 **LAW OFFICES OF DALE K. GALIPO**

By: */s/ Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson*

## Certificate of Compliance

The undersigned, counsel of record for Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson, certifies that this brief contains **6,967** words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: September 9, 2026 **LAW OFFICES OF DALE K. GALIPO**

By: */s/ Cooper Alison-Mayne*

Dale K. Galipo
Cooper Alison-Mayne[1]
*Attorneys for Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson*

[1] Pursuant to Local Rule 5-4.3.4, as the filer of this document, I attest that the other signatories whose electronic signatures appear on this Motion and on the declarations filed concurrently herewith, namely Dale K. Galipo, Gregory Peacock, Steven A. Lerman, Nicholas M. Lerman, Santiago G. Laurel, and Darci Gilbert, concur in the filing's content and have authorized the filing.