**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEVONTE STEPHENSON, LINDEN STEPHENSON, and KEANDRE STEPHENSON, individually and as successors in interest to Decedent Leroy Stephenson,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA and DANE NOREM,<br><br>Defendants. | 5:21-cv-00526-JAK-DTB<br><br>*Assigned to:*<br>District Judge John A. Kronstadt<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988**<br><br>Hearing Date: October 26, 2026<br>Hearing Time: 8:30 a.m.<br>Location: Courtroom 10C |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs' motion rests on a full evidentiary record: a declaration from each of the seven timekeepers with their contemporaneous time records and the declaration of fee expert Carol Sobel with more than 300 pages of market data and prior awards. Dkts. 268-1 to 268-27. Defendants do not dispute that Plaintiffs prevailed or that they are entitled to fees under 42 U.S.C. § 1988, and they do not question the quality of the work. They call Mr. Galipo "an excellent attorney," Opp. 8:4-5 (Dkt. 278), concede that Mr. Alison-Mayne "did most of the pre-trial preparation and drafting of trial documents in this case", Opp. 8:6-8, and acknowledge that the case "was extremely efficiently litigated and tried." Opp. 7:28. They nonetheless ask the Court to cut the request by $482,009.03. Opp. 4:16-17, 17:8-12.

Three reductions account for more than 90 percent of that figure. First, Defendants ask the Court to reduce Mr. Galipo's rate from $1,500 to $1,400 and to cut 20 percent from 291.4 hours of his time, nearly all of it his trial and trial-preparation days, $147,212 in all. Opp. 8:23-9:7, 13:1-15:5. Their own auditor concedes the work was done, Schratz Decl. ¶ 97; what they challenge is the length of Mr. Galipo's days during trial, which is a challenge to the work ethic that produces verdicts like this one. Second, Defendants ask the Court to set Mr. Alison-Mayne's rate at $350 an hour, half the rate requested, a $213,500 reduction. Opp. 9:17-10:3, 11:4. That request cannot be squared with their concessions about his role or with the $650 to $800 rates courts have awarded Galipo associates in the same role. Third, Defendants ask the Court to cut Mr. Peacock to $525 and Mr. Nicholas Lerman to $475, $83,588 together, without citing a single award at either rate. Opp. 10:4-25; 11:5-8.

Every one of these reductions rests on the declaration of James Schratz, a fee auditor who cites no award at the rates he proposes for Mr. Alison-Mayne, Mr.

Peacock, or Mr. Nicholas Lerman and identifies no task he contends was unnecessary. Schratz Decl. ¶¶ 76-82, 96-101 (Dkt. 278-1). Courts have repeatedly declined to credit his opinions, *see* Part IV, and Plaintiffs' evidentiary objections to his declaration are filed concurrently.

## II. THE REQUESTED RATES ARE REASONABLE

Two of Defendants' arguments apply to every requested rate. First, Defendants argue that no attorney claims a customary fee or regular billing rate. Opp. 7:17-20. But a reasonable rate is not set by what counsel charges; it is "the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007); *see Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) (the prevailing market rate governs, "which may or may not be the rate charged by the individual attorney in question"). Second, Defendants call this "a straightforward Fourth and Fourteenth Amendment violation case" that did not require "a specific skill-set." Opp. 6:27-7:7. The Court presided over this case and knows otherwise. Causation was contested, with Defendants arguing that Decedent died of a heart attack brought on by methamphetamine and heart disease rather than the restraint, an issue litigated through six medical experts, Alison-Mayne Supp. Decl. ¶ 4; most of the restraint was not captured on video and the audio was corrupted, so the events had to be reconstructed from partial recordings and witness accounts; and Plaintiffs twice had to overcome the officers' qualified immunity defense, at summary judgment and after trial. Dkt. 96; Dkt. 244 at 12-13. That work required the skill the requested rates reflect.

### A. Mr. Galipo's $1,500 Rate Reflects Current Market Rates

Defendants call Mr. Galipo "an excellent attorney" and request only a $100 reduction, from $1,500 to $1,400. Opp. 8:4-5, 8:23-9:7. The reduction is unwarranted for two reasons. First, a lawyer's rate is not fixed at his last award;

prevailing rates rise over time, and fee awards follow them. Two courts in this district awarded Mr. Galipo $1,400 this year. *Garcia v. City of Tustin*, No. 8:22-cv-00131-SPG-KES, 2026 WL 2716674, at *17 (C.D. Cal. July 29, 2026) (Galipo Decl. Ex. 14); *Quan v. County of Los Angeles*, No. 2:24-cv-04805-MCS-KS, 2026 WL 2415644, at *5 (C.D. Cal. Aug. 18, 2026); Galipo Supp. Decl. ¶ 10. A court may not "hold the line" at a past rate; "[i]f the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate without regard to any contrary practice." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). Second, Defendants themselves call Mr. Galipo "an excellent attorney" who was brought into the case for his trial experience, Opp. 8:4-6, and concede that he tried it "extremely efficiently." Opp. 7:28. The $1,500 rate is fully earned, and the Court should award it.

**B. Mr. Alison-Mayne's $700 Rate Reflects the Work He Performed**

1. <u>His role matches the Galipo associates awarded $650 to $800</u>

The Galipo office associated into this case in July 2023, and from then to the present Mr. Alison-Mayne has been the attorney responsible for its day-to-day management. Alison-Mayne Supp. Decl. ¶¶ 2-3; Galipo Supp. Decl. ¶ 6. He took a central role in expert discovery on the contested causation issue, taking the depositions of three of Defendants' four medical experts, defending the depositions of Plaintiffs' two, and working with Plaintiffs' experts on their reports. Alison-Mayne Supp. Decl. ¶ 4. He drafted and argued the opposition to the motion for summary judgment, Dkts. 65-69, 78, 80; appeared as sole counsel at the hearings on the motion to stay pending the interlocutory appeal, successfully maintaining the trial date, Dkts. 111, 114, 115; Alison-Mayne Supp. Decl. ¶ 5; and drafted the pretrial filings, selected the trial exhibits, and worked through the parties' many disputes over witnesses and exhibits with opposing counsel. Alison-Mayne Supp. Decl. ¶ 6.

At trial, Mr. Galipo examined the witnesses, gave the opening statement and closing argument, and led the charging conference. Mr. Alison-Mayne served as second chair: he prepared the jury instructions and verdict form, addressed several disputed issues at the charging conference, Trial Tr. Vol. 7 at 1411:15-1440:18, briefed the mid-trial disputes, Dkts. 168, 173, and managed the exhibits and video. Alison-Mayne Supp. Decl. ¶ 7; Galipo Supp. Decl. ¶ 6. After the verdict, he drafted the Rule 50 and Rule 59 oppositions, the form-of-judgment briefing, the bill of costs and this motion. Alison-Mayne Supp. Decl. ¶¶ 8-9.

Mr. Galipo confirms that he relied on Mr. Alison-Mayne at every stage. Galipo Supp. Decl. ¶ 6. Defendants concede as much: they acknowledge that Mr. Alison-Mayne "did the lion's share of witness and trial preparation," Opp. 9:1-2, and that his "involvement in this case was extensive and likely integral to Mr. Galipo's eventual success." Opp. 9:28-10:1. Indeed, five days before trial, frustrated by Mr. Alison-Mayne's central role in the meet and confer process, the Deputy Attorney General, Mr. Klehm, wrote to him that "from all objective indications, . . . you are the real lead trial counsel for this case and defendants will request the Court note that accordingly." Alison-Mayne Supp. Decl. ¶ 10. Defendants now ask the Court to compensate that attorney at the lowest rate requested for anyone in the case.

Defendants argue that Mr. Alison-Mayne was admitted in 2022 and has "only four years of experience," and that the awards Plaintiffs cited involved more senior lawyers. Opp. 9:12-27. But a reasonable rate reflects the skill of the work performed and the result achieved, not years of admission alone. *See Moreno*, 534 F.3d at 1114-15. The same Attorney General's office argued in *I.H. v. California* that the primary Galipo associate should be paid $350 because her "involvement in this case was limited to preparing trial documents and motions"; the court awarded $650. *I.H. v. California*, No. 2:19-cv-02343-DAD-AC, 2025 WL 1158975, at *6 (E.D. Cal. Apr. 18, 2025) (Galipo Decl. Ex. 11).

Courts have awarded the Galipo associate who ran a case day to day, as Mr. Alison-Mayne did here, between $650 and $800. *See Zelaya v. City of Los Angeles*, No. 2:20-cv-08382-ODW (MAAx), 2024 WL 3183882, at *3 (C.D. Cal. June 25, 2024) (awarding Ms. Masongsong $700); *Garcia*, 2026 WL 2716674, at *17 (awarding Ms. Masongsong $800); *I.H.*, 2025 WL 1158975, at *6 (awarding Ms. Le $650); *Quan*, 2026 WL 2415644, at *5 (awarding Ms. Le $800); Galipo Supp. Decl. ¶¶ 7-9. Mr. Alison-Mayne performed the same role, and more: he also took and defended the expert depositions, briefed and argued motions, and sat second chair at trial. Alison-Mayne Supp. Decl. ¶¶ 3-9; Galipo Supp. Decl. ¶¶ 6, 9. Their additional years at the bar do not disqualify them as comparators; because courts consider skill and role, not just years of experience. *See Moreno*, 534 F.3d at 1114-15. His $700 request falls between the $650 and $800 awarded to Ms. Le for the same role.

2. <u>$700 is below the market median for his experience level</u>

Mr. Alison-Mayne graduated from the UCLA School of Law in 2021, where he took courses in civil rights law and worked on civil rights cases; clerked for Judge William J. Martinez of the District of Colorado, where he took on most of the civil rights cases that came through chambers; has argued two appeals in the Ninth Circuit; and has been the lead associate on 46 civil rights matters since joining the Galipo office in March 2023. Alison-Mayne Supp. Decl. ¶¶ 11-12. The 2025 Real Rate Report puts the median rate for Los Angeles associates with three to fewer than seven years of experience at $796, with a first quartile of $649 and a third quartile of $1,086, and Ms. Sobel would place Galipo associates in the top quartile. Sobel Decl. (Galipo Decl. Ex. 12) ¶ 52 & Ex. 13 at 68 (Dkt. 268-13 at 305). A $700 rate is below the median for Mr. Alison-Mayne's bracket.

Awards to individual civil rights lawyers with comparable experience point the same way. *Valenzuela v. City of Anaheim*, No. SACV 17-00278-CJC (DFMx), 2023 WL 2249178, at *4 (C.D. Cal. Feb. 23, 2023) ($650 to a lawyer six years

from graduation); *Jordan v. City of Hemet*, No. EDCV 24-01362-JGB (KSx), Dkt. 56 at 8, Dkt. 51-1 ¶¶ 8-9 (C.D. Cal. Nov. 24, 2025) ($650 to a 2018 graduate and former federal law clerk) (Alison-Mayne Supp. Decl. Ex. D); *Richards v. County of San Bernardino*, No. 5:17-cv-00497-HDV-SP, 2026 WL 1383447, at *3 (C.D. Cal. May 12, 2026) ($750 to an eight-year associate).

3. Defendants offer no basis for $350

Once the applicant presents evidence supporting the rate, the opposing party "has a burden of rebuttal that requires submission of evidence" challenging it. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992)). Defendants cite no award of $350 to any lawyer; Mr. Schratz offers nothing but his general experience, and the court in *I.H.* rejected his $331 and $473 proposals and awarded $600 and $875. 2025 WL 1158975, at *7-9.

Mr. Schratz's reliance on Mr. Nicholas Lerman's requested rate, Schratz Decl. ¶ 79, ignores that Mr. Alison-Mayne had the more central role in this case: he managed it day to day from July 2023 through judgment, took and defended the medical expert depositions, and sat second chair at trial. Alison-Mayne Supp. Decl. ¶¶ 3-9; N. Lerman Supp. Decl. ¶ 5. The skill a lawyer brings to his role in the case bears on the rate. *See Blum v. Stenson*, 465 U.S. 886, 898 (1984); *I.H.*, 2025 WL 1158975, at *6.

**C. Co-Counsel's Rates Are Below the Market Median**

Defendants concede that Mr. Peacock "has extensive experience in civil rights cases." Opp. 8:9-10. He was lead counsel for nearly two and a half years until the Galipo office associated in 2023 and has handled more than 160 police misconduct cases in federal court. Peacock Decl. ¶¶ 5, 11 (Dkt. 268-26). His $800 rate is below the $875 median for Los Angeles litigation partners. Sobel Decl. Ex. 13 at 20 (Dkt. 268-13 at 257). His rate should stand.

Defendants' objection to Mr. Nicholas Lerman's rate rests on the "absence of any stated experience in civil rights litigation" and his years of practice, Opp. 10:22-24, but he has handled more than 80 civil rights cases, including more than 15 wrongful death cases against municipalities for excessive force, and has litigated extensively against public entities. N. Lerman Supp. Decl. ¶¶ 2-4; N. Lerman Decl. ¶ 3 (Dkt. 268-24). His $600 rate is below the $700 median for Los Angeles litigation associates. Sobel Decl. Ex. 13 at 20 (Dkt. 268-13 at 257). So should his rate.

## III. THE HOURS ARE REASONABLE

### A. Mr. Galipo's Trial and Trial-Preparation Hours Were Reasonable and Are Fully Documented

Mr. Schratz proposes a 20 percent reduction to 291.4 hours of Mr. Galipo's time because, he claims, the entries are "vague" and the trial preparation days are "potentially excessively long." Schratz Decl. ¶¶ 93-101 & Ex. 11; Opp. 13:1-15:5. Neither argument has any merit.

First, the trial days. Mr. Galipo's entries for the trial days record the full working day, not only the hours in court, because during trial the case is the only thing he works on. The Court's minute orders fix the time on the record each day, Dkts. 169-172, 182-184, 186, and his supplemental declaration accounts for the rest: client and co-counsel meetings, witness preparation each evening, exhibits, jury instructions, the mid-trial disputes, and the closing argument. Galipo Supp. Decl. ¶¶ 4-5. Every trial lawyer knows that a jury trial is all-consuming, and it is Mr. Galipo's work ethic during trial that produces verdicts like this one. Days of 14 to 16.5 hours are ordinary for lead trial counsel in a federal jury trial, and they were shorter here than in many trials because, as Defendants acknowledge, this one was tried efficiently. Opp. 7:28. Mr. Schratz does not dispute that the work was done, Schratz Decl. ¶ 97. A request to cut those hours as "potentially excessively long" is a request to penalize him for the effort that won the case.

Second, the remaining entries. Plaintiffs do not concede that any of them is vague, and Mr. Schratz identifies none he contends was unnecessary. Schratz Decl. ¶¶ 96, 101. Mr. Galipo has nonetheless elaborated on them: the ten 2023 entries record his review of the case file and of both sides' expert reports after his office associated into the case; the July 12, 2025 entry records his review of the expert reports in preparation for trial; and the August 30 through September 8, 2025 entries already name the witnesses and tasks he prepared each day. Galipo Supp. Decl. ¶¶ 2-4 & Ex. E.

Cutting hours that all agree were worked requires an explanation of why the time was unreasonable, *Moreno*, 534 F.3d at 1113-14, and a reduction above ten percent requires a "concise but clear explanation" of the percentage chosen, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (quoting *Gates*, 987 F.2d at 1400). Defendants offer neither, and their own assessment points the other way: Mr. Galipo tried this case to verdict in eight court days, which Defendants concede was "extremely efficient[]." Opp. 7:28. The Court should award Mr. Galipo's hours in full.

**B. Coordination Among Three Firms Is Not Intra-Office Conferencing**

Mr. Schratz defines the problem he audits as conferencing among "attorneys and staff within a firm," Schratz Decl. ¶ 83, and draws his 4 percent benchmark from audits of "major national and international law firms," *id.* ¶ 91. Of the 221 entries in his Exhibit 7, nearly all are communications among the three separate firms representing Plaintiffs; only five, totaling 3.7 hours, record a conference within one firm. Schratz Decl. Ex. 7; N. Lerman Supp. Decl. ¶ 6. The largest entry in the exhibit is not a conference at all: Mr. Schratz swept in Mr. Alison-Mayne's 10.0 hours on the Sunday before trial preparing witness outlines and exhibits. Schratz Decl. Ex. 7 (Sept. 7, 2025 entry); Alison-Mayne Supp. Decl. ¶ 13. Coordination among co-counsel is not inherently duplicative, *Chaudhry v. City of*

*Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014), and the Court does not second-guess counsel's staffing decisions. *See Moreno*, 534 F.3d at 1114-15; *LA Int'l Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 625 (9th Cir. 2026).

Plaintiffs however do withdraw 1.9 hours of attorney time spent with a reporter from the Associated Press ($1,590), for a total voluntary reduction of $18,527.50. Alison-Mayne Supp. Decl. ¶ 14 & Ex. A. With the time spent on this reply, Part V, the revised request is $1,750,460.00. *Id.* ¶ 16 & Ex. C.

**C. The Remaining Assistant Time Is Compensable**

Defendants ask the Court to disallow all 112.35 hours of litigation assistant time as clerical. Opp. 15:20-17:1; Schratz Decl. ¶¶ 31-37. The governing rule is settled. Paralegal and legal assistant work is compensable at market rates, but "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).

Applying that rule, Plaintiffs concede the point in part and withdraw 67.75 hours ($16,937.50): the entries for filing, ECF downloads, calendaring, scheduling, cost tracking, and printing and binder assembly, including the trial exhibit binders. Alison-Mayne Supp. Decl. ¶ 14 & Ex. A. Those are the only categories Defendants identify as clerical, Schratz Decl. ¶¶ 32-33, 36, and Plaintiffs do not defend them.

The remaining 44.6 hours ($11,150) are different in kind, and Defendants identify nothing clerical in them. Mr. Laurel identified and prepared the exhibits for the summary judgment opposition, reviewed the incident video and recorded witness interviews and prepared a timeline and memoranda for Mr. Galipo, reviewed the medical records and defense expert disclosures, and drafted the expert deposition notices. Ms. Gilbert selected trial exhibits for counsel's review, prepared the transcript sets, witness materials and trial subpoenas, and prepared tables of authorities. Alison-Mayne Supp. Decl. ¶ 14; Laurel Decl. Ex. 1 (Dkt. 268-19); Gilbert Decl. Ex. 1 (Dkt. 268-21). Each task required judgment about the

evidence, and each would otherwise have been done by a lawyer at a lawyer's rate. *Jenkins*, 491 U.S. at 288 & n.10. Courts in this district have compensated these same two assistants for this kind of work at $250 an hour, *Quan*, 2026 WL 2415644, at *5-6; *Garcia*, 2026 WL 2716674, at *18, *20, and no case supports striking a paralegal's time wholesale because some of it was clerical. The Court should award the remaining 44.6 hours.

## IV. THE SCHRATZ DECLARATION DOES NOT CARRY DEFENDANTS' BURDEN

Mr. Schratz's opinions that the requested hours and rates are unreasonable are legal conclusions, not market evidence, and courts have repeatedly declined to credit them. Judge Wilson refused to consider his declaration under Rule 702, noting that "[m]ultiple courts, including the Ninth Circuit, have already held that his methodology in calculating fees lacks legal and factual support." *Curtin v. County of Orange*, No. SACV 16-00591-SVW-PLA, 2018 WL 10320668, at *11-12 (C.D. Cal. Jan. 31, 2018). Earlier this year, in a case where the same office offered his declaration, the court disregarded his opinion "because it lacks objectivity, as other courts have mentioned, and because it relies on a large firm / small firm distinction for allowable hourly rates—a distinction the Ninth Circuit Court of Appeals has recently rejected." *Mirabelli v. Olson*, No. 23-cv-768-BEN-VET, 2026 WL 907163, at *2 (S.D. Cal. Mar. 30, 2026) (citing *LA Int'l*, 168 F.4th at 626). Plaintiffs ask the Court to disregard Mr. Schratz's opinions for the same reasons and for those stated in Plaintiffs' concurrently filed evidentiary objections.

## V. FEES FOR THE FEE MOTION

Time spent establishing the fee is compensable. *Gonzalez*, 729 F.3d at 1210. Mr. Alison-Mayne spent 21.0 hours on this reply, the supplemental declarations and the exhibits ($14,700), and Mr. Galipo spent 4.0 hours ($6,000). Alison-Mayne Supp. Decl. ¶ 15 & Ex. B; Galipo Supp. Decl. ¶ 11 & Ex. F. No time on Defendants' appeal is included.

## VI. CONCLUSION

Plaintiffs respectfully request an award of $1,750,460.00. The revised table follows.

| Attorney/Biller | Yrs. Experience | Rate | Hours | Total |
|---|---|---|---|---|
| Dale K. Galipo | 37 | $1,500 | 660.2 | $990,300.00 |
| Cooper Alison-Mayne | 5 | $700 | 631.0 | $441,700.00 |
| Gregory Peacock | 15 | $800 | 208.0 | $166,400.00 |
| Steven A. Lerman | 53 | $900 | 16.1 | $14,490.00 |
| Nicholas Lerman | 13 | $600 | 210.7 | $126,420.00 |
| Darci Gilbert | Litigation Assistant | $250 | 12.1 | $3,025.00 |
| Santiago Laurel | Litigation Assistant | $250 | 32.5 | $8,125.00 |
| **TOTAL:** | | | | **$1,750,460.00** |

Respectfully Submitted,

Dated: October 14, 2026 **LAW OFFICES OF DALE K. GALIPO**

By: */s/ Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiffs Devonte Stephenson, Linden Stephenson, and Keandre Stephenson*